# COVER SHEET
## Civil Case Filing Form
*(To be completed by Attorney/Party*
*Prior to Filing of Pleading)*

Mississippi Supreme Court  Form AOC/01
Administrative Office of Courts  (Rev 2020)

**Court Identification Docket #**

| Court Year | Docket Number |
|---|---|
| 34 | CH | 20 25 | 1 1 0 7 |

County # — Judicial District — Court ID (CH, CI, CO)

**Case Year**    **Docket Number**

Local Docket ID

Month    Date    Year
This area to be completed by clerk    Case Number if filed prior to 1/1/94

In the **CHANCERY**    Court of **JONES**    County — **FIRST**    Judicial District

## Origin of Suit (Place an "X" in one box only)

| | | | |
|---|---|---|---|
| [X] Initial Filing | [ ] Reinstated | [ ] Foreign Judgment Enrolled | [ ] Transfer from Other court | [ ] Other |
| [ ] Remanded | [ ] Reopened | [ ] Joining Suit/Action | [ ] Appeal | |

## Plaintiff - Party(ies) Initially Bringing Suit Should Be Entered First - Enter Additional Plaintiffs on Separate Form

Individual **Mooney**    **Brian**    **E**

Last Name    First Name    Maiden Name, if applicable    M.I.    Jr/Sr/III/IV

___ Check ( x ) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of

___ Check ( x ) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity
D/B/A or Agency

Business

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
___ Check ( x ) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A

Address of Plaintiff

Attorney (Name & Address)    **Pro Se**    MS Bar No.

___ Check ( x ) if Individual Filing Initial Pleading is NOT an attorney
Signature of Individual Filing:    *Brian Mooney*

## Defendant - Name of Defendant - Enter Additional Defendants on Separate Form

Individual

Last Name    First Name    Maiden Name, if applicable    M.I.    Jr/Sr/III/IV

___ Check ( x ) If Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of

___ Check ( x ) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A or Agency

Business **Nationstar Mortgage, LLC**

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
[X] Check ( x ) if Business Defendant is acting in the name of an entity other than the above, and enter below:
D/B/A **Mr. Cooper**

Attorney (Name & Address) - If Known    MS Bar No.

___ Check ( x ) if child support is contemplated as an issue in this suit.*
*If checked, please submit completed Child Support Information Sheet with this Cover Sheet

## Nature of Suit (Place an "X" in one box only)

| Domestic Relations | Business/Commercial | Children/Minors - Non-Domestic | Real Property |
|---|---|---|---|
| [ ] Child Custody/Visitation | [ ] Accounting (Business) | [ ] Alcohol/Drug Commitment (Voluntary) | [ ] Adverse Possession |
| [ ] Child Support | [ ] Business Dissolution | [ ] Other | [ ] Ejectment |
| [ ] Contempt | [ ] Debt Collection | [ ] Adoption - Contested | [ ] Eminent Domain |
| [ ] Divorce:Fault | [ ] Employment | [ ] Adoption - Uncontested | [ ] Eviction |
| [ ] Divorce: Irreconcilable Diff. | [ ] Foreign Judgment | [ ] Consent to Abortion | [ ] Judicial Foreclosure |
| [ ] Domestic Abuse | [ ] Garnishment | [ ] Minor Removal of Minority | [ ] Lien Assertion |
| [ ] Emancipation | [ ] Replevin | [ ] Other | [ ] Partition |
| [ ] Modification | [ ] Other | **Civil Rights** | [ ] Tax Sale: Confirm/Cancel |
| [ ] Paternity | **Probate** | [ ] Elections | [ ] Title Boundary or Easement |
| [ ] Property Division | [ ] Accounting (Probate) | [ ] Expungement | [X] Other **Declaratory Judgment** |
| [ ] Separate Maintenance | [ ] Birth Certificate Correction | [ ] Habeas Corpus | **Torts** |
| [ ] Term. of Parental Rights-Chancery | [ ] Mental Health Commitment | [ ] Post Conviction Relief/Prisoner | [ ] Bad Faith |
| [ ] UIFSA (eff 7/1/97; formerly URESA) | [ ] Conservatorship | [ ] Other | [ ] Fraud |
| [ ] Other | [ ] Guardianship | **Contract** | [ ] Intentional Tort |
| **Appeals** | [ ] Joint Conservatorship & Guardianship | [ ] Breach of Contract | [ ] Loss of Consortium |
| [ ] Administrative Agency | [ ] Heirship | [ ] Installment Contract | [ ] Malpractice - Legal |
| [ ] County Court | [ ] Intestate Estate | [ ] Insurance | [ ] Malpractice - Medical |
| [ ] Hardship Petition (Driver License) | [ ] Minor's Settlement | [ ] Specific Performance | [ ] Mass Tort |
| [ ] Justice Court | [ ] Muniment of Title | [ ] Other | [ ] Negligence - General |
| [ ] MS Dept Employment Security | [ ] Name Change | **Statutes/Rules** | [ ] Negligence - Motor Vehicle |
| [ ] Municipal Court | [ ] Testate Estate | [ ] Bond Validation | [ ] Premises Liability |
| [ ] Other | [ ] Will Contest | [ ] Civil Forfeiture | [ ] Product Liability |
| | [ ] Alcohol/Drug Commitment (Involuntary) | [ ] Declaratory Judgment | [ ] Subrogation |
| | | [ ] Injunction or Restraining Order | [ ] Wrongful Death |
| | | [ ] Other | [ ] Other |

I**N THE** <u>CHANCERY</u> **COURT OF** <u>JONES</u> **COUNTY, MISSISSIPPI**

<u>FIRST</u> **JUDICIAL DISTRICT, CITY OF** <u>Laurel</u>

Docket No._____ - _____ _____
  File Yr       Chronological No.       Clerk's Local ID

Docket No. If Filed
Prior to 1/1/94 _____

**DEFENDANTS IN REFERENCED CAUSE - Page 1 of ___ Defendants Pages**
**IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET**

## Defendant #2:

**Individual:** _____ _____ ( _____ ) _____ _____
          Last Name       First Name    Maiden Name, if Applicable  Middle Init.  Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

  Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

  D/B/A _____

**Business** <u>Dean Morris, LLC</u>
       Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

  D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

## Defendant #3:

**Individual:** _____ _____ ( _____ ) _____ _____
          Last Name       First Name    Maiden Name, if Applicable  Middle Init.  Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

  Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

  D/B/A _____

**Business** <u>Mortgage Connect, LP</u>
       Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

  D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

## Defendant #4:

**Individual:** _____ _____ ( _____ ) _____ _____
          Last Name       First Name    Maiden Name, if Applicable  Middle Init.  Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

  Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

  D/B/A _____

**Business** <u>Mortgage Electronic Registration Systems, Inc (MERS)</u>
       Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:

  D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____ *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

**FILED**

FIRST JUDICIAL DISTRICT

JUL 1 1 2025

BRIAN E. MOONEY,
Plaintiff,

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

v.                                               CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, CANCELLATION OF VOID INSTRUMENTS, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, DAMAGES, AND OTHER EQUITABLE RELIEF

### INTRODUCTION

1. This is an action to cancel void instruments, quiet title, and enjoin foreclosure proceedings

initiated by Nationstar Mortgage LLC d/b/a Mr. Cooper and its agents on real property located at

436 Old Progress Road, Moselle, Mississippi 39459 (the "Property"). Plaintiff challenges the

validity of a Deed of Trust recorded on February 19, 2021, in the Jones County Chancery Clerk's

Office at Instrument No. 12100561, which names a trustee that no longer existed under

Mississippi law at the time of execution.

2. Plaintiff seeks declaratory and injunctive relief based on Defendants' pattern of fraudulent and

reckless actions affecting the Property, including the preparation and recording of multiple

conflicting mortgage instruments, the use of post-execution alterations, and foreclosure proceedings initiated without legal standing.

3. Plaintiff also asserts claims under the Mississippi Racketeer Influenced and Corrupt Organizations Act, Miss. Code Ann. § 97-43-1 et seq., for Defendants' coordinated acts of fraud and forgery involving recorded instruments.

## I. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under Miss. Code Ann. § 9-5-81 and Article 6, Section 159 of the Mississippi Constitution because this action involves title to real property and seeks equitable relief including declaratory judgment, cancellation of void instruments, quiet title, and injunctive relief. Plaintiff further asserts claims under the Mississippi Racketeer Influenced and Corrupt Organizations Act, Miss. Code Ann. § 97-43-1 et seq., as Defendants' conduct constitutes a pattern of racketeering activity that this Court has equitable authority to address.

5. Venue is proper in the First Judicial District of Jones County, Mississippi under Miss. Code Ann. § 11-11-3 because the Property is located within this district, the Deed of Trust and other challenged instruments were executed and recorded in this district, and foreclosure-related actions and communications giving rise to these claims occurred in this jurisdiction.

6. This Court's equitable jurisdiction includes the authority to determine the validity of deeds, assignments, and other recorded instruments affecting title and to grant relief under Miss. Code Ann. § 97-43-9 where such instruments are procured through fraud, forgery, or a pattern of racketeering activity.

## II. PARTIES

7. Plaintiff Brian E. Mooney ("Plaintiff") is an adult resident citizen of Jones County, Mississippi, residing at 436 Old Progress Road, Moselle, Mississippi 39459. Plaintiff is the sole legal and equitable owner of the Property and brings this action to protect his constitutional, statutory, and equitable rights.

8. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") is a foreign limited liability company organized under Delaware law and doing business in Mississippi as a mortgage servicer and debt collector.

9. Defendant Dean Morris LLP ("Dean Morris") is a law firm organized under the laws of Louisiana and engaged in foreclosure-related business and debt collection activities in Mississippi.

10. Defendant Mortgage Connect, LP, formerly doing business as Inspire Closing Services ("Mortgage Connect"), is a Pennsylvania-based limited partnership and a mortgage closing agent.

11. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation that operates an electronic registry system designed to track servicing rights and ownership interests in mortgage loans.

12. Defendants John Does 1–10 are unknown individuals, entities, or agents who participated in the creation, modification, notarization, or enforcement of void or fraudulent documents affecting Plaintiff's property. Plaintiff will amend this Complaint to identify and join these Defendants as their identities become known through discovery.

## III. FACTUAL ALLEGATIONS

### A. Void Deed of Trust – Defunct Trustee

13. On February 19, 2021, Plaintiff executed a Promissory Note and Deed of Trust in favor of Nationstar Mortgage LLC d/b/a Mr. Cooper, which was recorded in the Jones County Chancery Clerk's Office at Instrument No. 12100561. (See **Exhibit A.**) The Deed of Trust purports to name "Adams & Edens, P.A." as trustee and lists Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary and nominee for the lender. Plaintiff further alleges that Nationstar failed to provide a Notice of Default as required under the terms of the Deed of Trust and applicable Mississippi law. Additionally, Plaintiff was presented with the Closing Disclosure on the same day as closing, depriving him of the mandatory three-day review period required by federal law. See 12 C.F.R. § 1026.19(f)(1)(ii)(A); see also Miss. Code Ann. § 89-1-59.

14. However, Adams & Edens, P.A. no longer existed under that name at the time the Deed of Trust was executed. On December 23, 2014, Adams & Edens, P.A. filed Articles of Amendment with the Mississippi Secretary of State changing its name to Wilson Adams & Edens, A Professional Association.

15. This was followed by a second name change on April 22, 2016, to Wilson & Associates, A Professional Association. On June 13, 2017, the entity converted from a Mississippi Professional Association to a Mississippi Professional Limited Liability Company under the name Wilson & Associates, PLLC.

16. Subsequently, on September 13, 2017, Wilson & Associates, PLLC, a Mississippi entity, merged into Wilson & Associates, PLLC, an Arkansas entity, with the Arkansas entity as the surviving organization. (See **Exhibit B.**)

17. As of December 23, 2014, no Mississippi entity legally existed under the name "Adams & Edens, P.A." capable of serving as trustee. Under Mississippi law, a trustee under a deed of trust must be a legally existing entity at the time of execution, capable of exercising fiduciary duties and statutory powers conferred by Miss. Code Ann. § 89-5-21.

18. This was further confirmed in a recorded telephone conversation with Christine, a representative of the Mississippi Secretary of State's Office, who unequivocally stated that no entity by the name "Adams & Edens, P.A." was registered with the Mississippi Secretary of State or existed as a legal entity in Mississippi after December 23, 2014. A copy of this recording is in my possession and will be made available to the Court upon request.

19. A deed of trust naming a defunct or misnamed trustee is void ab initio and of no legal effect. See *Estate of Stevens v. Wetzel*, 762 So. 2d 293, 297 (Miss. 2000). Because Adams & Edens, P.A. ceased to exist under that name long before the execution of the Deed of Trust, the instrument is void on its face, and all subsequent assignments and foreclosure actions premised upon it are likewise void.

## B. Wrongful Foreclosure – Void Assignments Due to Unauthorized Signatures and Notary Conflict

20. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

21. On or about July 19, 2025, Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") recorded an Assignment of Deed of Trust in the Jones County Chancery Clerk's Office (Instrument No. 12401943), purporting to transfer the beneficial interest from Mortgage Electronic Registration Systems, Inc. ("MERS") to Nationstar. The assignment was signed by Tsedale Alemu as "Vice President of MERS" and notarized by Sylvia Ramirez. (See **Exhibit C**.)

22. Upon information and belief, Tsedale Alemu was not, and has never been, an employee, officer, or authorized agent of MERS. Publicly available records show Alemu employed in mortgage servicing roles but do not identify her as holding any office with MERS. Notably, Alemu's current LinkedIn profile omits any employer information for her present position as "Mortgage Servicing Specialist" in Frisco, Texas. (See **Exhibit D.**)

23. Plaintiff's investigation further revealed that Alemu has executed assignments and releases of mortgage in her purported capacity as "Vice President" for MERS and multiple unrelated entities across numerous jurisdictions. Screenshots from Oklahoma County land records alone reflect at least twelve such documents bearing Alemu's signature as "Vice President." (See **Exhibit E.**)

24. This pattern suggests a practice commonly known as "robo-signing," wherein individuals sign or execute large volumes of mortgage-related documents on behalf of other entities without personal knowledge or actual authority to do so. Courts have recognized such practices as grounds for invalidating assignments and related foreclosure actions. See *Horace v. LaSalle Bank Nat'l Ass'n*, 941 So. 2d 655, 662 (Miss. 2006); *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282 (1st Cir. 2013).

25. The assignment was further compromised by the notarial act of Sylvia Ramirez, who is employed as a "Post Closing Associate II" at Nationstar Mortgage LLC. As an employee of the assignee and beneficiary of the assignment, Ramirez's impartiality as a notary was compromised. Mississippi law prohibits a notary from performing a notarial act if the notary "is a party to or is directly and financially interested in the transaction." Miss. Code Ann. § 25-34-7(1). Texas law similarly bars a notary from notarizing documents where they have a direct beneficial interest. Tex. Gov't Code § 406.016.

26. Because the assignment was signed by an unauthorized individual and notarized by a Nationstar employee with a direct beneficial interest, the document is void ab initio and cannot serve as the basis for any foreclosure action.

## C. WRONGFUL FORECLOSURE – VOID ASSIGNMENTS AND MERS'S LACK OF AUTHORITY

27. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

28. On July 19, 2024, Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") recorded an Assignment of Deed of Trust in the Jones County Chancery Clerk's Office at Instrument No. 12401943, purporting to transfer the beneficial interest from Mortgage Electronic Registration Systems, Inc. ("MERS") to Nationstar. The assignment was signed by Tsedale Alemu as "Vice President of MERS" and notarized by Sylvia Ramirez. (See **Exhibit C**.)

29. Upon information and belief, Tsedale Alemu was not, and has never been, an employee, officer, or authorized agent of MERS. Public records show Alemu employed in mortgage servicing roles but do not identify her as holding any office with MERS. Plaintiff's investigation revealed Alemu has executed numerous assignments as "Vice President" for MERS and unrelated entities in various jurisdictions, suggesting a widespread practice of unauthorized execution commonly referred to as "robo-signing." (See **Exhibit E**.)

30. The assignment was also notarized by Sylvia Ramirez, a Nationstar employee. As an employee of the assignee, Ramirez's impartiality as a notary was compromised. Mississippi law prohibits a notary from performing a notarial act if the notary "is a party to or directly and financially interested in the transaction." Miss. Code Ann. § 25-34-7(1). Texas law similarly prohibits such conflicts. Tex. Gov't Code § 406.016. (See **Exhibit E**)

31. MERS's own published FAQs contain critical admissions undermining its authority as mortgagee, beneficiary, or assignor. MERS acknowledges that it is a "nominee" with no financial interest in the loan, does not hold promissory notes or mortgage documents, and derives its authority solely from contractual language in the security instrument, not actual ownership. It also admits MERS is not a mechanism for transferring interests in mortgage loans. (See MERS FAQs, **Exhibit F**.)

32. The MERS® System Rules of Membership further confirm these limitations. Section 7, located on page 13 of the Rules, states: "The MERS Entities and the Member agree that: (1) the MERS® System is not a mechanism for creating or transferring liens or interests in mortgage loans, and (2) MERS® System membership or a Member's use of the MERS® System shall not modify or supersede any agreement between or among the Members and/or any other parties having liens or interests in mortgage loans registered on the MERS® System. Actual transfers of liens to or from MERS in the mortgage loans are reflected in the public land records as described in this Rule."

This admission, coupled with MERS's limited role as a nominee, means MERS lacked authority to assign the Deed of Trust or any related interests. (See MERS® System Rules of Membership, p. 13. (See **Exhibit G**)

33. Courts have repeatedly held that MERS cannot assign mortgage interests because it does not own the promissory note and is not a true beneficiary. See *In re Agard*, 444 B.R. 231 (Bankr. E.D.N.Y. 2011); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158 (Kan. 2009); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo. Ct. App. 2009). Mississippi law also requires the note and mortgage to remain together, and separation renders the security instrument

unenforceable. *Deutsche Bank Nat'l Tr. Co. v. Russell*, 68 So. 3d 905, 910 (Miss. Ct. App. 2011).

34. Because the original Deed of Trust was void ab initio due to the naming of a defunct trustee, and any subsequent assignment by MERS was unauthorized and legally ineffective, Nationstar lacks standing to enforce any security interest in Plaintiff's property.

35. The recordation of these defective assignments has clouded Plaintiff's title and further undermines Nationstar's ability to claim holder status or foreclose.

36. Plaintiff seeks cancellation of these assignments and a declaration that Nationstar holds no enforceable rights under the void Deed of Trust or the Promissory Note.

### D. CONFLICTING OWNERSHIP CLAIMS AND DEFECTIVE CHAIN OF TITLE

37. Plaintiff Brian E. Mooney is the equitable owner of the property located at 436 Old Progress Rd, Moselle, MS 39459 (the "Property"), which is subject to a Deed of Trust recorded in Jones County, Mississippi, securing a promissory note in favor of the original lender.

38. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") services the loan secured by the Deed of Trust.

39. On March 29, 2024, Plaintiff submitted a Qualified Written Request and Request for Information pursuant to 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.36, seeking confirmation of the current owner of the promissory note.

40. In a letter dated April 9, 2024, Nationstar responded, stating: *"As of the date of this letter, our records indicate GNMA II NSM is the current owner of the Note."*(See **Exhibit H**)

41. Plaintiff subsequently obtained a copy of Nationstar's internal mortgage servicing ledger. The ledger includes investor transfer entries dated March 4, 2021, reflecting a transfer from "OLD INVESTOR 900/0004000" to "NEW INVESTOR 286/0534869" in the amount of $79,639.00. (See **Exhibit I**)

42. Investor Code 286 corresponds to Ginnie Mae II, a federally backed mortgage-backed securities (MBS) pool. This transfer of beneficial ownership is further corroborated by Nationstar's internal Recorded Mortgage-DOT document, which identifies Ginnie Mae II as the investor and confirms Investor Code 286. (See **Exhibit J**)

43. These records demonstrate that as of March 4, 2021, the beneficial ownership of the Note was transferred to Ginnie Mae II and securitized into a Ginnie Mae MBS pool.

44. Plaintiff never received a notice of transfer of ownership as required by 15 U.S.C. § 1641(g) following this investor transfer.

45. In subsequent correspondence dated May 29, 2024, July 5, 2024, July 23, 2024, July 29, 2024, Nationstar reversed its position and asserted: *"Nationstar Mortgage LLC, doing business as Mr. Cooper, is both the owner of the Note and the current loan servicer."*(See **Exhibit K**)

46. Despite these assertions, no assignment or other recorded instrument appears in the Jones County land records evidencing a transfer of the beneficial interest in the Deed of Trust from Ginnie Mae II or back to Nationstar.

47. The absence of such recorded assignments creates a break in the chain of title and prevents Nationstar from demonstrating a clear and valid ownership interest in the Note or Deed of Trust.

48. Under Mississippi law, a party seeking to enforce a deed of trust must establish a clear chain of title and lawful authority to foreclose. See *Horace v. LaSalle Bank Nat'l Ass'n*, 941 So. 2d 655, 662 (Miss. 2006). A break or defect in the chain of title renders the security instrument unenforceable.

49. Plaintiff now faces imminent foreclosure based on this defective chain of title and unresolved ownership claims. Plaintiff further alleges that Defendants failed to provide a Notice of Default prior to initiating foreclosure proceedings, in violation of Miss. Code Ann. § 89-1-59. Plaintiff also asserts that Nationstar violated federal disclosure requirements by delivering the Closing Disclosure on the day of closing rather than at least three business days prior, as mandated by 12 C.F.R. § 1026.19(f)(1)(ii)(A).

## E. FAILURE TO PRODUCE ORIGINAL NOTE AND LACK OF STANDING UNDER UCC

50. Plaintiff Brian E. Mooney is the equitable owner of the property located at 436 Old Progress Rd, Moselle, Mississippi 39459 (the "Property"), which is subject to a Deed of Trust recorded in Jones County, Mississippi, securing a promissory note in favor of the original lender.

51. Since March 2024, Plaintiff has repeatedly submitted Qualified Written Requests and formal written demands to Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), seeking certified copies of the original promissory note and an opportunity to inspect the original wet-ink signed instrument.

52. Nationstar has refused these requests, instead providing only photocopies of the note and stating that the original is in a "collateral file" and may only be inspected upon payment of the loan in full.

53. To date, Nationstar has provided three different copies of the note in response to Plaintiff's requests. None of these copies have been certified as true and correct, and each version contains slight variations, raising serious questions about the authenticity and integrity of the documents Nationstar relies upon.

54. Plaintiff has also documented Nationstar's admissions through multiple recorded phone calls. In one such call, a Nationstar representative named Beth confirmed that Nationstar possesses only a copy of the note and suggested Plaintiff should have received the original at closing. In two additional calls, Nationstar representatives similarly admitted that the only version in their possession is a copy. Plaintiff possesses these recordings and can provide them to the Court upon request.

55. Plaintiff signed the original promissory note in blue ink at closing. A quitclaim deed executed contemporaneously to remove Plaintiff's ex-wife from the loan was also signed in blue ink, and Plaintiff retains the original wet-ink document as evidence that original closing documents exist.

56. Nationstar claims that the note is endorsed in blank and that it is the holder entitled to enforce the instrument. Under UCC § 3-205(b), when a note is endorsed in blank, it becomes bearer paper and may be enforced only by a party in actual possession of the original.

57. UCC § 3-301 provides that a "person entitled to enforce" such an instrument includes only the holder (a person in possession of bearer paper), a nonholder in possession with rights of a holder, or a party satisfying the strict requirements of UCC § 3-309 for lost instruments. Mere possession of a photocopy is legally insufficient.

58. Records provided to Plaintiff indicate that the beneficial ownership of the note was transferred into a Ginnie Mae II mortgage-backed securities (MBS) pool. However, there is no recorded assignment or other evidence of a transfer of the note or Deed of Trust to Ginnie Mae. Similarly, there is no recorded transfer or purchase agreement showing the return of the note or Deed of Trust from Ginnie Mae to Nationstar.

59. Nationstar has failed to produce any documentation demonstrating the chain of title of the note and its right to enforce it.

60. Courts have consistently held that possession of a blank-endorsed note is essential for enforcement and that copies or declarations are insufficient. See *In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011) ("Bearer paper must be possessed to be enforced"); *U.S. Bank, N.A. v. Ibanez*, 941 N.E.2d 40 (Mass. 2011) ("Foreclosing party must both hold the mortgage and be the holder of the note"); *In re Zulueta*, 530 B.R. 53 (Bankr. S.D.N.Y. 2015) ("Where a note is endorsed in blank, enforcement rights rest exclusively with the person in possession of the original"). See also *Dennis Joslin Co. v. Robinson Broad. Corp.*, 977 F. Supp. 491 (D.D.C. 1997); *Gossett v. Fed. Home Loan Mortg. Corp.*, 2015 WL 5178715 (S.D. Ind. Sept. 4, 2015); *In re Hebron*, 543 B.R. 378 (Bankr. N.D. Ga. 2015).

61. Nationstar's failure to produce the original wet-ink note or establish compliance with UCC § 3-309's lost note provisions leaves it without standing to enforce the debt or foreclose on Plaintiff's Property. Any attempt to proceed based on copies of the note is void under Mississippi law and applicable UCC provisions.

### F. PLAINTIFF'S FORMAL LEGAL DEMANDS AND DEFENDANTS' MISREPRESENTATIONS

62. On February 23, 2025, Plaintiff sent a formal legal demand to Mortgage Connect, LP ("Mortgage Connect"), raising serious concerns regarding unauthorized modifications made to the Deed of Trust (Instrument No. 12100561) after its execution but before it was recorded. Plaintiff also challenged the validity of naming Adams & Edens, P.A. as trustee, as the entity had ceased to exist under that name in 2014. (See **Exhibit** L.)

63. Plaintiff's demand cited multiple Mississippi statutes, including Miss. Code Ann. §§ 97-7-10 and 89-5-7, as well as applicable federal statutes prohibiting document falsification and the use of a defunct trustee in land records.

64. In response, Mortgage Connect Vice President Katie Meehan asserted that Adams & Edens, P.A. remained an operational entity and claimed that the unauthorized modifications did not affect the validity of the Deed of Trust. Meehan further stated that the matter was "closed" without providing any supporting documentation or legal authority for these assertions.

65. Plaintiff replied, citing confirmation from the Mississippi Secretary of State that Adams & Edens, P.A. legally changed its name in 2014 and no longer existed as a Mississippi entity under that name. Plaintiff demanded proof of the title insurer's involvement in the transaction and identification of the individuals responsible for altering the recorded instrument.

66. Despite this request, Mortgage Connect failed to provide any documentation supporting its assertions or identifying responsible parties. This failure demonstrated a reckless disregard for the truth and placed both Mortgage Connect and Nationstar on actual notice of the material defects in the Deed of Trust.

67. To further illustrate these concerns, Plaintiff has attached as **(Exhibit M)** the first page of three different versions of the Deed of Trust, each reflecting material alterations made after execution but before recording. (See **Exhibit M.**) **(Exhibit M-1)** is the version recorded in the land records, which contains post-execution changes. **(Exhibit M-2)** shows no alterations and appears consistent with what Plaintiff originally signed. **(Exhibit M-3)** also shows no alterations; however, this copy, produced by Nationstar, is unsigned. For clarity, Plaintiff has included the signature page from the unsigned Deed of Trust.

68. Nevertheless, Defendants proceeded to enforce the void Deed of Trust and initiate foreclosure proceedings against Plaintiff's Property.

68.1. On or about May 15, 2025, Defendants, through Dean Morris LLP as Substitute Trustee, issued a Substituted Trustee's Notice of Sale addressed to Plaintiff for the Property. However, the second page of this notice contains information pertaining to a different borrower and property, specifically naming "Cynthia A. Ross" and "Lot 217 Castine Pointe" in Harrison County, Mississippi.

68.2. This error demonstrates that the notice of sale was prepared and issued in a mass-processing manner without the diligence and accuracy required under Mississippi law. The inclusion of information regarding an unrelated borrower and property calls into question

whether Plaintiff was properly notified and whether the notice satisfied the statutory requirements of Miss. Code Ann. § 89-1-55.

68.3. A defective notice of sale deprives Plaintiff of due process and renders any foreclosure action based on such notice void ab initio. See Gibbs v. Mississippi Farm Bureau Mut. Ins. Co., 797 So. 2d 242, 246 (Miss. 2001) (strict compliance with foreclosure notice requirements is mandatory). Plaintiff attaches the defective Substituted Trustee's Notice of Sale as (**Exhibit O**) for reference.

69. This email exchange and documentary evidence support Plaintiff's claims for fraudulent misrepresentation, material alteration of a negotiable instrument under Miss. Code Ann. § 75-3-407, and a pattern of racketeering activity pursuant to Miss. Code Ann. § 97-43-1 et seq.

COUNT I – DECLARATORY JUDGMENT (VOID INSTRUMENTS AND QUIET TITLE)

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. The Deed of Trust recorded on February 19, 2021, in the Jones County Chancery Clerk's Office at Instrument No. 12100561 is void ab initio because it names Adams & Edens, P.A. as trustee, a legal entity that ceased to exist under that name on December 23, 2014.

72. The Assignments of Deed of Trust recorded on July 19, 2024 (Instrument No. 12401943), and January 27, 2025, are void because Mortgage Electronic Registration Systems, Inc. ("MERS") lacked authority to assign any interest in the Promissory Note or Deed of Trust.

73. The Substitute Trustee Appointment recorded on February 18, 2025 (Instrument No. 12500475), is void because Nationstar Mortgage LLC lacked authority to appoint a substitute trustee under Miss. Code Ann. § 89-1-55, not being the lawful beneficiary or holder of the Promissory Note.

74. Mississippi law requires that a trustee under a deed of trust must be a legally existing entity capable of exercising fiduciary duties at the time of execution. Miss. Code Ann. § 89-5-21; *Estate of Stevens v. Wetzel*, 762 So. 2d 293, 297 (Miss. 2000).

75. Plaintiff has no adequate remedy at law because monetary damages cannot clear the cloud on title or restore Plaintiff's equitable ownership rights.

76. Plaintiff seeks a declaratory judgment pursuant to Miss. Code Ann. §§ 11-13-1 and 89-5-7 canceling these recorded instruments and an order quieting title to the Property in Plaintiff's favor under Miss. Code Ann. § 11-17-31.

### COUNT II – WRONGFUL FORECLOSURE AND BREACH OF FIDUCIARY DUTY

77. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Defendants initiated foreclosure proceedings without legal standing, relying on void instruments and appointing Dean Morris LLP as substitute trustee without lawful authority.

79. Dean Morris LLP breached its fiduciary duty under Mississippi law by issuing defective foreclosure notices and proceeding under void and fraudulent instruments.

80. Nationstar and Dean Morris engaged in debt collection activity in connection with these void instruments. Nationstar's emails included the disclosure, "Nationstar Mortgage LLC, DBA Mr. Cooper is a debt collector. This is an attempt to collect a debt." Dean Morris sent at least two written debt collection notices to Plaintiff demanding payment of the alleged debt and referencing the February 12, 2021 loan agreement and account number ending in 9195, despite the underlying instruments being void. These notices included disclosures stating, "Dean Morris, L.L.C. may be a debt collector," and threatened further action related to foreclosure.

81. Plaintiff's ability to freely use, enjoy, refinance, and convey the Property has been impaired, and these harms are ongoing and irreparable.

82. Plaintiff seeks equitable relief prohibiting Defendants from enforcing void instruments and cancellation of all actions taken under their purported authority.

## COUNT III – FRAUD AND MATERIAL ALTERATION

83. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

84. Defendants, including Nationstar and Mortgage Connect, knowingly made false representations regarding the validity of the Deed of Trust and their authority to enforce it.

85. Plaintiff's February–March 2025 correspondence with Mortgage Connect placed Defendants on actual notice of unauthorized modifications to the Deed of Trust. Despite this notice, Defendants continued to enforce the altered instrument.

86. Under Miss. Code Ann. § 75-3-407, material alterations to negotiable instruments render them unenforceable unless expressly authorized by all parties. The first pages of three conflicting versions of the Deed of Trust, attached as (**Exhibit M**), show unauthorized modifications.

87. Plaintiff seeks equitable relief canceling all materially altered instruments and prohibiting their enforcement.

## COUNT IV – ROBO-SIGNING AND VOID ASSIGNMENTS

88. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

89. Plaintiff's investigation revealed a widespread practice of unauthorized document execution, commonly referred to as "robo-signing," in which individuals such as Tsedale Alemu executed mortgage assignments purporting to act as Vice President of MERS without actual authority or personal knowledge.

90. These assignments were further compromised by notarizations performed by Sylvia Ramirez, a Nationstar employee, creating an impermissible conflict of interest in violation of Miss. Code Ann. § 25-34-7(1) and Tex. Gov't Code § 406.016.

91. Plaintiff seeks equitable relief declaring all assignments executed and notarized under these circumstances void ab initio and directing their cancellation under Miss. Code Ann. § 89-5-7.

## COUNT V – UCC VIOLATIONS (FAILURE TO PRODUCE ORIGINAL NOTE)

92. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

93. Nationstar has refused to produce the original wet-ink Promissory Note despite repeated demands and has instead provided three conflicting, uncertified copies.

94. Under UCC § 3-301, only a person in possession of the original may enforce a bearer instrument endorsed in blank. Copies are insufficient. See *In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011).

95. Plaintiff seeks equitable relief barring enforcement of the Promissory Note and Deed of Trust absent proof of possession of the original instrument.

96. Defendants have produced three different versions of the Promissory Note, all purportedly originating from the February 2021 loan transaction. However, significant discrepancies exist among the copies provided, raising serious questions as to the authenticity, legal enforceability, and chain of title of the alleged debt instrument.

97. Version 1 of the Note contains Plaintiff's signature, but no endorsement appears on any subsequent page. The signature appears in black-and-white, and there is no evidence of blue ink, despite Plaintiff signing the original in blue ink. This discrepancy suggests that the copy provided is a monochrome reproduction, not a scan of the original wet-ink document. The absence of blue ink further raises serious questions as to whether Defendants possess the original Note, which is critical under the Best Evidence Rule (Miss. R. Evid. 1002) and UCC §§ 3-205(b) and 3-301 requiring possession for enforcement.

98. Version 2 is a similar copy but includes an additional page with a stamped blank endorsement in favor of no specific entity. This version contains irregular inking patterns and

spotting around the endorsement area, suggesting it may have been added post-execution or manipulated electronically.

99. Version 3 includes a standalone endorsement page containing a blank endorsement with no date, no printed name of the endorser, and no notarial acknowledgment or witness certification. This endorsement page bears a header labeled "(Page 34 of 73)" in the top-left corner, strongly indicating it was pulled from a digital file or later-added document set—not a scan of the original note signed at closing.

100. There is no continuous pagination across the Note and the endorsement page, reinforcing that the endorsement page was not originally part of the document Plaintiff signed. The detached endorsement appears to have been affixed to a digital copy to simulate bearer status under UCC § 3-205(b), which permits transfer of enforcement rights if the note is endorsed in blank and physically possessed by the party seeking to enforce.

101. However, Defendants have refused to permit Plaintiff to inspect the original wet-ink signed Note, even after repeated written demands and notices of dispute. Plaintiff also documented multiple admissions from Nationstar representatives during recorded telephone calls, in which at least three different agents confirmed that Nationstar possesses only copies of the Note. One representative explicitly stated, "you got the original at closing," further demonstrating that Defendants lack possession of the original and cannot enforce it under UCC § 3-301. These admissions violate the Best Evidence Rule under Mississippi Rule of Evidence 1002 and undermine any claim of lawful holder status.

102. These admissions are preserved in recorded calls with Nationstar representatives Vanessa, Beth, and an escalation supervisor. Plaintiff is prepared to provide these recordings in their original audio format to the Court and opposing counsel upon request or at such time as the Court deems appropriate.

103. The statements made by these representatives are admissions against interest by a party-opponent under Mississippi Rule of Evidence 801(d)(2) and are admissible as substantive evidence of Nationstar's lack of standing to enforce the Note.

104. Defendants' refusal to produce the original Note or allow inspection, paired with the inconsistencies between the three versions, is further indicative of concealment or fabrication. These actions violate both procedural due process and substantive rules of evidence under Mississippi law.

105. Attached hereto collectively as **(Exhibit N)** are true and correct copies of the three versions of the Promissory Note received by Plaintiff, organized and labeled as follows: **(Exhibit N-1):** Note with no endorsement, **(Exhibit N-2):** Note with undated, blotched endorsement, **(Exhibit N-3):** Note with "(Page 34 of 73)" endorsement page.

## COUNT VI – MISSISSIPPI RICO (Miss. Code Ann. § 97-43-1 et seq.)

106. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

107. Defendants engaged in a pattern of racketeering activity, including mail fraud, wire fraud, forgery, and recording fraudulent instruments, in violation of Miss. Code Ann. § 97-43-3(c).

108. These acts were part of a coordinated scheme to deprive Plaintiff of his property and collect payments under void instruments.

109. Plaintiff seeks equitable relief and treble damages pursuant to Miss. Code Ann. § 97-43-9.

## COUNT VII – EQUITABLE AND INJUNCTIVE RELIEF

110. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

111. Defendants' actions have created a cloud on title, impaired Plaintiff's ability to refinance or sell the Property, and subjected Plaintiff to imminent foreclosure without proof of standing.

112. Plaintiff has no adequate remedy at law because monetary damages cannot restore his property rights or clear the cloud on title.

113. Plaintiff seeks a temporary restraining order, preliminary injunction, and permanent injunction pursuant to Mississippi Rule of Civil Procedure 65 prohibiting Defendants from initiating or continuing foreclosure or debt collection activity.

114. Plaintiff further seeks cancellation of all void instruments and an equitable accounting of all transactions involving the Promissory Note and Deed of Trust.

## COUNT VIII – DEFECTIVE NOTICE OF SALE

115. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

116. On or about May 15, 2025, Defendants, through Dean Morris LLP as Substitute Trustee, issued a Substituted Trustee's Notice of Sale addressed to Plaintiff for the Property. However, the second page of this notice contained information pertaining to a different borrower and property, specifically naming "Cynthia A. Ross" and "Lot 217 Castine Pointe" in Harrison County, Mississippi. (See **Exhibit O**.)

117. Mississippi law requires strict compliance with statutory foreclosure notice requirements, including accurate identification of the borrower and property. Miss. Code Ann. § 89-1-55. The inclusion of another borrower's information demonstrates that the notice was defective and not tailored to Plaintiff's property.

118. A defective notice of sale deprives Plaintiff of proper notice, violating statutory requirements and undermining the validity of any foreclosure action. See Gibbs v. Mississippi Farm Bureau Mut. Ins. Co., 797 So. 2d 242, 246 (Miss. 2001).

119. Plaintiff seeks a declaratory judgment that the defective Substituted Trustee's Notice of Sale is void and any foreclosure proceedings based thereon are invalid. Plaintiff further seeks cancellation of the notice and injunctive relief prohibiting Defendants from proceeding under such defective process.

## COUNT IX – VIOLATION OF DUE PROCESS

120. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

121. The erroneous Substituted Trustee's Notice of Sale deprived Plaintiff of proper and lawful notice of foreclosure proceedings, as required under Miss. Code Ann. § 89-1-55 and due process

protections guaranteed by Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution.

122. The defective notice included information about an unrelated borrower and property, specifically naming "Cynthia A. Ross" and "Lot 217 Castine Pointe" in Harrison County, Mississippi. This glaring error raises serious concerns about the accuracy and reliability of Defendants' foreclosure process. Such mistakes, indicative of mass-processing practices, violate Plaintiff's constitutional right to proper notice and an opportunity to be heard before being deprived of property, as guaranteed by Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution. (See **Exhibit O**.)

123. Mississippi courts have recognized that failure to comply with foreclosure notice requirements constitutes a denial of due process. See Gibbs v. Mississippi Farm Bureau Mut. Ins. Co., 797 So. 2d 242, 246 (Miss. 2001).

124. Plaintiff seeks equitable relief prohibiting Defendants from conducting any foreclosure proceedings until they demonstrate strict compliance with statutory notice requirements and Plaintiff's due process rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1. Enter a declaratory judgment declaring the Deed of Trust, Assignments of Deed of Trust, and Substitute Trustee Appointment null and void ab initio and canceling these instruments pursuant to Miss. Code Ann. § 89-5-7;

2. Enter an order quieting title to the subject property located at 436 Old Progress Road, Moselle, Mississippi 39459, in Plaintiff's name pursuant to Miss. Code Ann. § 11-17-31;

3. Grant a temporary restraining order, preliminary injunction, and permanent injunction pursuant to Mississippi Rule of Civil Procedure 65 prohibiting Defendants from initiating or continuing foreclosure proceedings, recording additional instruments, or engaging in debt collection activity against the Property;

4. Order an equitable accounting of all transactions related to the Promissory Note and Deed of Trust, including any transfers to and from Ginnie Mae, and requiring production of the original wet-ink Promissory Note for inspection;

5. Award treble damages, attorney's fees, and all other available equitable relief under Miss. Code Ann. § 97-43-9 for Defendants' pattern of racketeering activity;

6. Waive the requirement of posting security under Miss. R. Civ. P. 65(c), or in the alternative, set bond at a nominal amount not to exceed $100; and

7. Grant such other, further, and general equitable relief as the Court deems just and proper.

8. Enter an order declaring the Substituted Trustee's Notice of Sale dated May 15, 2025, defective and void pursuant to Miss. Code Ann. § 89-1-55, and canceling said notice in the public records;

9. Enter an order declaring that Defendants' issuance of a defective foreclosure notice violated Plaintiff's due process rights under Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution, and enjoining any further foreclosure actions until full compliance with statutory and constitutional notice requirements is demonstrated;

Dated this _11_ day of ___July___, 2025.

Respectfully submitted,

Brian E. Mooney
436 Old Progress Road
Moselle, Mississippi 39459
ifixem75@gmail.com
(601) 310-6078
Pro Se Plaintiff

VERIFICATION

STATE OF MISSISSIPPI
COUNTY OF JONES

BEFORE ME, the undersigned authority in and for the said County and State, personally
appeared Brian E. Mooney, who, being first duly sworn, states under oath as follows:

I am the Plaintiff in the above-styled and numbered cause. I have read the foregoing Verified
Complaint and know the contents thereof. The facts stated therein are true and correct to the best
of my knowledge, information, and belief. I make this verification under penalty of perjury.

This the ‍11 day of ‍July‍ , 2025.

*Brian Mooney*

Brian E. Mooney
Pro Se Plaintiff

SWORN TOP AND SUBSCRIBED BEFORE ME, this the ‍11 day of ‍July‍ , 2025.

Notary Public Signature ‍*Jesse Lang*

Print Name: ‍Jesse Lang‍
Notary Public, State of Mississippi
My Commission Expires: ‍07/06/26‍

(SEAL)



STATE OF MISSISSIPPI
NOTARY PUBLIC
ID#325285
JESSE LANG
Commission Expires
July 6, 2026
LAMAR COUNTY

**EXHIBIT A**

**Deed of Trust recorded February 19, 2021 (Instrument No. 12100561)**
Naming Adams & Edens, P.A. as trustee and MERS as beneficiary and nominee for the lender.

CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
I CERTIFY THIS INSTRUMENT FILE/RECORDED
2/19/2021 2:41:30 PM
INST. 12100561 PAGE 1 OF 16
WITNESS MY HAND AND SEAL
BART GAVIN

Prepared By:
JOSEPHINE LONEDICO
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
4000 HORIZON WAY
IRVING, TX 75063
(972) 894-1310

Return To:
Inspire Closing Services, LLC
420 Rouser Road, Suite 500
Moon Township, PA 15108
(877) 901-1629

MR.

[Space Above This Line For Recording Data]

## DEED OF TRUST

MOONEY
Loan #: 0423549195
PIN: 014 -26-00-013.03
MIN: 100397204235491955
MERS Phone: 1-888-679-6377
Case #: 281-5034735-703

**Grantor(s):** BRIAN E. MOONEY, A SINGLE MAN
Address: 436 OLD PROGRESS RD, MOSELLE, MS 39459
Phone: (601) 310-6078

**Grantee/Beneficiary:** Mortgage Electronic Registration Systems, Inc.
Address: 1901 E VoorHees Street, Suite C, Danville, IL 61834   Phone: 1-888-679-6377

**Lender:** NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
Address: 8950 CYPRESS WATERS BLVD., DALLAS, TX 75019
Phone: (888) 480-2432

**Trustee:** ADAMS & EDENS, PA
Address: 2001 CREEK COVE, SUITE A, BRANDON, MS 39042
Phone: 601- 824-0675

**Legal Description:** SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
HEREOF AS EXHIBIT "A". p5-16 Commence at the Northwest Corner of the NE¼
of SE¼, Section 26 Township 6 North, Range 14 West, First Judicial
DEFINITIONS District, Jones County, Mississippi

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

(A) "Security Instrument" means this document, which is dated FEBRUARY 12, 2021, together with

FHA Mississippi Deed of Trust - 09/15
EX  19382.14                Page 1 of 15

Instrument # 12100561
Page 2 of 16

0423549195

all Riders to this document.

**(B) "Borrower"** is BRIAN E. MOONEY, A SINGLE MAN. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER. Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of DELAWARE. Lender's address is 8950 CYPRESS WATERS BLVD., DALLAS, TX 75019.

**(D) "Trustee"** is ADAMS & EDENS, PA.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated FEBRUARY 12, 2021. The Note states that Borrower owes Lender SEVENTY-NINE THOUSAND SIX HUNDRED THIRTY-NINE AND 00/100 Dollars (U.S. $79,639.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 1, 2036.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

FHA Mississippi Deed of Trust - 09/15
EX 19382.14                    Page 2 of 15

0423549195

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **JONES**:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**
which currently has the address of **436 OLD PROGRESS RD, MOSELLE, MS 39459** ("Property Address"):

　　　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

　　　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all

FHA Mississippi Deed of Trust - 09/15
KD  19382.14　　　　　　　　　Page 3 of 15

0423549195

claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

FHA Mississippi Deed of Trust - 09/15
820   19382.14                              Page 4 of 15

0423549195

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall

**FHA Mississippi Deed of Trust - 09/15**
19382.14       Page 5 of 15

0423549195

notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal

**FHA Mississippi Deed of Trust - 09/15**
**ICE** 19382.14                    Page 6 of 15

0423549195

certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation

FHA Mississippi Deed of Trust - 09/15
钱 19382.14                     Page 7 of 15

0423549195

proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

**FHA Mississippi Deed of Trust - 09/15**
图 19382.14              Page 8 of 15

0423549195

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be

**FHA Mississippi Deed of Trust - 09/15**
ICE  19382.14                              Page 9 of 15

0423549195

applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

FHA Mississippi Deed of Trust - 09/15
ICE  19382.14                              Page 10 of 15

0423549195

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property

FHA Mississippi Deed of Trust - 09/15
19382.14                          Page 11 of 15

0423549195

inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

FHA Mississippi Deed of Trust - 09/15
爾爾  19382.14                             Page 12 of 15

0423549195

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public

FHA Mississippi Deed of Trust - 09/15
☞ 19382.14                                    Page 13 of 15

0423549195

advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in JONES County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

*Brian E Mooney*
\- BORROWER - BRIAN E. MOONEY

FHA Mississippi Deed of Trust – 09/15
KAB  19382.14                           Page 14 of 15

0423549195

[Space Below This Line For Acknowledgment]

STATE OF MISSISSIPPI

COUNTY OF JONES

Personally appeared before me, the undersigned authority in and for the said county and state, on this 12 day of February, 2022, within my jurisdiction, the within named Brian E. mooney

who acknowledged that he/she/they executed the above and foregoing instrument.



_Lou A murphy_
Notary Public

My Commission Expires: 0 7-10-2024

Individual Loan Originator: LANCE WILLIAMS, NMLSR ID: 971913
Loan Originator Organization: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, NMLSR ID: 2119

FHA Mississippi Deed of Trust – 09/15
930 19382.14                    Page 15 of 15

JONES COUNTY, MS BART GAVIN
I CERTIFY THIS INSTRUMENT WAS FILED ON 2/19/2021 2:41:30 PM AND RECORDED IN GENERAL BOOK:0121 PAGE:561

# Exhibit A

File No.: 774746

The Land referred to herein below is situated in the County of JONES, State of MS, and is described as follows:

Commence at the northeast corner of the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the forty line 1111.29 feet, thence South 135.05 feet to and for the POINT OF BEGINNING: run thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West 152.00 feet to an iron pin; thence North 286.50 feet back to the point of beginning; said parcel comprising 1.0 acre, more or less and being situated in the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County Mississippi.

Being the same property as conveyed from Jerry R. Mooney and wife, Delores Mooney to Brian E. Mooney and wife, Marla E. Mooney as tenancy by the entirety with full right of survivorship as set forth in Deed Book 548 Page 694 dated 02/01/2002, recorded 11/05/2002, JONES County, MISSISSIPPI.

Tax ID: 014 -26-00-013.03

Pg 16

**EXHIBIT B**

**Mississippi Secretary of State records**
Showing name changes and mergers of Adams & Edens, P.A., including its conversion and merger into Wilson & Associates, PLLC. (Printed directly from the SOS website.)



## Michael Watson
### SECRETARY OF STATE

This is not an official certificate of good standing.

### Name History

| Name | Name Type |
|------|-----------|
| Wilson & Associates, PLLC | Legal |
| WILSON & ASSOCIATES, A PROFESSIONAL ASSOCIATION | Previous Legal |
| WILSON ADAMS & EDENS, A PROFESSIONAL ASSOCIATION | Previous Legal |
| ADAMS & EDENS, A PROFESSIONAL ASSOCIATION | Previous Legal |

### Business Information

| | |
|---|---|
| **Business Type:** | Limited Liability Company |
| **Business ID:** | 685574 |
| **Status:** | Merged |
| **Effective Date:** | 01/03/1994 |
| **State of Incorporation:** | Mississippi |
| **Principal Office Address:** | 232 Market Street<br>Flowood, MS 39232 |

### Registered Agent

**Name**

C T CORPORATION SYSTEM
645 LAKELAND EAST DRIVE, Suite 101
FLOWOOD, MS 39232

### Officers & Directors

| Name | Title |
|------|-------|
| Jennifer Wilson-Harvey<br>400 W. Capitol Avenue, Suite 1400<br>Little Rock, AR 72201 | Manager, President |
| Aaron Squyres<br>400 W. Capitol Avenue, Suite 1400<br>Little Rock, AR 72201 | Manager, Secretary |

**F0012**

**2014164472**

**Fee:** $ 50



DELBERT HOSEMANN
*Secretary of State*

Business ID: 685574
Filed: 12/23/2014 04:50 PM
C. Delbert Hosemann, Jr.
Secretary of State

P.O. BOX 136
JACKSON, MS 39205-0136

**TELEPHONE: (601) 359-1633**

## Articles/Certificate of Amendment

### Business Details

*Business ID:* 685574

*Business Name:* ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

*Future Effective Date:* 12/23/2014

### Current Business Name
*Business Name:* ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

### Amended Business Name
*Business Name:* WILSON ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

### Current Principal Office
*Address:*   2101 Courtside Cove
Brandon, MS 39042

### Amended Principal Office
*Address:*   625 Lakeland East Drive, Suite D
Flowood, MS 39232

### Adoption and Approval Voting
The amendment(s) was(were) adopted on 12/23/2014.

☐ The Incorporators.

☐ The Directors without shareholder action and shareholder action was not required.

☑ The shareholders in the manner required by the Mississippi Business Corporation Act and the Articles of Incorporation.

**F0012**        **2016164331**

**Fee:** $ 50



DELBERT HOSEMANN
*Secretary of State*

Business ID: 685574
Filed: 04/22/2016 08:06 PM
C. Delbert Hosemann, Jr.
Secretary of State

**P.O. BOX 136**
**JACKSON, MS 39205-0136**

**TELEPHONE: (601) 359-1633**

## Articles/Certificate of Amendment

### Business Details

*Business ID:* 685574

*Business Name:* WILSON ADAMS & EDENS, A
PROFESSIONAL ASSOCIATION

*Future Effective Date:* 12/23/2014

### Current Business Name

*Business Name:* WILSON ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

### Amended Business Name

*Business Name:* WILSON & ASSOCIATES, A PROFESSIONAL ASSOCIATION

### Adoption and Approval Voting

The amendment(s) was(were) adopted on 02/16/2016.

☐ The Incorporators.

☑ The Directors without shareholder action and shareholder action was not required.

☐ The shareholders in the manner required by the Mississippi Business Corporation Act
and the Articles of Incorporation.

### NAICS Code/Nature of Business

541110 - Offices of Lawyers

541110 - Offices of Lawyers

541110 - Offices of Lawyers

### Signature

By entering my name in the space provided, I certify that I am authorized to file this
document on behalf of this entity, have examined the document and, to the best of my
knowledge and belief, it is true, correct and complete as of this day *04/22/2016*.

*Name:*              *Address:*

# F0400

# 2017189556

**Fee:** $ 50



DELBERT HOSEMANN
*Secretary of State*

Business ID: 685574
Filed: 06/13/2017 03:33 PM
C. Delbert Hosemann, Jr.
Secretary of State

**P.O. BOX 136**
**JACKSON, MS 39205-0136**

**TELEPHONE: (601) 359-1633**

## Business Conversion

### Current Business Information

*Business ID:* 685574                         *Business Type:* Profit Corporation
*Foreign or Domestic:* Domestic               *Date of Incorporation:* 01/03/1994
*Business Name:* WILSON & ASSOCIATES, A PROFESSIONAL ASSOCIATION
*Business Email:* asquyres@wilson-assoc.com
*State of Incorporation:* MS

### Conversion Information

*New Entity Type:* Limited Liability Company
*Business Email:* asquyres@wilson-assoc.com
*New Business Name:* Wilson & Associates, PLLC

The plan of conversion was approved in accordance with MCA §79-37-101 et seq or the laws of the state of the converting entity.

The following have been attached with this form:

- In lieu of attaching a public organic record of the converted entity, the following information is provided.

*Purpose:* Attorney

### NAICS Code/Nature of Business

541110 - Offices of Lawyers
541110 - Offices of Lawyers
541110 - Offices of Lawyers

### Registered Agent

*Name:*    C T CORPORATION SYSTEM

**F0013**                          **2017226845**

**Fee:** $ 50



DELBERT HOSEMANN
*Secretary of State*

Filed: 09/13/2017 04:05 PM
C. Delbert Hosemann, Jr.
Secretary of State

P.O. BOX 136
JACKSON, MS 39205-0136

**TELEPHONE: (601) 359-1633**

Articles of Merger

## Merging Business(es)

| *Business ID* | *Name of Entity* | *Entity Type* | *State* |
|---|---|---|---|
| | Wilson & Associates, PLLC | Limited Liability Company | AR |
| 685574 | Wilson & Associates, PLLC | Limited Liability Company | MS |

## Survivor Details

*Business ID:* (not registered)          *Business Name:* Wilson & Associates, PLLC

*State:* AR                              *Entity Type:* Limited Liability Company

*New Principal Office Address:*   400 W Capitol Ave Suite 1400
                                 Little Rock, AR 72201

A foreign surviving entity choosing not to register with the state of Mississippi may not transact business in Mississippi and agrees that the Mississippi Secretary of State shall be its agent for service of process.

A statement that the plan or merger was approved by shareholders and members or that shareholder/member approval was not required signed by a representative of each company involved in the merger must be attached.

# STATE OF ARKANSAS

## SECRETARY  OF STATE

**Mark Martin**
ARKANSAS SECRETARY OF STATE

To All to Whom These Presents Shall Come, Greetings:

I, Mark Martin, Arkansas Secretary of State of Arkansas, do hereby certify that the following and hereto attached instrument of writing is a true and perfect copy of

**Articles of Merger**

of

**WILSON & ASSOCIATES, PLLC**

with and into

**WILSON & ASSOCIATES, P.L.L.C.**

filed in this office September 13, 2017.



**In Testimony Whereof,** I have hereunto set my hand and affixed my official Seal. Done at my office in the City of Little Rock, this 13th day of September, 2017.

*Mark Martin*
_____
Arkansas Secretary of State

 FILED - Arkansas Secretary of State - Mark Martin - Doc#: 9073814001 - Filing#: 100155366 - Filed On: 9/13/2017 - Page(s): 1

ARTICLES OF MERGER OF
WILSON & ASSOCIATES, PLLC, A MISSISSIPPI PLLC
INTO WILSON & ASSOCIATES, PLLC, AN ARKANSAS PLLC

Pursuant to the provisions of the Arkansas Small Business Entity Tax Pass Through Act and the Mississippi Revised Limited Liability Company Act, the undersigned professional limited liability companies adopt the following Articles of Merger for the purpose of merging them into one of such professional limited liability companies:

1.  The name and form of each constituent organization and the jurisdiction of its governing statute:
    a.  WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company formed under the laws of the State of Arkansas; and
    b.  WILSON & ASSOCIATES, PLLC, a Mississippi professional limited liability company formed under the laws of the State of Mississippi.

2.  The name and form of the surviving organization and the jurisdiction of its governing statute:
    a.  WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company formed under the laws of the State of Arkansas

3.  The date the merger is effective under the governing statute of the surviving organization is the latest of September 13, 2017, the date the Articles of Merger are filed with the Arkansas Secretary of State, or the Mississippi Secretary of State.

4.  There are no amendments provided for in the plan of merger for the organizational document of the surviving organization.

5.  As to each constituent organization that the merger was approved by all of the members and managers thereof, as required by such constituent organization's governing statute.

6.  WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company, as the surviving organization has previously appointed an agent for service of process under A.C.A. § 4-20-112 and no further filing of appointment of agent in Arkansas is required.

7.  A copy of the Plan of Merger is on file at the principal office of WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company, located at 400 W. Capitol Avenue, Suite 1400, Little Rock, Arkansas 72201, and a copy of the plan of merger will be furnished by the surviving organization on request and without cost to any shareholder, member, partner, or other owner of any constituent organization.

IN WITNESS WHEREOF, each of the undersigned professional limited liability companies has caused these Articles of Merger to be executed in its name by the Manager this 13th day of September, 2017.

WILSON & ASSOCIATES, PLLC, an Arkansas     WILSON & ASSOCIATES, PLLC, a Mississippi
professional limited liability company               professional limited liability company

By: _____                   By: _____
Its: Managing Member                         Its: Managing Member

## EXHIBIT C

**Assignment of Deed of Trust recorded July 19, 2025 (Instrument No. 12401943)**
Executed by Tsedale Alemu as "Vice President of MERS" and notarized by Sylvia Ramirez.




CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
I CERTIFY THIS INSTRUMENT FILE/RECORDED
7/19/2024 3:03:42 PM
INST. 12401943 PAGE 1 OF 2
WITNESS MY HAND AND SEAL
CONCETTA BROOKS

Recording Requested By: NATIONSTAR MORTGAGE DBA MR. COOPER

Prepared By: Douglas Keaton, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432
When Recorded Return To: DOCUMENT ADMINISTRATION, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019  1-888-480-2432

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Jones (1st District), Mississippi
SELLER'S SERVICING #:******9195 "MOONEY"

MIN #: 100397204235491955  SIS #: 1-888-679-6377

Date of Assignment: July 15th, 2024
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS at 11819 MIAMI ST., SUITE 100, OMAHA, NE 68164 Phone: 1-888-679-6377
Assignee: NATIONSTAR MORTGAGE LLC at Address: 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019 Phone: N/A
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS  Address: 11819 MIAMI ST SUITE 100, OMAHA, NE 68164  Phone: N/A

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 11819 Miami St., Suite 100, Omaha, NE 68164 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: BRIAN E. MOONEY, A SINGLE MAN at 436 OLD PROGRESS RD MOSELLE, MS 39459 Phone: N/A
To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS
Address: 11819 MIAMI ST SUITE 100, OMAHA, NE 68164  Phone: N/A
Date of Deed of Trust: 02/12/2021 Recorded: 02/19/2021  as Instrument No.: 12100561  In the County of Jones (1st District), State of Mississippi.

Property Address: 436 OLD PROGRESS RD, MOSELLE, MS 39459

Indexing Instructions: COMMENCE AT THE NE CORNER OF THE NE/4 OF SE/4, SEC 26 TWP 6 N, R. 14 W, FIRST JUDICIAL DIST, JONES CO, MS.
  KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $79,639.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

  TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

*JAZ*JAZNATT*07/15/2024 07:13:00 AM* NATT01NATTA00000000000005190349* MSJONE2*
******9195 MSSTATE_TRUST_ASSIGN_ASSN **DK6NATT*

126097.1-1.70

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS
On July 15th, 2024

By:
TSEDALE ALEMU, Vice-President

STATE OF Texas
COUNTY OF Denton

On July 15th, 2024, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of
Texas, personally appeared TSEDALE ALEMU, Vice-President of MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE
LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS, personally known to me to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027  #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921650

(This area for notarial seal)

JONES COUNTY, MS CONCETTA BROOKS
I CERTIFY THIS INSTRUMENT WAS FILED ON 7/18/2024 3:03:42 PM AND RECORDED IN GENERAL BOOK/0124 PAGE1943
Instrument 13491943

*JAZ*JAZNATT*07/15/2024 07:13:00 AM* NATT01NATTA00000000000000005190349* MSJONE2*
******9195 MSSTATE_TRUST_ASSIGN_ASSN  **DK8NATT*

126097.1-1.71*

**EXHIBIT D**

**LinkedIn Profile of Tsedale Alemu**
Showing current and prior employment history, omitting any employment with MERS.

.



←    🔍 Tsedale Alemu

**Tsedale Alemu** · 3rd
**Mortgage Servicing Specialist**

Frisco, Texas, United States

62 connections

**Message**    **Follow**    ⋯

**Activity**
63 followers

**Tsedale hasn't posted yet**
Recent posts Tsedale shares will be displayed here.

Show all activity →

**Experience**

**Bank of America**
14 yrs 1 mo

**Mortgage**
2000 – 2014 · 14 yrs

**Mortgage**
2000 – 2014 · 14 yrs

🏠 Home    ▶ Video    My Network    🔔 Notifications    💼 Jobs

**EXHIBIT E**

**Screenshots from Oklahoma County Land Records**
Showing multiple mortgage assignments executed by Tsedale Alemu as "Vice President" of
MERS and other entities, evidencing a pattern of "robo-signing."

STATE OF Texas
COUNTY OF Dallas

On January 27th, 2025, before me, VALENCIA METCALF, a Notary Public in and for Dallas in the State of Texas, personally appeared TSEDALE ALEMU , Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and acknowledged the satisfaction of the above-referenced Deed of Trust.

WITNESS my hand and official seal,

VALENCIA METCALF
Notary Expires: 02/28/2027 #128535414



VALENCIA METCALF
Notary Public, State of Texas
Comm. Expires 02-28-2027
Notary ID 128535414

(This area for notarial seal)

STATE OF Texas
COUNTY OF Denton

On June 28th, 2023, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of LAKEVIEW LOAN SERVICING, LLC, BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027 #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660

(This area for notarial seal)

COUNTY OF Denton

On August 4th, 2023, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of MERS RESMAC INC., personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027 #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660

(This area for notarial seal)

*JS9*JS9NATT*05/04/2023 09 40 29 AM* NATT01NATT0000000000000004692196* SCDORCH* *----*9703 SCDORCH_MORT_REL *DK8NATT*

STATE OF Texas
COUNTY OF Denton

On November 4th, 2021, before me, VALENCIA METCALF, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK, FSB, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

VALENCIA METCALF
Notary Expires: 02/28/2023



```
VALENCIA METCALF
Notary Public, State of Texas
Comm. Expires 02-28-2023
Notary ID 128636414
```

(This area for notarial seal)

---

STATE OF Texas
COUNTY OF Denton

On September 12th, 2024, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice President of MERS GOODMORTGAGE.COM, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and acknowledged the satisfaction of the above-referenced Deed of Trust.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027 #131921660

```
SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660
```

(This area for notarial seal)

---

STATE OF Texas
COUNTY OF Denton

On May 3rd, 2023, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of MERS USAA FEDERAL SAVINGS BANK, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027 #131921660

```
SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660
```

(This area for notarial seal)

"AI*JUNATT*05/03/2023 08.56.04 AM* NAT101NATT00000000000000004807137* SCDORCH" *****9528 SCDORCH_MORT_REL *ET1*ET1NATT*

STATE OF Texas
COUNTY OF Denton

On March 25th, 2022, before me, VALENCIA METCALF, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of MERS QUICKEN LOANS, LLC, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

VALENCIA METCALF
Notary Expires: 02/28/2023

VALENCIA METCALF
Notary Public, State of Texas
Comm. Expires 02-28-2023
Notary ID 128535414

(This area for notarial seal)

STATE OF Texas
COUNTY OF Denton

On September 12th, 2024, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice President of MERS GOODMORTGAGE.COM, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and acknowledged the satisfaction of the above-referenced Deed of Trust.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027 #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660

(This area for notarial seal)

STATE OF Texas
COUNTY OF Denton

On October 22nd, 2024, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of MERS DIAMOND RESIDENTIAL MORTGAGE CORPORATION (MTG), personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027 #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660

(This area for notarial seal)

2:26 🔕     

🔒 webserver1.okcountyrecords.com

| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT BANCFIRST MERS | LEPIEN, RALPH MICHAEL |
|---|---|---|
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT BANCFIRST MERS | NICHOLS, ASHLEY LAURA NICHOLS, TANNER B |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT USAA FEDERAL SAVINGS BANK MERS | WILCOX, BYRON L |
| Assignment Of Mortgage | ALEMU, TSEDALE VICE PRESIDENT NATIONSTAR MORTGAGE LLC ATTORNEY IN FACT FEDERAL NATIONAL MORTGAGE ASSOCIATION | NATIONSTAR MORTGAGE LLC |

## Research smarter.

View scanned land records online. Get Started.



2:26

webserver1.okcountyrecords.com

Monitor

12 results    Modify search    Show more columns

| TYPE | GRANTOR | GRANTEE |
|------|---------|---------|
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT<br>FIRST BANK & TRUST CO<br>MERS<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | FERRELL, CRAIG F<br>FERRELL, ANGELA D |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT<br>NATIONSTAR MORTGAGE LLC<br>MERS | HARRIS, EDWIN EARL II<br>HARRIS, SCARLETT ANN |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT<br>FIRST BANK & TRUST CO<br>MERS | MALDONADO, ROSANNA |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT<br>GUARANTEED RATE INC<br>MERS | ORUM, PAMELA L |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT<br>FIRST BANK & TRUST CO<br>MERS | GODIN, PETER A<br>GODIN ,TINA M |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT<br>FIRST BANK & TRUST CO | ADAMS, ERNEST LEE JR<br>ADAMS, CAROLYN SUE |



2:26

webserver1.okcountyrecords.com

| | ALEMU, TSEDALE VICE | |
|---|---|---|
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT FIRST BANK & TRUST CO MERS | ADAMS, ERNEST LEE JR ADAMS, CAROLYN SUE |
| Assignment Of Mortgage | ALEMU, TSEDALE VICE PRESIDENT NATIONSTAR MORTGAGE LLC | DEUTSCHE BANK NATIONAL TRUST CO TRUSTEE HSI ASSET SECURITIZATION CORP TRUST |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT MR COOPER MERS NATIONSTAR MORTGAGE LLC | WILSON, MITCH K |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT BANCFIRST MERS | LEPIEN, RALPH MICHAEL |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT BANCFIRST MERS | NICHOLS, ASHLEY LAURA NICHOLS, TANNER B |
| Release Mortgage | ALEMU, TSEDALE VICE PRESIDENT USAA FEDERAL SAVINGS BANK MERS | WILCOX, BYRON L |
| Assignment | ALEMU, TSEDALE VICE PRESIDENT | NATIONSTAR MORTGAGE |



**EXHIBIT F**

**MERS Frequently Asked Questions (FAQs)**
From MERS's official website, including admissions regarding its limited role as nominee and lack of ownership of mortgage loans or promissory notes.

\

🔒 mersinc.org

title of the mortgage to MERS as mortgagee, giving the company the right to act on behalf of the current and subsequent owners of the loan.

+ Does MERS collect mortgage payments from borrowers?

– Does MERS have the documents for loans registered on the MERS® System?

No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files.

+ What does MERS do for lenders?

+ How does MERS benefit borrowers?

🔒 mersinc.org

## − How does MERS become a mortgagee or beneficiary?

There are two ways. In most cases, MERS becomes mortgagee or beneficiary at closing when the borrower and lender both agree to standard language in the security instrument making MERS the original mortgagee or beneficiary, with the right to act on behalf of the lender and its successors and assigns. The standard language is approved and used by Fannie Mae, Freddie Mac, Ginnie Mae, the Federal Housing Administration (FHA) and the Veterans Administration (VA). In cases where MERS is not named as the original mortgagee on the security instrument, a lender can record an assignment of the mortgage to MERS after closing.

## − What does "MERS as original mortgagee" mean to borrowers?

MERS' role and rights are clearly spelled out in the contract between borrower and lender. When borrowers sign the mortgage security instrument at closing, they agree to standard language that grants and conveys legal title of the mortgage to MERS as mortgagee, giving the company the right to act on behalf of the current and subsequent owners of the loan.

## + Does MERS collect mortgage payments from borrowers?

**EXHIBIT G**

**Excerpts from MERS® System Rules of Membership, page 13**
Confirming that the system is not a mechanism for creating or transferring liens or mortgage
interests.

failure (1) to the Members shown on the MERS® System as the Servicer or Subservicer, if any, in order to provide the Member(s) with an opportunity to promptly cure any such failures or deficiencies (unless such Member(s) are no longer in business or cannot otherwise be located or contacted, in which case notice shall not be required), and (2) to the Investor, if the Servicer or Subservicer is unavailable or non-responsive, and the Member(s) fail to take such action or give MERSCORP written notice that the MERS Loan should not be released, then the MERS Entities, upon evidence that the lien should be released, reserve the right to release such lien. Such Member(s), upon demand, shall reimburse the MERS Entities for out-of-pocket costs in connection with the Lien Release, including any penalties incurred by the MERS Entities for failure to release the lien or take other action in a timely manner, and shall pay an administrative fee as shown in the MERS® System Pricing Schedule (as defined in Rule 5, Section 1(a)). If the MERS Entities receive a request from a third party to release a lien for a loan that either (1) is not registered on the MERS® System or (2) is registered on the MERS® System to an inactive Member as Servicer, Subservicer, or Investor, the MERS Entities shall take reasonable steps to determine if the loan has been paid in full. If the MERS Entities determine that the loan has been paid in full, or are unable to determine whether or not the loan has been paid in full after taking such reasonable steps, MERS may release the lien for such loan.

*Section 7.* The MERS Entities and the Member agree that: (1) the MERS® System is not a mechanism for creating or transferring liens or interests in mortgage loans, and (2) MERS® System membership or a Member's use of the MERS® System shall not modify or supersede any agreement between or among the Members and/or any other parties having liens or interests in

13

mortgage loans registered on the MERS® System. Actual transfers of liens to or from MERS in

the mortgage loans are reflected in the public land records as described in this Rule.

# EXHIBIT H

**April 9, 2024, Letter from Nationstar**
Identifying Ginnie Mae II as the current investor for the Promissory Note.

**mr. cooper**
CHANGING THE FACE OF HOME LOANS

PO Box 612488
Dallas, TX 75261-2488

**OUR INFO**
**ONLINE**
www.mrcooper.com

April 9, 2024

Brian Mooney
436 Old Progress Rd
Moselle, MS 39459

**YOUR INFO**
**LOAN NUMBER:** 423549195
**PROPERTY ADDRESS:**
436 Old Progress Rd
Moselle, MS 39459

**SUBJECT:**
*Research Reference*
*#0009013134*

Dear Brian Mooney:

We received your inquiry on March 29, 2024, regarding the current owner of the loan.

As of the date of this letter, our records indicate GNMA II NSM is the current owner of the Note. As requested, we have provided the contact information below:

GNMA II NSM
550 12th Street SW
3rd Floor
Washington, DC 20024

Please note that Mr. Cooper is the servicer of the loan; therefore, Mr. Cooper will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include but are not limited to the following:

- Payment assistance and modifications
- Payment posting
- Validation of the debt
- Foreclosure proceedings
- Payment adjustments

As such, please direct any correspondence related to these matters to Mr. Cooper.

Please find attached a copy of the Note and Deed of trust for your records and review. We have included, as referenced above, the investor information. We cannot provide the additional information requested, and you will need to speak with a tax professional or attorney for further details on moving assets into a trust.

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



# EXHIBIT I

## Nationstar Internal Account Statement
Reflecting investor transfer dated March 4, 2021, to Ginnie Mae II (Investor Code 286).



| Trans | Posted/ Effective | Type | Total Amt | Principal | Interest | Escrow | Partial Pmt Unapplied | Other | Principal Bal | Escrow Bal |
|---|---|---|---|---|---|---|---|---|---|---|
| 15 | 03/04/2021 | NEW INVESTOR 286/0543869 | -79,639.00 | -79,639.00 | 0.00 | 0.00 | 0.00 | 0.00 | 79,639.00 | 0.00 |
| | 03/04/2021 | Next Due: 04/01/2021 | | | | | | | | |
| 14 | 03/04/2021 | OLD INVESTOR 900/0004000 | 79,639.00 | 79,639.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 03/04/2021 | Next Due: 04/01/2021 | | | | | | | | |
| 13 | 03/04/2021 | ESCROW ADJ | -1,374.75 | 0.00 | 0.00 | -1,374.75 | 0.00 | 0.00 | 79,639.00 | 0.00 |
| | 03/04/2021 | Next Due: 04/01/2021 | | | | | | | | |
| 12 | 02/22/2021 | DEPOSIT | 1,374.75 | 0.00 | 0.00 | 1,374.75 | 0.00 | 0.00 | 79,639.00 | 1,374.75 |
| | 02/19/2021 | Next Due: 04/01/2021 | | | | | | | | |
| 11 | 02/22/2021 | PREPAID INTEREST | 65.50 | 0.00 | 65.50 | 0.00 | 0.00 | 0.00 | 79,639.00 | 0.00 |
| | 02/19/2021 | Next Due: 04/01/2021 | | | | | | | | |
| 10 | 02/22/2021 | NEW LOAN SETUP | -79,639.00 | -79,639.00 | 0.00 | 0.00 | 0.00 | 0.00 | 79,639.00 | 0.00 |
| | 02/19/2021 | Next Due: 04/01/2021 | | | | | | | | |

© 2024. Nationstar Mortgage LLC.

104646.1-1.51

**EXHIBIT J**

**Recorded Mortgage-DOT Document**
Identifying Ginnie Mae II as the investor, corroborating securitization of Plaintiff's loan.





## Recorded Mortgage-DOT

| | |
|---|---|
| Client : | NSM |
| As of Date : | 05-18-2021 |
| Loan Number : | 0423549195 |
| Previous Loan Number : | 000000605030543 |
| Borrower Name : | BRIAN MOONEY |
| Loan Status : | Active |
| Loan Custodian : | Custodians - Deutsche Bank National Trust Company |
| TABFusion Document Type : | Security Instrument |
| TABFusion Condition : | Recorded |
| Collateral File Location : | |
| Current Document Location : | |
| Investor Code : | 286 |
| Investor Name : | GINNIE MAE II |
| FC Attorney : | |
| Property Address : | 436 OLD PROGRESS RD MOSELLE, MS 39459 |



*D93971137*



*NSM-0423549195-REC-MORT*

9704081-1.6

**EXHIBIT K**

**Nationstar Correspondence**
dated May, 29, 2024, July 5, 2024, July 23, 2024, July 29, 2024, reversing its prior position and
asserting that Nationstar is both the owner and servicer of the Promissory Note.

**EXHIBIT L**

 

P.O. Box 619098
Dallas, TX 75261-9741

**OUR INFO**
**ONLINE**
www.mrcooper.com

Brian Mooney
436 Old Progress Rd
Moselle, MS 39459

May 29, 2025

**ACCOUNT INFO**
**LOAN NUMBER:** 0423549195
**CASE NUMBER:** 0012750934
**PROPERTY ADDRESS:**
436 Old Progress Rd
Moselle, MS 39459
**MORTGAGOR:**
Brian Mooney

Dear Brian Mooney:

Thank you for reaching out to us.

We received your letter on May 22, 2025, and have put together this reply with information that we hope will alleviate your concerns. After an investigation, we are sharing with you what we found.

Please be informed that under the Real Estate Settlement Procedures Act (RESPA) and Regulation X, Mr. Cooper is not required to respond to requests for information that are duplicative and substantially the same as previous requests. After reviewing your correspondence, we found similar concerns were previously raised, for which Mr. Cooper complied with our obligation to respond. Additionally, please be informed that unless there is new and material information that has not been provided to Mr. Cooper for investigation purposes, we will consider this matter resolved. We have enclosed the previous Resolution Letter dated April 30, 2025, for your records.

We have received your attempted discharge of debt, and/or placement of lien. Please note that the Uniform Commercial Code ("UCC") does not apply to transactions involving residential mortgages. Any attempted rescission of your loan, and/or tender of property, is ineffective and is hereby rejected. Any attempt at placing a UCC lien upon the residential property in your favor is also invalid and is hereby rejected. You still owe your payments on the loan, pursuant to the terms of the related documents. Any

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.

EQUAL HOUSING
OPPORTUNITY

430880.1-1.2

 

**CHANGING THE FACE OF HOME LOANS**

failure on your part to adhere to the terms of the loan documents will result in Mr. Cooper pursuing its remedies including, but not limited to, foreclosure of the property.

In order to complete the payoff of this loan, we have attached the copy of Payoff Quote for your reference. The Payoff Quote will include the full amount necessary to pay the loan in full. Payoff funds must be remitted via certified funds (wire transfer or cashier's check only). Please follow the instructions found on the Payoff Quote to ensure that all funds are processed accordingly.

**Original Note**

We have confirmed that we have the collateral file, which includes the wet-ink signature Note for this account. We cannot provide you with the original mortgage note, as it needs to be retained since it documents your obligation to make payments on your mortgage. We hope the provided documents satisfy your request in lieu of providing or allowing inspection of the original copies. Please be informed that the subject loan remains in full force and effect, and we will continue to service the loan in accordance with the valid, binding documents you signed.

Your correspondence mentioned the Mortgage Electronic Registration System ("MERS"). As you can confirm by the executed Note and Mortgage, at origination of the loan you agreed to designate MERS as a nominee on the loan. Please be advised that MERS, did not have any servicing duties towards this loan, but only acted in its function as nominee. In that function, the duties of MERS included tracking ownership and servicing rights to the loan. MERS did not affect validity, ownership of the loan, or standing of a servicer to foreclose, but merely tracked its ownership. Moreover, any assignments issued by MERS remain valid.

As of the date of this letter, the loan is delinquent and next due for the March 1, 2024 monthly installment, and all installments incurred thereafter. Due to the delinquent status, the loan was referred to active foreclosure on May 5, 2025. The foreclosure sale date has been scheduled on July 16, 2025.

It is our position that Mr. Cooper has adhered to all applicable guidelines and regulations as it pertains to the servicing of the loan account, and we respectfully refute any allegations that imply otherwise.

| **RESPA RESPONSE TO NOTICE OF ERROR** |
|---|
| Under applicable federal law, we are required to inform you that after completing a reasonable investigation into the issues described above, it has been determined that no error occurred. You have the right to access the documents we used in this investigation and we have enclosed them. Those documents are: <br> • Prior Resolution and Enclosures (3) <br> • Payoff Quote |

If you have any questions, your Dedicated Loan Specialist is Andrea Bryant who can be reached at 469.470.5793 or via mail PO Box 619097, Dallas, TX 75261. Our hours of operation are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT) and Saturday from 8 a.m. to 12 p.m. (CT). Visit us on the web at www.mrcooper.com for more information.

430880.1-1.3

**mr. cooper**
CHANGING THE FACE OF HOME LOANS

P.O. Box 619098
Dallas, TX 75261-9741

**OUR INFO**
**ONLINE**
www.mrcooper.com

Brian Mooney
436 Old Progress Rd
Moselle, MS 39459

July 5, 2024

**ACCOUNT INFO**
**LOAN NUMBER:** 0423549195
**CASE NUMBER:** 0009854356
**PROPERTY ADDRESS:**
436 Old Progress Rd.
Moselle, MS 39459
**MORTGAGOR:**
Brian Mooney

Dear Brian Mooney:

We received your letter on June 26, 2024, and have put together this reply with information that we hope will address your concerns. After an investigation, we are sharing with you what we found.

To provide further clarification, our previous communication dated June 18, 2024, confirmed the validity of the debt and identified Nationstar Mortgage LLC, doing business as Mr. Cooper, as both the owner of the Note and the current loan servicer. As the servicer, Mr. Cooper is responsible for addressing any issues related to the management of the loan. The scope of servicing includes, but is not limited to, the following areas:

- Payment assistance and modifications
- Payment posting
- Validation of the debt
- Foreclosure proceedings
- Payment adjustments

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

**Please be advised this communication is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U.S. Bankruptcy Code. If this account has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt against you; however, the servicer/lender reserves the right to exercise the legal rights only against the property securing the loan obligation, including the right to foreclose its lien under appropriate circumstances. Nothing in this communication shall be construed as an attempt to collect against the borrower personally or an attempt to revive personal liability.**

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.


EQUAL HOUSING
OPPORTUNITY



P.O. Box 619098
Dallas, TX 75261-9741

CHANGING THE FACE OF HOME LOANS

**OUR INFO**
**ONLINE**
www.mrcooper.com

Brian E. Mooney
436 Old Progress Rd
Moselle, MS 39459

July 23, 2024

**ACCOUNT INFO**
**LOAN NUMBER:** 0423549195
**CASE NUMBER:** 0010025591
**PROPERTY ADDRESS:**
436 Old Progress Rd
Moselle, MS 39459
**MORTGAGOR:**
Brian E. Mooney

Dear Brian E. Mooney:

Thank you for your recent inquiry dated July 16, 2024. We appreciate your vigilance in seeking clarification regarding your mortgage servicing.

As addressed in our previous correspondence dated July 5, 2024, we have thoroughly covered several critical aspects concerning your mortgage. These include the validity of the debt, the identification of Nationstar Mortgage LLC (doing business as Mr. Cooper) as both the owner of the Note and the current loan servicer. Additionally, we discussed the comprehensive scope of our servicing responsibilities which include payment assistance and modifications, accurate posting of payments, validation of the debt, management of foreclosure proceedings, and adjustments to payments.

For your convenience and further review, we have enclosed a copy of the previous correspondence with this letter. We believe this document will provide you with a detailed understanding and resolution of the concerns raised.

We would like to confirm that the servicing rights to your mortgage were transferred on February 22, 2021. At the time of this transfer, the outstanding unpaid principal balance (UPB) was $79,639.00. Enclosed, you will find the Transaction History and Servicing Letter that detail these changes for your records.

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



EQUAL HOUSING
OPPORTUNITY



mr.
**cooper**® P.O. Box 619098
Dallas, TX 75261-9741

CHANGING THE FACE OF HOME LOANS

**OUR INFO**
**ONLINE**
www.mrcooper.com

Brian E. Mooney
436 Old Progress Rd
Moselle, MS 39459

July 29, 2024

**ACCOUNT INFO**
**LOAN NUMBER:** 0423549195
**CASE NUMBER:** 0010115883
**PROPERTY ADDRESS:**
436 Old Progress Rd
Moselle, MS 39459
**MORTGAGOR:**
Brian E. Mooney

Dear Brian E. Mooney:

Thank you for reaching out to us.

We received your letter on July 22, 2024, and have put together this reply with information that we hope will alleviate your concerns. After an investigation, we are sharing with you what we found.

Under the Real Estate Settlement Procedures Act (RESPA) and Regulation X, Mr. Cooper is not required to respond to requests for information that are duplicative and substantially the same as previous requests. After reviewing your correspondence, we found that the asserted errors are the same as those previously alleged, for which Mr. Cooper complied with our obligation to respond via the enclosed resolution letter dated July 23, 2024. Unless there is new and material information that has not been provided to Mr. Cooper for investigative purposes, we consider this matter to be resolved.

As confirmed, Nationstar Mortgage LLC, doing business as Mr. Cooper, is the rightful owner of the Note and the current servicer of your loan. Our responsibilities encompass a wide range of services including payment assistance, loan modifications, accurate payment processing, debt validation, management of foreclosure proceedings, and adjustments to payment schedules.

During our review of the file, Mr. Cooper has found no evidence of errors with regard to the refinance of this account. The subject mortgage loan and related documents were reviewed and deemed

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



EQUAL HOUSING
OPPORTUNITY

**EXHIBIT L**

**Plaintiff's February 23, 2025 Legal Demand to Mortgage Connect**
Regarding unauthorized alterations to the Deed of Trust, and Mortgage Connect's response
asserting the validity of the instrument without documentation.

.

 Gmail

Brian Mooney <ifixem75@gmail.com>

## Response to Formal Legal Demand Mooney ICS Order 774746

4 messages

**Katie Meehan** <kmeehan@mortgageconnectlp.com>
To: "ifixem75@gmail.com" <ifixem75@gmail.com>
Cc: Katie Meehan <kmeehan@mortgageconnectlp.com>

Fri, Feb 28, 2025 at 9:34 AM

Mr. Mooney,

I am in receipt of your email, which I have copied below. I appreciate your concern and thoroughness, and I have reviewed the matter extensively.

For clarity in my response, you will see that my signature line shows I represent Mortgage Connect, LP. I would like to make you aware that Mortgage Connect, LP owns Inspire Closing Services and therefore I have authority to make this response.

I have discussed this matter with our claims counsel at our insurer. It is our stance that the modifications to the recorded instrument for which you reference will not give rise to the invalidity of the deed of trust. Further, the entity you reference as the invalid trustee remains an operational entity per our validation with the MS Secretary of State.

Please be advised that we have made our insurer aware of your concerns; however, we consider this matter closed.

**Katie Meehan**

**Vice President, National Underwriting & Claims Counsel, Assistant Corporate Counsel**

Mortgage Connect
600 Clubhouse Drive
Moon Township, PA 15108
Phone: (866) 789-1814
Auto Attendant: (855) 595-3563 x34529
Fax: (866) 789-1845

kmeehan@MortgageConnectLP.com
https://www.MortgageConnectLP.com

 **MORTGAGE CONNECT**

This e-mail may contain data that is confidential, proprietary or non-public personal information, as that term is defined in the Gramm-Leach-Bliley Act (collectively, Confidential Information). The Confidential Information is disclosed conditioned upon your agreement that you will treat it confidentially and in accordance with applicable law, ensure that such data isn't used or disclosed except for the limited purpose for which it's being provided and will notify and cooperate with us regarding any requested or unauthorized disclosure or use of any Confidential Information. By accepting and reviewing the Confidential information, you agree to indemnify us against any losses or expenses, including attorney's fees that we may incur as a result of any unauthorized use or disclosure of this data due to your acts or omissions. If a party other than the intended recipient receives this e-mail, he or she is requested to instantly notify us of the erroneous delivery and return to us all data so delivered.

**WARNING! - WIRE FRAUD ADVISORY**
MORTGAGE CONNECT DOES NOT ALTER ITS DURING INSTRUCTIONS. IF YOU RECEIVE 2025 WIRE INSTRUCTIONS ON THIS CLOSING,

**PLEASE NOTIFY YOUR MORTGAGE CONNECT REPRESENTATIVE IMMEDIATELY VIA PHONE ONLY TO CONFIRM.
DO NOT RESPOND TO THE EMAIL THAT PROVIDED THE NEW INSTRUCTIONS.**

**From:** Brian Mooney <ifixem75@gmail.com>
**Sent:** Sunday, February 23, 2025 11:34 PM
**To:** Charles Long <clong@mortgageconnectlp.com>; info@inspireclosingservices.com
**Subject:** Formal Legal Demand

**Caution:** This is an EXTERNAL EMAIL from outside the organization.

DO NOT click links or open attachments unless you recognize the sender and know the content is safe. Never give out your user ID or password.

Re: Order No. 774746

Borrower: Brian Mooney
Property: 436 Old Progress Road, Moselle, MS 39459

To Whom It May Concern:

I, Brian Mooney, am submitting this formal demand for immediate clarification and for the production of documentation regarding significant legal discrepancies related to the real estate closing on February 12, 2021, and the subsequent recording of the Deed of Trust (Instrument No. 12100561) on February 19, 2021, at the Jones County Chancery Clerk's office.

Timeline of Events:

- February 12, 2021: Real estate closing occurred.
- February 19, 2021: Deed of Trust was recorded.
- 2017: Adams & Edens, PA (the named trustee) ceased operations.
- January 16, 2025: Documents received from Amber Allen indicate involvement by Mortgage Connect, despite the original closing documents naming Inspire Closing Services, LLC.

Identified Discrepancies and Legal Issues:

1. Unauthorized Alterations to the Recorded Deed of Trust
   a. "Return To" Section:
      ○ The executed document did not designate Inspire Closing Services, LLC as the return party; however, the recorded version shows this alteration.
      b. Handwritten Modifications:
      ○ The original document contained no handwritten changes, yet the recorded version includes such additions. Applicable Law:
      ○ Miss. Code Ann. § 97-7-10 (prohibiting unauthorized alterations)
      ○ Miss. Code Ann. § 89-5-7 (requiring recorded documents to mirror the executed version)
      ○ 18 U.S.C. § 1344 (criminalizing forgery or document tampering)
2. Defunct Trustee – Adams & Edens, PA
   ○ The Deed of Trust names Adams & Edens, PA as trustee, although records confirm that this entity ceased operations in 2017, well before the 2021 closing.
      Applicable Law:
      ▪ Miss. Code Ann. § 89-5-45 (mandating that a trustee be legally capable at the time of execution)
      ▪ 18 U.S.C. § 1014 (criminalizing the use of knowingly false information in mortgage transactions)
3. Failure to Verify Trustee Legitimacy
   ○ As the closing agent, Inspire Closing Services (or its successor, Mortgage Connect) was responsible for verifying the legitimacy of all parties.
   ○ Question: Who within Inspire Closing Services and/or Nationstar Mortgage confirmed that Adams & Edens, PA was active and legally capable at the time of closing?
      Applicable Law:
      ▪ Mississippi Consumer Protection Act (Miss. Code Ann. § 75-24-5)

- 12 U.S.C. § 2607 (RESPA – prohibiting conflicts of interest and deceptive practices)
4. Conflict of Interest – Nationstar Mortgage's Involvement
    ○ The Deed of Trust was prepared by Nationstar Mortgage LLC, a party that later asserted an interest in my loan and initiated foreclosure proceedings.
    ○ Question: How was Nationstar Mortgage allowed to prepare a security instrument in which it held an interested party without independent oversight?
      Applicable Law:
        ▪ 12 U.S.C. § 2607 (RESPA)
        ▪ Mississippi Rules of Professional Conduct, Rule 1.7 (prohibiting self-dealing and conflicts of interest)
5. Conflicting Business Status Information – Inspire Closing Services vs. Mortgage Connect
    ○ Telephone communications indicated that Inspire Closing Services, LLC had ceased operations and that responsibilities were transferred to Mortgage Connect. However:
      • The Mississippi Secretary of State website lists Inspire Closing Services as active and in good standing.
      • Documentation dated January 16, 2025, reflects Mortgage Connect's involvement, contradicting the original closing documents.
      • The website www.inspireclosings.com remains operational.
      Immediate Questions:
        ▪ Has Inspire Closing Services, LLC formally ceased operations?
        ▪ Under what legal authority did Mortgage Connect assume responsibilities formerly held by Inspire Closing Services?
        ▪ Why does Mortgage Connect now appear on documents originally processed by Inspire Closing Services?
        ▪ Was Mortgage Connect duly registered to conduct business in Mississippi at the time of these transactions? (Noncompliance may violate Miss. Code Ann. § 79-4-15.01 regarding registration of foreign entities.)
6. Potential RICO Violations
    ○ The cumulative discrepancies—including unauthorized alterations, a defunct trustee, and apparent conflicts of interest—may indicate a coordinated scheme that potentially violates the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962).
    ○ Potential Violations Include:
      • 18 U.S.C. § 1341 (Mail Fraud) – if altered documents were transmitted via mail or email.
      • 18 U.S.C. § 1343 (Wire Fraud) – if electronic communications were used to misrepresent roles.
      • 18 U.S.C. § 1014 (Fraud in Loan Transactions) – if false information was provided regarding the trustee or closing process.
      • 18 U.S.C. § 1344 (Forgery or Document Tampering) – if the Deed of Trust was altered post-execution.
      • 18 U.S.C. § 1503 (Obstruction of Justice) – if documents were altered to mislead judicial proceedings.

Demand for Immediate Information and Documentation:
Within five (5) business days, please provide a written response and produce the following:

1. Identification of the individual(s) responsible for authorizing the modifications (including the handwritten legal description and the change in the "Return To" section).
2. A certified copy of the exact document submitted for recording.
3. Documentation evidencing the legal transition from Inspire Closing Services to Mortgage Connect.
4. Written confirmation as to whether Inspire Closing Services was aware of Adams & Edens, PA's defunct status at the time of closing.
5. A comprehensive explanation detailing why Nationstar Mortgage, a party with a financial interest, was permitted to prepare the Deed of Trust.

PLEASE TAKE NOTICE:
Any documentation or information provided in response to this demand must be preserved in its entirety and may be used as evidence in current or future legal proceedings related to these matters.

Consequences of Non-Compliance:
If a satisfactory response is not received within the specified timeframe, I will take the following actions without further notice:

- File a complaint with the Mississippi Secretary of State regarding the business status of Inspire Closing Services.
- Challenge the validity of the recorded Deed of Trust on the grounds of unauthorized modifications, the use of a defunct trustee, and conflicts of interest.
- Initiate a RICO complaint in federal court against all parties involved.

This letter constitutes a formal legal demand for full transparency and immediate remedial action regarding the issues outlined above.

Case 2:25-cv-00114-KS-MTP    Document 11    Filed 08/20/25    Page 90 of 397

Sincerely,
Brian Mooney
436 Old Progress Road
Moselle, MS 39459
Phone: 601-310-6078

---

**Brian Mooney** <ifixem75@gmail.com>                                Fri, Feb 28, 2025 at 12:56 PM
To: Katie Meehan <kmeehan@mortgageconnectlp.com>

Dear Katie,

I am in receipt of your response, which falsely asserts that Adams & Edens, P.A. remains an operational entity in Mississippi and that unauthorized modifications to the recorded Deed of Trust do not affect its validity. These assertions are demonstrably false, unsupported by any legal authority, and, if knowingly misrepresented, may constitute fraudulent misrepresentation under state and federal law.

Additionally, your statement that your "insurer" has reviewed the matter does not absolve Mortgage Connect, LP, or Inspire Closing Services of liability. If you stand by this claim, you are now required to provide written proof of this review, including:

• The name of your insurer
• The claims counsel involved
• The legal determination that was issued

1. Adams & Edens, P.A. Ceased to Exist Under That Name in 2014
Your assertion that Adams & Edens, P.A. was an "operational entity" in 2021 is demonstrably false. I have personally confirmed this information with Kristen at the Mississippi Secretary of State's Office, who stated that:

• Adams & Edens, P.A. legally changed its name to Wilson & Associates in 2014.
• No entity named Adams & Edens, P.A. has been recorded as doing business in Mississippi since 2014.
• The legal successor to Adams & Edens, P.A. is Wilson & Associates, meaning that the Deed of Trust should have listed Wilson & Associates as the trustee, not Adams & Edens, P.A.

Since this information comes directly from the Mississippi Secretary of State's Office, your claim that Adams & Edens, P.A. remains operational is false and legally indefensible.

2. The Appointment of Adams & Edens, P.A. as Trustee in 2021 Was Legally Improper
Since Adams & Edens, P.A. ceased to exist under that name in 2014, it was legally incapable of serving as trustee at the time the Deed of Trust was executed.

• Miss. Code Ann. § 89-5-45 mandates that a trustee must be legally capable of performing its duties at the time of execution.
• A legally binding name change requires all subsequent legal documents to reflect the correct entity name.
• As Wilson & Associates was the legal entity in 2021, the Deed of Trust should have listed Wilson & Associates, not Adams & Edens.
• Failure to properly identify the trustee in a recorded instrument constitutes a material defect that may render the Deed of Trust void.

3. No Legally Recognized Trustee at the Time of Execution
A Deed of Trust is unenforceable without a valid trustee at the time of execution. Since Adams & Edens, P.A. was no longer a legal entity in 2021, the trustee appointment was invalid from the outset.

4. Unauthorized Modifications to the Recorded Deed of Trust
Your assertion that modifications to the recorded Deed of Trust do not impact its validity is legally incorrect. The unauthorized alterations, regardless of whether they changed financial terms, violate both Mississippi law and federal fraud statutes.

• Miss. Code Ann. § 97-7-10 explicitly prohibits unauthorized alterations to recorded instruments.
• Miss. Code Ann. § 89-5-7 requires that recorded documents match the original executed version. The recorded Deed of Trust contains handwritten modifications and an altered "Return To" section—neither of which were present on the signed version.
• 18 U.S.C. § 1344 (Federal Bank Fraud Statute) criminalizes falsification or unauthorized alteration of mortgage-related documents.

Additionally, I have confirmed that the handwritten legal description in the recorded Deed of Trust does not match the full legal description recorded in other property records.
• This creates a break in the chain of title, impacting the enforceability of the Deed of Trust.
• If a correction was necessary, the proper procedure would have been to file an affidavit of correction or a re-executed instrument—not to unilaterally alter the original document.
• I demand documentation proving that I consented to these changes.

5. Nationstar's Conflict of Interest in Preparing the Deed of Trust
Your response completely fails to address the fact that Nationstar Mortgage prepared the Deed of Trust, despite also being the entity asserting financial interest in the loan. This presents a direct conflict of interest and potential violations of federal law, including:

• 12 U.S.C. § 2607 (Real Estate Settlement Procedures Act - RESPA) – Prohibits illegal self-dealing in mortgage transactions.
• Mississippi Rules of Professional Conduct, Rule 1.7 – Requires parties in a fiduciary role to avoid conflicts of interest. Nationstar's dual role as document preparer and lender raises serious legal and ethical concerns, which your response entirely ignores.

6. Demand for Verification of Trustee Information
Since you claim Adams & Edens, P.A. is still operational, I demand that you provide:

• The official business filing records from the Mississippi Secretary of State website proving its legal existence beyond 2014.
• Documentation from Wilson & Associates indicating that Adams & Edens, P.A. continues to function as an independent entity.
• The names and contact information of the individuals who performed this validation.
If you fail to provide this evidence, your claim is false, and you must provide a written retraction of your prior statement.

7. Formal Demand for Immediate Corrective Action
You are hereby given five (5) business days to provide:

1. A written explanation for why a defunct entity was named as trustee.
2. Proof that any party involved verified the legal existence of Adams & Edens, P.A. prior to executing the Deed of Trust.
3. A written retraction of your prior false statement asserting that Adams & Edens, P.A. was still operational.
4. Identification of the individual(s) responsible for authorizing the unauthorized modifications.
5. A certified copy of the exact Deed of Trust document submitted for recording.
6. The name of your insurer and written proof of the legal determination made by your claims counsel.

8. Consequences of Non-Compliance
If you fail to comply, I will pursue the following without further notice:

• Formal complaints to the Mississippi Secretary of State and Consumer Protection Division regarding your misrepresentations and involvement in document fraud.
• Notification to your title insurance and lender partners, exposing your potential liability.
• A public fraud complaint against Mortgage Connect, LP, and Inspire Closing Services.
• Legal action to challenge the validity of the Deed of Trust and seek a court declaration that it is void.

This matter is far from closed, and I expect a response that is factual, legally sound, and supported by verifiable records.

Sincerely,

Brian Mooney
436 Old Progress Road
Moselle, MS 39459
Phone: (601) 310-6078

[Quoted text hidden]

Katie Meehan <kmeehan@mortgageconnectlp.com>                    Wed, Mar 5, 2025 at 12:16 PM
To: Brian Mooney <ifixem75@gmail.com>

Mr. Mooney,

I appreciate your thoroughness and time; however, we disagree with your assertions of violations. Again, we do consider this matter closed.

Thank you,

[Quoted text hidden]

---

**Brian Mooney** <ifixem75@gmail.com>                                                Mon, Mar 10, 2025 at 12:05 PM
To: Katie Meehan <kmeehan@mortgageconnectlp.com>

Dear Katie,

Your assertion that this matter is "closed" is both premature and legally inaccurate. This matter is far from closed, and your refusal to acknowledge the violations does not negate their existence.

Your continued refusal to provide legally required documentation and your blatant misrepresentation of material facts are noted, documented, and now subject to formal legal escalation. Mortgage Connect, LP's actions constitute fraudulent misrepresentation, document falsification, and a pattern of racketeering activity under state and federal law, including the RICO Act (18 U.S.C. § 1962).

I have formally filed complaints with:

- Mississippi Secretary of State – Business Services Division
- Mississippi Attorney General's Consumer Protection Division
- U.S. Department of Housing and Urban Development (HUD) – For fraudulent mortgage practices.
- Federal Trade Commission (FTC) – Bureau of Consumer Protection – For deceptive and unfair business practices.
- Office of the Comptroller of the Currency (OCC) – For potential violations of federal banking regulations.
- U.S. Department of Justice (DOJ) – Financial Fraud Division – For violations of fraud-related statutes, including RICO.
- U.S. Securities and Exchange Commission (SEC) – For potential violations involving securitization and mortgage-backed securities.
- Mississippi Department of Banking & Consumer Finance – To investigate regulatory violations.
- Mississippi Real Estate Commission (MREC) – To review fraudulent property transactions and potential real estate license violations.
- Jones County Chancery Clerk – To document the fraudulent Deed of Trust and request corrective action.
- American Land Title Association (ALTA) – To notify the industry of Mortgage Connect, LP's fraudulent practices.

These complaints demand a full investigation into Mortgage Connect, LP's recording of a knowingly false Deed of Trust and refusal to provide evidence supporting its claims.

Additionally, due to your refusal to produce documentation, I am now preparing federal and civil legal action, including:

- A RICO claim (18 U.S.C. § 1962) due to Mortgage Connect, LP's pattern of fraudulent activity across multiple transactions.
- Seeking treble damages (three times actual damages) for your willful participation in fraudulent mortgage-related conduct.

Violations Committed by Mortgage Connect, LP & Inspire Closing Services:

1. Fraudulent Misrepresentation – False Trustee Designation

- The Deed of Trust fraudulently lists Adams & Edens, P.A. as trustee in 2021, despite confirmation from the Mississippi Secretary of State that this entity ceased to exist in 2014.
- Your assertion that Adams & Edens, P.A. was operational in 2021 is false and constitutes fraudulent misrepresentation.

- Miss. Code Ann. § 97-7-10 criminalizes knowingly submitting false documents for public recording.

2. Recording an Illegally Altered Deed of Trust

- The recorded Deed of Trust does not match the originally executed document and contains:
- Handwritten modifications and an altered "Return To" section that were never approved.
- A legal description that does not match prior property records, breaking the chain of title.
- These unauthorized alterations violate Miss. Code Ann. § 89-5-7 and Miss. Code Ann. § 97-7-10.

3. No Valid Trustee = Invalid Deed of Trust

- A Deed of Trust is unenforceable without a legally recognized trustee.
- Adams & Edens, P.A. did not legally exist in 2021, meaning no valid trustee was in place at execution, rendering the Deed of Trust void.

4. Fraudulent Concealment & Bad Faith Business Practices

You have:

- Refused to provide proof that Adams & Edens, P.A. was legally operational in 2021.
- Failed to produce a certified copy of the original, unaltered Deed of Trust.
- Falsely claimed that your insurer reviewed this matter but refused to disclose the insurer's name or provide documentation.

Mortgage Connect, LP and Inspire Closing Services are now officially on notice. Any further refusal to provide supporting documentation will be deemed intentional concealment of fraudulent activity, and legal action will proceed accordingly.

Sincerely,

Brian Mooney
436 Old Progress Road
Moselle, MS 39459
Phone: (601) 310-6078

Attachment: Letter to all agencies listed above
[Quoted text hidden]

 **MC complaint.docx**
28K

# Filing a Lawsuit in Jones County Chancery Court

## 🔴 1. WHERE TO FILE

Jones County has **two Chancery Courthouses** (First and Second Judicial Districts).

- **First Judicial District Chancery Clerk (Laurel):**
    - 🔴 Jones County Chancery Clerk's Office
  415 North 5th Avenue
  Laurel, MS 39440
    - ☎ (601) 428-0525
- **Second Judicial District Chancery Clerk (Ellisville):**
    - 🔴 Jones County Chancery Clerk's Office
  101 North Court Street
  Ellisville, MS 39437
    - ☎ (601) 477-8538

### ⚖ Which district do you use?

Your property at **436 Old Progress Road, Moselle, MS** is in the **First Judicial District**, so file at **Laurel**.

## 📋 2. DOCUMENTS YOU NEED TO FILE

For your TRO case, here's the minimum filing packet:

- ✅ **Complaint or Petition for Injunctive Relief** (your TRO petition serves as the complaint)
- ✅ **Summonses** for each named Defendant (Jones County Chancery Clerk issues them)
- ✅ **Proposed Temporary Restraining Order (TRO)** for the Chancellor to sign
- ✅ **Civil Cover Sheet (Administrative Office of Courts Form)** – required statewide
- ✅ **Affidavit of Plaintiff** (to verify your complaint's facts, required for injunctions)
- ✅ **Notice of Hearing** (if not seeking ex parte relief)

# EXHIBIT M

**First Pages of Three Conflicting Versions of the Deed of Trust**
Produced by Defendants, each showing material alterations made after execution but before recording. Labeled as follows:

**Exhibit M-1:** Recorded version of the Deed of Trust, reflecting post-execution alterations

**Exhibit M-2:** Unaltered version of the Deed of Trust consistent with Plaintiff's original execution

**Exhibit M-3:** Unaltered but unsigned version of the Deed of Trust produced by Nationstar

**Signature Page:** Original executed signature page included for reference

CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
I CERTIFY THIS INSTRUMENT FILE/RECORDED
2/19/2021 2:41:30 PM
INST. 12100561 PAGE 1 OF 16
WITNESS MY HAND AND SEAL
BART GAVIN

M-1

Prepared By:
JOSEPHINE LOMEDICO
NATIONSTAR MORTGAGE LLC D/B/A MR.
COOPER
4000 HORIZON WAY
IRVING, TX 75063
(972) 894-1310

Return To:
Inspire Closing Services, LLC
420 Rouser Road, Suite 500
Moon Township, PA 15108
(877) 901-1629

MR.

[Space Above This Line For Recording Data]

## DEED OF TRUST

MOONEY
Loan #: 0423549195
PIN: 014 -26-00-013.03
MIN: 100397204235491955
MERS Phone: 1-888-679-6377
Case #: 281-5034735-703

**Grantor(s):** BRIAN E. MOONEY, A SINGLE MAN
Address: 436 OLD PROGRESS RD, MOSELLE, MS 39459
Phone: (601) 310-6078

**Grantee/Beneficiary:** Mortgage Electronic Registration Systems, Inc.
Address: 1901 E VoorHees Street, Suite C, Danville, IL 61834   Phone: 1-888-679-6377
**Lender:** NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
Address: 8950 CYPRESS WATERS BLVD., DALLAS, TX 75019
Phone: (888) 480-2432

**Trustee:** ADAMS & EDENS, PA
Address: 2001 CREEK COVE, SUITE A, BRANDON, MS 39042
Phone: 601- 824-0675

**Legal Description:** SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
HEREOF AS EXHIBIT "A". P8-16 Commence at the Northeast Corner of the NE1/4
DEFINITIONS of SE1/4, Section 26 Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi.

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

(A) "Security Instrument" means this document, which is dated FEBRUARY 12, 2021, together with

FHA Mississippi Deed of Trust - 09/15
EX 19382.14                          Page 1 of 15

M-2

Prepared By:
JOSEPHINE LOMEDICO
NATIONSTAR MORTGAGE LLC D/B/A MR.
COOPER
4000 HORIZON WAY
IRVING, TX 75063
(972) 894-1310

After Recording Return To:
NATIONSTAR MORTGAGE LLC D/B/A MR.
COOPER
4000 HORIZON WAY
IRVING, TX 75063
(888) 480-2432

[Space Above This Line For Recording Data]

## DEED OF TRUST

MOONEY
Loan #: 0423549195
PIN: 014 -26-00-013.03
MIN: 100397204235491955
MERS Phone: 1-888-679-6377
Case #: 281-5034735-703

<u>Grantor(s)</u>: BRIAN E. MOONEY, A SINGLE MAN
Address: 436 OLD PROGRESS RD, MOSELLE, MS 39459
Phone: (601) 310-6078
<u>Grantee/Beneficiary</u>: Mortgage Electronic Registration Systems, Inc.
Address: 1901 E VoorHees Street, Suite C, Danville, IL 61834   Phone: 1-888-679-6377
<u>Lender</u>: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
Address: 8950 CYPRESS WATERS BLVD., DALLAS, TX 75019
Phone: (888) 480-2432
<u>Trustee</u>: ADAMS & EDENS, PA
Address: 2001 CREEK COVE, SUITE A, BRANDON, MS 39042
Phone: _____
<u>Legal Description</u>: SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
HEREOF AS EXHIBIT "A".

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

(A) "Security Instrument" means this document, which is dated FEBRUARY 12, 2021, together with

FHA Mississippi Deed of Trust - 09/15
EE  19382.14                         Page 1 of 15

Prepared By:
JOSEPHINE LOMEDICO
NATIONSTAR MORTGAGE LLC D/B/A MR.
COOPER
4000 HORIZON WAY
IRVING, TX 75063
(972) 894-1310

After Recording Return To:
NATIONSTAR MORTGAGE LLC D/B/A MR.
COOPER
4000 HORIZON WAY
IRVING, TX 75063
(888) 480-2432

[Space Above This Line For Recording Data]

## DEED OF TRUST

MOONEY
Loan #: 0423549195
PIN: 014 -26-00-013.03
MIN: 100397204235491955
MERS Phone: 1-888-679-6377
Case #: 281-5034735-703

**Grantor(s):** BRIAN E. MOONEY, A SINGLE MAN
Address: 436 OLD PROGRESS RD, MOSELLE, MS 39459
Phone: (601) 310-6078

**Grantee/Beneficiary:** Mortgage Electronic Registration Systems, Inc.
Address: 1901 E VoorHees Street, Suite C, Danville, IL 61834    Phone: 1-888-679-6377
**Lender:** NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
Address: 8950 CYPRESS WATERS BLVD., DALLAS, TX 75019
Phone: (888) 480-2432

**Trustee:** ADAMS & EDENS, PA
Address: 2001 CREEK COVE, SUITE A, BRANDON, MS 39042
Phone: _____

**Legal Description:** SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
HEREOF AS EXHIBIT "A".

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated FEBRUARY 12, 2021, together with

**FHA Mississippi Deed of Trust - 09/15**
EX 19382.14                              Page 1 of 15

113169.1-1.11

Signature page

0423549195

advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in JONES County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____

**- BORROWER - BRIAN E. MOONEY**

**FHA Mississippi Deed of Trust - 09/15**
19382.14                    Page 14 of 15

113169.1-1.24

# EXHIBIT N

**Three Versions of Promissory Note Provided by Defendants**
This exhibit contains three separate versions of the Promissory Note produced by Defendants, labeled as follows:

**Exhibit N-1**: Note with no endorsement

**Exhibit N-2**: Note with undated, blotched endorsement

**Exhibit N-3**: Note with "(Page 34 of 73)" endorsement page

**NOTE**

FHA Case No.
201-5034735-703
MOONEY
Loan #: 0423549195
MIN: 100397204235491955

| FEBRUARY 12, 2021 | MOSELLE, | MISSISSIPPI |
|---|---|---|
| [Date] | [City] | [State] |

436 OLD PROGRESS RD, MOSELLE, MS 39459
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $79,639.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on APRIL 1, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on MARCH 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 650783, DALLAS, TX 75265-0783 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $549.97.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

FR  36.87                    Page 1 of 3                    FHA Multistate Fixed Rate Note - 03/16

113169.1-1.37



0423549195

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Brian C Mooney*

- BORROWER - BRIAN E. MOONEY

*[Sign Original Only]*

36.87                    Page 2 of 3                    FHA Multistate Fixed Rate Note - 03/16

113169.1-1.38



0423549195

Individual Loan Originator: **LANCE WILLIAMS**, NMLSR ID: **971913**
Loan Originator Organization: **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**, NMLSR ID: **2119**

EDE   36,87                           Page 3 of 3                    FHA Multistate Fixed Rate Note - 03/16

1131691.1-1.39

# NOTE

FHA Case No.

281-5034735-703

MOXXEY
Loan #: 0423549195
MIN: 100397204235491955

FEBRUARY 12, 2021                MOSELLE,                    MISSISSIPPI
        [Date]                     [City]                      [State]

436 OLD PROGRESS RD, MOSELLE, MS 39459
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $79,639.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on APRIL 1, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on MARCH 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O BOX 650783, DALLAS, TX 75265-0783 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $549.97.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

36.87                        Page 1 of 3                    FHA Multistate Fixed Rate Note - 03/16

970408.1-1.33

0423549195

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Brian C Mooney_
- BORROWER - BRIAN C. MOONEY

*[Sign Original Only]*

621   36.87                          Page 2 of 3                    FHA Multistate Fixed Rate Note - 03/16

Pay to the order of

without recourse
By: _Jennifer Molina_
Nationstar Mortgage LLC, dba Mr. Cooper
Jennifer Molina, Assistant Secretary

970408.1-1.34



0423549195

Individual Loan Originator: LANCE WILLIAMS, NMLSR ID: 971913
Loan Originator Organization: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, NMLSR ID: 2119

35.87

Page 3 of 3

FHA Multistate Fixed Rate Note – 03/16

970408.1-1.35

# NOTE

FHA Case No.
281-5034735-703
MOONEY
Loan #: 0423549195
MIN: 100397204235491955

FEBRUARY 12, 2021          MOSELLE,          MISSISSIPPI
[Date]                     [City]            [State]

436 OLD PROGRESS RD, MOSELLE, MS 39459
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $79,639.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on APRIL 1, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on MARCH 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O BOX 650783, DALLAS, TX 75265-0783 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $549.97.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

KB  36.87                          Page 1 of 3                    FHA Multistate Fixed Rate Note - 03/16

126097.1-1.42

0423549195

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Brian C Mooney*

- BORROWER -    BRIAN E.    MOONEY

*[Sign Original Only]*

KB    36.87                          Page 2 of 3                          FHA Multistate Fixed Rate Note - 02/16

126097.1-1.43

# EXHIBIT O

**Defective Substituted Trustee's Notice of Sale Issued by Dean Morris LLP**

This exhibit contains the Substituted Trustee's Notice of Sale issued to Plaintiff concerning foreclosure of the property located at 436 Old Progress Road, Moselle, Mississippi. The notice contains a second page erroneously referencing an unrelated borrower ("Cynthia A. Ross") and property ("Lot 217 Castine Pointe, Harrison County, Mississippi").

## DEAN MORRIS, L.L.C.
### ATTORNEYS AT LAW

JOHN C. MORRIS, III[†*]
CANDACE A. COURTEAU[†]
EMILY K. COURTEAU[†*]
ASHLEY E. MORRIS[†]
KIMBERLY D. PUTNAM[*]
MARK W. PREWITT[*]
ZACHARY GARRETT YOUNG[†]

[†] Admitted in Louisiana
[*] Admitted in Mississippi

*LOUISIANA DIVISION*
1505 North 19th Street, Monroe, LA 71201
Phone: 318.388.1440 Facsimile: 318.322.0887

*MISSISSIPPI DIVISION*
1820 Avenue of America, Monroe, LA 71201
855 S. Pear Orchard Rd, Ste 404 Bldg 400,
Ridgeland, MS 39157
Phone: 318.330.9020 Facsimile: 318.340.7600

Hours of Operation: Monday-Friday, 8:00 AM - 5:00PM

OF COUNSEL:
GEORGE B. DEAN, JR.[†]
RANDALL R. SAXTON[*]

May 15, 2025

VIA- REGULAR MAIL

Brian E. Mooney
436 OLD PROGRESS RD
MOSELLE, MS 39459

Dear Sir or Madam:

Re: Substitute Trustee's Notice of Sale

For your information, enclosed is a copy of the Substitute Trustee's Notice of Sale. Publication of said Substitute Trustee's Notice of Sale will begin on the 18th day of June, 2025, with Foreclosure Sale being held on the 16th day of July, 2025.

In the event that you or any other obligor on the note has been discharged in bankruptcy, then the demand therein is in rem (against the property) and this letter is sent to only comply with the requirements of your note and mortgage prior to initiating foreclosure. Nothing in this letter is intended to collect a personal obligation of yours that has been discharged in bankruptcy.

**IMPORTANT NOTICE IN COMPLIANCE WITH THE FAIR DEBT ACT, PLEASE BE ADVISED THAT Nationstar Mortgage LLC MAY BE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED IN THE COLLECTION PROCESS.

Sincerely,

Dean Morris, LLC

jeh/F24-0310

SUBSTITUTED TRUSTEE'S NOTICE OF SALE

STATE OF MISSISSIPPI
COUNTY OF HARRISON 1ST

WHEREAS, on the 27th day of July, 2023, Cynthia A. Ross, a widow, and Savannah Rae Ladner, aka Savannah R. Ladner, an unmarried woman, executed and delivered a certain Deed of Trust unto DHI Title of Mississippi, Inc., Trustee for Mortgage Electronic Registration Systems, Inc. as nominee for DHI Mortgage Company, Ltd, Beneficiary, to secure an indebtedness therein described, which Deed of Trust is recorded in the office of the Chancery Clerk of Harrison 1st County, Mississippi in Instrument# 2023-0014713-T-J1 and re-recorded in Instrument# 2023-0021644-T-J1; and

WHEREAS, on the 17th day of December, 2024, Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary, as nominee for DHI Mortgage Company, Ltd, assigned said Deed of Trust unto PennyMac Loan Services, LLC, by instrument recorded in the office of the aforesaid Chancery Clerk in Instrument# 2024-0025183-T-J1; and

WHEREAS, on the 4th day of March, 2025 the Holder of said Deed of Trust substituted and appointed Dean Morris, LLC as Substitute Trustee by instrument recorded in the office of the aforesaid Chancery Clerk in Instrument# 2025-0004145-T-J1; and

WHEREAS, default having been made in the payments of the indebtedness secured by the said Deed of Trust, and the holder of said Deed of Trust, having requested the undersigned so to do, on the 2nd day of July, 2025, I will during the lawful hours of between 11:00 a.m. and 4:00 p.m., at public outcry, offer for sale and will sell, at the East main front door of the Harrison County Courthouse, 1st Judicial District, located on 23rd Avenue at Gulfport, Mississippi, for cash to the highest bidder, the following described land and property situated in Harrison 1st County, Mississippi, to-wit:

Lot 217, Castine Pointe, Phase VI, a subdivision according to the official map or plat thereof on file and of record in the Office of the Chancery Clerk of the First Judicial District of Harrison County, Mississippi in Plat Book 61, pages 41, reference in which is hereby made in aid of and as part of this description.

I will only convey such title as is vested in me as Substitute Trustee.

WITNESS MY SIGNATURE, this 15th day of May 2025.

Dean Morris, LLC
Substitute Trustee
855 S Pear Orchard Rd., Ste. 404, Bldg. 400
Ridgeland, MS  39157
(318) 330-9020

jeh/F24-0431
PUBLISH: 5.28.25 / 6.4.25 / 6.11.25 / 6.18.25 / 6.25.25

FILED

JUL 1 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
    Plaintiff,

v.                                          CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
    Defendants.

## EXHIBIT LIST

**Exhibit A** – Deed of Trust recorded February 19, 2021 (Instrument No. 12100561), naming Adams & Edens, P.A. as trustee and MERS as beneficiary and nominee for the lender.

**Exhibit B** – Mississippi Secretary of State records showing name changes and mergers of Adams & Edens, P.A., including its conversion and merger into Wilson & Associates, PLLC. (Printed directly from the SOS website.)

**Exhibit C** – Assignment of Deed of Trust recorded July 19, 2025 (Instrument No. 12401943), executed by Tsedale Alemu as "Vice President of MERS" and notarized by Sylvia Ramirez.

**Exhibit D** – LinkedIn profile of Tsedale Alemu showing current and prior employment history, omitting any employment with MERS.

**Exhibit E** – Screenshots from Oklahoma County land records showing multiple mortgage assignments executed by Tsedale Alemu as "Vice President" of MERS and other entities, evidencing a pattern of "robo-signing."

**Exhibit F** – MERS Frequently Asked Questions (FAQs) from its official website, including admissions regarding its limited role as nominee and lack of ownership of mortgage loans or promissory notes.

**Exhibit G** – Excerpts from the MERS® System Rules of Membership, page 13, confirming the system is not a mechanism for creating or transferring liens or mortgage interests.

**Exhibit H** – April 9, 2024, letter from Nationstar identifying Ginnie Mae II as the current investor for the Promissory Note.

**Exhibit I** – Nationstar internal account statement reflecting investor transfer dated March 4, 2021, to Ginnie Mae II (Investor Code 286).

**Exhibit J** – Recorded Mortgage-DOT document identifying Ginnie Mae II as the investor, corroborating securitization of Plaintiff's loan.

**Exhibit K** – Nationstar correspondence dated May, 29, 2024, July 5, 2024, July 23, 2024, July 29, 2024, reversing its prior position and asserting that Nationstar is both the owner and servicer of the Promissory Note.

**Exhibit L** – Plaintiff's February 23, 2025, legal demand to Mortgage Connect regarding unauthorized alterations to the Deed of Trust, and Mortgage Connects response asserting the validity of the instrument without documentation.

**Exhibit M** – First pages of three conflicting versions of the Deed of Trust produced by Defendants, each showing material alterations made after execution but before recording.

**Exhibit N**–Three Versions of Promissory Note Provided by Defendants

**Exhibit O** – Defective Substituted Trustee's Notice of Sale Issued by Dean Morris LLP

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

**FILED**

FIRST JUDICIAL DISTRICT

JUL 1 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                   CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

### I. FACTUAL BACKGROUND

1. Plaintiff is the sole legal and equitable owner of the Property by virtue of a Warranty Deed duly recorded in the Jones County Chancery Clerk's Office.

2. Defendants claim rights to enforce a Promissory Note and Deed of Trust (DOT) that are void ab initio due to material defects and fraudulent acts. These defects include, but are not limited to, the following.

3. The DOT purports to name Adams & Edens, P.A. as trustee; however, this entity ceased to exist in 2014, years before the DOT's execution in 2021. As such, the DOT is facially invalid for failure to designate a legally existing trustee capable of exercising fiduciary duties under Mississippi law.

**Page 1 of 6**

4. Defendants recorded unauthorized assignments of the DOT. These assignments were executed by individuals lacking actual authority and were notarized by a Nationstar employee with a direct beneficial interest in the transaction, in violation of Miss. Code Ann. § 25-34-7(1).

5. Defendants' ownership claims are inconsistent, contradictory, and irreconcilable. Nationstar has alternately asserted that Ginnie Mae and itself are the owner of the Promissory Note, yet no lawful assignment or transfer of ownership appears in the public records to substantiate either claim. This unbroken break in the chain of title violates Mississippi law and renders any attempted foreclosure action void ab initio for lack of standing.

6. Despite Plaintiff's repeated written demands, Defendants have failed to produce the original wet-ink Promissory Note. Instead, they have provided only copies, leaving Nationstar without standing to enforce the instrument as required by UCC § 3-301.

7. Plaintiff's Verified Complaint, filed contemporaneously herewith, seeks declaratory and injunctive relief based on these defects and attaches **Exhibits A–O** supporting these factual allegations.

8. On or about May 15, 2025, Defendants issued a Substitute Trustee's Notice of Sale, setting a foreclosure sale for July 16, 2025.

9. Plaintiff further alleges that the Substituted Trustee's Notice of Sale issued by Dean Morris LLP is facially defective. The notice includes a second page erroneously referencing an unrelated borrower, "Cynthia A. Ross," and property, "Lot 217 Castine Pointe" in Harrison County, Mississippi. This glaring error demonstrates a systemic failure in Defendants' foreclosure process, undermines the statutory notice requirements of Miss. Code Ann. § 89-1-55, and renders

**Page 2 of 6**

the foreclosure void ab initio. Strict compliance with § 89-1-55 is mandatory, and such mass-processing errors show Defendants failed to exercise the diligence required under Mississippi law. (See **Exhibit O.**)

10. If this foreclosure is allowed to proceed, Plaintiff will suffer immediate and irreparable harm, including loss of his home and primary residence, displacement of his family, damage to his credit standing, and creation of a clouded title that will make refinancing or selling the Property impossible. Such harm is unique and cannot be remedied by monetary damages. Real property, particularly a primary residence, is considered a unique and irreplaceable asset under Mississippi law. See Heflin v. Am. Home Mortg. Servicing, Inc., 992 So. 2d 1114, 1117 (Miss. Ct. App. 2008).

## II. EQUITABLE GROUNDS FOR RELIEF

11. This Honorable Court, sitting in equity, has inherent authority to preserve the status quo and prevent irreparable harm where a party's property rights are at stake. See Heflin v. Am. Home Mortg. Servicing, Inc., 992 So. 2d 1114, 1117 (Miss. Ct. App. 2008).

12. Plaintiff seeks to enjoin Defendants from proceeding with foreclosure because the Deed of Trust and assignments are void ab initio.

13. Plaintiff also asserts that Defendants have failed to establish lawful standing to foreclose and that a foreclosure sale would cloud title, deprive Plaintiff of his home, and cause harm that monetary damages cannot remedy.

14. The balance of equities favors Plaintiff. Granting a TRO imposes no undue hardship on Defendants, as it merely preserves the status quo, while denying relief would cause Plaintiff to lose his home, a unique and irreplaceable asset under Mississippi law.

15. This Court's equitable jurisdiction is particularly suited to preventing wrongful foreclosure and protecting real property rights pending adjudication of the underlying claims.

16. Plaintiff requests ex parte relief pursuant to Miss. R. Civ. P. 65(b) because the foreclosure sale is scheduled for July 16, 2025, and immediate and irreparable injury will result before Defendants or their counsel can be heard in opposition.

17. Delaying relief to allow notice would defeat the purpose of this Motion, as foreclosure would strip Plaintiff of his property rights and result in irreparable harm that cannot be undone by later court action.

18. Plaintiff respectfully requests that this Court waive the security requirement under Miss. R. Civ. P. 65(c) because he is an individual homeowner of limited means seeking to preserve his primary residence. Alternatively, Plaintiff requests that bond be set at a nominal amount not to exceed $100.

### III. CERTIFICATION PURSUANT TO RULE 65(b)

19. Plaintiff certifies under penalty of perjury that immediate and irreparable injury will result to Plaintiff before Defendants or their counsel can be heard in opposition, as foreclosure proceedings are scheduled for July 16, 2025.

20. Plaintiff further certifies that no prior application for this or similar relief has been made in this Court or any other court.

21. Plaintiff respectfully requests ex parte relief because notice to Defendants cannot be provided without risking immediate and irreparable harm, including loss of Plaintiff's home through foreclosure scheduled for July 16, 2025.

22. Declare the Substituted Trustee's Notice of Sale defective and void pursuant to Miss. Code Ann. § 89-1-55 and enjoin Defendants from proceeding with foreclosure based thereon.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Enter an Ex Parte Temporary Restraining Order enjoining Defendants, their agents, and any persons acting in concert with them from conducting or continuing any foreclosure sale of the Property, including the sale scheduled for July 16, 2025; recording any further instruments affecting title to the Property; and taking any further action to enforce the Promissory Note or Deed of Trust without first proving lawful standing pursuant to UCC § 3-301 and producing the original wet-ink Promissory Note for inspection as required under Mississippi Rule of Evidence 1002 (Best Evidence Rule).

2. Waive the requirement of posting security under Miss. R. Civ. P. 65(c), or set bond at a nominal amount not to exceed $100.

3. Set this matter for hearing on Plaintiff's request for a preliminary injunction at the earliest possible date.

4. Grant such other and further relief as the Court deems just and proper.

Dated this 11ᵗʰ day of ___July___, 2025.

Respectfully submitted,

Brian E. Mooney
436 Old Progress Road
Moselle, Mississippi 39459
ifixem75@gmail.com
(601) 310-6078
Pro Se Plaintiff

VERIFICATION

STATE OF MISSISSIPPI
COUNTY OF JONES

BEFORE ME, the undersigned authority in and for the said County and State, personally appeared Brian E. Mooney, who, being first duly sworn, states under oath as follows:

I am the Plaintiff in the above styled and numbered cause. I have read the foregoing Ex Parte Motion for Temporary Restraining Order and know the contents thereof. The facts stated therein are true and correct to the best of my knowledge, information, and belief. I make this verification under penalty of perjury.

This the 11ᵗʰ day of ___July___, 2025.

_Brian Mooney_

Brian E. Mooney
Pro Se Plaintiff

SWORN TO AND SUBSCRIBED BEFORE ME, this the ___ day of ___July___, 2025.
_Susan Bryant_
Notary Public Signature SUSAN DICKERSON, Circuit Clerk
Print Name: _Susan Bryant, DC_
Notary Public, State of Mississippi
My Commission Expires: _____

My Commission Expires January 5, 2028

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI
**FILED**

FIRST JUDICIAL DISTRICT

JUL 1 1 2025

BRIAN E. MOONEY,
Plaintiff,

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

v.

CIVIL ACTION NO. $2025-107$

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## ORDER GRANTING EX PARTE TEMPORARY RESTRAINING ORDER

THIS CAUSE came before the Court on the Ex Parte Motion of Plaintiff, Brian E. Mooney, for a

Temporary Restraining Order ("TRO") pursuant to Rule 65 of the Mississippi Rules of Civil

Procedure. The Court, having reviewed the Motion, supporting Verified Complaint, and being

fully advised in the premises, finds as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Plaintiff has demonstrated a substantial likelihood of success on the merits based on

   allegations of void instruments and procedural defects, including failure to provide the

   statutory Notice of Default and Right to Cure under Miss. Code Ann. § 89-1-59 and

   issuance of a defective Substituted Trustee's Notice of Sale (see Exhibit O).

2. Plaintiff has shown he will suffer immediate and irreparable harm absent entry of a TRO

   because foreclosure proceedings are currently scheduled for July 16, 2025, and monetary

   damages are inadequate to remedy the loss of Plaintiff's home.

3. The balance of equities favors Plaintiff, and issuance of the TRO will preserve the status quo pending further proceedings.

4. Plaintiff has certified efforts to notify Defendants and has requested that this Court issue this TRO ex parte due to the urgent nature of the foreclosure sale.

5. The Court finds good cause to waive bond for this pro se Plaintiff under Miss. R. Civ. P. 65(c).

## **IT IS THEREFORE ORDERED AND ADJUDGED THAT:**

6. Defendants, their agents, attorneys, and any other persons acting in concert with them are hereby enjoined from:

   a. Conducting or continuing any foreclosure sale of the Property, including the sale currently scheduled for July 16, 2025;

   b. Recording any further instruments affecting title to the Property;

   c. Taking any action to enforce the Promissory Note or Deed of Trust without first proving lawful standing, producing the original wet-ink Promissory Note for inspection, and demonstrating compliance with all applicable provisions of Mississippi law.

7. The requirement of posting bond is hereby waived for this pro se Plaintiff pursuant to Miss. R. Civ. P. 65(c).

8. This TRO shall remain in effect for a period of ten (10) days from the date of entry unless extended, modified, or dissolved by further order of this Court.

9. This matter is set for hearing on Plaintiff's request for a preliminary injunction on the ___ day of _____, 2025, at ___ __.m. at the Jones County Chancery Courthouse, Laurel, Mississippi.

SO ORDERED AND ADJUDGED, this the ___ day of _____, 2025.

_____
CHANCELLOR

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                             CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## SUMMONS

TO: Dean Morris, LLC
Kimberly D. Putnam, Registered Agent
855 S. Pear Orchard Road, Suite 404
Ridgeland, Mississippi 39157

You are hereby summoned to appear and defend against the complaint filed in this action within thirty (30) days after the mailing of this Summons and Complaint by the undersigned Plaintiff. If you fail to do so, judgment by default will be entered against you for the relief demanded in the Complaint.

ISSUED under my hand and the seal of said Court, this 11th day of July, 2025.

*Concetta Brooks, Chancery Clerk*
_____
CLERK OF THE CHANCERY COURT
Jones County Chancery Court – First Judicial District
101 Court Street, Suite B
Ellisville, Mississippi 39437

By: _____
Deputy Clerk

(SEAL)

This Summons is issued pursuant to Rule 4 of the Mississippi Rules of Civil Procedure.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                  CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

### SUMMONS

TO: Mortgage Connect, LP
Corporation Service Company
Attn: Registered Agent
109 Executive Drive, Suite 3
Madison, Mississippi 39110

You are hereby summoned to appear and defend against the complaint filed in this action within thirty (30) days after the mailing of this Summons and Complaint by the undersigned Plaintiff. If you fail to do so, judgment by default will be entered against you for the relief demanded in the Complaint.

ISSUED under my hand and the seal of said Court, this 11th day of July, 2025.

*Concetta Brooks, Chancery Clerk*

CLERK OF THE CHANCERY COURT
Jones County Chancery Court – First Judicial District
101 Court Street, Suite B
Ellisville, Mississippi 39437

By: Jessica Holifield DC
Deputy Clerk

(SEAL)

This Summons is issued pursuant to Rule 4 of the Mississippi Rules of Civil Procedure.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                          CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## SUMMONS

TO: Nationstar Mortgage LLC d/b/a Mr. Cooper
Corporation Service Company
Attn: Registered Agent
109 Executive Drive, Suite 3
Madison, Mississippi 39110

You are hereby summoned to appear and defend against the complaint filed in this action within thirty (30) days after the mailing of this Summons and Complaint by the undersigned Plaintiff. If you fail to do so, judgment by default will be entered against you for the relief demanded in the Complaint.

ISSUED under my hand and the seal of said Court, this 11th day of _July_, 2025.

*Concetta Brooks, Chancery Clerk*

CLERK OF THE CHANCERY COURT
Jones County Chancery Court – First Judicial District
101 Court Street, Suite B
Ellisville, Mississippi 39437

By: _____
Deputy Clerk                                          (SEAL)

This Summons is issued pursuant to Rule 4 of the Mississippi Rules of Civil Procedure.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                          CIVIL ACTION NO. 2025-07

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## SUMMONS

TO: Mortgage Electronic Registration Systems, Inc. ("MERS")
Corporation Service Company
Attn: Registered Agent
251 Little Falls Drive
Wilmington, Delaware 19808

You are hereby summoned to appear and defend against the complaint filed in this action within thirty (30) days after the mailing of this Summons and Complaint by the undersigned Plaintiff. If you fail to do so, judgment by default will be entered against you for the relief demanded in the Complaint.

ISSUED under my hand and the seal of said Court, this 11th day of July, 2025.

*Concetta Brooks, Chancery Clerk*

CLERK OF THE CHANCERY COURT
Jones County Chancery Court – First Judicial District
101 Court Street, Suite B
Ellisville, Mississippi 39437

By: _____
Deputy Clerk

(SEAL)

This Summons is issued pursuant to Rule 4 of the Mississippi Rules of Civil Procedure.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                    CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.


## CERTIFICATE OF SERVICE

I, Brian E. Mooney, hereby certify that on July 14, 2025, I mailed a true and correct copy of the Verified Complaint and Motion for Temporary Restraining Order to the following parties by United States Postal Service certified mail, return receipt requested.

Nationstar Mortgage LLC d/b/a Mr. Cooper
c/o Corporation Service Company, Registered Agent
109 Executive Drive, Suite 3
Madison, MS 39110
USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 42

Dean Morris, LLP
c/o Kimberly D. Putnam, Registered Agent
855 S. Pear Orchard Road, Suite 404
Ridgeland, MS 39157
USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 35

Mortgage Connect, LP
c/o Corporation Service Company, Registered Agent
109 Executive Drive, Suite 3
Madison, MS 39110
USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 28

Mortgage Electronic Registration Systems, Inc. (MERS)
c/o Corporation Service Company, Registered Agent
251 Little Falls Drive

Wilmington, DE 19808
USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7958 36

NOTE: The undersigned will supplement this Certificate of Service with the United States Postal Service return receipts or delivery confirmations upon receipt of same.

This the 14th day of July, 2025.

Respectfully submitted,

*Brian E. Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
fixem75@gmail.com

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT **FILED**

JUL 1 4 2025

BRIAN E. MOONEY,
Plaintiff,

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

v.                                        CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## **NOTICE OF HEARING**

PLEASE TAKE NOTICE that a hearing on Plaintiff's Verified Complaint and Motion for
Temporary Restraining Order and Injunctive Relief is scheduled for July 15, 2025, at 9:00 AM in
the Chancery Court of Jones County, Mississippi, First Judicial District, before the Honorable
Jerry Sharp at the Jones County Chancery Courthouse located at 415N 5th Avenue, Laurel, MS
39440.

This hearing will address Plaintiff's request for a Temporary Restraining Order and related
equitable relief.

Respectfully submitted this 14th day of July, 2025.

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
fixem75@gmail.com

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

JUL 1 4 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                       CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## **CERTIFICATE OF SERVICE**

I, Brian E. Mooney, hereby certify that I have this day served a true and correct copy of the
foregoing Notice of Hearing upon the following parties by electronic mail to the email addresses
listed below:

Nationstar Mortgage LLC d/b/a Mr. Cooper
Email: researchincoming@mrcooper.com

Dean Morris, LLP
Email: amanyi.brown@creditlawyers.com

Mortgage Connect, LP
Email: kmeehan@mortgageconnectlp.com

Mortgage Electronic Registration Systems, Inc. (MERS)
Email: helpdesk@mersinc.org

This the 14th day of July, 2025.

Respectfully submitted,

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
fixem715@gmail.com

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

JUL 2 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                          CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## SUPPLEMENTAL CERTIFICATE OF SERVICE

I, Brian E. Mooney, hereby certify that I previously served a true and correct copy of the Verified Complaint and Motion for Temporary Restraining Order upon the Defendants by United States Postal Service certified mail, return receipt requested, as set forth in the original Certificate of Service filed on July 14, 2025.

The United States Postal Service has now confirmed delivery of said service, as evidenced by the following:

1. Nationstar Mortgage LLC d/b/a Mr. Cooper
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 42
   Delivered on: July 17, 2025
2. Dean Morris LLP
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 35
   Delivered on: July 17, 2025
3. Mortgage Connect, LP
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 28
   Delivered on: July 17, 2025
4. Mortgage Electronic Registration Systems, Inc. (MERS)
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7958 36
   Delivered on: July 21, 2025

Copies of the USPS delivery confirmations and/or signed return receipts are attached hereto as Exhibit A.

This the 21st day of July, 2025.

Respectfully submitted,

*Brian Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
fixem75@gmail.com

ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...

# USPS Tracking®

FAQs >

1.

**Tracking Number:**

Remove ✕

## 958907105270 2805 787442

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:47 pm on July 17, 2025 in MADISON, MS 39110.

_____

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered

**Delivered, Front Desk/Reception/Mail Room**

MADISON, MS 39110
July 17, 2025, 12:47 pm

**See All Tracking History**

What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)

_____

| Text & Email Updates | ∨ |
|---|---|

| USPS Tracking Plus® | ∨ |
|---|---|

| Product Information | ∨ |
|---|---|

**See Less ∧**

Track Another Package

Feedback

ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...

# USPS Tracking®

FAQs >

$\partial.$

**Tracking Number:**

Remove ✕

## 9589071052702805787435

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 10:39 am on July 17, 2025 in RIDGELAND, MS 39157.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Left with Individual**

RIDGELAND, MS 39157
July 17, 2025, 10:39 am

**Arrived at USPS Regional Facility**

JACKSON MS DISTRIBUTION CENTER
July 16, 2025, 9:25 am

**In Transit to Next Facility**

July 15, 2025

**Departed Post Office**

PETAL, MS 39465
July 14, 2025, 4:37 pm

**USPS in possession of item**

PETAL, MS 39465
July 14, 2025, 10:02 am

Feedback

ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...

# USPS Tracking®

FAQs ›

*3.*

Remove ✕

**Tracking Number:**

## 958907105270 2805 7874 28

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:47 pm on July 17, 2025 in MADISON, MS 39110.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Front Desk/Reception/Mail Room**

MADISON, MS 39110
July 17, 2025, 12:47 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ∨ |
|---|---|

| Return Receipt Electronic | ∨ |
|---|---|

| USPS Tracking Plus® | ∨ |
|---|---|

| Product Information | ∨ |
|---|---|

See Less ∧

Feedback

ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...

# USPS Tracking®

FAQs >

4.

**Tracking Number:**

Remove ✕

## 9589071052702805795836

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was picked up at the post office at 11:21 am on July 21, 2025 in WILMINGTON, DE 19808.

**Get More Out of USPS Tracking:**

   USPS Tracking Plus®

### Delivered

**Delivered, Individual Picked Up at Post Office**
WILMINGTON, DE 19808
July 21, 2025, 11:21 am

See All Tracking History

**What Do USPS Tracking Statuses Mean?** (https://faq.usps.com/s/article/Where-is-my-package)

Feedback

| Text & Email Updates | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

See Less ⌃

Track Another Package

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 0 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                    CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## AMENDED VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE, CIVIL-RIGHTS AND DUE-PROCESS VIOLATIONS, QUIET TITLE, AND EQUITABLE RELIEF

### I. INTRODUCTION

1. Under Mississippi's homestead exemption (Miss. Code Ann. § 85-3-1) and chancery equity doctrine, a non-judicial foreclosure executed via unrecorded trustee substitutions and altered security instruments is void ab initio. Plaintiff has standing because he suffered a concrete, particularized injury to his homestead; by contrast, Defendants have suffered no injury at Plaintiff's hands. Plaintiff's injury is actual, traceable to Defendants' conduct, and redressable by this Court, whereas Defendants cannot demonstrate Article III standing or any legally enforceable interest in the property.

2. In this case, Defendants attempted to foreclose on Plaintiff's homestead at 436 Old Progress Road, Moselle, Mississippi, via a deed of trust dated February 12, 2021, recorded February 19, 2021, as Instrument No. 12100561, naming a defunct trustee, relying on an unrecorded substitution of trustee, and conducting a sale

through an unauthorized third party, without ever producing the original promissory note or proving standing to enforce the debt.

3. Plaintiff repeatedly requested proof of enforceability, valid documentation, and legal authority, despite actual and constructive notice through the lodging of a Lis Pendens on July 11, 2025, but Defendants ignored those demands and proceeded with the sale and further efforts to transfer or dispose of the property.

4. Defendants' actions violated both procedural and substantive due process guarantees under Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution and inflicted irreparable harm on Plaintiff's homestead, title, and legal rights.

5. Plaintiff seeks equitable relief voiding the foreclosure sale and canceling all void instruments; restoration of title; compensatory and punitive damages; attorney's fees; and any further relief in equity and law the Court deems just and proper.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Article VI, Section 159 of the Mississippi Constitution and Miss. Code Ann. § 9-5-3, which grant chancery courts original and exclusive jurisdiction over matters involving clouds on title, real property disputes, fraud, trusts, declaratory relief, and injunctive relief. The Court's equitable authority under Uniform Chancery Court Rule 1.03 includes the power to cancel void or fraudulent instruments, enjoin wrongful foreclosures, and prevent irreparable harm caused by deprivation of constitutional and property rights.

7. Venue is proper in the Chancery Court of Jones County, Second Judicial District, pursuant to Miss. Code Ann. § 11-11-3, because the subject homestead is located in this

district, and all material events, instruments, and violations, including those giving rise
to Plaintiff's injury, occurred within this jurisdiction.

## III. PARTIES

8.  Plaintiff Brian E. Mooney ("Plaintiff") is an adult resident of Jones County, Mississippi,
    residing at 436 Old Progress Road, Moselle, Mississippi 39459. Plaintiff is the sole legal
    and equitable owner of the subject homestead and brings this action to protect his vested
    property rights and to redress violations of his constitutional, statutory, and equitable
    protections under Mississippi and federal law. Plaintiff has suffered concrete and
    particularized injuries as a result of Defendants' wrongful acts, including deprivation of
    due process, slander of title, financial harm, and threatened dispossession from his
    home.

9.  Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") is a foreign
    limited liability company organized under the laws of Delaware and registered to do
    business in Mississippi. Nationstar falsely claims to be the mortgagee or beneficiary of
    Plaintiff's home loan and played a central role in initiating the void foreclosure at issue.

10. Defendant Dean Morris, LLC is a Louisiana limited liability company and law firm that
    acted as substitute trustee, foreclosure agent, and debt collector in connection with the
    foreclosure challenged in this case. Its involvement included executing invalid
    foreclosure notices and authorizing unlawful actions without legal authority or
    compliance with Mississippi foreclosure laws.

11. Defendant Mortgage Connect LP is a foreign limited partnership that served as the
    closing and title agent in connection with the subject loan transaction.

Mortgage Connect facilitated or recorded false documents and failed to perform its fiduciary and statutory duties under Mississippi law.

12. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation that purports to act as a nominee or beneficiary under the Deed of Trust recorded against Plaintiff's property. MERS has no beneficial interest in the note or mortgage and its designation on the instrument is legally void. 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

13. Defendant Sunrise Title Services, LLC ("Sunrise Title") is a Tennessee limited liability company that is not registered to do business in the State of Mississippi. Dean Morris engaged Sunrise Title, LLC to conduct Plaintiff's foreclosure sale on July 16, 2025, despite lacking a valid Mississippi auctioneer license and not being authorized to conduct business in the state.

14. Defendants John Does 1-10 are unknown individuals or entities who knowingly participated in, directed, or benefited from the fraudulent foreclosure and related acts described herein. These unknown parties are liable for their role in the deprivation of Plaintiff's property rights and will be named as discovery progresses.

## IV. STATEMENT OF FACTS

## A. THE LOAN TRANSACTION AND NATIONSTAR'S MISREPRESENTATION

14. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

15. On February 12, 2021, Plaintiff met with a notary public at his home to execute documents for a refinance loan. No attorney, settlement agent, or representative of

Nationstar Mortgage LLC doing business as Mr. Cooper was present to explain the legal or financial implications. Plaintiff, lacking formal legal or financial training, relied in good faith on Defendants to comply with all applicable laws.

16. Nationstar Mortgage LLC is not a bank, credit union, or federally chartered depository institution. It is a non-bank mortgage servicer. Nationstar did not fund the loan, nor did it assume any risk of loss. In a letter dated April 9, 2024, Nationstar admitted that Ginnie Mae II is the true investor and owner of the loan. See **Exhibit 1**.

17. Internal records provided by Nationstar confirm that Ginnie Mae II is the investor. See **Exhibit 2**.

18. The Deed of Trust and promissory note were executed on the same day, February 12, 2021. This contemporaneous execution of the loan and lien instrument, without any funds advanced by Nationstar, constitutes an ultra vires act under both state and federal law. In *Union National Bank v. Matthews*, 98 U.S. 621 (1878), and *Matthews v. Skinker*, 63 Mo. 136 (1876), courts held that a bank may not take real-estate security for a contemporaneous loan. The FDIC Supervision Appeals Review Committee reaffirmed those principles in 2012.

19. Although Nationstar is not a national bank, it similarly lacked any lawful charter to originate federally regulated mortgage transactions. Its designation as "Lender" on the Deed of Trust was deceptive, unauthorized, and void ab initio.

20. Because Nationstar provided no consideration and assumed no lending risk, the Deed of Trust is void under Mississippi law. See Miss. Code Ann. §§ 15-1-3 and 75-1-201(b)(44). The instrument is legally unenforceable, and any assignments, substitutions, or foreclosure actions based upon it are likewise void.

21. Plaintiff did not receive the Closing Disclosure until February 12, 2021, the same day he closed. Regulation Z requires delivery at least three business days before consummation. See 12 C.F.R. § 1026.19(f)(1)(ii). Defendants' failure to provide the statutorily mandated review period violates federal law.

22. The Closing Disclosure dated "Issued: 02/12/2021" and "Closing: 02/12/2021" (**Exhibit 3**) explicitly states that signing only acknowledges receipt and does not constitute acceptance. Plaintiff's signature cannot be construed as agreement to loan terms.

23. In underwriting, Defendants relied on a 2009 appraisal report (**Exhibit 4**). That twelve-year-old valuation failed to reflect current market conditions or improvements. Mississippi law requires a "credible and current valuation" (Miss. Code Ann. § 73-34-3(2)), and federal law mandates a new appraisal for each loan (15 U.S.C. § 1639h).

24. Defendants' failures to disclose the true lender, to deliver the Closing Disclosure timely, and to obtain a current appraisal constitute material misrepresentations and omissions. These actions denied Plaintiff due process under Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment.

25. Mississippi chancery courts have inherent power to cancel fraudulently obtained instruments. See *Bank of Am., N.A. v. Latchison*, 126 So. 3d 1026, 1030 (Miss. Ct. App. 2013). Plaintiff respectfully requests equitable relief voiding the refinance and any associated security instruments.

## B. NOTE ENDORSEMENTS AND UCC STANDING DEFECTS

26. Plaintiff does not dispute that he executed a valid promissory note on February 12, 2021. He does dispute, however, that Defendants, none of whom hold or possess the original properly endorsed note, have any right to enforce it. The Note bears a self-endorsement

in favor of Nationstar Mortgage LLC, reading "Pay to the Order of Nationstar Mortgage LLC" and signed by Jennifer Molina as Assistant Secretary (**Exhibit 5**). In effect, Nationstar endorsed the Note to itself, with no actual delivery to or acceptance by any third party, rendering the purported transfer legally ineffective.

27. The endorsement page contains ink blotches and smudges that do not appear elsewhere, indicating post-execution tampering and casting serious doubt on the endorsement's authenticity.

28. Under UCC Section 3-301, enforcement of a negotiable instrument requires possession by a holder in due course or a nonholder entitled to enforce under UCC Sections 3-309 or 3-418. A self-endorsement without delivery and possession fails to create a valid holder.

29. Plaintiff demanded inspection of the original wet-ink note on multiple occasions, yet Nationstar refused and provided no sworn declaration of possession. That refusal, combined with the flawed self-endorsement, confirms Nationstar lacks the original Note and therefore has no standing to enforce it.

30. **Exhibits 1** and **2** confirm that Ginnie Mae II is the investor and that Deutsche Bank National Trust Company is the custodian of the collateral file. **Exhibit 5** shows no chain of endorsements from Ginnie Mae II to Nationstar. Without such an endorsement chain, Nationstar cannot prove holder status.

31. An unauthorized or forged signature is wholly inoperative. See Miss. Code Ann. § 75-3-401(a); *Wansley v. First Nat'l Bank of Vicksburg*, 566 So. 2d 1218, 1221 (Miss. 1990). Nationstar's self-endorsement and failure to produce the original Note confirm it has no legal claim.

32. Mississippi courts have held that inability to prove note possession deprives a party of standing to foreclose. See *Deutsche Bank Nat'l Tr. Co. v. Russell*, 68 So. 3d 905, 912 (Miss. Ct. App. 2011).

33. Mississippi chancery courts will cancel forged, altered, or improperly endorsed instruments. See *Bank of Am., N.A. v. Latchison*, 126 So. 3d 1026, 1030 (Miss. Ct. App. 2013). Plaintiff asks this Court to declare the Note void and to enjoin any foreclosure based on it.

## C. DEFECTIVE CLOSING PRACTICES AND RECORDING DELAY

34. Plaintiff signed all closing documents, including the Deed of Trust and Note, in distinctive blue ink. Defendants have never produced any recorded copy showing those original blue-ink signatures.

35. On February 15, 2021, the notary informed Plaintiff that "they" would not accept blue-ink signatures and requested he re-sign in black ink. Plaintiff, planning to travel, was unable to comply and no proof exists of any recorded version reflecting his original blue-ink execution.

36. When recorded on February 19, 2021, the Deed of Trust (Instrument No. 12100561) contained material alterations not present on the signed version. A handwritten legal description was inserted and the "Return To" field was changed. These discrepancies between the executed documents and the recorded deed are demonstrated by three distinct versions of the Deed of Trust attached to the **Verified Complaint as Exhibit M**.

37. On February 23, 2025, Plaintiff sent a formal written demand to Mortgage Connect, LP, as successor closing agent, requesting a full explanation for the unauthorized alterations, the identity of the person or entity who authorized and executed them, and

documentation proving that the named trustee was legally capable of acting. A true and correct copy of this email exchange is attached to the **Verified Complaint as Exhibit L.**

38. On March 5, 2025, Katie Meehan, Vice President and Assistant Corporate Counsel for Mortgage Connect, responded that the matter was "closed" and refused to correct or explain the public record.

39. Mortgage Connects' refusal to investigate or correct the recorded deed demonstrates willful disregard for Mississippi law. Unauthorized alterations to a signed instrument void the instrument as to all parties affected. See *Citizens Nat'l Bank v. Waltman*, 344 So. 2d 725, 727 (Miss. 1977).

40. The one-week delay between execution and recording permitted these alterations to be made without Plaintiff's knowledge or consent, in violation of Miss. Code Ann. § 89-5-7, which requires recorded instruments to mirror the executed version.

41. Recording a materially altered security instrument without the borrower's consent also violates Plaintiff's due process rights under Miss. Const. art. 3, § 14 and the Fourteenth Amendment to the United States Constitution. Equity demands cancellation of the altered Deed of Trust, correction of the public record, and restoration of Plaintiff's title.

## D. WRONGFUL FORECLOSURE AND UNAUTHORIZED TRUSTEE ACTIONS

42. On July 16, 2025, a foreclosure sale of Plaintiff's homestead at 436 Old Progress Road, Moselle, Mississippi was held at the Jones County Courthouse in Ellisville at approximately 2:00 p.m. Plaintiff attended and recorded the proceedings by audio and video.

43. Plaintiff personally transcribed the audio of that sale (**Exhibit 6**). In his transcript, Taurean Ray of Sunrise Title admits he was "just reading the documents" and would "take the paperwork back to the trustee" if no bids were received.

44. When asked whether any bid bond had been posted, Mr. Ray said he did not know. Mississippi law requires that any bidder post a bond or equivalent security at the time of sale before the trustee may close the bidding.

45. At no point did any recorded substitute trustee appear. Dean Morris, LLC is the only trustee of record under Miss Code Ann § 89-1-55, yet it did not conduct the sale, and no substitution naming Sunrise Title or Mr. Ray was ever recorded.

46. Before inviting bids, Plaintiff handed Mr. Ray a Trustee's Pack that included a copy of the Verified Complaint and a recorded Lis Pendens, demonstrating the foreclosure was contested. Mr. Ray accepted these documents but produced no proof of authority from Dean Morris or any other party.

47. Mr. Ray's admissions and lack of recorded authority confirm he acted purely in a ministerial capacity, without the independent discretion or fiduciary duty required of a trustee. A foreclosure sale conducted by an unauthorized third party is void ab initio.

48. Mississippi law mandates strict compliance with nonjudicial foreclosure procedures. A sale held without a valid trustee, without required bid bond, or in defiance of a Lis Pendens, is void and may be set aside in equity.

49. Despite actual and constructive notice of these defects, Defendants persisted. On July 23, 2025, at 6:38 a.m., Plaintiff received an email from Auctions.com listing his property for sale (**Exhibit 7**).

50. Defendants' actions—conducting an unauthorized sale, failing to secure a trustee or bid bond, and republishing the sale listing—violate Miss Code Ann § 89-1-55 and Plaintiff's rights under Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution.

51. Mississippi chancery courts have inherent authority to cancel unauthorized foreclosure sales and to enjoin further enforcement.

52. Equity demands that the July 16, 2025, sale be declared void ab initio, that the Deed of Trust be canceled, and that all void instruments be removed from the Jones County land records.

53. Plaintiff respectfully requests that this Court declare the sale void, restore his title, and enjoin any further foreclosure-related activity.

## E. POST-LIS PENDENS MISCONDUCT AND SLANDER OF TITLE

54. On July 11, 2025, Plaintiff recorded a Lis Pendens in the Jones County land records as Instrument No. 12502002, placing all parties on constructive notice of this litigation.

55. On July 17, 2025, Nationstar Mortgage LLC and Dean Morris, LLC were served with the Verified Complaint and summons, providing them actual notice of Plaintiff's claims and the relief sought.

56. On July 18, 2025, Dean Morris issued a Notice to Vacate falsely claiming that Nationstar had acquired ownership of the property through foreclosure. No valid foreclosure had occurred under Mississippi law, making that statement a malicious misrepresentation.

57. On July 23, 2025, Plaintiff received an email from Auctions.com notifying him that his property had been listed for sale. Upon inquiry, Auctions.com confirmed the listing

information came from ServicelinkAuction.com and, further, that ServicelinkAuction.com obtained the data from Nationstar.

58. These actions occurred despite both actual and constructive notice of pending litigation and the recorded Lis Pendens. Sending false notices and publishing sale listings while litigation is active demonstrates willful disregard for the judicial process and a deliberate act to cloud title.

59. Mississippi law recognizes slander of title where false statements about ownership cause special damages. See *Walley v. Hunt*, 212 So. 2d 715, 718 (Miss. 1968). Defendants' Notice to Vacate and auction listings constitute actionable slander of title.

60. As a direct result, Plaintiff has incurred additional litigation expenses, suffered emotional distress, and experienced impairment of his property rights. The false statements and listings have also damaged Plaintiff's reputation in the community.

61. Mississippi chancery courts have inherent authority to remove clouds on title and enjoin parties from asserting rights based on void or defective foreclosures. Equity requires this Court to intervene to protect the judicial process, restore title to Plaintiff, and prevent further harm.

62. Plaintiff respectfully requests that the Court declare the Notice to Vacate null and void, award damages for slander of title, and enjoin any further attempts to market or sell the property until this litigation is resolved.

## F. RESCISSION AND DEFENDANTS' DISREGARD

63. Beginning in January 2024, Plaintiff made multiple telephone demands to Nationstar for production of the original promissory note, proof of holder-in-due-course status, legal consideration documents, and a timely Closing Disclosure; when those calls went

unanswered, Plaintiff sent written demands in March 2024 and again in May 2024. See **Exhibit 8**.

64. Nationstar never produced the requested documents or even acknowledged those demands, evidence of fraudulent concealment that tolls any statute of limitations under Mississippi law.

65. Plaintiff did not receive the Closing Disclosure until February 12, 2021, the same day he executed the loan, in violation of 12 C.F.R. § 1026.19(f); that TILA violation, combined with Nationstar's refusal to furnish the original Note and supporting documentation, provided independent grounds to rescind under 15 U.S.C. § 1635.

66. On July 11, 2024, Plaintiff recorded a Notice of Rescission of Deed of Trust in the Jones County land records as Instrument No. 12401881, validly rescinding the security interest under 15 U.S.C. § 1635(b). See **Exhibit 9**.

67. Federal law requires a lender to cancel the security interest or file suit within twenty days of a proper rescission. See 15 U.S.C. § 1635(b). Nationstar neither canceled the lien nor filed suit within that period; instead, it waited until December 2, 2024, over 145 days after rescission to send a written refusal. See **Exhibit 10**.

68. Because Nationstar failed to act within the statutory window, rescission became effective by operation of law, voiding the security interest and leaving a cloud on title. See *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 417 (1998).

69. Plaintiff therefore suffers a concrete injury: a rescinded lien remains of record, impairing his title, restricting his ability to sell or refinance, and leaving his homestead in legal limbo.

70. Mississippi chancery courts have inherent authority to enforce rescission rights, cancel void liens, and clear title. See Miss. Code Ann. § 89-5-21; *Bank of Am., N.A. v. Latchison*, 126 So. 3d 1026, 1030 (Miss. Ct. App. 2013).

71. Equity demands that the Court declare the Deed of Trust void *ab initio*, cancel any liens recorded under Instrument Nos. 12100561 and 12401881, and enjoin Defendants from asserting any interest in the Property based on the rescinded instrument.

## G. NOTARY PRESENTMENT AND UNREBUTTED AFFIDAVITS OF NON-RESPONSE

72. On September 5, 2024, Plaintiff engaged Cassandra Luvine, a duly commissioned Mississippi notary public, to prepare and deliver by certified mail a Notary Presentment to Nationstar Mortgage LLC. Ms. Luvine placed the presentment in a sealed envelope, personally transported it to the post office, and mailed it with return-receipt requested. The presentment demanded proof of Nationstar's authority to enforce the Note and Deed of Trust.

73. The presentment specifically requested:

    (a) A certified copy of the original wet-ink promissory note;

    (b) A GAAP-compliant loan ledger tracing the life of the debt;

    (c) A complete and verifiable chain of endorsements; and

    (d) Documentary proof of who funded the transaction.

74. The certified envelope was accepted by Nationstar's agent, yet no response, rebuttal, or supporting documentation was provided.

75. On October 11, 2024, Cassandra Luvine executed a sworn Affidavit of Non-Response, affirming under penalty of perjury that Nationstar failed to respond within the allotted time.

76. On November 2, 2024, Cassandra Luvine executed a second sworn Affidavit of Non-Response, confirming that even after additional notice and opportunity to respond, Nationstar remained silent. True and correct copies of the Notary Presentment and both Affidavits of Non-Response are attached as **Exhibit 11**.

77. Mississippi law holds that silence in the face of a lawful demand, especially when accompanied by sworn non-response affidavits, may be treated as an admission. See *Brown v. Sutton*, 158 So. 2d 578, 583 (Miss. 1963).

78. The unrebutted affidavits confirm that Nationstar refused to produce the most basic proof of standing or of lawful authority to enforce the debt. When a party willfully fails to provide foundational evidence after proper demand, equity must intervene to protect the property owner.

79. Mississippi chancery courts, as courts of conscience, have inherent power to cancel instruments that a party cannot lawfully enforce. Plaintiff therefore seeks equitable cancellation of the Deed of Trust and any associated lien as void and unenforceable.

## H. NOTICE OF DEFAULT, DUE PROCESS VIOLATION, AND FAILURE TO PROVIDE AN OPPORTUNITY TO CURE

80. Mississippi law requires that before exercising any power of sale under a deed of trust, the trustee or mortgagee must send the borrower a written notice of default and provide at least thirty days in which to cure the default. See Miss. Code Ann. § 89-1-55 (Supp. 2024).

81. Plaintiff never received any written notice of default or notice of opportunity to cure from Nationstar Mortgage LLC or its agents prior to the nonjudicial foreclosure sale held on July 16, 2025, and no evidence of such notice appears in the Jones County land records.

82. By failing to provide the statutorily required notice of default and cure period, Defendants deprived Plaintiff of the procedural due process guaranteed by Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution.

83. As a direct consequence of that due process violation, Plaintiff suffered a concrete injury in fact: he was denied the opportunity to remedy any alleged default, was subjected to an unlawful sale of his homestead, and now faces a clouded title and the continuing threat of eviction.

84. Mississippi chancery courts possess inherent authority to set aside nonjudicial foreclosure sales conducted in contravention of Miss. Code Ann. § 89-1-55 and to remedy the resulting due process harms. See *Peoples Bank & Trust Co. v. L & T Developers, Inc.*, 434 So. 2d 699, 706 (Miss. 1983).

85. Plaintiff respectfully requests that this Court declare the July 16, 2025, foreclosure sale void for lack of the required notice of default and opportunity to cure, for violation of constitutional due process, and that the Court enjoin any further enforcement of the Deed of Trust until full compliance with all statutory and constitutional requirements.

## I. ADMISSION OF NO NOTE POSSESSION AND RESULTING LACK OF STANDING

86. Nationstar representative Beth Johnson, in a recorded telephone call dated November 1, 2024, admitted that Nationstar Mortgage LLC does not possess the original wet-ink promissory note. She stated, "We just have a copy of it" and "you would have received the original at closing." See **Exhibit 12.**

87. Plaintiff did not receive any copies at closing. The notary told Plaintiff that the title company would mail him copies, but none were ever delivered.

88. Under Mississippi law, a party must possess the original promissory note to enforce it. See Miss. Code Ann. § 75-3-301 (Rev. 2017). A copy of the note is insufficient to confer enforcement rights.

89. By admitting that it does not possess the original note and nonetheless threatening foreclosure, Nationstar clouded Plaintiff's title, falsely invoked enforcement rights, and attempted to deprive Plaintiff of his homestead without lawful authority.

90. Nationstar's refusal to produce the original note, despite multiple written demands and a formal Notary Presentment, violated Plaintiff's procedural due process rights under Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution.

91. Plaintiff respectfully requests that this Court find that Nationstar lacks standing to enforce the promissory note or Deed of Trust, and that equity bars any further foreclosure, eviction, or debt collection based on an instrument Nationstar cannot lawfully enforce.

## J. CIVIL RACKETEERING AND PATTERN OF UNLAWFUL CONDUCT

92. Mississippi's civil racketeering statute, Miss. Code Ann. § 97-43-1 et seq., prohibits any person or entity from acquiring or maintaining an interest in real property by means of

racketeering activity. A pattern of racketeering activity requires at least two related predicate acts within a ten-year period.

93. Plaintiff alleges an association-in-fact enterprise composed of Nationstar Mortgage LLC, Dean Morris LLP, Mortgage Connect LP, and Mortgage Electronic Registration Systems, Inc. ("MERS"), which coordinated their actions to dispossess Plaintiff's homestead through repeated fraudulent filings, deceptive communications, and sham foreclosure proceedings.

94. On February 19, 2021, Mortgage Connect LP caused a Deed of Trust to be recorded naming the dissolved firm Adams & Edens, P.A. as trustee despite its 2017 dissolution. The recorded Deed of Trust was materially altered after Plaintiff's blue-ink signing and before recording, with the legal description and Return To field changed without his knowledge, thereby filing a falsified public record in violation of Miss. Code Ann. § 97-43-1(1). See **Verified Complaint Exhibit A.**

95. On July 19, 2024, Nationstar recorded an Assignment of Deed of Trust purporting to transfer the security interest from MERS to Nationstar; the assignment was signed by an unauthorized "Vice President of MERS" and notarized by a Nationstar employee, constituting uttering and publishing a forged assignment under Miss. Code Ann. § 97-43-1(1). See **Verified Complaint Exhibit C.**

96. Following Plaintiff's sworn Notary Presentment, Dean Morris LLP, acting as Nationstar's agent rather than a neutral trustee, mailed foreclosure demand letters on Nationstar's behalf regarding a note Nationstar admitted it did not hold. Each mailing carried materially false pretenses in violation of 18 U.S.C. § 1341 (mail fraud).

97. Nationstar, MERS, and Dean Morris LLP transmitted electronic communications falsely claiming possession of the original promissory note and lawful authority to foreclose, inducing third parties such as Auctions.com to publish fraudulent sale listings in violation of 18 U.S.C. § 1343 (wire fraud).

98. On July 16, 2025, an unauthorized foreclosure sale was held by Taurean Ray of Sunrise Title without any valid recorded trustee substitution and despite a pending Lis Pendens, in direct contravention of Miss. Code Ann. § 89-1-55 and the trustee's common law fiduciary duty.

99. After service of process and recording of Lis Pendens, Defendants caused third-party websites to list Plaintiff's homestead for sale, publishing false statements of ownership and foreclosure and thereby committing slander of title under Walley v. Hunt, 212 So. 2d 715, 718 (Miss. 1968).

## K. CIVIL RACKETEERING AND PATTERN OF UNLAWFUL CONDUCT

100. Mississippi's civil racketeering statute, Miss. Code Ann. § 97-43-1 et seq., prohibits any person or entity from acquiring or maintaining an interest in real property through a pattern of racketeering activity. A "pattern" requires at least two related predicate acts within ten years.

101. Plaintiff alleges an association-in-fact enterprise composed of Nationstar Mortgage LLC, Dean Morris LLP, Mortgage Connect LP, and Mortgage Electronic Registration Systems, Inc. ("MERS"), which jointly carried out a coordinated scheme to dispossess Plaintiff of his homestead through false filings, forged instruments, deceptive notices, and a sham foreclosure process.

102. On February 19, 2021, Mortgage Connect LP recorded a Deed of Trust listing Adams

&amp; Edens, P.A. as trustee. Adams &amp; Edens was dissolved and no longer authorized to

conduct business in Mississippi as of 2017. The recorded Deed of Trust was materially

altered after Plaintiff's blue-ink execution and before recording. The "Return To" field

and legal description were changed without Plaintiff's knowledge or consent, resulting

in the filing of a falsified instrument in violation of Miss. Code Ann. § 97-43-1(1). See

**Verified Complaint Exhibit A.**

103. On July 19, 2024, Nationstar caused an Assignment of Deed of Trust to be recorded,

purporting to transfer interest from MERS to Nationstar. The assignment was signed

by an unauthorized "Vice President of MERS" and notarized by a known Nationstar

employee. This constituted the uttering and publishing of a forged instrument in

violation of Miss. Code Ann. § 97-43-1(1). See **Verified Complaint Exhibit C.**

104. After Plaintiff submitted a sworn notary presentment and three unrebutted affidavits,

Dean Morris LLP, acting as Nationstar's agent and not a neutral trustee, sent debt

collection letters and foreclosure notices in Nationstar's name. These mailings falsely

represented that Nationstar had lawful authority to enforce the note, in violation of 18

U.S.C. § 1341 (mail fraud).

105. Nationstar, MERS, and Dean Morris LLP also sent electronic communications falsely

asserting possession of the original promissory note and the legal right to foreclose.

These false statements were relied on by third parties, including Auctions.com, who

published a fraudulent listing of Plaintiff's homestead. This conduct violated 18 U.S.C.

§ 1343 (wire fraud).

106. On July 16, 2025, an unauthorized foreclosure sale was held at the Jones County Courthouse. The sale was conducted by Taurean Ray of Sunrise Title, who lacked auctioneer credentials and was never appointed trustee. No valid substitution of trustee naming Sunrise Title or Ray exists in the land records. The sale occurred despite a recorded Lis Pendens and without statutory compliance, in violation of Miss. Code Ann. § 89-1-55 and the trustee's common law fiduciary duties.

107. After service of process and filing of the Lis Pendens, Defendants caused third-party websites to continue listing Plaintiff's homestead as subject to foreclosure, even though the foreclosure was contested. These false listings constituted slander of title in violation of Mississippi law. See Walley v. Hunt, 212 So. 2d 715, 718 (Miss. 1968).

108. Each act described above constitutes a predicate act under Mississippi's civil racketeering statute and was committed in furtherance of a common enterprise with the goal of unlawfully seizing and transferring Plaintiff's homestead. Together, these acts form a pattern of racketeering activity within the meaning of Miss. Code Ann. § 97-43-3(c).

109. As a direct and proximate result of Defendants' racketeering activity, Plaintiff has suffered a significant loss of market value to his property, incurred extensive legal and investigative expenses, experienced emotional distress requiring medical care and prescriptions, and sustained reputational harm. Plaintiff remains at risk of unlawful eviction and continues to suffer from a clouded title.

110. Under Miss. Code Ann. § 97-43-9, Plaintiff is entitled to recover treble damages, costs of suit, equitable remedies including cancellation of void instruments, and permanent

injunctive relief barring Defendants from enforcing or transferring any interest in the property.

111. Defendants' repeated, coordinated, and willful misconduct over several years meets the statutory threshold for civil racketeering and warrants the maximum relief allowed by law.

112. Plaintiff respectfully requests that this Court find that Nationstar Mortgage LLC, Dean Morris LLP, Mortgage Connect LP, and MERS jointly participated in a racketeering enterprise in violation of Miss. Code Ann. § 97-43-1 et seq.

113. Plaintiff further requests that the Court award treble damages; cancel and expunge all void or unlawful instruments; remove any cloud on title; permanently enjoin Defendants from any further action against Plaintiff's homestead; and award all other relief deemed just and proper.

## L. EQUITABLE AND CONSTITUTIONAL VIOLATIONS: UNCLEAN HANDS, DUE PROCESS, AND PROPERTY RIGHTS

106. Plaintiff's efforts to resolve this matter began in March 2024, when he lawfully demanded proof that Nationstar Mortgage LLC had standing to enforce the Deed of Trust and promissory note. Despite repeated written notices, Notary Presentments, and Conditional Tenders, Defendants refused to produce any lawful evidence of standing. All available remedies were exhausted before seeking relief in this Court.

107. Plaintiff holds a constitutionally protected property interest in his homestead under Article 3, Sections 14 and 17 of the Mississippi Constitution. Section 14 guarantees that no person shall be deprived of life, liberty, or property except by due process of

law. Section 17 prohibits taking or damaging private property for public use without just compensation.

108. Equity requires that parties seeking relief come before the Court with clean hands. Defendants manipulated public records, recorded void instruments, issued false documents, and orchestrated a foreclosure sale under fraudulent pretenses. This conduct is contrary to every principle of fairness and conscience.

109. Defendants initiated a nonjudicial foreclosure without legal authority. The Deed of Trust was void. The sale was carried out by an unauthorized third party. No valid notice of default was issued. No valid trustee substitution or recorded authority existed. These actions violated Miss. Code Ann. § 89-1-55 and deprived Plaintiff of due process rights.

110. The Deed of Trust identified Adams & Edens, P.A. as trustee. However, that firm merged out of Mississippi in 2017 and ceased all lawful operations. Plaintiff informed Defendants of this defect. Christine Thomas of the Mississippi Secretary of State's Office confirmed Adams & Edens held no legal authority. Defendants enforced the instrument regardless. See **Exhibit 13**.

111. Defendants further violated the law by refusing to produce the original wet-ink promissory note. Plaintiff made multiple demands, including a Conditional Tender of Payment and Notary Presentments. Under UCC § 3-301 and Miss. Code Ann. § 75-3-301, only the holder of the original instrument may enforce it. Defendants' refusal to produce the note demonstrates they lack standing.

112. At no point was Plaintiff given a meaningful opportunity to be heard. A valid trustee issued no notice of default. No hearing was held. These actions violated Article 3,

Section 14 of the Mississippi Constitution and the Due Process Clause of the Fourteenth Amendment.

113. Defendants advertised the sale four times in a local newspaper and posted it at the courthouse. This resulted in reputational damage, emotional distress, and embarrassment. Plaintiff received unwanted calls and visits from attorneys and investors, increasing his fear and anxiety.

114. As a result of Defendants' conduct, Plaintiff was prescribed Lexapro and trazodone to manage stress, anxiety, and insomnia. These facts show actual injury to Plaintiff's physical and emotional well-being.

115. Defendants violated multiple Mississippi statutes, including Miss. Code Ann. § 89-1-55 (unauthorized foreclosure), § 15-1-3 (lack of consideration), § 75-1-201(b)(44) (requirement of value), and § 89-5-7 (recording void instruments), as well as federal regulations requiring accurate disclosures and lawful appraisals.

116. Mississippi chancery courts have inherent equitable power to deny relief to parties who act with unclean hands, to cancel instruments that are void from inception, and to set aside any foreclosure sale that violates statutory or constitutional protections. See *Deutsche Bank Nat'l Tr. Co. v. Russell*, 68 So. 3d 905, 912 (Miss. Ct. App. 2011).

117. Plaintiff respectfully requests that this Court declare void all instruments and proceedings described herein, enjoin any further foreclosure or collection activity, correct the land records, maintain the Lis Pendens, remove void filings, and restore Plaintiff's title.

118. Plaintiff further requests injunctive relief barring Defendants from relying on void documents, a full equitable accounting of all amounts collected, and any other relief the Court deems proper to protect Plaintiff's constitutional and property rights.

119. Plaintiff respectfully prays for all equitable and legal relief available under Mississippi law and the Constitution.

## M. DEAN MORRIS, LLP ACTING AS DEBT COLLECTOR FOR NATIONSTAR MORTGAGE

120. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

121. Dean Morris, LLP, was substituted as trustee solely to carry out foreclosure on behalf of Nationstar Mortgage LLC. It did not act as a neutral fiduciary as required by Mississippi law but instead served as Nationstar's legal agent and advocate.

122. Dean Morris, LLP, issued two debt collection letters on firm letterhead, demanding payment and threatening foreclosure if payment was not made. These letters did not offer neutral information or impartial guidance, but instead directed Plaintiff to remit payment to Nationstar. True and correct copies are attached as **Exhibit 14**.

123. In one letter, Dean Morris referred to Nationstar as "our client," and in the other as "my client." These admissions confirm Dean Morris acted as legal counsel for Nationstar, not as an impartial trustee. True and correct copies are attached as **Exhibit 15**.

124. In a third communication, Dean Morris plainly stated that it was "representing Nationstar." This statement eliminates any appearance of neutrality. A true and correct copy is attached as **Exhibit 16**.

125. Under Mississippi law, a trustee owes a fiduciary duty to both borrower and lender and must act impartially in exercising the power of sale. See *Wansley v. First Nat'l Bank of Vicksburg*, 566 So. 2d 1218, 1224 (Miss. 1990); *Martin v. Citizens' Bank of Batesville*, 59 So. 2d 638, 641 (Miss. 1952).

126. Dean Morris, LLP, breached its fiduciary obligations by functioning as Nationstar's legal counsel and debt collector while also acting as trustee. This conduct demonstrates a failure to exercise impartial discretion, as required under Mississippi law.

127. This conflict of interest renders the foreclosure process void. A trustee cannot lawfully conduct a foreclosure sale while simultaneously acting as the creditor's legal advocate. See *Koestler v. Miss. Baptist Health Sys., Inc.*, 285 So. 3d 623, 628 (Miss. Ct. App. 2019).

128. Dean Morris's conduct also constitutes debt collection activity under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., as evidenced by its issuance of demand letters and foreclosure threats made on behalf of Nationstar.

129. Plaintiff alleges that this conflicted trustee scheme is routinely used by Dean Morris, LLP and Nationstar in multiple Mississippi foreclosure actions. In these cases, the firm is appointed solely to enforce debts and conduct foreclosures for the lender, in clear violation of its fiduciary duties.

130. Mississippi chancery courts have the equitable power to void any foreclosure conducted by a conflicted trustee and to enjoin further improper debt collection activity. Plaintiff respectfully requests that the Court declare the foreclosure void, cancel any cloud created by Dean Morris LLP's conduct, and grant appropriate equitable relief to protect Plaintiff's legal interests and title.

## N. ILLEGAL FORECLOSURE INITIATED WITHOUT STANDING, WITHOUT ASSIGNMENT, AND WITHOUT A TRUSTEE

131. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

132. On July 1, 2024, Nationstar Mortgage LLC d/b/a Mr. Cooper issued a notice stating that Plaintiff's mortgage loan had been referred to foreclosure. However, as of that date, Nationstar held no legal or recorded interest in the Deed of Trust. See **Exhibit 17**.

133. The assignment of the Deed of Trust from Mortgage Electronic Registration Systems, Inc. ("MERS") to Nationstar was not executed until July 15, 2024, two weeks after foreclosure activity began and was not recorded until after execution. See **Exhibit 18**.

134. Under Mississippi Code Annotated § 89-5-21(1), an assignment of a deed of trust must be acknowledged and recorded before it becomes binding on third parties. Because Nationstar was not the recorded beneficiary when it initiated foreclosure, it lacked legal authority to enforce the Deed of Trust.

135. As of July 1, 2024, Nationstar also lacked a valid trustee. The original trustee, Adams & Edens, P.A., had merged out of Mississippi and ceased operations in 2017. See **Verified Complaint Exhibit B**.

136. Nationstar did not record a Substitution of Trustee naming Dean Morris LLP until July 31, 2024, thirty days after initiating foreclosure, leaving no legally appointed trustee in place during the period of foreclosure initiation.

137. Mississippi law does not allow the foreclosure of property without a legally appointed trustee. A trustee's powers are limited to those granted by the instrument and may not be exercised by a party without legal appointment. See *Deutsche Bank Nat'l Tr. Co. v. Russell*, 68 So. 3d 905, 910 (Miss. Ct. App. 2011).

138. Because neither a valid assignment nor a lawful trustee was in place on July 1, 2024, Nationstar had no standing or authority to initiate foreclosure. All actions taken prior to July 31, 2024, were unauthorized and void.

139. A void act cannot be ratified, validated, or cured by subsequent actions. See *City of Jackson v. Allen*, 242 So. 3d 8, 17 (Miss. 2018).

140. Plaintiff respectfully requests that this Court declare all foreclosure notices and proceedings dated before July 31, 2024, void ab initio; cancel any resulting recorded instruments; enjoin any further enforcement; and remove all resulting clouds on Plaintiff's title.

## O. FAILURE TO RETURN PRIOR PROMISSORY NOTE AND REFUSAL TO PRODUCE THE CURRENT NOTE

141. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

142. Plaintiff refinanced the subject mortgage loan with Nationstar Mortgage LLC, who acted as lender or servicer in both the original and refinanced transactions. At the time of refinance, Nationstar failed to return the original promissory note from the prior loan marked "Paid in Full" or "Canceled," as required by law.

143. Under UCC § 3-501(b)(2) and Mississippi Code Annotated § 75-3-501(b)(2), Plaintiff had a right to receive the original note or a signed receipt upon full satisfaction of the obligation. Nationstar did not return the instrument and has provided no proof that it was canceled or lawfully discharged.

144. As a result, Plaintiff remains exposed to the potential enforcement of the prior obligation. By failing to extinguish the earlier debt through lawful return or

cancellation of the note, Nationstar has created a cloud on title. This constitutes slander of title, unjust enrichment, and bad faith concealment of negotiable instruments.

145. In addition, Nationstar has refused multiple written demands to produce the original, wet-ink promissory note from the current refinance transaction. Plaintiff was only provided with unverified photocopies that lacked certification, authentication, or a verifiable chain of custody.

146. Under Mississippi Code Annotated § 75-3-301, only the "holder" of a negotiable instrument is entitled to enforce it. Possession of a copy does not confer standing. See *In re Veal*, 450 B.R. 897 (9th Cir. B.A.P. 2011); *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997).

147. Nationstar has never produced the original promissory note and cannot establish standing to enforce the instrument, whether as a holder or as a nonholder with rights of enforcement under UCC § 3-301 or § 3-309.

148. Initiating foreclosure without possessing the original note, while also concealing the status of the prior paid note, constitutes fraud, misrepresentation, slander of title, and a denial of due process under both Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution.

## P. UNLAWFUL FORECLOSURE AND VOID SALE

149. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

150. Sunrise Title Services, LLC is not registered to do business in the State of Mississippi, in violation of Mississippi Code Annotated § 79-4-15.01(1), which prohibits foreign entities from transacting business in the state without a certificate of authority issued by the Mississippi Secretary of State. See **Exhibit 19**.

151. Taurean Ray, the individual who conducted the foreclosure sale on July 16, 2025, is not a licensed auctioneer in the State of Mississippi, in violation of Mississippi Code Annotated § 73-4-15(1), which mandates that no person may act as an auctioneer without holding a valid state license. See **Exhibit 20**.

152. Sunrise Title Services, LLC is not licensed as an auction firm in the State of Mississippi, as required by Mississippi Code Annotated § 73-4-27(1) and 30 Miss. Admin. Code Pt. 301, R. 1.1(B), which require auction businesses to be properly licensed in order to conduct auctions in the state. See **Exhibit 21**.

153. On July 16, 2025, a foreclosure auction of Plaintiff's homestead was conducted at the Jones County Courthouse in Ellisville, Mississippi, by Taurean Ray of Sunrise Title Services, LLC. Neither Taurean Ray nor Sunrise Title Services, LLC was ever appointed or recorded as trustee, substitute trustee, or foreclosure agent in the land records of Jones County, Mississippi, as required by Mississippi Code Annotated § 89-5-45 and the terms of the Deed of Trust.

154. On July 17, 2025, Nationstar Mortgage LLC and Dean Morris, LLP were served with a file-stamped copy of Plaintiff's Verified Complaint and a properly recorded Lis Pendens. See **Exhibit 22**.

155. On July 18, 2025, despite being on actual and constructive notice of Plaintiff's pending legal challenge, Dean Morris, LLP issued a Notice to Vacate claiming that Nationstar had purchased the property at the July 16, 2025, foreclosure sale. See **Exhibit 16**.

156. Plaintiff did not receive a written Notice of Default or a 30-day opportunity to cure prior to the foreclosure sale, in violation of Mississippi Code Annotated § 89-1-55,

which requires such notice to be given by the mortgage holder before initiating foreclosure proceedings. See **Exhibit 23**.

157. On July 29, 2025, Plaintiff contacted Sunrise Title Services, LLC and spoke with a representative named "Sandra," who confirmed that Sunrise Title Services, LLC conducted the July 16, 2025, foreclosure sale on behalf of Dean Morris, LLP. See **Exhibit 24**.

158. The foreclosure sale was:

(a) Conducted by individuals and entities with no recorded legal authority under Mississippi Code Annotated § 89-5-45;

(b) Executed by an unlicensed auctioneer and unlicensed auction firm in violation of Mississippi Code Annotated §§ 73-4-15(1) and 73-4-27(1);

(c) Carried out by a business entity not authorized to transact business in Mississippi, in violation of Mississippi Code Annotated § 79-4-15.01(1);

(d) Completed despite a recorded Lis Pendens, contrary to Mississippi Code Annotated § 11-47-3; and

(e) Finalized without providing the statutorily required notice of default and right to cure under Mississippi Code Annotated § 89-1-55.

159. Accordingly, the foreclosure sale is void ab initio under Mississippi law. Plaintiff respectfully requests that this Court cancel any substitute trustee's deed, deed under power of sale, eviction action, or other legal instrument arising from the July 16, 2025, sale, and grant all other relief the Court deems proper and just.

<u>**V. CAUSES OF ACTION**</u>

**COUNT I – FRAUDULENT MISREPRESENTATION OF TRUSTEE**

160. Defendants represented that Adams & Edens, P.A. was a valid trustee, that Dean Morris, LLP acted impartially, and that Sunrise Title was authorized to conduct the sale, even though Adams & Edens ceased Mississippi operations in 2014, no recorded substitution named Sunrise Title, and Dean Morris's debt-collection letters refer to Nationstar as "our client," "my client," and expressly state "representing Nationstar."

161. As a result, Plaintiff refrained from self-help, incurred out-of-pocket costs defending his title, suffered diminution in property value, emotional distress, and financial loss, and is entitled to punitive damages under Miss. Code Ann. § 11-1-65.

## COUNT II – MATERIAL ALTERATION AND FORGERY OF RECORDED INSTRUMENT

162. Defendants materially altered the Deed of Trust recorded February 19, 2021, by inserting a handwritten legal description and changing the "Return To" field, then produced multiple, conflicting versions of that deed, indicating post-execution tampering.

163. Those unauthorized alterations injured Plaintiff's property interests and clouded title.

## COUNT III – SLANDER OF TITLE

164. Defendants disparaged Plaintiff's title by (a) recording a Notice to Vacate falsely asserting a valid foreclosure and (b) causing multiple online auction listings after Plaintiff's Lis Pendens was of record, despite no lawful sale.

165. Those false publications caused reputational harm, emotional distress, out-of-pocket costs defending title, diminution in property value, and impeded Plaintiff's ability to refinance or sell his homestead.

## COUNT IV – WRONGFUL FORECLOSURE

166. On July 16, 2025, Sunrise Title, without any recorded substitution or proof of authority, conducted a nonjudicial sale of Plaintiff's homestead without giving the statutorily required notice of default or opportunity to cure under Miss. Code Ann. § 89-1-55.

167. That sale deprived Plaintiff of his property without due process, is void ab initio, and subjected him to the imminent loss of his homestead and a clouded title.

## COUNT V – LACK OF TRUSTEE AUTHORITY

168. The Deed of Trust names Adams & Edens, P.A., which ceased Mississippi operations in 2014, as trustee. No valid substitution naming a successor trustee was ever recorded, yet Sunrise Title conducted the sale.

169. This defect in statutory trustee authority undermines the foreclosure process and forced Plaintiff to defend his constitutional and equitable rights.

## COUNT VI – LACK OF STANDING TO ENFORCE THE PROMISSORY NOTE

170. Nationstar never funded the loan, holds only a self-endorsed copy of the Note, produced no original wet-ink instrument or complete chain of endorsements, and thus lacks standing under UCC § 3-301 to enforce the Note.

171. By threatening foreclosure on an unenforceable instrument, Defendants clouded Plaintiff's title, inflicted financial injury, and violated his right to due process.

## COUNT VII – CIVIL-RIGHTS AND DUE-PROCESS VIOLATION

172. Defendants deprived Plaintiff of his civil rights and property without due process in violation of Article 3, Section 14 of the Mississippi Constitution and the Fourteenth Amendment by (a) failing to provide any notice of default or opportunity to cure, (b) refusing to comply with Plaintiff's Notary Presentment, and (c) proceeding with a foreclosure sale conducted by an unauthorized party.

173. Plaintiff suffered irreparable harm to his homestead, endured emotional distress requiring medication, and continues to face the threat of wrongful eviction.

## COUNT VIII – MISSISSIPPI CIVIL RICO

174. Nationstar, Dean Morris, Mortgage Connect, and MERS form an association-in-fact enterprise engaging in a pattern of racketeering by (a) recording false instruments, (b) mail fraud via foreclosure threats after nonresponse, (c) wire fraud in electronic misrepresentations, (d) conducting wrongful foreclosure, and (e) slandering title.

175. As a proximate result, Plaintiff has suffered economic losses for which he is entitled to treble damages under Miss. Code Ann. § 97-43-9, plus legal fees, emotional distress, and ongoing threat of eviction.

## COUNT IX – BREACH OF FIDUCIARY DUTY BY SUBSTITUTE TRUSTEE

176. Dean Morris was appointed substitute trustee yet issued foreclosure-threat letters serving only Nationstar's interests rather than exercising independent, impartial discretion.

177. That breach of duty injured Plaintiff by clouding his title and causing emotional distress.

## COUNT X – DEBT COLLECTION WITHOUT LAWFUL AUTHORITY

178. Dean Morris sent multiple debt-collection letters threatening foreclosure while lacking any lawful role as trustee or creditor.

179. Those efforts caused Plaintiff emotional harm and financial loss.

## COUNT XI – CONSTRUCTIVE FRAUD

180. In their roles as servicer and substitute trustee, Defendants suppressed the original Note, misrepresented authority, and proceeded with foreclosure, thereby abusing the confidential relationship.

181. Plaintiff was damaged by that fraudulent foreclosure effort and the resulting cloud on title.

## COUNT XII – EQUITABLE ESTOPPEL

182. Defendants represented their authority to foreclose and concealed defects in the Note and Deed of Trust, inducing Plaintiff to refrain from self-help.

183. It would be inequitable to allow Defendants now to assert defects they knowingly concealed.

## COUNT XIII – UNJUST ENRICHMENT

184. Plaintiff conferred benefits, including loan proceeds underwritten by Ginnie Mae II and foreclosure-sale proceeds paid to unauthorized parties, which Defendants knowingly retained.

185. Plaintiff is entitled to equitable restitution of all sums wrongfully retained and correction of the public record.

## COUNT XIV – EQUITABLE CANCELLATION AND INJUNCTIVE RELIEF

186. Under Miss. Code Ann. § 89-5-21 and this Court's inherent powers, Plaintiff requests cancellation of all void instruments (Instrument Nos. 12100561 and 12401881), a declaration that the July 16, 2025, sale is void ab initio, restoration of title to Plaintiff, and a permanent injunction prohibiting any further foreclosure, eviction, debt collection, or marketing efforts.

187. Plaintiff further requests any other relief in equity or at law to which he may be justly entitled.

## COUNT XV – ENFORCEMENT OF NEGOTIABLE INSTRUMENTS WITHOUT HOLDER STATUS

188. Nationstar refinanced Plaintiff's prior mortgage loan but failed to return the original promissory note from the earlier loan marked "Paid in Full" or "Canceled," as required by law. Nationstar also refused to produce the original, wet-ink promissory note from the current loan despite repeated written demands.

189. Under UCC § 3-501(b)(2) and Miss. Code Ann. § 75-3-501(b)(2), a borrower is entitled to the return of the original instrument or a signed receipt upon full payment and satisfaction. Failure to return or cancel the prior note leaves Plaintiff exposed to double enforcement.

190. Mississippi law further requires that only a "holder" may enforce a negotiable instrument. See Miss. Code Ann. § 75-3-301. Possession of a copy is not sufficient. See In re Veal, 450 B.R. 897 (9th Cir. BAP 2011); Dennis Joslin Co. v. Robinson Broadcasting Corp., 977 F. Supp. 491 (D.D.C. 1997).

191. Nationstar's refusal to produce the original instrument or provide certified evidence of its cancellation creates a cloud on title, constitutes slander of title, and deprives Plaintiff of his right to verify enforcement authority.

192. Nationstar's actions constitute fraud, bad faith concealment, and a denial of due process under the Mississippi Constitution and the Fourteenth Amendment.

## COUNT XVI – VOID FORECLOSURE SALE AND UNLICENSED AUCTION ACTIVITY

193. The foreclosure sale on July 16, 2025, was conducted by Taurean Ray, a representative of Sunrise Title Services, LLC, neither of whom were licensed to conduct foreclosure sales or registered to do business in Mississippi.

194. Miss. Code Ann. § 73-4-15(1) prohibits individuals from conducting auctions without a valid auctioneer license. Miss. Code Ann. § 73-4-27(1) requires auction firms to hold a Mississippi license. Miss. Code Ann. § 79-4-15.01(1) bars unregistered out-of-state companies from conducting business in the state.

195. No substitution of trustee or recorded authority named Sunrise Title Services, LLC or Taurean Ray as a lawful party to foreclose. No auction bond was posted, and Plaintiff recorded a Lis Pendens in advance of the sale.

196. The sale was therefore conducted without lawful authority, by unlicensed parties, and in direct violation of Mississippi's statutory foreclosure process, including Miss. Code Ann. §§ 89-1-55, 89-5-45, and 11-47-3.

197. This unauthorized act deprived Plaintiff of his homestead without lawful process. The sale is void ab initio, and Plaintiff is entitled to cancellation of all related instruments and injunctive relief to prohibit further enforcement.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

1. Declare the Deed of Trust recorded as Instrument No. 12100561 and Instrument No. 12401881 (and any related trustee substitutions, Notices to Vacate, or assignments) void ab initio and order their cancellation from the Jones County land records;

2. Quiet title to the real property located at 436 Old Progress Road, Moselle, Mississippi 39459, in Plaintiff's name;

3. Declare the foreclosure sale conducted on July 16, 2025, null and void for lack of lawful authority and due process;

4. Enjoin Defendants, their agents, successors, and assigns from initiating or pursuing any foreclosure, eviction, debt collection, or marketing efforts against the Property based on any void or unenforceable instrument;

5.  Enter a declaratory judgment confirming that Defendants lack standing to enforce the
    Promissory Note or Deed of Trust and have violated UCC § 3-301, Mississippi law, and
    constitutional due-process protections;

6.  Award Plaintiff compensatory damages, including:

    a. Out-of-pocket costs incurred defending his title;

    b. Diminution in property value;

    c. Emotional distress and mental anguish;

    d. Reputational harm; and

    e. Any other financial injury resulting from Defendants' unlawful conduct;

7.  Award punitive damages for willful and malicious acts under Miss. Code Ann. § 11-1-65;

8.  Award treble damages under Miss. Code Ann. § 97-43-9 for violations of Mississippi's
    Civil RICO statute;

9.  Award equitable restitution of all sums wrongfully retained by Defendants, including but
    not limited to foreclosure-sale proceeds or unjust enrichment;

10. Declare that enforcement of negotiable instruments without possession of the original
    violates Plaintiff's rights under Mississippi law and the Fourteenth Amendment;

11. Award Plaintiff his court costs, filing fees, service fees, and all other recoverable
    litigation expenses;

12. Grant such other and further relief, at law or in equity, to which Plaintiff may show
    himself justly entitled.

Respectfully submitted,

*Brian Mooney*

436 Old Progress Road
Moselle, Mississippi 39459

ifixem75@gmail.com
(601) 310-6078
Pro Se Plaintiff

## VII. VERIFICATION

**STATE OF MISSISSIPPI**
**COUNTY OF JONES**

BEFORE ME, the undersigned authority in and for said County and State, personally appeared
Brian E. Mooney, who, being first duly sworn, states under oath:

"I am the Plaintiff in the above-styled and numbered cause. I have read the foregoing Amended
Verified Complaint and know the contents thereof. The facts stated therein are true and correct
to the best of my knowledge, information, and belief. I make this verification under penalty of
perjury."

This the 1ˢᵗ day of August _____, 2025.

*Brian Mooney*

Brian E. Mooney
Pro Se Plaintiff

SWORN TO AND SUBSCRIBED BEFORE ME, this the 1ˢᵗ day of August, 2025.

GREG DICKERSON, Circuit Clerk
Notary Public Signature: By: Nixa Carlson, DC

Print Name: _____ GREG DICKERSON, Circuit Clerk _____     (SEAL)

Notary Public, State of Mississippi

My Commission Expires: My Commission Expires January 5, 2028

## Exhibit 1

Letter from Nationstar dated April 9, 2024, confirming Ginnie Mae II is the investor.



PO Box 612488
Dallas, TX 75261-2488

OUR INFO
**ONLINE**
www.mrcooper.com

April 9, 2024

Brian Mooney
436 Old Progress Rd
Moselle, MS 39459

**YOUR INFO**
**LOAN NUMBER:** 423549195
**PROPERTY ADDRESS:**
436 Old Progress Rd
Moselle, MS 39459

**SUBJECT:**
*Research Reference*
*#0009013134*

Dear Brian Mooney:

We received your inquiry on March 29, 2024, regarding the current owner of the loan.

As of the date of this letter, our records indicate GNMA II NSM is the current owner of the Note. As requested, we have provided the contact information below:

GNMA II NSM
550 12th Street SW
3rd Floor
Washington, DC 20024

Please note that Mr. Cooper is the servicer of the loan; therefore, Mr. Cooper will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include but are not limited to the following:

- Payment assistance and modifications
- Payment posting
- Validation of the debt
- Foreclosure proceedings
- Payment adjustments

As such, please direct any correspondence related to these matters to Mr. Cooper.

Please find attached a copy of the Note and Deed of trust for your records and review. We have included, as referenced above, the investor information. We cannot provide the additional information requested, and you will need to speak with a tax professional or attorney for further details on moving assets into a trust.

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) or a debtor subject to other bankruptcy protection, this letter is for informational purposes only and is not an attempt to collect a debt from you personally.





CHANGING THE FACE OF HOME LOANS

Should you have any additional questions regarding your account or to view details about your loan summary and recent account activity, visit us online at www.mrcooper.com.  You will have immediate access to:

- Frequently asked questions
- A full payment history
- Escrow information
- Automatic payment enrollment
- Mortgage Loan, Escrow Account Disclosure and Tax and Interest Statements

As a valued borrower, your satisfaction is our top priority.  If we can be of further assistance, you can contact us directly at research.department@mrcooper.com or you can call our Customer Service Department at 1-888-480-2432, Monday through Thursday 7 am to 8 pm (CT), Friday 7 am to 7 pm (CT) and Saturday 8 am to 12 pm (CT).

Sincerely,

Mr. Cooper
Research and Response Department

**Exhibit 2**

Nationstar document showing Ginnie Mae II is the investor.

# Recorded Mortgage-DOT

| | |
|---|---|
| Client : | NSM |
| As of Date : | 05-18-2021 |
| Loan Number : | 0423549195 |
| Previous Loan Number : | 000000605030543 |
| Borrower Name : | BRIAN MOONEY |
| Loan Status : | Active |
| Loan Custodian : | Custodians - Deutsche Bank National Trust Company |
| TABFusion Document Type : | Security Instrument |
| TABFusion Condition : | Recorded |
| Collateral File Location : | |
| Current Document Location : | |
| Investor Code : | 286 |
| Investor Name : | GINNIE MAE II |
| FC Attorney : | |
| Property Address : | 436 OLD PROGRESS RD MOSELLE, MS 39459 |

*D93971137*



# Exhibit 3

Closing Disclosure dated February 12, 2021.

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

## Closing Information

| | |
|---|---|
| Date Issued | 02/12/2021 |
| Closing Date | 02/12/2021 |
| Disbursement Date | 02/18/2021 |
| Settlement Agent | INSPIRE CLOSING SERVICES LLC |
| File # | 774746 |
| Property | 436 OLD PROGRESS RD MOSELLE, MS 39459 |
| Appraised Prop. Value | $115,000 |

## Transaction Information

| | |
|---|---|
| Borrower | BRIAN E. MOONEY 436 OLD PROGRESS RD MOSELLE, MS 39459 |
| Lender | NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER |

## Loan Information

| | |
|---|---|
| Loan Term | 15 years |
| Purpose | Refinance |
| Product | FIXED RATE |
| Loan Type | ☐ Conventional ☒ FHA ☐ VA ☐ _____ |
| Loan ID # | 0423549195 |
| MIC # | 281-5034735-703 |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| Loan Amount | $79,639 | NO |
| Interest Rate | 3% | NO |
| Monthly Principal & Interest *See Projected Payments below for your Estimated Total Monthly Payment* | $549.97 | NO |
| | | **Does the loan have these features?** |
| Prepayment Penalty | | NO |
| Balloon Payment | | NO |

## Projected Payments

| Payment Calculation | Years 1-11 | Years 12-15 |
|---|---|---|
| Principal & Interest | $549.97 | $549.97 |
| Mortgage Insurance | + 28.63 | + — |
| Estimated Escrow *Amount can increase over time* | + 246.11 | + 246.11 |
| Estimated Total Monthly Payment | $824.71 | $796.08 |

| | | | |
|---|---|---|---|
| Estimated Taxes, Insurance & Assessments *Amount can increase over time* *See page 4 for details* | $246.11 a month | This estimate includes ☒ Property Taxes ☒ Homeowner's Insurance ☐ Other: *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | In escrow? YES YES |

## Costs at Closing

| | | |
|---|---|---|
| Closing Costs | $1,865.24 | Includes $1,369.72 in Loan Costs + $1,597.55 in Other Costs - $1,102.03 in Lender Credits. *See page 2 for details.* |
| Cash to Close | $1,368.70 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* ☒ From ☐ To Borrower |

## Closing Cost Details

| Loan Costs | | Borrower-Paid | | Paid By |
|---|---|---|---|---|
| | | At Closing | Before Closing | Others |
| **A. Origination Charges** | | | | |
| % of Loan Amount (Points) | | | | |
| | | | | |
| **B. Services Borrower Did Not Shop For** | | $1,369.72 | | |
| FLOOD CERTIFICATION | to SERVICELINK NATIONAL FLOOD | | | (L) $5.00 |
| MORTGAGE INSURANCE PREMIUM | to FEDERAL HOUSING ADMINISTRATION | $1,369.72 | | |
| TAX SERVICING FEE | to CORELOGIC | | | (L) $85.00 |
| TITLE – LENDERS TITLE INSURANCE | to INSPIRE CLOSING SERVICES, LLC | | | (L) $380.00 |
| TITLE – SETTLEMENT FEE | to INSPIRE CLOSING SERVICES, LLC | | | (L) $645.00 |
| | | | | |
| **C. Services Borrower Did Shop For** | | | | |
| | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | $1,369.72 | | |
| Loan Costs Subtotals (A + B + C) | | $1,369.72 | | |

| Other Costs | | | | |
|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | | |
| Recording Fees      Deed:          Mortgage:     $72.00 | | | | (L) $72.00 |
| **F. Prepaids** | | $222.80 | | |
| Homeowner's Insurance Premium (      mo.) | | | | |
| Mortgage Insurance Premium (      mo.) | | | | |
| Prepaid Interest ($6.55 per day from 2/18/21 to 3/1/21) | | $72.05 | | |
| Property Taxes (      mo.) to JONES COUNTY–ELLISVILLE | | $150.75 | | |
| PROPERTY TAX – SUPPLEMENTAL          (12 mo.) to JONES TAX ASSESSOR | | | | |
| **G. Initial Escrow Payment at Closing** | | $1,374.75 | | |
| Homeowner's Insurance | $176.09 per month for 9 mo. | $1,584.81 | | |
| Mortgage Insurance | per month for      mo. | | | |
| Property Taxes | $70.02 per month for 5 mo. | $350.10 | | |
| | | | | |
| Aggregate Adjustment | | $-560.16 | | |
| **H. Other** | | | | |
| | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | $1,597.55 | | |
| Other Costs Subtotals (E + F + G + H) | | $1,597.55 | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | $1,865.24 | | |
| Closing Costs Subtotals (D + I) | | $2,967.27 | | $1,187.00 |
| Lender Credits | | -$1,102.03 | | |

ẞ州  18566.1065  CLOSING DISCLOSURE                    PAGE 2 OF 5 · LOAN ID #0423549195

| Payoffs and Payments | Use this table to see a summary of your payoffs and payments to others from your loan amount. | |
|---|---|---|
| **TO** | | **AMOUNT** |
| NSTAR/COOPER | | $78,867.54 |
| STATE OF MS | | $274.92 |
| FHA MIP REFUND | | |
| | | |
| | | |
| | | |
| **K. TOTAL PAYOFFS AND PAYMENTS** | | $79,142.46 |

| Calculating Cash to Close | Use this table to see what has changed from your Loan Estimate. | | |
|---|---|---|---|
| | **Loan Estimate** | **Final** | **Did this change?** |
| Loan Amount | $79,737.00 | $79,639.00 | YES • This amount decreased |
| Total Closing Costs (J) | -$2,761.00 | -$1,865.24 | YES • See Total Loan Costs (D) and Total Other Costs (I) |
| Closing Costs Paid Before Closing | $0 | $0 | NO |
| Total Payoffs and Payments (K) | -$78,367.00 | -$79,142.46 | YES • See Payoffs and Payments (K) |
| **Cash to Close** | $1,391.00 ☒From ☐To Borrower | $1,368.70 ☒From ☐To Borrower | Closing Costs Financed (Paid from your Loan Amount) $496.54 |

## Additional Information About This Loan

**Loan Disclosures**

**Assumption**

If you sell or transfer this property to another person, your lender
☒ will allow, under certain conditions, this person to assume this loan on the original terms.
☐ will not allow assumption of this loan on the original terms.

**Demand Feature**

Your loan
☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
☒ does not have a demand feature.

**Late Payment**

If your payment is more than 15 days late, your lender will charge a late fee of 4% of the overdue monthly principal and interest payment.

**Negative Amortization (Increase in Loan Amount)**

Under your loan terms, you
☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☒ do not have a negative amortization feature.

**Partial Payments**

Your lender
☒ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
☒ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
☐ does not accept any partial payments.
If this loan is sold, your new lender may have a different policy.

**Security Interest**

You are granting a security interest in
*436 OLD PROGRESS RD, MOSELLE, MS 39459*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

**Escrow Account**

*For now, your loan*
☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $3,022.14 | Estimated total amount over year 1 for your escrowed property costs: Homeowner's Ins. Mortgage Insurance County Property Tax |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs: You may have other property costs. |
| Initial Escrow Payment | $1,374.75 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $274.74 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

*In the future,*
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $103,061.80 |
| **Finance Charge.** The dollar amount the loan will cost you. | $23,422.80 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $78,197.23 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 3.684% |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 24.395% |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at www.consumerfinance.gov/mortgage-closing

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Settlement Agent |
|---|---|---|
| **Name** | NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER | INSPIRE CLOSING SERVICES LLC |
| **Address** | 8950 CYPRESS WATERS BLVD. DALLAS, TX 75019 | 420 ROUSER ROAD, SUITE 500 MOON TOWNSHIP, PA 15108 |
| **NMLS ID** | 2119 | |
| **MS License ID** | 2119 | 15027136 |
| **Contact** | LANCE WILLIAMS | LISA MARIE PERRY |
| **Contact NMLS ID** | 971913 | |
| **Contact MS License ID** | | 10245917 |
| **Email** | LANCE.WILLIAMS@MRCOOPER.COM | MRCOOPER@INSPIRECLOSINGS.COM |
| **Phone** | (469) 240-4529 | (877) 901-1629 |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_Brian E. Mooney_    2/12/21
BRIAN E. MOONEY          Date

18566.1065  CLOSING DISCLOSURE                          PAGE 5 OF 5 · LOAN ID #0423549195

**Exhibit 4**

2009 Appraisal Report reused in connection with the 2021 refinance.

Copy
File No. 2813612886| Page #1



## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
436 Old Progress Rd
-6-14 A Parcel of land in the NE of SE Section 26 T6N R14W Jones County, N
Moselle, MS 39459-9726

**FOR:**
Quicken Loans
20555 Victor Parkway
Livonia, MI 48152

**AS OF:**
5/26/2009

**BY:**
Charles M. Richardson
Richardson Realty & Appraisal, LLC

Copy
File No. 2813612886| Page #2|

Richardson Realty & Appraisal, LLC
Charles M. Richardson
60 Twin Oaks Trace
Hattiesburg, MS 39402

5/26/2009

Quicken Loans
20555 Victor Parkway
Livonia, MI 48152

Re: Property:     436 Old Progress Rd
                  Moselle, MS 39459-9726
    Borrower:     Mooney, Brian and Maria
    File No.:     TSI-052009-0449-1

In accordance with your request, we have appraised the above referenced property. The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Sincerely,

Charles M. Richardson

Copy

GAS Inc. (866) 425-0326

File No. 2813612886 | Page #3

## Uniform Residential Appraisal Report

2813612886
File # TSI-052009-0449-1

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address  436 Old Progress Rd | City  Moselle | State  MS | Zip Code  39459-9726 |
| Borrower  Mooney, Brian and Marla | Owner of Public Record  Brian Mooney | | County  Jones |

Legal Description  26-6-14 A Parcel of land in the NE of SE Section 26 T6N R14W Jones County, MS

| | | | |
|---|---|---|---|
| Assessor's Parcel #  014-26-00-013.03 | Tax Year  2008 | R.E. Taxes $  not available | |
| Neighborhood Name  Moselle | Map Reference  county | Census Tract  9511.00 | |
| Occupant  ☒ Owner   ☐ Tenant   ☐ Vacant | Special Assessments $  n/a | ☐ PUD  HOA $ ☐ per year ☐ per month | |
| Property Rights Appraised  ☒ Fee Simple   ☐ Leasehold   ☐ Other (describe) | | | |
| Assignment Type  ☐ Purchase Transaction   ☒ Refinance Transaction   ☐ Other (describe) | | | |
| Lender/Client  Quicken Loans | Address   20555 Victor Parkway, Livonia, MI 48152 | | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☐ Yes  ☒ No
Report data source(s) used, offering price(s), and date(s).   MLS, N/A.

I   did  ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $ 0         Date of Contract          Is the property seller the owner of public record?  ☐ Yes   ☐ No  Data Source(s)  N/A
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ Yes  ☐ No
If Yes, report the total dollar amount and describe the items to be paid.     N/A          N/A

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use |
|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban  ☒ Suburban  ☐ Rural | | Property Values | ☐ Increasing  ☐ Stable  ☒ Declining | PRICE $ (000) | AGE (yrs) | One-Unit  80 % |
| Built-Up | ☐ Over 75%  ☒ 25-75%  ☐ Under 25% | | Demand/Supply | ☐ Shortage  ☒ In Balance  ☐ Over Supply | | 30 Low  new | 2-4 Unit  5 % |
| Growth | ☐ Rapid  ☐ Stable  ☒ Slow | | Marketing Time | ☐ Under 3 mths  ☐ 3-6 mths  ☒ Over 6 mths | | 200 High  90 | Multi-Family  5 % |
| | | | | | | 116 Pred.  20 | Commercial  10 % |
| Neighborhood Boundaries   Include properties located in the subject's immediate market area as well as other properties located in competing areas within close proximity to the subject | | | | | | | | Other  % |

Neighborhood Description     There were no apparent unfavorable factors noted that would affect the marketability of the subject property based on the surrounding neighborhood.  Schools, shopping, medical facilities, and employment centers are located within a reasonable distance from the subject property.

Market Conditions (including support for the above conclusions)     Marketing time is typically over 6 months. At present, seller buydowns or concessions appear to have an effect on the market. The demand and supply appear to be in balance; however there is limited turnover due to slow growth.

| | | | |
|---|---|---|---|
| Dimensions  1 ac +- | Area  1 ac +- | Shape  Irregular | View  residential |
| Specific Zoning Classification  no zoning-residential usage | Zoning Description  no zoning | | |
| Zoning Compliance  ☐ Legal  ☐ Legal Nonconforming (Grandfathered Use)  ☒ No Zoning  ☐ Illegal (describe) | | | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ☒ Yes   ☐ No  If No, describe | | | |

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street  Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | | ☒ septic-no public avail | Alley | | |

| | | | |
|---|---|---|---|
| FEMA Special Flood Hazard Area  ☐ Yes  ☒ No | FEMA Flood Zone  X | FEMA Map #  2802220175B | FEMA Map Date  2/16/1990 |

Are the utilities and off-site improvements typical for the market area?   ☒ Yes   ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   ☐ Yes  ☒ No  If Yes, describe
None noted.

| General Description | | Foundation | | Exterior Description  materials/condition | | Interior  materials/condition | |
|---|---|---|---|---|---|---|---|
| Units  ☒ One  ☐ One with Accessory Unit | | ☒ Concrete Slab  ☐ Crawl Space | | Foundation Walls  conc/gd | | Floors  cpt/tile/gd | |
| # of Stories  1 | | ☐ Full Basement  ☐ Partial Basement | | Exterior Walls  brick/vnl sdg/gd | | Walls  shrock/gd | |
| Type  ☐ Det.  ☐ Att.  ☐ S-Det./End Unit | | Basement Area  sq.ft. | | Roof Surface  shingle/gd | | Trim/Finish  wd/paint/gd | |
| ☒ Existing  ☐ Proposed  ☐ Under Const. | | Basement Finish  % | | Gutters & Downspouts  n/a | | Bath Floor  tile/gd | |
| Design (Style)  traditional | | ☐ Outside Entry/Exit  ☐ Sump Pump | | Window Type  mtl/dp/gd | | Bath Wainscot  fbrgls/gd | |
| Year Built  2002 | | Evidence of  ☐ Infestation | | Storm Sash/Insulated  ins/gd | | Car Storage  ☐ None | |
| Effective Age (Yrs)  3 | | ☐ Dampness  ☐ Settlement | | Screens  wire/gd | | ☒ Driveway  # of Cars  2+ | |
| Attic  ☐ None | | Heating  ☒ FWA  ☐ HWBB  ☐ Radiant | | Amenities  ☐ Woodstove(s) # | | Driveway Surface  gravel | |
| ☒ Drop Stair  ☐ Stairs | | ☐ Other  Fuel  electric | | ☒ Fireplace(s) #  1  ☐ Fence | | ☐ Garage  # of Cars | |
| ☐ Floor  ☐ Scuttle | | Cooling  ☒ Central Air Conditioning | | ☒ Patio/Deck  ☒ Porch | | ☐ Carport  # of Cars | |
| ☐ Finished  ☐ Heated | | ☐ Individual  ☐ Other | | ☐ Pool  ☐ Other | | ☐ Att.  ☐ Det.  ☐ Built-in | |

Appliances  ☒ Refrigerator  ☒ Range/Oven  ☒ Dishwasher  ☐ Disposal  ☒ Microwave  ☒ Washer/Dryer  ☐ Other (describe)
Finished area above grade contains:   6 Rooms   3 Bedrooms   2 Bath(s)   1,358 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   standard items

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The condition of the subject property is good. No deferred maintenance was noted. No Public Sewer is available.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   ☐ Yes  ☒ No  If Yes, describe
None noted. The appraiser does not perform a "Professional Home Inspection". The appraiser is not an expert in construction materials and the purpose of this appraisal is to make an economic evaluation of the subject property. If the client needs a more detailed inspection of the property, a home inspection, by a Profession Home Inspector, is suggested. The appraiser does not fully inspect the electrical, plumbing, mechanical, and foundation systems or the floor structure/subfloor.
Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   ☒ Yes  ☐ No  If No, describe

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Copy

File No. 2813612886 [Page #4]

# Uniform Residential Appraisal Report

2813612886
File # TSI-052009-0449-1

| There are | 2 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 93,900 | to $ 124,900 |
| There are | 3 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 114,900 | to $ 139,900 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 436 Old Progress Rd<br>Moselle, MS 39459-9726 | 335 Moselle Oak Grove Rd<br>Moselle, MS 39459 | | 79 Dogwood Lake Rd<br>Moselle, MS 39459 | | 788 Tower Rd<br>Moselle, MS 39459 | |
| Proximity to Subject | | 7.93 miles NE | | 2.93 miles N | | 8.51 miles NE | |
| Sale Price | $ | 0 | $ | 119,900 | $ | 100,000 | $ | 128,500 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 84.99 sq.ft. | | $ 59.95 sq.ft. | | $ 85.67 sq.ft. | |
| Data Source(s) | | MLS#75450 | | MLS#75184 | | MLS#75665 | |
| Verification Source(s) | | Keller Williams | | Vines Realty | | Assist 2 Sell | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | conventional | | fha | | conventional | |
| Concessions | | $3580 | -3,580 | $3000 | -3,000 | $107=typical | |
| Date of Sale/Time | | 3/31/2009 | | 3/6/0009 | | 10/13/2008 | |
| Location | rural | rural | | rural | | rural | |
| Leasehold/Fee Simple | Fee Simple | fee simple | | fee simple | | fee simple | |
| Site | 1 ac +-6.8k | 0.53 ac +- | +3,400 | 1.17 ac +-= | | 2 ac +- | -6,800 |
| View | residential | residential | | residential | | residential | |
| Design (Style) | traditional | traditional | | traditional | | traditional | |
| Quality of Construction | brick/vnl sdg | brick/msnt sdg | | brick/wd sdg | | brick/sdg | |
| Actual Age | A7 E3 | A6 E3 | | A34 e15 | +8,000 | A6 E3 | |
| Condition | good | good | | average | +5,000 | good | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6   3   2 | 6   3   2 | | 6   3   2 | | 6   3   2 | |
| Gross Living Area | 1,358 sq.ft. | 1,406 sq.ft. | 0 | 1,668 sq.ft. | -6,200 | 1,500 sq.ft. | -2,840 |
| Basement & Finished | n/a | n/a | | n/a | | n/a | |
| Rooms Below Grade | n/a | n/a | | n/a | | n/a | |
| Functional Utility | avg | avg | | avg | | avg | |
| Heating/Cooling | fwa/cac | fwa/cac | | fwa/cac | | fwac/ac | |
| Energy Efficient Items | standard | standard | | standard | | standard | |
| Garage/Carport | n/a | 2 car grg | -2,000 | 2 car grg | -2,000 | 2 car cpt | -2,000 |
| Porch/Patio/Deck | porch/patio | porch/deck | | porch | +500 | porches= | |
| Days on Market | DOM | 248 | | 226 | | 19 | |
| Net Adjustment (Total) | | + ☒ - | $ -2,180 | ☒ + - | $ 300 | + ☒ - | $ -11,640 |
| Adjusted Sale Price | | Net Adj. 1.8% | | Net Adj. 0.3% | | Net Adj. 9.1% | |
| of Comparables | | Gross Adj. 7.5% | $ 117,320 | Gross Adj. 22.7% | $ 100,300 | Gross Adj. 9.1% | $ 116,860 |

☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research  ☐ did  ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  MLS
My research  ☐ did  ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)  MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No Sales in the past 3 years | No others in the past year | No others in the past year | No others in the past year |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Data Source(s) | MLS | MLS | MLS | MLS |
| Effective Date of Data Source(s) | 6/26/2009 | 5/26/2009 | 5/26/2009 | 5/26/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales    No subject sale(s) or transfer(s) noted in MLS within the last 36 months
and no other comparable transfer(s) within the last 12 months.

Summary of Sales Comparison Approach    The comparables are considered to be good indicators of market value for residential property.  The final
opinion of value was determined by a weighted analysis of the comparables based on the gross adjustment percentage along with other
factors such as proximity, date of sale, condition, and price per sq.ft.  Comparables selected from the Moselle area of homes that were similar in
GLA, condition, age, etc. The most emphasis was placed on comps 1 & 3 due to condition/age. Lack of carport is not expected to have major
impact on value due to rural area. Subject meets HUD minimum standards.

Indicated Value by Sales Comparison Approach $  115,000
Indicated Value by: Sales Comparison Approach $  115,000    Cost Approach (if developed) $  113,048    Income Approach (if developed) $
The sales comparison approach was given the most weight in reconciliation.  The sales comparison approach is commonly thought to provide the
best estimate of market value.  Cost approach supports sales comparison approach.  The income approach was not considered due to insufficient
data.
This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  115,000  , as of  5/26/2009  , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                    Page 2 of 6                    Fannie Mae Form 1004 March 2005

**Copy**

File No. 2813612886
2813612886
File # TSI-052009-0449-1    Page #5

## Uniform Residential Appraisal Report

**URAR Neighborhood Boundaries and Characteristics:** The subject's neighborhood boundaries are areas which have common traits that can be found to the north, south, east, and west of the subject. Certain boundaries such as major highways, railroads, city limits, county lines, school districts, etc. sometimes, not always, create a substantial change in property value.  Upon reviewing the available data, the appraiser will consider certain boundaries such as those described as the end of the neighborhood and may or may not search beyond those boundaries depending on his opinion of the potential amount of impact in marketability that the boundary may create.

**URAR Site/Improvements Comments:** There are no apparent easements or encroachments apparent at the time of inspection unless there are typical utility easements. This is usually determined on a survey that will show these type of easements and or encroachments. If one is provided in this appraisal, it will be shown on that survey.  If not, then it is assumed that all conditions are fee simple with only utility easements known which is common in properties that need these services provided. Flood information has been extracted electronically from Alamode (WinTotal) Geocoding Servers and is deemed to be correct to the best of the appraiser's knowledge. Utilities and off-site improvements noted are generally considered to be public unless owner or available records such as property condition disclosure or MLS indicate otherwise.  Subdivisions without gated entrances are considered to be public due to they are freely accessible by the public. Public streets are generally maintained by the city, county, or MSDOT unless they are not taken over due to not up to specifications. Buyers are suggested to take caveat emptor precautions.  Appraiser is not aware of any public record available for all roads to assist in determining if the area has been taken over by the city, county, or state department of transportation.

**URAR Sales Comparison/Reconciliation Comments:** The comparables chosen are the most recent, similar comparable sales for the subject taking into consideration the limiting guidelines set forth by the lender.  Comparables are chosen based on the following characteristics: location, size, acreage, condition, age, amenities, and date of sale. The more similar, the better. Typical guidelines used by the appraiser for selecting comparable properties are properties that have sold in a certain mileage radius within the last year with less than a 20% difference in square feet that are similar in age, amenities, and condition. The closer the comparable is to the subject and the more recently it has sold, the more weight it will usually receive due to marketability factors.  All comparable sales were weighted accordingly to their amenities and or similarities to the subject property. Adjustments were applied for the differences in the subject property and the comparables.  The appraiser has come to an opinion of market value based on the weighted indicated values of the sales comparables.  Another major determining factor for the subject's market value is the gross adjustment percentages made to each comparable. The comparables with the least amount of differences are usually given the most weight when reconciling the comparables.  The value is based on the Market Data, which is supported by the Cost Approach.  The Income approach was not utilized in this appraisal unless otherwise indicated by the filling out of the section. It was not utilized due to local market data. Similar homes in the subject area are single family residences not having rents or being rented consistently in an open market equivalent to the subjects market.  Please note that the appraiser has no apparent evidence indicating a knowledge of Hazardous Materials or adverse Geological Conditions directly affecting the subject.

**INTENDED USE, AND INTENDED USER OF THE APPRAISAL:** The intended use of the appraisal is to assist the client and any other intended users in the underwriting, approval, and funding of the mortgage loan. The intended users of this report are the stated client and any other institutions involved in the underwriting, approval, and funding of the mortgage loan. No one else, including the property owner, the purchaser, or the seller, should rely on the opinion of value or any other conclusions contained in this appraisal report.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Based on market analysis of vacant land sales, tax & assessment records, and/or like paired analysis of comparable properties with differing acreage.  Site and dwelling information gathered by appraiser from public records, other identified sources, and inspection of the subject property.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | 6,840 |
|---|---|---|---|
| Source of cost data  Local Builders, Suppliers | DWELLING        1,358  Sq.Ft. @ $    80.00 | =$ | 108,640 |
| Quality rating from cost service  5        Effective date of cost data  5/2009 | Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Sq.Ft. @ $ | =$ | |
| Cost approach is base on information gathered from local builders, | Garage/Carport             Sq.Ft. @ $ | =$ | |
| suppliers and/or the Marshall & Swift Residential Handbook and | Total Estimate of Cost-New | =$ | 108,640 |
| depreciated over an economic life of 60 years. | Less    Physical    Functional    External | | |
| | Depreciation       5,432 | =$( | 5,432) |
| | Depreciated Cost of Improvements | =$ | 103,208 |
| | "As-Is" Value of Site Improvements | =$ | 3,000 |
| Estimated Remaining Economic Life (HUD and VA only)       57  Years | INDICATED VALUE BY COST APPROACH | =$ | 113,048 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $    n/a      X Gross Rent Multiplier    n/a    = $ | Indicated Value by Income Approach |
|---|---|

Summary of Income Approach (including support for market rent and GRM)    The Income approach is not considered applicable as this is not typically rental property.

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes   ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes  ☐ No  Data Source
Are the units, common elements, and recreation facilities complete? ☐ Yes   ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes    ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "WinTOTAL" appraisal software by a la mode, Inc. — 1-800-ALAMODE

Copy



File No. 2813612886  Page #6

## Uniform Residential Appraisal Report

2813612886
File # TSI-052009-0449-1

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Copy**

File No. 2813612888 | Page #7

## Uniform Residential Appraisal Report

2813612886
File # TSI-052009-0449-1

---

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

---

Freddie Mac Form 70 March 2005                    Page 5 of 6                    Fannie Mae Form 1004 March 2005

Copy

File No. 2813612886 | Page #8

# Uniform Residential Appraisal Report

2813612886
File # TSI-052009-0449-1

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Charles M. Richardson | Name |
| Company Name  Richardson Realty & Appraisal LLC | Company Name |
| Company Address  60 Twin Oaks Trace, Hattiesburg, MS 39402 | Company Address |
| Telephone Number  (601) 408-2323 | Telephone Number |
| Email Address  richardson77@bellsouth.net | Email Address |
| Date of Signature and Report  June 10, 2009 | Date of Signature |
| Effective Date of Appraisal  5/26/2009 | State Certification # |
| State Certification #  RA-891 | or State License # |
| or State License # | State |
| or Other (describe)                  State # | Expiration Date of Certification or License |
| State  MS | |
| Expiration Date of Certification or License    3/31/2011 | SUBJECT PROPERTY |
| | ☐  Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐  Did inspect exterior of subject property from street |
| 438 Old Progress Rd | Date of Inspection |
| Moselle, MS 39459-9726 | ☐  Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $    115,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name  Quicken Loans | |
| Company Address  20555 Victor Parkway, Livonia, MI 48152 | ☐  Did not inspect exterior of comparable sales from street |
| | ☐  Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Freddie Mac Form 70 March 2005                      Page 6 of 6                      Fannie Mae Form 1004 March 2005

Copy
File No. 2813612886 | Page #9

## Additional Listings

2813612886
File # TSI-052009-0449-1

| FEATURE | SUBJECT | LISTING # 1 | | LISTING # 2 | | LISTING # 3 | |
|---|---|---|---|---|---|---|---|
| Address 436 Old Progress Rd | | 57 St Johns | | 108 Valley Dr | | | |
| Moselle, MS 39459-9726 | | Moselle, MS 39459 | | Hattiesburg, MS 39401 | | | |
| Proximity to Subject | | 7.30 miles NE | | 5.03 miles SW | | | |
| List Price | $ | $ 124,900 | | $ 93,900 | | $ | |
| List Price/Gross Liv. Area | $ sq.ft. | $ 69.39 sq.ft. | | $ 59.81 sq.ft. | | $ sq.ft. | |
| Last Price Revision Date | | none noted | | none noted | | | |
| Data Source(s) | | MLS#77588 | | MLS#78171 - Pending | | | |
| Verification Source(s) | | Ishee Realty | | Richardson Realty & Appraisal | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | n/a | | n/a | | | |
| Concessions | | n/a | | n/a | | | |
| Days on Market | | 92 | | 46 | | | |
| Location | rural | rural | | rural | | | |
| Leasehold/Fee Simple | Fee Simple | fee simple | | fee simple | | | |
| Site | 1 ac +-6.8k | 4.8 ac +-16.8k | -10,000 | 75 x 140' 5k | +1,800 | | |
| View | residential | residential | | residential | | | |
| Design (Style) | traditional | traditional | | traditional | | | |
| Quality of Construction | brick/vnl sdg | brick | | brick | | | |
| Actual Age | A7 E3 | A25+- E10 | +3,500 | A4 E3 | -500 | | |
| Condition | good | average | +5,000 | good | | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 6 | 3 | 2 | 7 | 4 | 2 | 6 | 3 | 2 | | | |
| Gross Living Area | 1,358 sq.ft. | 1,800+- sq.ft. | -8,840 | 1,570 sq.ft. | -4,240 | sq.ft. | |
| Basement & Finished | n/a | n/a | | n/a | | | |
| Rooms Below Grade | n/a | n/a | | n/a | | | |
| Functional Utility | avg | avg | | avg | | | |
| Heating/Cooling | fwa/cac | fwa/cac | | fwa/cac | | | |
| Energy Efficient Items | standard | standard | | standard | | | |
| Garage/Carport | n/a | n/a | | 2 car grg | -2,000 | | |
| Porch/Patio/Deck | porch/patio | porch | +500 | porch/deck | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | + ☒ - | $ -9,840 | + ☒ - | $ -4,940 | + - | $ |
| Adjusted List Price | | Net 7.9 % | | Net 5.3 % | | Net % | |
| of Comparables | | Gross 22.3 % | $ 115,060 | Gross 9.1 % | $ 88,960 | Gross % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | LISTING # 1 | LISTING # 2 | LISTING # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No Sales in the past 3 years | n/a | 4/24/2009 | |
| Price of Prior Sale/Transfer | N/A | n/a | 53,500 | |
| Data Source(s) | MLS | MLS | MLS | |
| Effective Date of Data Source(s) | 5/26/2009 | 5/26/2009 | 5/26/2009 | |

Comments:    Listing 2 is a property that was bought as a corporate owned property and then relisted after being remodeled.

Form 1004.(AL) — WinTOTAL® appraisal software by a la mode, inc. — 1-800-ALAMODE

Copy

File No. 2813612886  Page #10

**Market Conditions Addendum to the Appraisal Report**

2813612886
File No.  TSI-052009-0449-1

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 436 Old Progress Rd | City Moselle | State MS | ZIP Code 39459-9726 |
|---|---|---|---|---|

Borrower   Mooney, Brian and Maria

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Listings (Settled) | 1 | 0 | 2 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.17 | 0 | 0.67 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | | | 1 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | 1.5 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 128,500 | 0 | 109,750 | ☐ Increasing | ☐ Stable | ☒ Increasing |
| Median Comparable Sales Days on Market | 10 | 0 | 237 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Comparable List Price | 124,500 | 119,700 | 124,500 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 226 | 237 | 248 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale Price as % of List Price | 92% | 0 | 92% | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | | | ☒ Yes  ☐ No | ☐ Declining | ☐ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).      Seller concessions have been around 3%. Concessions in this market are typically for closing costs and prepaids.

Are foreclosure sales (REO sales) a factor in the market?    ☐ Yes   ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).
REO sales have not played a major role in driving the market.

Cite data sources for above information.    MLS

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
**Property Values:** Based on the trend analysis of median sales over the past 12 months, the appraiser concludes that property values have had some decline over past year. SP vs LP appears to be stable.
**Demand/Supply:** Based on the trends of housing supply, it appears that supply and demand are in balance.
**Marketing Time:** The typical days on market as shown by the trend above and the median days on market is over 6 months.

If the subject is a unit in a condominium or cooperative project , complete the following:    n/a        Project Name: n/a

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?   ☐ Yes   ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.    n/a

Summarize the above trends and address the impact on the subject unit and project.    n/a

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name   Charles M. Richardson | | Supervisory Appraiser Name | |
| Company Name   Richardson Realty & Appraisal LLC | | Company Name | |
| Company Address   60 Twin Oaks Trace, Hattiesburg, MS 39402 | | Company Address | |
| State License/Certification #   RA-891 | State   MS | State License/Certification # | State |
| Email Address   richardson77@bellsouth.net | | Email Address | |

Freddie Mac Form 71   March 2009    Page 1 of 1    Fannie Mac Form 1004MC   March 2009

Form 1004MC2 – "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Copy

File No. 2813612888| Page #12|

## Subject Photo Page

| Borrower/Client | Mooney, Brian and Maria | | | | |
|---|---|---|---|---|---|
| Property Address | 436 Old Progress Rd | | | | |
| City | Moselle | County | Jones | State MS | Zip Code 39459-9726 |
| Lender | Quicken Loans | | | | |



**Subject Front**

436 Old Progress Rd

| | |
|---|---|
| Sales Price | 0 |
| Gross Living Area | 1,358 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | rural |
| View | residential |
| Site | 1 ac +-6.8k |
| Quality | brick/vnl sdg |
| Age | A7 E3 |



**Subject Rear**



**Subject Street**

Copy
[File No. 2813612886] Page #13]

**Photographs–no kitchen photo taken due to people in kitchen during inspection**

| | | |
|---|---|---|
| Borrower/Client | Mooney, Brian and Marta | |
| Property Address | 436 Old Progress Rd | |
| City | Moselle | County Jones | State MS | Zip Code 39459-9726 |
| Lender | Quicken Loans | |

 

 

 

Copy

File No. 2013612006  Page #14

## Comparable Photo Page

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | Mooney, Brian and Marla | | | | |
| Property Address | 436 Old Progress Rd | | | | |
| City | Moselle | County | Jones | State MS | Zip Code 39459-9726 |
| Lender | Quicken Loans | | | | |



### Comparable 1

335 Moselle Oak Grove Rd
| | |
|---|---|
| Prox. to Subject | 7.93 miles NE |
| Sale Price | 119,500 |
| Gross Living Area | 1,406 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | rural |
| View | residential |
| Site | 0.53 ac +- |
| Quality | brick/msnt sdg |
| Age | A6 E3 |



### Comparable 2

79 Dogwood Lake Rd
| | |
|---|---|
| Prox. to Subject | 2.93 miles N |
| Sale Price | 100,000 |
| Gross Living Area | 1,668 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | rural |
| View | residential |
| Site | 1.17 ac +- = |
| Quality | brick/wd sdg |
| Age | A34 e15 |



### Comparable 3

788 Tower Rd
| | |
|---|---|
| Prox. to Subject | 8.51 miles NE |
| Sale Price | 128,500 |
| Gross Living Area | 1,500 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | rural |
| View | residential |
| Site | 2 ac +- |
| Quality | brick/sdg |
| Age | A6 E3 |



**Copy**
File No. 2813612866  Page #15

## Listing Photo Page

| Borrower/Client | Mooney, Brian and Marta | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 436 Old Progress Rd | | | | | |
| City | Moselle | County | Jones | State | MS | Zip Code 39459-9726 |
| Lender | Quicken Loans | | | | | |



### Listing 1

57 St Johns

| | |
|---|---|
| Proximity to Subject | 7.30 miles NE |
| List Price | 124,900 |
| Days on Market | 92 |
| Gross Living Area | 1,800+- |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Age | A25+- E10 |



### Listing 2

108 Valley Dr

| | |
|---|---|
| Proximity to Subject | 5.03 miles SW |
| List Price | 93,900 |
| Days on Market | 46 |
| Gross Living Area | 1,570 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Age | A4 E3 |

### Listing 3

| | |
|---|---|
| Proximity to Subject | |
| List Price | |
| Days on Market | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Age | |

Copy
File No. 2013612688  Page #18

## Building Sketch

| Borrower/Client | Mooney, Brian and Marta | | | | |
|---|---|---|---|---|---|
| Property Address | 436 Old Progress Rd | | | | |
| City | Moselle | County | Jones | State MS | Zip Code 39459-9726 |
| Lender | Quicken Loans | | | | |



Copy
File No. 2813612686  Page #17

## Location Map

| Borrower/Client | Mooney, Brian and Marla | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 436 Old Progress Rd | | | | | | |
| City | Moselle | County | Jones | | State | MS | Zip Code | 39459-9726 |
| Lender | Quicken Loans | | | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE



# Exhibit 5

Copy of the Promissory Note endorsed in blank.

# NOTE



FHA Case No.

2B1-5034735-703

MOONEY
Loan #: 0423549195
MIN: 100397204235491955

FEBRUARY 12, 2021          MOSELLE,                    MISSISSIPPI
[Date]                     [City]                      [State]

436 OLD PROGRESS RD, MOSELLE, MS 39459
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $79,639.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on APRIL 1, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on MARCH 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O BOX 650783, DALLAS, TX 75265-0783 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $549.97.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

36.87                          Page 1 of 3              FHA Multistate Fixed Rate Note - 03/16

970408.1-1.33

0423549195

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Brian C. Mooney*

– BORROWER – BRIAN C. MOONEY

*[Sign Original Only]*

36.87

Page 2 of 3

FHA Multistate Fixed Rate Note - 03/16

Pay to the order of

_____

without recourse

By: *Jennifer Molina*

Nationstar Mortgage LLC, dba Mr. Cooper
Jennifer Molina, Assistant Secretary

970408.1-1.34

0423549195

Individual Loan Originator: LANCE WILLIAMS, NMLSR ID: 971913
Loan Originator Organization: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, NMLSR ID: 2119

36.87                          Page 3 of 3                    FHA Multistate Fixed Rate Note - 03/16

970408.1-1.35

## Exhibit 6

Transcript of July 16, 2025 foreclosure sale conducted by Mr. Ray.

Foreclosure Sale. 2:00 PM 7-16-2025

Sale conducted by Taurean Ray of Sunrise Titles.

**Brian Mooney:** [00:00:08] You conducting a sale? You conducting a sale?

**Taurean Ray:** [00:00:13] Did I get done with it yet?

**Brian Mooney:** [00:00:14] Are you conducting a sale? For?

**Taurean Ray:** [00:00:18] Yes. Sunrise Titles.

**Brian Mooney:** [00:00:21] Sunrise titles? You mind if I look? No, that's not sunrise title. No, sir.

**Taurean Ray:** [00:00:43] The one I'm working for. Who I'm working for is sunrise title.

**Brian Mooney:** [00:00:46] Okay. I'm providing this packet for the trustees record. This property is subject to ongoing litigation and a recorded Lis Pending. Okay. Please ensure all bidders are made aware. Okay. Can I have your name for my records?

**Taurean Ray:** [00:00:58] Yes, sir. Taurean

**Brian Mooney:** [00:01:06] Last name?

**Taurean Ray:** [00:01:06] Ray.

**Brian Mooney:** [00:01:09] And are you with Dean Morris or are you conducting a sale on their behalf?

**Taurean Ray:** [00:01:13] On their behalf.

**Brian Mooney:** [00:01:15] Their behalf?

**Taurean Ray:** [00:01:15] Yes, sir.

**Brian Mooney:** [00:01:17] And who are you? You said sunshine.

**Taurean Ray:** [00:01:20] Sunrise.

**Brian Mooney:** [00:01:21] Sunrise closing.

**Taurean Ray:** [00:01:24] titles.

**Brian Mooney:** [00:01:28] Sunrise.

**Taurean Ray:** [00:01:28] Title. Yes, sir.

**Brian Mooney:** [00:01:29] All right.

**Taurean Ray:** [00:01:31] All right. Commerce at the north corner of East fourth of southeast four, section 26, Township six North. Range 14, West first Judicial District, Jones County, Mississippi, and runs east west along the 41,111, 8.29 or 29ft six South 135.5ft to two and four point of being run thence east. 152ft, and to iron in the south to 186.5ft. To an iron pin there. Thence west 152ft to an iron pan. The stores 286.50ft back to the point of beginning of said parcel, comprising one acre, more or less in the beginning. Situated in the northeast. Slash fourth of southeast. Fort 26. Township six North. Range 14 West first Judicial District, Jones County, Mississippi, being the same property as conveyed from Jerry or Mooney and wife Dolores Mooney to Brandi Mooney and wife Marla Mooney is Tennessee by the entirety with full right to visit. But it's a very issue, as set forth in the book. 548 page 694 dated two one 2002. Recorded 11 five 2002 Jones County, Mississippi. I will only face such title as Vested in Me as substitute trustee. Witness my signature this 15th day of May, 2025.

**Taurean Ray:** [00:03:40]  I will start the opening bid at. $79,405.40

**Taurean Ray:** [00:03:53]  Do I have any bidders?

**Taurean Ray:** [00:03:57]  No bidders?

**Taurean Ray:** [00:04:00]  Alright, that's the end of it.

**Brian Mooney:** [00:04:00] That's it. Now what?

**Taurean Ray:** [00:04:01] I'll take the paperwork and send it back to them and tell them nobody showed up.

**Brian Mooney:** [00:04:06] They didn't have a bid bond or anything.

**Taurean Ray:** [00:04:08] No, sir. Not that I know of. They just had me come in and read the paper, and if people bid on it, they have told me the stipulation is the bid has to be over a dollar or a dollar over more than the bid. If nobody shows up, I just take the paperwork back and send it back to them and let them know.

**Brian Mooney:** [00:04:25] Okay. Thank you sir.

**Taurean Ray:** [00:04:26] Thank you sir.

.

## Exhibit 7

Auctions.com listing dated July 21, 2025, showing Plaintiff's home for sale.

 **Gmail**

Brian Mooney <ifixem75@gmail.com>

## 1 New Listings in Moselle, MS
1 message

**Auctions.com Alerts** <property-alerts@lists.auctions.com>    Wed, Jul 23, 2025 at 12:57 PM
Reply-To: "Auctions.com Alerts" <property-alerts@lists.auctions.com>
To: ifixem75@gmail.com





**$111,211** EMV    NEW

$1,102/Month Estimated Rental Value

**FORECLOSURE**
Old Progress Rd
Moselle, MS 39459

View Property

Introducing
**FORECLOSURE**
**FUNDING!**
FLIPS +RENTALS
≫ Get Pre-Approved

**CHEAPEST HOMES**
in America.
Find a Cheap Home now! ›

**Rent to Own Listings**
just updated near you.
**Click Now to View**

# Exhibit 8

Letters sent to Nationstar in March and May 2024 demanding proof of standing and full accounting.

March 24, 2024

Brian Mooney
436 Old Progress Road
Moselle, MS 39459

Mr. Cooper
Attn: Research
P.O. Box 612488
Dallas TX 75261

Sent USPS certified mail tracking # 7022 2410 0002 9724 7605

RE: Loan number 0423549195

To whom it may concern,

I am considering moving my assets into a trust. At this time, I am requesting all initializing documents including a copy of the REMIC (Real Estate Mortgage Investment Conduit) filing for loan number 0423549195.

Please send these documents to me to the address listed above.

Thanks,

Brian Mooney

6/19/2024

Brian Mooney
436 Old Progress Road
Moselle, MS 39459

Mr. Cooper
Attn: Research
P.O. Box 612488
Dallas, TX 75261

Re: My request for original Promissory Note
Property Address: 436 Old Progress Road, Moselle, MS 39459
Loan Number: 0423549195

Sent USPS certified mail tracking # 7022 2410 0002 9724 7643

Dear Mr. Cooper,

I am the owner of certain real property located at the above address which is
security for a loan made by Nationstar Mortgage LLC DBA Mr. Cooper to me. I have moved my
assets over to a trust and I am doing a verification of claim on my loan as I am entitled to by law.

In an email I received on 6/18/2024, there was an attachment named "resolution letter". In that
letter on page 4, it states "Please be advised that we have researched your request with the
Collateral file team and can confirm that Mr. Cooper has the collateral file, which includes the
wet-ink signature Note for this account." Also on page 4, it states, "Our records indicate
Nationstar Mortgage LLC DBA Mr. Cooper as owner, is the current owner of the
Note."

 In an email dated 4/9/2024, the attached document states that "As of the date of this letter, our
records indicate GNMA II NSM is the current owner of the Note." I am confused by these
statements and need further clarification.

Before continuing with my payments with you, I need to be certain that you are still the rightful
holder of due course of my Promissory Note and that no other party may come
back to me at a later time to lay claim against my property.

I respectfully request arrangement to view my original Promissory Note.

Please contact me in writing to arrange for an appropriate point of inspection in
City of Moselle, Jones County, Mississippi.

June 6, 2024

Brian Mooney
436 Old Progress Road
Moselle, MS 39459

Mr. Cooper
Attn: Research
P.O. Box 612488
Dallas, TX 75261

In the Matter of: Brian Mooney
Property Address: 436 Old Progress Road Moselle, MS 39459
Account/Loan Number #: 0423549195

R.E.S.P.A. QUALIFIED WRITTEN REQUEST


Dear Sir or Madam:

I have received your letter dated April 9, 2024 stating that GNMA II NSM is the current owner of my note. You failed to provide the information I was requesting. At this time, I would like the documentation listed below.

Please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).

Specifically, I am disputing;
a.    The identity of a true secured lender/creditor, and
b.    The existence of debt
c.    Your authority and capacity to collect on behalf of the alleged lender/creditor. Because of extensive criminal activity and fraud in this arena, I require proof of the chain of secured ownership from the original alleged lender/creditor to the alleged current lender/creditor. Further, I require proof that you are the entity that has been contracted to work on behalf of the alleged lender/creditor.

Pursuant to "Subtitle E Mortgage Servicing" of the Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1), please provide:

1. A full, double sided, certified "true and accurate" copy of the original promissory note and security instrument and all assignments of the security instrument.

2. Full name, address and telephone number of the actual entity that funded the transaction.

3. Full name of Trust where the Note Number is trading, or has traded, and the identifying Series of Certificates.

4. Full name, address, and telephone number of the Custodian of my original Promissory Note, including the name, address and telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act.

5. Full name, address, and telephone number of the Custodian of my original Security Instrument (mortgage or deed of trust), including the name, address and telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act.

6. A physical location (address) of the original promissory note, original security instrument, and all assignments of the security instrument, and a contact name and phone number of someone who can arrange for inspection of said documents.

7. Full name, address and telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for this account.

8. The electronic MERS number assigned to this account if this is a MERS Designated Account. The MERS Milestone Report, if the note number and security instrument was tracked by Mortgage Electronic Registration Systems. I want to see the audit trail of the alleged transfer in ownership and alleged transfer in security interest. Proof of true sale of the note from alleged Lender to investors, by showing: Wire transfer document(s), and/or Signed purchase and sale agreement(s), Bank statements or similar documentation.

9. A complete audit history from alleged loan origination, showing the dates payments were applied, and to what internal accounts (i.e. principal, interest, suspense, escrow, etc.) payments were applied.

10. A complete and itemized statement of all advances or charges against this account.

11. A complete and itemized statement of the escrow for this account, if any, from the date of the note origination to the date of your response to this letter.

12. Have you purchased and charged to the account any Force-Placed Insurance? If so, a complete and itemized statement from the date of the note origination to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

13. A complete and itemized statement from the date of the note origination to the date of your response to this letter of any suspense account entries and/or any corporate advance entries related in any way to this account.

14. A complete and itemized statement from the date of the loan to the date of your response to this letter of any property inspection fees, property preservation fees, broker opinion fees,

appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

15. A statement/provision under the security instrument and/or note that authorizes charging any such fee against the account.

16. Copies of all property inspection reports and appraisals, broker price opinions, and associated bills, invoices, and checks or wire transfers in payment thereof.

17. Complete copy of any transaction report(s) indicating any charges for any "add on products" sold to the debtors in connection with this account from the date of the note origination to the date of your response to this letter.

18. Complete and itemized statement of any late charges added to this account from the date of the note origination to the date of your response to this letter.

19. Complete and itemized statement of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan, from the date of the note origination to the date of your response to this letter.

20. Complete, itemized statement of the current amount needed to pay-off the alleged "loan" in full.

21. Verification of any notification provided to me of a change in servicer.

You should be advised that within FIVE (5) DAYS you must send me a letter stating that you received this letter. After that time, you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).

TRUTH – IN-LENDING ACT § 131(f)(2)
Pursuant to 15 U.S.C. § 1641 (f):
Please provide the name, address and telephone number of the owner(s) of the mortgage and the master servicer of the mortgage.

You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action found in 15 USC 1641.

Thanks,

Brian Mooney

Sent USPS certified mail tracking number 7022 2410 0002 9724 7636

**Exhibit 9**

Notice of Rescission recorded July 11, 2024, and delivered July 15, 2024.

7/11/2024

Brian E Mooney
436 Old Progress Road
Moselle, MS 39459

Mr. Cooper
8950 Cypress Waters Blvd.
Coppell, TX 75019

Re: Notice of Rescission
Property Address: 436 Old Progress Road, Moselle, MS 39459
Loan Number: 0423549195

Sent USPS certified mail tracking # 7022 2410 0002 9724 8275

Dear Mr. Cooper,

Thank you for your recent response to my qualified written request for proof of claim.
Your copy of the note was not what I had asked for as required by law and I am hereby notifying
you that you have exhausted your administrative remedy.

By your inability and unwillingness to stipulate that you are:

a) A Note Holder of Due Course
b) A Creditor of the Instrument
c) Cannot provide GAAP book entry debit evidence of the transaction.

You have violated the requirements of TILA (The Truth in Lending Act), and by your actions
provide prima facie evidence that you are attempting to collect money on the basis of fraud.

I have filed a Notice Recission, and a new Deed of Trust on this property with the Jones County
Recorder's Office.

You no longer have any claims over my property. You are hereby ordered to Cease and Desist.

Have a nice day.

Sincerely,

Brian E Mooney

RECORDING REQUESTED AND
PREPARED BY:
BRIAN E MOONEY
436 OLD PROGRESS ROAD
MOSELLE, MS 39459



CHANCERY CLERK JONES COUNTY, MS
1ST DISTRICT-ELLISVILLE
I certify this instrument file /recorded
07/11/2024    2:04:13 PM
Inst. 12401881 Page 1 of 2
Witness my hand and seal
_____ D.C.
CONCETTA BROOKS

_____
Space Above this Line for Recorder's Use

AFTER RECORDING RETURN TO:
BRIAN E MOONEY
436 OLD PROGRESS ROAD
MOSELLE, MS 39459


### NOTICE REGARDING A RECORDED SECURITY INSTRUMENT


The undersigned issued a **unilateral** security instrument, see Register of
Deeds, Jones County INST# 12100561, Legal Description: NE/4 of SE/4, Section
26, Township 6 North, Range14 West, First Judicial District, Jones County
Mississippi, which purports to create a loan/mortgage from NATIONSTAR
MORTGAGE LLC DBA MR. COOPER to BRIAN E MOONEY.

BRIAN E MOONEY signed said **unilateral** security instrument. The **unilateral**
security instrument purports that Nationstar Mortgage LLC DBA Mr. Cooper,
with MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as nominee for
Nationstar Mortgage LLC DBA Mr. Cooper, would loan $79,639.00. Said
**unilateral** security agreement was dated February 12, 2021, Recorded on
February 19, 2021, as INST# 12100561 in the County of Jones, State of
Mississippi. "Property Address: 436 Old Progress Road Moselle, MS 39459"
without my consent for my **private** contract to be placed in the **public**.

The security instrument that purports the above referenced obligation was
**unilaterally** executed by BRIAN E MOONEY with no other party(s). Said
**unilateral** instrument was executed by "ignorant mistake" and in error. The
ignorant mistake goes to the heart of the matter and a material aspect of
the contract. The security instrument has never been executed or consummated
by Nationstar Mortgage LLC DBA Mr. Cooper, or any other person.

NOW, THEREFORE, BRIAN E MOONEY, its SUCCESSORS AND/OR ASSIGNS, hereby
rescinds the execution of the above referenced instrument of purported
obligation and waivers, which was erroneously executed unilaterally by BRIAN
E MOONEY, its SUCCESSORS AND/OR ASSIGNS and recorded on February 19, 2021,
as Doc # 12100561 in the County of Jones, State of Mississippi.


**Page 1 of 2**                    **Notice**

By: **Brian E. Mooney**           Witness: **Dai Wei**

BRIAN E MOONEY

*Notice: Use of Notary is for identification purposes only and shall not be construed against Declarant as adhesion, indicia, or submission to any foreign, domestic, or municipal jurisdiction or public venue.*

STATE OF MS        )

COUNTY OF Jones    )        **JURAT**
                   )

Before me the undersigned, a Notary acting within and for the County of Jones and State of Mississippi personally appeared and known to me - OR - proved to me on the basis of satisfactory evidence to be the Man whose name is subscribed to the within instrument, to be the identical Man, found living, alive, well, and without incapacities who being duly sworn, declared the above to be true, correct, and not meant to mis-lead, to the best of their firsthand knowledge, understanding, and belief, by their free will and voluntary act and deed by placing their signatures on the foregoing document, executed the within instrument. Given under my hand and seal this 11th day of July, 2024.

This document has 2 pages total.

*Notary signature*
GREG DICKERSON, Circuit Clerk
Carmen Sumrall
Printed Notary name

My commission expires My Commission Expires January 5, 2028

**Page 2 of 2**                **Notice**

**From the Office of**
**Brian E Mooney**
**436 Old Progress Road**
**Moselle, MS 39459**

Date executed: _July 11, 2024_

To: Corporation Services Company: Registered Agent for Nationstar Mortgage LLC DBA Mr. Cooper, Andrew Surdykowski, Esq.

This is Legal Notice of the rescission of the Deed of Trust/Security Instrument unilaterally executed by BRIAN E MOONEY, regarding 436 Old Progress Road Moselle Mississippi, and recorded in Jones County, Mississippi on February 19, 2021, which may be found in county recorder's office, JONES COUNTY MISSISSIPPI, Doc #12100561. Said rescission was unilaterally executed on July 11, 2024, with all party(s) consent.

The party(s) to the contract have mutually agreed to rescind the contract due to "ignorant mistake" and error. The ignorant mistake goes to a material aspect of the contract. You are receiving this Notice, not because you are a party to the contract, because you will be directly impacted by the rescission of the party(s) because you have been benefiting from the contract without having put forth any consideration, and no consideration has been given by a promisee in order for you to be an "intended third-party beneficiary". Due to the fact that you are not a party to the contract and are not an intentional beneficiary or donee there is nothing for you to consent to, or object.

All rights/interest mortgaged, granted, and conveyed by the contract are returned to BRIAN E MOONEY forthwith, immediately and without delay. You are to return all monies you have received unjustly within twenty (20) days from the date you receive this Notice. For clarification, the date you receive this Notice is the date indicated by The United States Post Office on the PS3811, the green return receipt form.

BRIAN E MOONEY reserves the right to litigate against you should you fail to return said funds and you agree to be held liable for my legal fees and court costs, interest on the amounts due and owing from you and daily administrative fees. You may not contact us via phone or email. All communication is required to be conducted via The United States Post Office. Please note that we cannot give you legal advice as we are not legal persons; therefore, we recommend that you consult with an attorney regarding any questions you may have on this matter.

IF you feel that you have received this Notice in error and that you are injured/damaged by the rescission THEN you have twenty (20) days from the date you receive this Notice to bring forth any evidence that you put forth any consideration toward our contract and evidence of the actual injury/damage. We are happy to consider any claims of injury/damage that are brought forth within the expressed time limit.

By: _Brian E. Mooney_

For: BRIAN E MOONEY

**Notice:** *Use of Notary is for identification purposes only and shall not be construed against Declarant as adhesion, indicia, or submission to any foreign, domestic, or municipal jurisdiction or public venue.*

STATE OF __MS__                )

COUNTY OF __Jones__          )        **JURAT**

                                          )

Before me the undersigned, a Notary acting within and for the County of Jones and State of Mississippi personally appeared and known to me - OR - proved to me on the basis of satisfactory evidence to be the Man whose name is subscribed to the within instrument, to be the identical Man, found living, alive, well, and without incapacities who being duly sworn, declared the above to be true, correct, and not meant to mis-lead, to the best of their firsthand knowledge, understanding, and belief, by their free will and voluntary act and deed by placing their signatures on the foregoing document, executed the within instrument. Given under my hand and seal this __11th__ day of __July__, 2024.

This document has __2__ pages total.

GREG DICKERSON, Circuit Clerk

Notary signature

Carmen Sumrall

Printed Notary name

My commission expires __My Commission Expires January 5, 2028__

Seal

**Exhibit 10**

Letter from Nationstar dated December 2, 2024, rejecting Plaintiff's rescission.

*First Mention of Rescission 5mths* *they must file suit to object*

## mr. cooper®

CHANGING THE FACE OF HOME LOANS

P.O. Box 619098
Dallas, TX 75261-9741

**OUR INFO**
**ONLINE**
www.mrcooper.com

Brian E. Mooney
436 Old Progress Rd
Moselle, MS 39459

December 2, 2024

**ACCOUNT INFO**
**LOAN NUMBER:** 423549195
**CASE NUMBER:** 0011178628
**PROPERTY ADDRESS:**
436 Old Progress Rd
Moselle, MS 39459
**MORTGAGOR:**
Brian E. Mooney

Dear Brian E. Mooney:

We received your letter on November 22, 2024, and have put together this reply with information that we hope will alleviate your concerns. After an investigation, we are sharing with you what we found.

Please note that the Uniform Commercial Code ("UCC") does not apply to transactions involving residential mortgages. Therefore, any attempted rescission of your loan, and/or discharge of debt, is ineffective and hereby rejected. The terms of the related loan documents remain in effect and any failure to adhere to the terms of the loan documents will result in Mr. Cooper pursuing its remedies which include, but are not limited to, foreclosure of the property.

We have received your attempted discharge of debt, and/or placement of the lien, pursuant to the Uniform Commercial Code. Please be advised that the Uniform Commercial Code does not apply to transactions involving residential mortgages; therefore, your attempted rescission is ineffective and has been rejected. Furthermore, the timeframe to rescind has passed. In accordance with the Truth in Lending Act, a borrower has the right to rescind their loan within three (3) business days of the closing. Therefore, you would have needed to rescind the loan no later than Monday, February 17, 2021, as the loan closed on February 12, 2021.

Any attempted rescission of your loan, and/or tender of property, is ineffective and is hereby rejected. Any attempt at placing a UCC lien upon the residential property in your favor is also invalid and is hereby rejected.

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



970408.1-1.2

**Exhibit 11**

Notary presentment sent September 5, 2024, delivered September 9, 2024, with two non-response affidavits.

PLANTIFF
BRIAN E MOONEY
436 OLD PROGRESS ROAD
MOSELLE, MS 39459

Invoice Number: **1001**
Date: September 5, 2024

## Bill for Acceptance/Notice of Claim

RESPONDENT
NATIONSTAR d/b/a Mr. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

## INSTRUCTIONS

You are required to answer this Notary Presentment to the Notary's address below within **10 days**. The Notary Presentment serves as an official representative of the state, is a Ministerial Officer commissioned by the MISSISSIPPI SECRETARY OF STATE and is serving as an impartial witness in this matter. This is your one and only "due process" opportunity. **DO NOT IGNORE THIS** summons to respond to the charges listed below, or you risk having a **DEFAULT JUDGMENT** brought against you. **The charges against you are as follows:**

| Quantity | Charge | Penal Item | Total |
|---|---|---|---|
| 1 | Payments received since Contract was satisfied | $19,560.00 | $19,560.00 |
| 1 | Breach of contract | $79,639.00 | $79,639.00 |
| 3 | Damages | $79,639.00 | $238,917.00 |
| 1 | Conspiracy to Commit Fraud | $79,639.00 | $79,639.00 |
| | | Subtotal: | $417,755.00 |
| | | **Total due Immediately:** | **$417,755.00** |

**Direct all responses, documents and evidence to the notary witness at the address as follows:**

**TO:  Cassandra O Luvine**
    **100 Meadowbrook Drive**
    **Hattiesburg, MS 39402**

**Bill for Acceptance/Notice of Claim**
Page 1 of 1

September 5, 2024                 **Notary Presentment Letter**

                                                    Certified Mail receipt #:
                                                       70222410000297248640
                                         REF: Alleged Account #0423549195

Brian E Mooney
436 Old Progress Road
Moselle, MS 39459

NATIONSTAR d/b/a Mr. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

To whom it may concern,

- As it pertains to this document, NATIONSTAR MORTGAGE LLC d/b/a MR COOPER (hereinafter "Mr. Cooper"), is interchangeable with you, your, and like words which all mean NATIONSTAR MORTGAGE LLC d/b/a MR COOPER, Mr. Cooper.

- As it pertains to this document, BRIAN E MOONEY, I, me, my and like words, are interchangeable and means BRIAN E MOONEY.

The above-referenced account is presently in dispute. Information has come to light that has raised both questions and concerns as to the validity of the lien right of Mr. Cooper.

In order to satisfy these questions and verify the validity of the claim that Mr. Cooper has against the property located at the address above:

I demand to see the following:

1. A true and certified copy of the front and back of the Note; and,

2. An accurate and honorable accounts receivable and accounts payable ledger for Alleged Account #0423549195 per Generally Accepted Accounting Principles (GAAP) from the date of inception of Alleged Account # 0423549195 to the date you received this letter so BRIAN E MOONEY can verify the monies Mr. Cooper claims; and,

3. Complete chain of title for the Note; and,

4. Documentation on who funded the loan.

If I have not received evidence of the above requested information within **10 days** of your receipt of this correspondence, I can only conclude that the claim on this property by Mr. Cooper is not valid and unenforceable and that Mr. Cooper already sold the original note into an "asset backed securities pool", and failed to give credit to the account. Without a lawful proof of claim, Mr. Cooper would be participating in dishonor in commerce, grand theft, fraud, conspiracy, and racketeering.

If a valid claim cannot be produced (and I believe that no such proof exists), I demand that the above account reflects a "0" (zero) balance owed and that all monies paid to Mr. Cooper be returned and all

liens and encumbrances placed by Mr. Cooper be removed and canceled. If I do not receive a response in writing in this **10-day** period upon receipt of this correspondence, I will assume by your acquiescence that Mr. Cooper has no such evidence or claim. If the balance is not reduced to a "0" (zero) and the above allegations are corroborated, other severe penalties for dishonor in commerce, theft, racketeering, punitive damages, and the theft of public funds (damages are not limited to this list) will be incurred or assessed.

Prove your claim against me by providing to the Notary, at the Notary's address below, with __lawfully documented evidence__, that is certified true and correct in their unlimited commercial liability, while under oath, on and for the official record, under penalties of the law including perjury. This evidence must prove your case by preponderance or the greater weight of evidence and must answer each and every averment for proof of claim, point by point individually. If any and all points are not answered fully and accompanied by lawfully documented evidence, as provided herein, that will be default on your part. Non-response according to the conditions herein will be default.

Incomplete answers and/or lack of documented evidence, as outlined herein will be a default. If Mr. Cooper and/or it's assigned legal representative fails to respond as outlined herein, within **10 days**, this will be a default. Non-response will be a self-executing confession of judgment, by you, and will be a complete and full agreement with all statements, terms, and conditions of this presentment.

Per the account statement document sent to BRIAN E MOONEY by Mr. Cooper, this alleged loan shows a $0.00 principal balance on 03/04/2021.

Pursuant to the Mortgage/Security Instrument, Mr. Cooper was required to "cancel" this Security Instrument in the registry of deeds where the Property lies; however, Mr. Cooper did not record the release, and is therefore in breach of contract, see Clause 23:

"Clause **23. RELEASE.** Upon payment of all sums secured by this Security Instrument, lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation cost. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable law."

Per a review of the County Recorders records Mr. Cooper did not file a "release" in the registry of deeds where the property lies. Mr. Coopers failure to comply with Clause 23 of the Security Instrument has caused great harm, damage, and loss to BRIAN E MOONEY.

Attached please find my invoice for your Breach of Contract, treble damages, conspiracy to commit fraud and all monies paid to Mr. Cooper by BRIAN E MOONEY. In addition to your immediate payment of the invoice, you are required to cure your Breach of Contract within **TEN (10) days** by sending me, and the Registry of Deed's Office, the required release.

**Silence is Acquiescence**

**IF** you choose to ignore this Notary Presentment **Then:**

    a.  You agree to waive all future remedy
    b.  You agree you are in Breach of Contract
    c.  You agree you have conspired to commit fraud
    d.  You agree you owe the full amount due
    e.  You agree to have a judge sign the release
    f.  You agree to waive all rights and defenses

g. You agree to an Agreed Nihil Dicit Judgement

This letter is respectfully submitted via a Notary with a registered returned receipt requested, that any and all response to this letter be made in writing to the mailing address for the Notary.

## INSTRUCTIONS

You are required to answer this Notary Presentment to the Notary's address below within **10 days**. The Notary Presentment serves as an official representative of the state, is a Ministerial Officer commissioned by the MISSISSIPPI SECRETARY OF STATE and is serving as an impartial witness in this matter. This is your one and only "due process" opportunity. **DO NOT IGNORE THIS** summons to respond to the charges listed below, or you risk having a **DEFAULT JUDGMENT** brought against you.

Thank you for your kind consideration and response.

*Brian E. Mooney*

Brian E Mooney

**Direct all responses, documents and evidence to the notary witness at the address as follows:**

**TO:  Cassandra O Luvine**
     **100 Meadowbrook Drive**
     **Hattiesburg, MS 39402**

State of MISSISSIPPI          )
                             ) ss.
County of COVINGTON           )


On the ___5ᵗʰ___ Day of September, 2024 A.D., the above signed man personally appeared before me and proved to me on the basis of satisfactory evidence and identification to be the man whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the living person or the entity upon behalf of which the person acted, signed under oath or asseveration, and accepts the truth thereof.

*Cassandra O Luvine*          Seal:

Cassandra O Luvine
Commissioned in Covington County, Mississippi
MY commission expires on February 12, 2028
Commission Number: 440754

State of Mississippi
CASSANDRA O LUVINE, Notary Public
Covington County
My Commission Expires February 12, 2028
Commission Number 440754

## STATE OF MISSISSIPPI COUNTY OF JONES
## AFFIDAVIT

**September 5, 2024**

**To Whom It May Concern:**

I, BRIAN E MOONEY, hereinafter "Affiant", am of legal age, have **first-hand knowledge** of the facts contained herein, am competent to state the following matters, that they are true, correct and complete, presented in good faith, and not intended to mislead. Affiant hereby declare and acknowledge that this Affidavit is for the purpose of notifying the defined "lender", NATIONSTAR MORTGAGE LLC dba MR. COOPER (hereinafter "MR. COOPER"), as to the following:

1. The "Security Deed", a.k.a. "Security Instrument", see copy attached and fully incorporated herein, which refers to Loan # 0423549195, dated 02/12/2021, recorded on 02/19/2021 DOC # 12100561 in the County of Jones, State of Mississippi. Property Address: 436 Old Progress Road Moselle, MS 39459 (hereinafter "CONTRACT"); and,

2. Per the account statement documents sent to Affiant by Mr. Cooper, this alleged loan shows a $0.00 principal balance on 03/04/2021; and,

3. Affiant believes that MR. COOPER's Loan #: 0423549195 was settled on 03/04/2021; and,

4. Pursuant to CONTRACT "Clause 23. RELEASE. Upon payment of all sums secured by this Security Instrument, lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation cost. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable law."; and,

5. To date, MR. COOPER has failed or refused to file RELEASE per CONTRACT *"Upon payment of all sums secured by this Security Instrument, lender shall cancel this Security Instrument"*; and,

6. Per a review of the County Recorders records, MR. COOPER did not file a "release" of CONTRACT in the registry of deeds in STATE OF MISSISSIPPI, COUNTY OF JONES; and,

7. MR. COOPER's failure/refusal to comply with Clause 23 of the "Security Instrument" CONTRACT has caused great harm, damage and loss to Affiant; and,

8. MR. COOPER has failed/refused to comply with Affiants request to view the original wet ink signature promissory Note; and,

9. MR. COOPER has failed/refused to comply with Affiants request to view a true and certified copy of the front and back of the note; and,

10. MR. COOPER has failed/refused to comply with Affiants request to view the accounts payable and accounts receivable for this alleged loan; and,

11. MR. COOPER has failed/refused to comply with Affiants request to view the chain of title for the Note; and,

12. MR. COOPER has failed/refused to comply with Affiants request to view documentation on who funded the loan; and,

13. Brian E Mooney's domicile is 436 Old Progress Road, Moselle, Mississippi; and,

14. Further, Affiant sayeth naught.

**IF** this affidavit is not rebutted point by point by MR. COOPER itself, sworn before a public notary having **first-hand** knowledge thereof, within ten (10) days upon receipt, **THEN** MR. COOPER waives its rights to make any claims against Affiant immediately and these facts herein are proven and confirmed as true.

Executed with clean hands and in good faith without recourse

By: *Brian E. Mooney*

For: BRIAN E MOONEY

## CERTIFICATION

I certify under penalty of perjury under the laws of the United States of America pursuant to 28 USC §.1746 (1) that the foregoing is true and correct.

Executed on this 5th day of September 2024.

Respectfully executed with clean hands and in good faith, without recourse

By: *Brian E Mooney*, Affiant

Brian E Mooney

AFFIDAVIT OF BRIAN E MOONEY
Page 2 of 3

*Notice: Use of Notary is for identification purposes only and shall not be construed against Declarant as adhesion, indicia, or submission to any foreign, domestic, or municipal jurisdiction or public venue.*

STATE OF MISSISSIPPI              )
                                  )        **JURAT / ACKNOWLEDGMENT**
                                  )
COUNTY OF COVINGTON               )

Before me the undersigned, *Cassandra O. Luvine* a Notary acting within and for the County of COVINGTON and State of MISSISSIPPI, personally appeared and known to me - OR - proved to me on the basis of satisfactory evidence to be Brian E Mooney, the Man whose name is subscribed to the within instrument, to be the identical Man, found living, alive, well, and without incapacities who being duly sworn, declared the above to be true, correct, and not meant to mis-lead, to the best of his firsthand knowledge, understanding, and belief, by his free will and voluntary act and deed by placing his signatures on the foregoing document, executed the within instrument. Given under my hand and seal this *5th* day of *September*, 2024.

WITNESS my hand and official seal.

*Cassandra O Luvine*

Notary signature                          Seal

*Cassandra O Luvine*

Printed Notary name

My commission expires *February 12 2028*

State of Mississippi
CASSANDRA O LUVINE, Notary Public
Covington County
My Commission Expires February 12, 2028
Commission Number 440754

Note: Notary Public is not an attorney licensed to practice law in the State of Mississippi and has not given legal advice or accepted fees for legal advice; provided no assistance in the preparation of the above referenced documents, and has no interest in any issue referenced therein. Notary is NOT a party to this action and is ONLY acting in an authorized capacity as witness and liaison to communications between parties.

**AFFIDAVIT OF NOTARY PRESENTMENT**
**CERTIFICATION OF MAILING**

State of MISSISSIPPI   )
         ) ss.
County of COVINGTON  )

On this _5th_ day of ___September___, 2024, for the purpose of verification, I, the undersigned Notary Public, being commissioned in the County and State noted above, do certify that Brian E Mooney appeared before me with the following documents listed below. I, the undersigned Notary personally verified that these documents, as listed herein, were placed in an envelope and sealed by my hand, and sent to Receiver(s) (package requiring signature confirmation PS Form 3811) as listed herein below and mailed by my hand via United States Postal Service as noted below.

**Receiver(s) Name/ Address:**

NATIONSTAR d/b/a MR. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

**Packages:   1**

**Certified Mail #   70222410000297248640**

**Return Receipt #   9590940277412152747205**

| Package 1 Docs: | Number of Pages: 28 |
|---|---|
| 1.  Presentment of Bill for Acceptance/Notice of Claim | 1 |
| 2.  Notary Presentment for Breach of Contract | 3 |
| 3.  Brian Mooney Affidavit of Truth | 3 |
| 4.  Affidavit of Notary Presentment Certificate of Mailing | 2 |
| 5.  Original Contract | 19 |

All Evidence of documents to Receiver(s) who this content may concern, you are hereby officially served and notified. If you feel a negative averment of rebuttal of due process is in order for any of the documents and or statements listed herein, which is of concern to you and your office, to please respond in writing within **Ten (10)** days of receipt to **Notary Acceptor/Witness** at addressed below. If a response is not received within **Ten (10) days**, it will be considered that you and your office is in compliance with all the documentation and statements herein. Upon such time, I have been instructed to complete a Notary Certified Verified statement of Facts of your acquiescence/dishonor/default/agreement, and to record it in the County of Jones State of Mississippi public records office and or other public office within the same union. Thank you in Advance.

Cassandra O Luvine
100 Meadowbrook Drive
Hattiesburg, MS 39402

## CAVEAT

If there is a dispute, the only due process and remedy open for you is on the issues of whether or not you:

1. RESPONDED TIMELY BY REGISTERED OR CERTIFIED U.S. MAIL
2. RESPONSE DONE BY AND IN AFFIDAVIT FORM
3. THAT AFFIDAVIT BE QUALIFIED UNDER UNLIMITATED LIABILTY COMMERCIAL OATH AND VERIFICATION
4. ANSWER POINT FOR POINT EACH AND EVERY ISSUE IN SPECIFICITY TO VERIFY YOUR NEGITIVE CLAIM, REBUTTAL OR REFUSAL OF SAID ACTION PRESENTED TO YOU HEREIN BY BRIAN MOONEY
5. ENTER EVIDENCE AND POINTS AND AUTHORITIES
6. THAT AFFIDAVIT BE SIGNED UNTER TITLE 28 PENALTIES OF PERJURY

NOTE: THIS DOCUMENT WILL BE MADE PART OF THE PUBLIC RECORD UNDER RULE 902 (4), (8) OF THE FEDERAL RULES OF EVIDENCE AND WILL BE USED TO ESTABLISH AN ADMINISTRATIVE RECORD WHICH WILL BE PROVIDED AS EVIDENCE IN ANY JUDICIAL PROCEEDINGS AT LAW OR EQUITY REGARDING THIS ISSUE.

WITNESS my hand and official seal.

*Cassandra O Luvine*

Notary signature

Seal

State of Mississippi
CASSANDRA O LUVINE, Notary Public
Covington County
My Commission Expires February 12, 2028
Commission Number 440754

*Cassandra O Luvine*

Printed Notary name

My commission expires *February 12, 2028*

Note: Notary Public is not an attorney licensed to practice law in the State of Mississippi and has not given legal advice or accepted fees for legal advice; provided no assistance in the preparation of the above referenced documents, and has no interest in any issue referenced therein. Notary is NOT a party to this action and is ONLY acting in an authorized capacity as witness and liaison to communications between parties.

**AFFIDAVIT OF NOTARY PRESENTMENT**
Page 2 of 2

# Notary Affidavit of Non-Response

State of Mississippi     )
                        ) ss.
County of Covington     )

On this 11th day of _October_____, 2024, I, the undersigned Notary Public, duly commissioned and sworn in the State of Mississippi, do hereby certify that, as of the date hereof, no response has been received regarding the specific documents requested in the Notary Presentment Letter sent via Certified Mail, tracking number 70222410000297248640. The only correspondence received to date is a letter from Nationstar Mortgage LLC, doing business as Mr. Cooper, indicating that a response would be provided by September 23, 2024, accompanied by a payoff statement. Additionally, United States Postal Service Form PS 3811, Domestic Return Receipt, confirming delivery on September 9, 2024, and bearing the signature and stamp of Jeffrey Kobow, has been received. The Notary Presentment Letter was addressed to:

NATIONSTAR d/b/a Mr. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

Reference: Alleged Account Number 0423549195

By: _Cassandra O. Luvine_          Date: _October 11th 2024_

Cassandra O. Luvine
Commissioned in Covington County, Mississippi   Seal:
My commission expires on February 12, 2028
Commission Number: 440754

> State of Mississippi
> CASSANDRA O LUVINE, Notary Public
> Covington County
> My Commission Expires February 12, 2028
> Commission Number 440754

NOTE: THIS DOCUMENT WILL BE MADE PART OF THE PUBLIC RECORD UNDER RULE 902 (4), (8) OF THE FEDERAL RULES OF EVIDENCE AND WILL BE USED TO ESTABLISH AN ADMINISTRATIVE RECORD WHICH WILL BE PROVIDED AS EVIDENCE IN ANY JUDICIAL PROCEEDINGS AT LAW OR EQUITY REGARDING THIS ISSUE.

AFFIDAVIT OF NON-RESPONCE
NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL; NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT.
Page 1 of 1

Case: 34CH1:25-cv-00107    Document #: 15-11    Filed: 08/01/2025    Page 11 of 26

# AFFIDAVIT OF NOTARY PRESENTMENT
## CERTIFICATION OF MAILING

State of Mississippi      )
                          ) ss.
County of Covington     )

On this *11th* day of *October*, 2024, for the purpose of verification, I, the undersigned Notary Public, being commissioned in the County and State noted above, do certify that Brian E Mooney appeared before me with the following documents listed below. I, the undersigned Notary personally verified that these documents, as listed herein, were placed in an envelope and sealed by my hand, and sent to Receiver(s) (package requiring signature confirmation PS Form 3811) as listed herein below and mailed by my hand via United States Postal Service as noted below:

NATIONSTAR d/b/a Mr. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

Reference: Alleged Account Number 0423549195

**Package:**    **2**

**Certified Mail #**     **70222410000297248718**

**Return Receipt #**    **95909402774121527471681**

**Please direct all responses, documents, and evidence to the notary witness at the following address:**

Cassandra O. Luvine
100 Meadowbrook Drive
Hattiesburg, MS 39402

| List of Documents Mailed: | Number of Pages: 28 |
|---|---|
| 1. Affidavit of Non-Response | 1 |
| 2. Certificate of Mailing | 2 |
| 3. Copy of First Presentment Letter Package | 25 |

NOTARY PRESENTMENT CERTIFICATION OF MAILING
NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL; NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT.

Witness my hand and official seal

By: _Cassandra O. Luvine_          Date: _October 11, 2024_

Cassandra O. Luvine
Commissioned in Covington County, Mississippi     Seal:
My commission expires on February 12, 2028
Commission Number: 440754

State of Mississippi
CASSANDRA O LUVINE, Notary Public
Covington County
My Commission Expires February 12, 2028
Commission Number 440754

NOTE: THIS DOCUMENT WILL BE MADE PART OF THE PUBLIC RECORD UNDER
RULE 902 (4), (8) OF THE FEDERAL RULES OF EVIDENCE AND WILL BE USED TO
ESTABLISH AN ADMINISTRATIVE RECORD WHICH WILL BE PROVIDED AS
EVIDENCE IN ANY JUDICIAL PROCEEDINGS AT LAW OR EQUITY REGARDING THIS
ISSUE.

NOTARY PRESENTMENT CERTIFICATION OF MAILING
NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL; NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT.

Page 2 of 2

# AFFIDAVIT OF NOTARY PRESENTMENT
# CERTIFICATION OF MAILING

State of Mississippi )
                   ) ss.
County of Covington )

On this **2** day of **November**, 2024, for the purpose of verification, I, the undersigned Notary Public, being commissioned in the County and State noted above, do certify that Brian E Mooney appeared before me with the following documents listed below. I, the undersigned Notary personally verified that these documents, as listed herein, were placed in an envelope and sealed by my hand, and sent to Receiver(s) (package requiring signature confirmation PS Form 3811) as listed herein below and mailed by my hand via United States Postal Service as noted below:

NATIONSTAR d/b/a Mr. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

Reference: Alleged Account Number 0423549195

**Package:   3**

**Certified Mail #**    70222410000297248817

**Return Receipt #**    9590940277412152747083

**Please direct all responses, documents, and evidence to the notary witness at the following address:**

Cassandra O. Luvine
100 Meadowbrook Drive
Hattiesburg, MS 39402

**List of Documents Mailed:**                                      **Number of Pages: 31**

| | | |
|---|---|---|
| 1. | Second Affidavit of Non-Response | 1 |
| 2. | Certificate of Mailing | 2 |
| 3. | Copy of First and Second Presentment Letter Package | 28 |

Witness my hand and official seal.

By: _Cassandra O Luvine_                    Date: _November 2. 2024_

Cassandra O. Luvine                          Seal:
Commissioned in Covington County, Mississippi
My commission expires on February 12, 2028
Commission Number: 440754

State of Mississippi
CASSANDRA O LUVINE, Notary Public
Covington County
My Commission Expires February 12, 2028
Commission Number 440754

NOTE: THIS DOCUMENT WILL BE MADE PART OF THE PUBLIC RECORD UNDER
RULE 902 (4), (8) OF THE FEDERAL RULES OF EVIDENCE AND WILL BE USED TO
ESTABLISH AN ADMINISTRATIVE RECORD WHICH WILL BE PROVIDED AS
EVIDENCE IN ANY JUDICIAL PROCEEDINGS AT LAW OR EQUITY REGARDING THIS
ISSUE.

# SECOND NOTARY AFFIDVIT OF NON-RESPONCE

State of Mississippi      )
                       ) ss.
County of Covington    )

On this __2__ day of __November_____, 2024, I, the undersigned Notary Public, duly commissioned and sworn in the State of Mississippi, do hereby certify that, as of the date hereof, no response has been received regarding the specific documents requested in the Notary Presentment Letter sent via Certified Mail, tracking number 70222410000297248718. United States Postal Service Form PS 3800, Certified Mail Receipt, confirming delivery on October 21, 2024. The Notary Presentment Letter was addressed to:

NATIONSTAR d/b/a Mr. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

Reference: Alleged Account Number 0423549195

By: _Cassandra O Luvine_         Date: _November 2, 2024_

Cassandra O. Luvine
Commissioned in Covington County, Mississippi    Seal:
My commission expires on February 12, 2028
Commission Number: 440754

> State of Mississippi
> CASSANDRA O LUVINE, Notary Public
> Covington County
> My Commission Expires February 12, 2028
> Commission Number 440754

NOTE: THIS DOCUMENT WILL BE MADE PART OF THE PUBLIC RECORD UNDER RULE 902 (4), (8) OF THE FEDERAL RULES OF EVIDENCE AND WILL BE USED TO ESTABLISH AN ADMINISTRATIVE RECORD WHICH WILL BE PROVIDED AS EVIDENCE IN ANY JUDICIAL PROCEEDINGS AT LAW OR EQUITY REGARDING THIS ISSUE.

STATE OF MISSISSIPPI )     **CERTIFICATE OF**
                         ) ss  **ADMINISTRATIVE JUDGMENT**

COUNTY OF JONES )

**CLAIM When Recorded Mail To:**
**Notary Presenter/Acceptor/Witness**
Cassandra O Luvine
100 Meadowbrook Drive
Hattiesburg, MS 39402

## ADMINISTRATIVE JUDGMENT

NATIONSTAR MORTGAGE LLC d/b/a MR COOPER, with address of 8950 Cypress Waters Blvd., Coppell, TX 75019 (hereinafter "MR COOPER"), is hereby found in default and, as such, subject to contractual obligations under the Final Determination/Administrative Judgment in Nihil Dicit per Notary Presentment Letter and Presentment of Bill for Acceptance/Notice of Claim No. 1739462, dated September 5, 2024 (hereinafter "PRESENTMENT").

The PRESENTMENT was duly executed by Brian E Mooney, a single man and agent of BRIAN E MOONEY at c/o 436 Old Progress Road, Moselle, Mississippi 39459, and by Cassandra O. Luvine, Notary Public, at c/o 100 Meadowbrook Drive, Hattiesburg, Mississippi (hereinafter "Notary"). The Notary acts solely in an authorized capacity as a witness and facilitator for communication between the Parties and is not a party to this action.

Page 1 of 7

PRESENTMENT was sealed in an envelope and mailed by my hand on September 5, 2024, by the undersigned Notary via USPS Certified Mail No. 7022 2410 0002 9724 8640 and was received by MR COOPER on September 9, 2024, per USPS PS Form 3800. MR COOPER has not responded to PRESENTMENT.

A Notary Affidavit of Non-Response was executed on October 11, 2024, and mailed to MR COOPER via USPS Certified Mail No. 7022 2410 0002 9724 8718, received by MR COOPER on October 21, 2024. MR COOPER has not provided a response to the PRESENTMENT or to the Notary Affidavit of Non-Response.

A Second Notary Affidavit of Non-Response was executed on November 2, 2024, and mailed to MR COOPER via USPS Certified Mail No. 7022 2410 0002 9724 8817, received on November 12, 2024. To date, MR COOPER has neither responded to PRESENTMENT nor to the Second Notary Affidavit of Non-Response.

Due to Non-Response and Non-Performance, MR COOPER is deemed to have acknowledged breach of contract and has no claim to the Security Instrument dated February 12, 2021, Instrument No. 12100561, recorded on February 19, 2021, in the Office of the Clerk of Jones County, Mississippi. This Security Instrument was executed by Brian E. Mooney, a Single Man and agent of BRIAN E MOONEY,

regarding private land with improvements located at 436 Old Progress Road, Moselle, Mississippi, legally described as follows:

**Commence at the northeast corner of the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the forty line 1111.29 feet, thence South 135.05 feet to and for the POINT OF BEGINNING: run thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West 152.00 feet to an iron pin; thence North 286.50 feet back to the point of the beginning, said parcel comprising 1.0 acre, more or less and being situated in the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County Mississippi.; and,**

**NOTICE OF DISHONOR AND DEFAULT**

A Certificate of Notice of Dishonor and Default for Non-Performance and Non-Response was sent to MR COOPER on November 30, 2024. As of November 30, 2024, MR COOPER has failed to respond to the Notary's notifications.

**JUDGMENT:** Whereupon, the Notary signing below, for the reason consent by non-response and non-performance, does publicly and solemnly certify the consent of all party(s) it may concern by reason of default, dishonor, non-response, non-performance and stipulation Therin.

MR COOPER agrees to confessions of Judgement as stated in PRESENTMENT contract; and,

1. MR COOPER consents to Confession of Judgment as per PRESENTMENT.

2. MR COOPER waives all future Administrative Remedies.

3. MR COOPER acknowledges breach of contract.

4. MR COOPER is in conspiracy to commit fraud.

5. MR COOPER owes the invoiced amount in full, attached hereto as Exhibit A.

6. MR COOPER agrees to an Agreed Nihil Dicit Judgment for the invoiced amount plus penalties totaling $417,755.00, due immediately.

7. MR COOPER consents to judicial issuance of any required release.

8. MR COOPER asserts no equitable interest or title in the property.

9. Brian E Mooney is the sole holder of equitable interest or title in the property.

10. MR COOPER waives all rights and defenses in any legal proceedings.

The following information is for reference only, and bring to bear additional details that applies to PRESENTMENT contract hereinafter "Contract":

MR COOPER's Contract obligation on account number 1739462 with total due immediately to BRIAN E MOONEY in the amount of $417,755.00 see attached bill

Page 4 of 7

EXHIBIT A and fully incorporated herein; and, if not paid in full within three (3) days, the daily fee of $10,000 will be charged to MR COOPER from the date it received first and original PRESENTMENT Contract and Bill due immediately, until payment in full is made to BRIAN E MOONEY; and balance is reduced to zero (0) at which time account will be closed.

Payments are to be made "Pay to the order of BRIAN E MOONEY":

BRIAN E MOONEY

c/o 436 Old Progress Road

Moselle, MS 39459

BRIAN E MOONEY's agent and representative may be contacted directly at (601) 310-6078 for all questions, or help with ACH / Wire payment transfers. Feel free to leave a voicemail with detailed contact information. Otherwise, BRIAN E MOONEY may be contacted via email: ifixem75@gmail.com or via United States Postal Service to above-mentioned address.

BRIAN E MOONEY does not waive rights to file subsequent dispositive motions as further egregious violations and information come to be known as appropriate. BRIAN E MOONEY is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under any documents, alleged account, security instruments, negotiable instruments, at law or in equity, all of which rights and remedies are expressly reserved without prejudice and without recourse.

Page 5 of 7

This is BRIAN E MOONEY's final attempt to demonstrate its desires to resolve this matter quickly, honorably and bring it to an equitable remedy for both Party(s). MR COOPER's failure to cure its breach and provide fair and equitable remedy has caused great harm to BRIAN E MOONEY. BRIAN E MOONEY may bring additional legal action against MR COOPER in Federal Court for Securities Fraud where BRIAN E MOONEY will request from its Honorable Court to enter an order of equitable remedy on the aforementioned facts and also grant BRIAN E MOONEY compensatory damages, and punitive damages, and restitution.

### OFFICIAL CERTIFICATE OF CONSENT OF JUDGMENT

By: *Brian Mooney*

Brian E Mooney
Authorized Representative

Page 6 of 7

**Notice:** Use of Notary is for identification purposes only and shall not be construed against Declarant as adhesion, indicia, or submission to any foreign, domestic, or municipal jurisdiction or public venue.

STATE OF MISSISSIPPI   )

)   **JURAT / ACKNOWLEDGMENT**

COUNTY OF JONES   )

Before me the undersigned Notary acting within and for the County of JONES and State of MISSISSIPPI, personally appeared and known to me - OR - proved to me on the basis of satisfactory evidence to be Brian E Mooney, the Man whose name is subscribed to the within instrument, to be the identical Man, found living, alive, well, and without incapacities who being duly sworn, declared the above to be true, correct, and not meant to mis-lead, to the best of his firsthand knowledge, understanding, and belief, by his free will and voluntary act and deed by placing his signatures on the foregoing ADMINISTRATIVE JUDGEMENT, executed within. Given under my hand and seal this _30th_ day of _November_____, 2024.

This document has _9_ pages total.

TESTIMONY

In testimony to the above, I have hereunto signed my name and attached my official seal of office.

Notary Presenter/Acceptor/Witness
Cassandra O Luvine
100 Meadowbrook Drive     Seal
Hattiesburg, MS 39402

By: _Cassandra O Luvine_
   Cassandra O Luvine

State of Mississippi
CASSANDRA O LUVINE, Notary Public
Covington County
My Commission Expires February 12, 2028
Commission Number 440754

Page 7 of 7

# AFFIDAVIT OF NOTARY PRESENTMENT
## CERTIFICATION OF MAILING

State of Mississippi     )
                   ) ss.
County of Covington    )

On this 30ᵗʰ day of __November__ 2024, for the purpose of verification, I, the undersigned Notary Public, being commissioned in the County and State noted above, do certify that Brian E Mooney appeared before me with the following documents listed below. I, the below signed notary, personally verified that these documents were placed in an envelope and sealed by me. They were sent by United States Post Office Certified Mail tracking Number 70222410000297249043 and Domestic Return Receipt Number 9590940277412152746949 to the 3rd Party Defendants Name and address listed below:

NATIONSTAR d/b/a Mr. COOPER
8950 Cypress Waters Blvd
Coppell, TX 75019

Reference: Alleged Account Number 0423549195

     **Package: 4**
     **Certified Mail #**    70222410000297249043
     **Return Receipt #**   9590940277412152746949

LIST OF DOCUMENTS MAILED
1. AFFIDAVIT OF NOTARY PRESENTMENT CERTIFICATE OF MAILING
2. NOTICE OF DEFAULT, NOTICE OF FINAL DETERMINATION AND JUDGMENT IN NIHIL DICIT
3. TRUE BILL

     **Please direct all responses, documents, and evidence to the notary witness at the following address:**

**TO:** Cassandra O Luvine
       100 Meadowbrook Drive
       Hattiesburg, MS 39402

WITNESS my hand and official seal.

_Cassandra O Luvine_
Cassandra O. Luvine
Commissioned in Covington County, Mississippi     **Seal:**
My commission expires on February 12, 2028
Commission Number: 44075

> State of Mississippi
> CASSANDRA O LUVINE, Notary Public
> Covington County
> My Commission Expires February 12, 2028
> Commission Number 440754

NOTE: This document will be made part of the public record under rule 902 (4), (8) of the Federal Rules of Evidence and will be used to establish an administrative record which will be provided as evidence in any judicial proceedings at law or equity regarding this issue.

Page 1 of 1

EXHIBIT A

**DATE: 11/30/2024**

## THE OFFICE OF

## BRIAN E MOONEY
**436 Old Progress Road**
**Moselle, Mississippi 39459**

| ACCOUNT: 1759402 | ACCOUNT STATUS |
|---|---|

Nationstar Mortgage LLC dba Mr. Cooper
8950 Cypress Waters Blvd
Coppell, TX 75019

Your account is overdue, and immediate payment is required. If payment is not received within three (3) days of your receipt of this notice, a daily fee of $10,000 will be assessed on the account. This fee will apply retroactively from the date the account received the first and original presentment contract and will continue to accrue until full payment is made to Brian E. Mooney.

| QUANTITY | DESCRIPTION | ITEM AMOUNT | TOTAL |
|---|---|---|---|
| 1 | BREACH OF CONTRACT | $79,639.00 | $79,639.00 |
| 3 | DAMAGES | $79,639.00 | $238,917.00 |
| 1 | CONSPIRACY TO COMMIT FRAUD | $79,639.00 | $79,639.00 |
| 1 | MONIES PAID SINCE CONTRACT WAS SATISFIED | $19,560.00 | $19,560.00 |
| | SUBTOTAL | | $417,755.00 |
| | SALES TAX | | |
| | TOTAL DUE IMMEDIATELY | | $417,755.00 |

Thank you for your business!!

For help or questions, contact me at jfixem75@gmail.com or 601-310-6078

EXHIBIT A

# OVERDUE

**DATE: 12/30/2024**

**THE OFFICE OF**

**BRIAN E MOONEY**
**436 Old Progress Road**
**Moselle, Mississippi 39459**



| ACCOUNT #1759462 | ACCOUNT STATUS | OVERDUE |
|---|---|---|

Nationstar Mortgage LLC dba Mr. Cooper
8950 Cypress Waters Blvd
Coppell, TX 75019

Your account is overdue, and immediate payment is required. If payment is not received within three (3) days of your receipt of this notice, a daily fee of $10,000 will be assessed on the account. This fee will apply daily and will continue to accrue until full payment is made to Brian E. Mooney.

| QUANTITY | DESCRIPTION | PENAL AMT | TOTAL |
|---|---|---|---|
| 1 | BREACH OF CONTRACT | $79,639.00 | $79,639.00 |
| 3 | DAMAGES | $79,639.00 | $238,917.00 |
| 1 | CONSPIRACY TO COMMIT FRAUD | $79,639.00 | $79,639.00 |
| 1 | MONIES PAID SINCE CONTRACT WAS SATISFIED | $19,560.00 | $19,560.00 |
| 114 | PENALTY | $10,000.00 | $114,000.00 |
| | SUBTOTAL | | $531,755.00 |
| | SALES TAX | | |
| | TOTAL DUE IMMEDIATELY | | $531,755.00 |

Thank you for your business!!

For help or questions, contact me at jfixem75@gmail.com or 601-310-6078

**Exhibit 12**

Transcript of phone call with Mr. Cooper representative "Beth" confirming they have only a copy of the Note, and Plaintiff has the original.

Mr. cooper no original 3/3/2025

**Transcript of Phone Call Between Brian Mooney and Beth Johnson, Mr. Cooper Representative**
**Date:** [Insert Date]

**MC Beth:** [00:00:01] Thank you for calling Mr. Cooper. My name is Beth. I'm based in Arizona. How can I help you today? I have to sit with Mr. Cooper.

**MC Vanessa:** I have customer Brian Mooney on the line. Fully verified. In regard to escalation, he wants to speak to an escalated representative to help him assist in regards the account today. Let me know when you're ready for the loan number. Is there any account with what? Mr. money is on the line and he is wanting to find a original wet ink note. I advised that we can send the copy that's on file, but unfortunately, I don't have access to an original wet ink note for the loan. He is on the call to be able to speak with. Did you want the phone number?

**MC Beth:** Why is this escalating? It's not in the system. It wouldn't be in the system. The only person that had the wet ink would have been him originally when he signed for it. What's the escalation?

**Brian Mooney:** [00:01:01] You guys don't have a have the original wet ink note.

**MC Beth:** [00:01:05] You would be the only one that knew you would have got it when you first got your house. We just have a copy of it.

**Brian Mooney:** [00:01:12] Well, I never received anything. All of my documents are blank. That's what the lady left me at.

**MC Beth:** [00:01:18] When you went to closing on your property and the documents you were left were blank, then you'd need to reach out to the title company. That you would have gotten those when you walked out of title with the key to the property.

**Brian Mooney:** [00:01:32] She came to my house to sign the documentation. The notary did.

Page 1 of 3

**MC Beth:** [00:01:37] I don't know. Are you talking about a modification, or are you talking about your original documentation when you first purchased your home?

**Brian Mooney:** [00:01:45] Original documentation. You guys are supposed to have the original note and mortgage.

**MC Beth:** [00:01:53] We have a copy of your original note and we have a copy of your mortgage. Did you want me to send that to you? And how would you like me to send it? But the original information that you got the day you purchased your home, you would have walked out of title with them.

**Brian Mooney:** [00:02:07] I have approximately 16 copies of the note, and it's not what I'm asking for. What I'm asking for is a true and certified copy, under the penalty of perjury of the front and back of the note. And accurate and honorable

**MC Beth:** [00:02:27] Right. You get that on closing, sir. Did you misplace it? I can send you our copy. That's not a problem. If you've misplaced your original that you've got when you purchase your home, I can gladly send you the copy that we have in our files that has been with your mortgage the entire time. Do you want me to mail it or email? This was your responsibility. You got it when you signed for the home at title. That is how it works.

**Brian Mooney:** [00:02:55] No, ma'am. Yes, ma'am. Post. You have the original wet ink note and the mortgage that I allegedly.

**MC Beth:** [00:03:04] Okay. Yeah. All right. How can I help you today, Brian? What do you need for me? I mailed an email that copies to you so you can have it for your records. The original signature. Like I said repeatedly. You got when you walked out of the title company the day you bought your house. Would you like help in bringing your loan current and getting yourself out of foreclosure? Is there something else I can help you with?

**Brian Mooney:** [00:03:26] I would like for you guys to do what I've been asking you for do for seven months. Produce the original documents showing that you have standing to enforce this foreclosure.

**MC Beth:** [00:03:38] It absolutely do. No problem. I sent you the writers as well with the loan transfer. Do you want them mailed or emailed?

**Brian Mooney:** [00:03:45] You can email it to me if you want.

**MC Beth:** [00:03:48] All right. Because we've only been making payments on a mortgage that wasn't due for all these years. Because you didn't have a documentation. Come on. Seriously, I can help you. There's programs out there to help you. But if this is just about your choosing, you know? I'll send you the information there. But I wish you the best of luck. All right. But there are programs. The VA does offer you assistance.

**Brian Mooney:** [00:04:12] What was your name again?

**MC Beth:** [00:04:15] My name is Beth. My last name is Johnson. My extension here at Mr. Cooper is 6034. Brian. Gladly help you, but I can't help with this situation because you have those documents. You sitting here taking that tone with me because you lost them. Not something I can help you with Beth, I just wanted to clarify. Am I able to disconnect from the call I was trying to make? Sure. And give it as long as I can go disconnect him. Because you transferred it over. Very odd. So I don't know what you did. I don't know.

**Brian Mooney:** [00:04:51] Okay. Thank you, ladies, for your help.

**MC Beth:** [00:04:55] All right. Good luck to you, Brian.

**Brian Mooney:** [00:04:56] Y'all too.

**MC Beth:** [00:05:00] Okay.

**Exhibit 13**

Transcript of call with Mississippi Secretary of State confirming Adams & Edens merged out of Mississippi in September 2017.

.

SOS no Adams & Edens 02/28/2025

**Brian:** [00:00:01] Hello.

**Christine:** [00:00:02] Hey, Mr. Mooney, it's Christine from Secretary of State's office. So everything is copacetic. It's all right here. And it shows in the merger documents. And I'll go back. And I think it was in 2014 is when they did an amendment to change the name from Adams and Edens to the Wilson and Associates. And so they basically had two different firms. One was in Arkansas

**Brian:** [00:00:01]  and one was here. And so the merger form is the one the secretary of state does in Arkansas to show that they're no longer going to be here in Mississippi. So any book or business they had, they probably merged into the Arkansas one to make sure that they covered those folks until they finished out.

**Brian:** [00:00:49] Okay. So there is no Adams and Edens in Mississippi.

**Christine:** [00:00:53] There is not. And there hasn't been in quite a while. They like I said, they became Wilson and Associates, I think. Oh, here we go, maybe 2000, 2014. And if you need to all of these documents that I've looked at, I know it would be cumbersome, but they're all viewable. You can pull them all up. And and I mentioned that because when you look down, it'll show you who did what and what their address was at the time. So for instance, at the time there was a Bradley P Jones, it shows Secretary and he's the one that did the amendment, but it also shows him on some other things as having been vice president. And there are some different addresses and all of that's public that you can go and look at in case you want to try different addresses.

**Brian:** [00:01:38] Right. There's one when you bring when you search Adam and Eden's and you go and you click on the details to that, it gives me an address of 232 Market Street Flowood. No suite number or anything. So I googled that address. I got a medical supply company at that address, and she. Her suite number is actually 232.

**Christine:** [00:01:59] Actually.

Page 1 of 4

**Christine:** [00:02:00] On that 232 Market Street, there is a Williams and a or. Excuse me, Wilson and Associates, but no Adams and Edens. So again. Right.

**Christine:** [00:02:13] Because Adam and Edens changed their name in 2014 to William to Wilson. Right.

**Brian:** [00:02:18] So my point is, they used Adams and Edens on a deed of trust from 2021.

**Christine:** [00:02:23] Yeah, that's totally wrong. They haven't been around since 2014 okay. Now the business ID is the same. But as far as the name now I don't know anything about legal, you know, but the business ID from us is still the same. But they basically morphed. Just like if you were a woman like me and I get married. And so my names change. But I'm still who I was when I was born. It's kind of the same situation. And so for people now not to know who Adams and Eden were, that's if you're calling the Arkansas folks. I could see that because they don't know that at one point Wilson was involved with them, and then eventually those original folks probably passed away or went away. And the reason I say that is because that other address that I was looking up and I said, it's a residence, it is not a residence. But if you know, you know, behind Jenna Bennett and all of that in downtown Brandon.

**Brian:** [00:03:17] No, I'm, I'm, I'm, I'm in Moselle. I'm just outside of Hattiesburg.

**Christine:** [00:03:21] Oh, gotcha. Okay. Well, there are some houses that became commercial, and so they were the first people to make this one house. That's this pretty green color. And I mean, it's been two lawyers since then. They haven't been there in ages. So like, I went and did a search of the property and looked at the pictures and I knew exactly where it had been, so I could see where people now don't know the original people from the early 90s that ended up being in business with one of the Wilsons is what happened.

**Brian:** [00:03:49] Okay, so.

**Brian:** [00:03:52] My assumption and the other lady that I talked to at the Secretary of State's office a couple of months ago is Adams and Edens. Pa should not be on my deed of trust.

**Christine:** [00:04:02] And I can't speak to that legally because the business ID is the same. But in 2014 it was no longer Adams and Eden. It was Wilson, Adams and Eden. And then a couple of years after that, it became Wilson and Associates.

**Brian:** [00:04:16] Okay. Do you have on that?

**Brian:** [00:04:18] You said the 2014, they did the name change. Do you happen to have that? Oh, shoot. What's the name of that thing? Hang on. Let me click off of this screen. Do you actually have the business ID number or the Or. How do I find that?

**Brian:** [00:04:33] Okay, so you are going to go look at the business ID of.

**Christine:** [00:04:38] All right. Hang on. Let me, let me let's see. Business ID let me click on that okay.

**Christine:** [00:04:43] I think it's the one you gave me. 685574685574. And you're going to look for the amendments. The amendments are where people change names.

**Brian:** [00:04:53] All right. View file.

**Christine:** [00:04:56] And there's more than one amendment in here.

**Christine:** [00:04:57] So okay. Yeah. Here's an amendment form 2016 amendment form 2014.

**Brian:** [00:05:14] Right I understand. And and just remember, there's two different name changes. They added a mr. Wilson to them. And then eventually it just went to Wilson and Associates. So it sounds to me like the original men, Adams and Eden, at some point in 14 to 16 went away.

**Brian:** [00:05:34] Okay.

**Christine:** [00:05:35] And it'll even show you when you look at annual reports in between those amendments. Go look. It'll start showing you where people are dropping off from earlier folks. Like it'll show you the originator of the business, and then it'll start showing you an annual reports where those people are no longer named, meaning they're gone.

Page **3** of 4

**Brian:** [00:05:54] Okay. Yeah.

**Christine:** [00:05:55] Like a birth certificate. Your parents, even if they pass, are still on your birth certificate. Correct. So those folks will never go away because they birthed the business. As far as their name.

**Brian:** [00:06:05] Correct.

**Brian:** [00:06:05] And from what I'm understanding with the county office here in Jones County, if there was a, if it's a different entity that they were supposed to either do the name change or they were supposed to substitute a new trustee, not not have the one that didn't exist on the document.

**Brian:** [00:06:24] Okay. Gotcha. I understand.

**Christine:** [00:06:26] Okay.

**Christine:** [00:06:27] And I can't speak to that because I'm not a lawyer. Right.

**Brian:** [00:06:30] I'm not I'm not either. I'm not either. I'm just picking through this stuff and picking out all the fraud.

**Christine:** [00:06:36] Yes I understand. Good luck with everything.

**Brian:** [00:06:39] All right. I appreciate your time.

**Christine:** [00:06:41] Sure. Have a good day. You too.

**Christine:** [00:06:43] Buh bye.

**Exhibit 14**

Debt collection letters from Dean Morris, LLP on behalf of Nationstar.

May 14, 2025

Dean Morris, L.L.C.
1820 Ave of America
Monroe, LA 71201
(318) 330-9020 from 8am to 5pm CST, Monday through Friday

To: BRIAN E. MOONEY
436 OLD PROGRESS RD.
MOSELLE MS 39459

**Reference: F24-0310**

**Dean Morris, L.L.C. may be a debt collector.** We are trying to collect a debt that you owe to Nationstar Mortgage LLC. We will use any information you give us to help collect the debt.

| Our information shows: | How can you dispute the debt? |
|---|---|
| *You executed a loan agreement on February 12th, 2021 in amount of $79,639.00 with account number ending in 9195.* | • **Call or write to us by June 23, 2025, to dispute all or part of the debt.** If you do not, we will assume that our information is correct. |
| *See the enclosed periodic statement for an itemization of the debt.* | |
| Total amount of the debt now:  77,050.66 | • **If you write to us by June 23, 2025**, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at disputes@ms.creditorlawyers.com. |

**What else can you do?**

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by June 23, 2025, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept original creditor information requests electronically at disputes@ms.creditorlawyers.com.
- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

<u>Notice</u>: **See reverse side for important information.**

✂ -------------------------------------------------------------------------------

May 14, 2025

**How do you want to respond?**

Mail this form to :
Dean Morris, L.L.C.
1820 Ave of America
Monroe, LA 71201

Check all that apply:
- **I want to dispute the debt because I think:**
  - This is not my debt.
  - The amount is wrong.
  - Other (please describe on reverse or attach additional information).
- **I want you to send me the name and address of the original creditor.**

BRIAN E. MOONEY
436 OLD PROGRESS RD
MOSELLE MS 39459

F24-0310

Dean Morris, L.L.C.
1820 Ave of America
Monroe, LA 71201
(318) 330-9020 from 8am to 5pm CST, Monday through Friday

To:    Brian E. Mooney
       436 OLD PROGRESS RD
       MOSELLE MS 39459

**Reference: F24-0310**

**Dean Morris, L.L.C. may be a debt collector.** We are trying to collect a debt that you owe to Nationstar Mortgage LLC. We will use any information you give us to help collect the debt.

| Our information shows: | How can you dispute the debt? |
|---|---|
| *You executed a loan agreement on* February 12th, 2021 *in amount of $79,639.00 with account number ending in 9195.* | • **Call or write to us by August 30, 2024, to dispute all or part of the debt.** If you do not, we will assume that our information is correct. |
| *See the enclosed periodic statement for an itemization of the debt.* | |
| **Total amount of the debt now:**     67,905.46 | • **If you write to us by August 30, 2024,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at disputes@ms.creditorlawyers.com. |

**What else can you do?**

• **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by August 30, 2024, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept original creditor information requests electronically at disputes@ms.creditorlawyers.com.

• **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

**Notice:** See reverse side for important information.

✂ ---------------------------------------------------------------------------------
July 21, 2024

**How do you want to respond?**

Mail this form to :
Dean Morris, L.L.C.
1820 Ave of America
Monroe, LA 71201

Check all that apply:
☐ **I want to dispute the debt because I think:**
 ☐ This is not my debt.
 ☐ The amount is wrong.
 ☐ Other (please describe on reverse or attach additional information).
☐ **I want you to send me the name and address of the original creditor.**

Brian E. Mooney
436 OLD PROGRESS RD
MOSELLE MS 39459

F24-0310

**Exhibit 15**

Two letters from Dean Morris, LLP identifying Nationstar as "our client" and "my client."

# DEAN MORRIS, L.L.C.
## ATTORNEYS AT LAW

### *LOUISIANA DIVISION*
1505 North 19th Street, Monroe, LA 71201
Phone: 318.388.1440  Facsimile: 318.322.0887

### *MISSISSIPPI DIVISION*
1820 Avenue of America, Monroe, LA 71201
855 S. Pear Orchard Rd, Ste 404 Bldg 400,
Ridgeland, MS 39157
Phone: 318.330.9020  Facsimile: 318.340.7600

JOHN C. MORRIS, III †*
CANDACE A. COURTEAU †
EMILY K. COURTEAU†*
KIMBERLY D. PUTNAM*
KRISTY MASSEY FINLEY†

† Admitted in Louisiana
* Admitted in Mississippi

OF COUNSEL:
GEORGE B. DEAN, JR.†

Hours of Operation:  Monday-Friday, 8:00 AM - 5:00PM

December 5, 2024

Mr. Brian E. Mooney
436 Old Progress Rd.
Moselle, MS 39459

RE: Correspondence as to Property located at 436 Old Progress Rd., Moselle, MS 39459 secured by mortgage loan held by Nationstar Mortgage dba Mr. Cooper

Dear Mr. Mooney:

My client, Nationstar Mortgage, dba Mr. Cooper (hereinafter referred to as "Mr. Cooper") recently mailed a letter dated, December 2, 2024, resolving any questions or concerns on your mortgage loan currently outstanding on the property located at 436 Old Progress Rd., Moselle, MS 39459. This letter should be treated and held as Mr. Cooper's response to your "qualified written request" and Notice of Error under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605. As stated in the letter, after its investigation, Mr. Cooper found no evidence of error.

Further, the request for proof Mr. Cooper is the "Note Holder of Due Course," "Creditor of the Instrument," and "debit evidence of the transaction," or standing to enforce the debt, are moot, since Mr. Cooper is the original lender on the mortgage loan, as evidenced on the Deed of Trust and Note. In other words, Mr. Cooper is the lender you borrowed money from to secure the mortgage on the above-referenced property. Therefore, Mr. Cooper has always been in possession of the Note since execution.

Under the Truth in Lending Act ("TILA"), a borrower has a right to rescind a non-purchase money mortgage loan by notifying the creditor, only if a creditor fails to provide the required forms and disclosures by closing. 15 U.S.C. §1635. This code section does not apply because your loan is a purchase money mortgage loan and the required closing disclosure was provided and executed by you at loan closing. A copy of your closing disclosure is enclosed.

**{Please be advised we are a debt collector and any information obtained may be used for that purpose}**

1

# Exhibit 16

Letter from Dean Morris, LLP stating it is representing Nationstar.

JOHN C. MORRIS, III †*
CANDACE A. COURTEAU †
EMILY K. COURTEAU†*
JASON R. SMITH†*
ASHLEY E. MORRIS†
CANDACE MIERS BOWEN†
ELIZABETH CROWELL PRICE*
KIMBERLY D. MACKEY*
JOHN DANIEL STEPHENS†
KRISTY MASSEY FINLEY†

† Admitted in Louisiana
* Admitted in Mississippi

**DEAN MORRIS, L.L.C.**
ATTORNEYS AT LAW

*LOUISIANA DIVISION*
1505 North 19th Street, Monroe, LA 71201
Phone: 318.388.1440  Facsimile: 318.322.0887

*MISSISSIPPI DIVISION*
1820 Avenue of America, Monroe, LA 71201
855 S. Pear Orchard Rd, Ste 404 Bldg 400,
Ridgeland, MS 39157
Phone: 318.330.9020  Facsimile: 318.340.7600

OF COUNSEL:
GEORGE B. DEAN, JR.†
CODY GIBSON*

July 18, 2025

<u>VIA Certified and US Mail</u>
Brian E. Mooney /
All Other Occupants
436 OLD PROGRESS RD
MOSELLE, MS 39459

Re: 436 OLD PROGRESS RD, MOSELLE, MS 39459

### NOTICE TO VACATE &
### TENANTS RIGHTS UNDER FEDERAL LAW

We represent Nationstar Mortgage LLC who purchased the above referenced property at the Foreclosure Sale, held on the 16th day of July, 2025.

NOTICE IS HEREBY GIVEN that the Federal "Protecting Tenants at Foreclosure Act of 2009" ("PTFA") grants certain rights and protections to any occupant of the Premises who is a "bona fide" tenant, as defined by the PTFA. Nationstar Mortgage LLC is informed and believes that no occupant of the Premises is a "bona fide" tenant as defined by the PTFA. This Notice is given, in part, to provide any occupant the opportunity, prior to the commencement of the eviction action for possession, to provide acceptable evidence to show that the occupant is entitled to the protection of the PTFA.

If you are a servicemember on "active duty" or "active service," or a dependent of such a servicemember on "active duty" or "active service", or who was on active duty or service within the preceding 366 days, you may be entitled to certain legal rights and protections, including protection from eviction, pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes.  If you believe that you may be entitled to protection under the SCRA please contact our office upon receipt of this letter.

**Exhibit 17**

Letter dated July 1, 2024, stating Plaintiff was referred to foreclosure.



**OUR INFO**
**ONLINE**
www.mrcooper.com

P.O. Box 619098
Dallas, TX 75261-9741

CHANGING THE FACE OF HOME LOANS

Brian E. Mooney
436 Old Progress Rd
Moselle, MS 39459

December 5, 2024

**ACCOUNT INFO**
**LOAN NUMBER:** 0423549195
**CASE NUMBER:** 0011269728
**PROPERTY ADDRESS:**
436 Old Progress Rd
Moselle, MS 39459
**MORTGAGOR:**
Brian E. Mooney

Dear Brian E. Mooney:

We received your letter on November 26, 2024, and have put together this reply with information that we hope will alleviate your concerns. After an investigation, we are sharing with you what we found.

Our records show we addressed concerns in our response letter dated December 2, 2024 (copy enclosed).

We have received your attempted discharge of debt, and/or placement of the lien, pursuant to the Uniform Commercial Code. Please be advised that the Uniform Commercial Code does not apply to transactions involving residential mortgages; therefore, your attempted rescission is ineffective and has been rejected. Furthermore, the timeframe to rescind has passed. In accordance with the Truth in Lending Act, a borrower has the right to rescind their loan within three (3) business days of closing. Therefore, you would have needed to rescind the loan no later than Monday, February 17, 2021, as the loan closed on February 12, 2021.

You still owe your payments on the loan, pursuant to the terms of the related documents. Any failure on your part to adhere to the terms of the loan documents will result in Mr. Cooper pursuing its remedies including, but not limited to, foreclosure of the property.

Upon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriately to its status.

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.



EQUAL HOUSING
OPPORTUNITY



As the date of this response, the loan is delinquent and due for March 1, 2024, monthly payment and all subsequent payments due thereafter. Due to the delinquent status of the account, the loan was referred to foreclosure on July 1, 2024. Currently, the scheduled foreclosure sale is on hold. Although the foreclosure sale has been placed on a temporary hold, please be advised foreclosure activity may continue until the delinquency of the account is cured or the account is placed on a mortgage assistance option.

| **RESPA RESPONSE TO NOTICE OF ERROR** |
|---|
| Under applicable federal law, we are required to inform you that after completing a reasonable investigation into the issues described above, it has been determined that no error occurred. You have the right to access the document we used in this investigation, and we have enclosed it. The document is:<br><br>• Prior resolution dated December 2, 2024 |

If you have any questions, the Dedicated Loan Specialist is Andrea Bryant who can be reached at (469)470-5793 or via mail at the address listed above. Our hours are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT) and Saturday from 8 a.m. to 12 p.m. Visit us on the web at www.mrcooper.com for more information.

Sincerely,
Mr. Cooper
PO Box 619098
Dallas, TX 75261-9741
Phone: (877)783-7480
Fax: 972-315-8637

Enclosures (9)
By U.S. Standard Mail and Email: IFIXEM75@GMAIL.COM

Are you experiencing a financial hardship? Our local non-profit partners can help with financial counseling and other services. Please visit these websites for assistance:

• Hud.gov
• Neighborworks.org

## Exhibit 18

Assignment of Deed of Trust from MERS to Nationstar Mortgage LLC dated July 15, 2024.





CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
I CERTIFY THIS INSTRUMENT FILE/RECORDED
7/19/2024 3:03:42 PM
INST. 12401843 PAGE 1 OF 2
WITNESS MY HAND AND SEAL
CONCETTA BROOKS

Recording Requested By: NATIONSTAR MORTGAGE DBA MR. COOPER

Prepared By: Douglas Keaton, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432
When Recorded Return To: DOCUMENT ADMINISTRATION, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019  1-888-480-2432

### CORPORATE ASSIGNMENT OF DEED OF TRUST
Jones (1st District), Mississippi
SELLER'S SERVICING #:******9195 "MOONEY"

MIN #: 100397204235491955  SIS #: 1-888-679-6377

Date of Assignment: July 15th, 2024
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS at 11819 MIAMI ST., SUITE 100, OMAHA, NE 68164 Phone: 1-888-679-6377
Assignee: NATIONSTAR MORTGAGE LLC at Address: 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019 Phone: N/A
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS  Address: 11819 MIAMI ST SUITE 100, OMAHA, NE 68164  Phone: N/A

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 11819 Miami St., Suite 100, Omaha, NE 68164 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: BRIAN E. MOONEY, A SINGLE MAN at 436 OLD PROGRESS RD MOSELLE, MS 39459 Phone: N/A
 To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS
Address: 11819 MIAMI ST SUITE 100, OMAHA, NE 68164 Phone: N/A
Date of Deed of Trust: 02/12/2021 Recorded: 02/19/2021 as Instrument No.: 12100561 In the County of Jones (1st District), State of Mississippi.

Property Address: 436 OLD PROGRESS RD, MOSELLE, MS 39459

Indexing Instructions: COMMENCE AT THE NE CORNER OF THE NE/4 OF SE/4, SEC 28 TWP 6 N, R 14 W, FIRST JUDICIAL DIST, JONES CO, MS.
 KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $79,639.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

 TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

*JAZ*JAZNATT*07/15/2024 07:13:00 AM* NATT01NATTA00000000000005190349* MSJONE2*
******9195 MSSTATE_TRUST_ASSIGN_ASSN **DK6NATT*

126097.1-1.70

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2
  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS
On July 15th, 2024

By: _____
TSEDALE ALEMU, Vice-President

STATE OF Texas
COUNTY OF Denton

On July 15th, 2024, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of
Texas, personally appeared TSEDALE ALEMU , Vice-President of MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR NATIONSTAR MORTGAGE
LLC D/B/A MR. COOPER, ITS SUCCESSORS AND ASSIGNS, personally known to me to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027  #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660

(This area for notarial seal)

*JAZ*JAZNATT*07/15/2024 07:13:00 AM* NATT01NATTA0000000000000005190349* MSJONE2*
*******9195 MSSTATE_TRUST_ASSIGN_ASSN  **DK5NATT*

**Exhibit 19.**

Mississippi Secretary of State records confirming Sunrise Title Services, LLC is not registered to do business in Mississippi.

<u>Business Name</u>  <u>Business ID</u>  <u>Officer Name</u>  <u>Registered Agent</u>

Search Criteria

◉ **Starting With**  ○ **All Words**  ○ **Any Words**  ○ **Sounds Like**  ○ **Exact Match**

**Business Name:** | Sunrise Title Services, LLC |   **Search**

| | |
|---|---|
| **Search Type:** Business Name | **Search Sub-Type:** Starting With |
| **Search Date:** 07/31/2025 12:19 | **Search Thru Date:** 07/29/2025 |
| **Criteria:** Sunrise Title Services, LLC | **Result(s) Count:** 0 |

## Business Name Search Results

| <u>Business Name (#)</u> | <u>Business ID (#)</u> | <u>Type (#)</u> | <u>(#)</u> | <u>Status (#)</u> | <u>(#)</u> | <u>Create Date (#)</u> <u>(#)</u> |
|---|---|---|---|---|---|---|
| 0 | | | | No Matches Found. | | <u>(#)</u> |



2021 Mississippi Secretary of State. All rights reserved



Employment (https://www.sos.ms.gov/contact-us/employment-opportunities)

Online Services Directory (https://www.sos.ms.gov/online-services-directory)

Fees & Forms Directory (https://www.sos.ms.gov/business-services/fees-forms-directory)

82-County Tour (https://www.sos.ms.gov/82-county-tour)

How Do I...? (https://www.sos.ms.gov/how-do-i)

Links (https://www.sos.ms.gov/links)

## Exhibit 20.

Mississippi Auctioneer License search confirming Taurean Ray is not a licensed auctioneer in the State of Mississippi.

# Mississippi Auctioneer Commission

## Search Firm

| | | |
|---|---|---|
| Name **Taurean Ray** | License Type << Select One >> | File # |
| State **Mississippi** | City <<Select One >> | County << Select One >> |

**Search** **Reset**

---

No Data Found




© Copyright 2025 Mississippi Auctioneer Commission
Mississippi Department of Information Technology Services. All Rights Reserved
Mississippi Auctioneer Commission Website Disclaimer
Many documents provided within this website are in Adobe Acrobat PDF format
http://www.adobe.com/products/acrobat/readstep.html



**Exhibit 21.**

Mississippi Auctioneer License search confirming Sunrise Title Services, LLC is not a licensed auctioneer.

# Mississippi Auctioneer Commission

## Search Firm

| | | | | | |
|---|---|---|---|---|---|
| Name | Sunrise Title Services, L| License Type | << Select One >> | File # | |
| State | Mississippi | City | <<Select One >> | County | << Select One >> |

Search  Reset

No Data Found



© Copyright 2025 Mississippi Auctioneer Commission
Mississippi Department of Information Technology Services. All Rights Reserved.
Mississippi Auctioneer Commission Website Disclaimer
Many documents provided within this website are in Adobe Acrobat PDF format.
http://www.adobe.com/products/acrobat/readstep.html





# Exhibit 22.

Proofs of Service showing service on Nationstar and Dean Morris, LLP.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT                **FILED**

BRIAN E. MOONEY,                        JUL 2 1 2025
Plaintiff,

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

v.                          CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## SUPPLEMENTAL CERTIFICATE OF SERVICE

I, Brian E. Mooney, hereby certify that I previously served a true and correct copy of the Verified Complaint and Motion for Temporary Restraining Order upon the Defendants by United States Postal Service certified mail, return receipt requested, as set forth in the original Certificate of Service filed on July 14, 2025.

The United States Postal Service has now confirmed delivery of said service, as evidenced by the following:

1. Nationstar Mortgage LLC d/b/a Mr. Cooper
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 42
   Delivered on: July 17, 2025
2. Dean Morris LLP
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 35
   Delivered on: July 17, 2025
3. Mortgage Connect, LP
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 28
   Delivered on: July 17, 2025
4. Mortgage Electronic Registration Systems, Inc. (MERS)
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7958 36
   Delivered on: July 21, 2025

Copies of the USPS delivery confirmations and/or signed return receipts are attached hereto as Exhibit A.

This the 21st day of July, 2025.

Respectfully submitted,

*Brian Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
fixem75@gmail.com

**ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...**

# USPS Tracking®

FAQs >

Tracking Number:

## 9589071052702805787442

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

Remove ✕

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:47 pm on July 17, 2025 in MADISON, MS 39110.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Front Desk/Reception/Mail Room**

MADISON, MS 39110
July 17, 2025, 12:47 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

**See Less ∧**

Track Another Package

**ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...**

# USPS Tracking®

FAQs ›

$\partial.$

Tracking Number:

Remove ✕

## 9589071052702805787435

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 10:39 am on July 17, 2025 in RIDGELAND, MS 39157.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Left with Individual**
RIDGELAND, MS 39157
July 17, 2025, 10:39 am

**Arrived at USPS Regional Facility**
JACKSON MS DISTRIBUTION CENTER
July 16, 2025, 9:25 am

**In Transit to Next Facility**
July 15, 2025

**Departed Post Office**
PETAL, MS 39465
July 14, 2025, 4:37 pm

**USPS in possession of item**
PETAL, MS 39465
July 14, 2025, 10:02 am

Feedback

## Exhibit 23.

Affidavit of Plaintiff attesting no written Notice of Default or right to cure was received.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                              CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.


## **AFFIDAVIT OF PLAINTIFF REGARDING LACK OF NOTICE**

STATE OF MISSISSIPPI

COUNTY OF JONES

BEFORE ME, the undersigned authority in and for the jurisdiction aforesaid, personally

appeared Brian E. Mooney, who, after being duly sworn, stated as follows:

1. My name is Brian E. Mooney, and I am the Plaintiff in the above-captioned action. I am
   over the age of eighteen (18) and competent to make this affidavit.

2. I am the owner of the homestead property located at 436 Old Progress Road, Moselle,
   Mississippi 39459, which is the subject of this action.

3. I have personal knowledge of the facts stated herein.

4. At no time prior to the July 16, 2025 foreclosure sale did I receive any written notice of
   default or thirty-day right to cure, as required under Mississippi Code Annotated § 89-1-
   55.

5. I have reviewed my mail, email, personal records, and all other possible forms of communication. I never received any written notice—by certified mail, first-class mail, personal service, or otherwise—advising me of default or giving me the opportunity to cure such alleged default.

6. The failure to provide this notice deprived me of a legal opportunity to remedy any default and unlawfully subjected me to a foreclosure process that violated my statutory and constitutional rights.

FURTHER AFFIANT SAYETH NOT.

*Brian Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
ifixem75@gmail.com

SWORN TO AND SUBSCRIBED BEFORE ME, this the 1st day of August, 2025.

Notary Public Signature    GREG DICKERSON, Circuit Clerk
Print Name: By: Lisa Carlson, DC

Notary Public, State of Mississippi
My Commission Expires: My Commission Expires January 5, 2028

(SEAL)



**Exhibit 24.**

Affidavit of Plaintiff regarding July 29, 2025, phone call with Sunrise Title's Sandra confirming Sunrise conducted the foreclosure on behalf of Dean Morris, LLP.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                    CIVIL ACTION NO. <u>2025-107</u>

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.


## AFFIDAVIT OF PLAINTIFF REGARDING JULY 29, 2025 PHONE CALL WITH SUNRISE TITLE SERVICES, LLC

STATE OF MISSISSIPPI
COUNTY OF JONES

BEFORE ME, the undersigned authority in and for the jurisdiction aforesaid, personally

appeared Brian E. Mooney, who, after being duly sworn, stated as follows:

1. My name is Brian E. Mooney, and I am the Plaintiff in the above-styled matter. I am
   over the age of eighteen (18), of sound mind, and fully competent to make this affidavit.

2. I am the owner and occupant of the homestead property located at 436 Old Progress
   Road, Moselle, Mississippi 39459, which is the subject of the foreclosure sale
   challenged in this action.

3. On July 29, 2025, I called the listed phone number for Sunrise Title Services, LLC and
   spoke with an individual who identified herself as Sandra.

4. During our conversation, I asked Sandra whether Sunrise Title Services, LLC was involved in the foreclosure sale of my property that took place on July 16, 2025, at the Jones County Courthouse in Ellisville, Mississippi.

5. Sandra clearly stated that Sunrise Title Services, LLC had been hired by Dean Morris LLP to conduct the foreclosure sale of my property.

6. She did not provide any supporting documentation or identify whether Sunrise held any valid auctioneer license or recorded authority to act as trustee or foreclosure agent in Mississippi.

7. This statement confirms that Sunrise Title Services, LLC actively conducted the foreclosure sale at the request of Dean Morris LLP, despite lacking any recorded substitution, trustee appointment, Mississippi auctioneer license, or business registration in the state.

FURTHER AFFIANT SAYETH NOT.

*Brian Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
ifixem75@gmail.com

SWORN TO AND SUBSCRIBED BEFORE ME, this the 1ˢᵗ day of August , 2025.

Notary Public Signature GREG DICKERSON, Circuit Clerk

Print Name:  By: Msa Conlyn, DC

Notary Public, State of Mississippi

My Commission Expires:   My Commission Expires January 5, 2028

(SEAL)

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 0 1 2025

BRIAN E. MOONEY,
Plaintiff,

CONCETTA BROOKS, **CHANCERY CLERK**
JONES COUNTY, MISSISSIPPI

v.                                    CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## EXHIBIT LIST TO AMENDED VERIFIED COMPLAINT

Exhibit 1.   Letter from Nationstar dated April 9, 2024, confirming Ginnie Mae II is the investor.

Exhibit 2.   Nationstar document showing Ginnie Mae II is the investor.

Exhibit 3.   Closing Disclosure dated February 12, 2021.

Exhibit 4.   2009 Appraisal Report reused in connection with the 2021 refinance.

Exhibit 5.   Copy of the Promissory Note endorsed in blank.

Exhibit 6.   Transcript of July 16, 2025 foreclosure sale conducted by Mr. Ray.

Exhibit 7.   Auctions.com listing dated July 21, 2025, showing Plaintiff's home for sale.

Exhibit 8.   Letters sent to Nationstar in March and May 2024 demanding proof of standing and full accounting.

Exhibit 9.   Notice of Rescission recorded July 11, 2024, and delivered July 15, 2024.

Exhibit 10.   Letter from Nationstar dated December 2, 2024, rejecting Plaintiff's rescission.

Exhibit 11.   Notary presentment sent September 5, 2024, delivered September 9, 2024, with two non-response affidavits.

Exhibit 12.    Transcript of phone call with Mr. Cooper representative "Beth" confirming they have only a copy of the Note, and Plaintiff has the original.

Exhibit 13.    Transcript of call with Mississippi Secretary of State confirming Adams & Edens merged out of Mississippi in September 2017.

Exhibit 14.    Debt collection letters from Dean Morris, LLP on behalf of Nationstar.

Exhibit 15.    Two letters from Dean Morris, LLP identifying Nationstar as "our client" and "my client."

Exhibit 16.    Letter from Dean Morris, LLP stating it is representing Nationstar.

Exhibit 17.    Letter dated July 1, 2024, stating Plaintiff was referred to foreclosure.

Exhibit 18.    Assignment of Deed of Trust from MERS to Nationstar Mortgage LLC dated July 15, 2024.

Exhibit 19.    Mississippi Secretary of State records confirming Sunrise Title Services, LLC is not registered to do business in Mississippi.

Exhibit 20.    Mississippi Auctioneer License search confirming Taurean Ray is not a licensed auctioneer in the State of Mississippi.

Exhibit 21.    Mississippi Auctioneer License search confirming Sunrise Title Services, LLC is not a licensed auctioneer.

Exhibit 22.    Proofs of Service showing service on Nationstar and Dean Morris, LLP.

Exhibit 23.    Affidavit of Plaintiff attesting no written Notice of Default or right to cure was received.

Exhibit 24.    Affidavit of Plaintiff regarding July 29, 2025, phone call with Sunrise Title's Sandra confirming Sunrise conducted the foreclosure on behalf of Dean Morris, LLP.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 0 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                        CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.


## CERTIFICATE OF SERVICE

I, Brian E. Mooney, Plaintiff pro se, hereby certify that I have this day served true and correct copies of the following:

- Amended Verified Complaint
- Exhibits to the Amended Verified Complaint
- Plaintiff's Motion to Set Aside Foreclosure Sale
- Notice of Hearing on Plaintiff's Motion to Set Aside Foreclosure Sale

by placing same in the United States Mail, with tracking, postage prepaid, addressed as follows:

Nationstar Mortgage LLC d/b/a Mr. Cooper
Corporation Service Company
Attn: Registered Agent for Nationstar Mortgage LLC
109 Executive Drive, Suite 3
Madison, Mississippi 39110

Dean Morris, LLC
Kimberly D. Putnam
Registered Agent for Dean Morris, LLC
855 S. Pear Orchard Road, Suite 404
Ridgeland, Mississippi 39157

Mortgage Connect, LP
Corporation Service Company

Attn: Registered Agent for Mortgage Connect, LP
109 Executive Drive, Suite 3
Madison, Mississippi 39110

Mortgage Electronic Registration Systems, Inc. (MERS)
Corporation Service Company
Attn: Registered Agent for Mortgage Electronic Registration Systems, Inc.
251 Little Falls Drive
Wilmington, Delaware 19808

This the 1ˢᵗ day of _August_____, 2025.

Respectfully submitted,

*Brian Mooney*

Brian E. Mooney
436 Old Progress Road
Moselle, MS 39459
ifixem75@gmail.com
(601) 310-6078
Pro Se Plaintiff

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

**FILED**

FIRST JUDICIAL DISTRICT

AUG 0 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                                    CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## PLAINTIFF'S MOTION TO SET ASIDE FORECLOSURE SALE AND FOR EQUITABLE RELIEF

COMES NOW the Plaintiff, Brian E. Mooney, appearing pro se, and respectfully moves this

Court to declare void ab initio the July 16, 2025, foreclosure sale of his homestead property,

which was conducted without legal authority, without due process of law, and in violation of

both the Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of

the Mississippi Constitution.

Plaintiff seeks equitable relief including restoration of legal title, protection of possession, and

statutory and constitutional damages for the unlawful attempt to dispossess him of his home. In

support of this Motion, Plaintiff states that Defendants suffered no injury, have shown no

lawful right to enforce the debt or conduct the sale, and have instead caused ongoing and

irreparable harm to Plaintiff's property rights, liberty interests, and constitutional protections.

### I. INTRODUCTION

This Motion seeks to set aside a foreclosure sale that is void on its face and wholly lacking in due process protections. On July 16, 2025, Plaintiff's homestead was auctioned at the Jones County Courthouse by unauthorized, unlicensed, and unrecorded parties acting without any lawful trustee appointment, without notice of default or right to cure, and in direct violation of a recorded Lis Pendens. The individual conducting the auction admitted on the record that he had no authority to do so.

The sale was not merely defective. It was conducted without due process of law, in violation of the Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of the Mississippi Constitution, both of which prohibit the deprivation of property without notice and a meaningful opportunity to be heard. The Defendants ignored statutory requirements, disregarded constitutional restraints, and proceeded with a foreclosure and eviction attempt with no lawful authority.

Plaintiff has suffered irreparable harm, including the unlawful disruption of his right to possess and protect his homestead, and ongoing damage to his title, peaceable possession, and legal standing. The Defendants, by contrast, have shown no injury and no evidence of lawful standing to foreclose or dispossess. This Court, sitting in equity, has both the power and the responsibility to declare the sale void, cancel any instruments arising from it, and restore Plaintiff's title and possession before further harm is inflicted.

## II. FACTUAL BACKGROUND

The following facts show that the foreclosure was executed in violation of Mississippi foreclosure statutes and deprived Plaintiff of his property without due process of law. Defendants acted without lawful trustee authority, failed to comply with statutory notice

requirements, disregarded a properly recorded Lis Pendens, and used unlicensed and

unregistered parties to conduct the sale. These acts violated Plaintiff's rights under the

Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of the

Mississippi Constitution, and also violated Mississippi Code Annotated §§ 89-1-55, 89-5-45,

89-7-1, 73-4-27, and 79-4-15.01.

1.  On February 19, 2021, Plaintiff executed a Deed of Trust recorded as Instrument No.
    12100561, naming Nationstar Mortgage LLC as lender and Adams & Edens, P.A. as
    trustee (see **Exhibit A**).

2.  Adams & Edens, P.A. had merged out of Mississippi in July 2017 and was no longer a
    valid entity authorized to act as trustee (see **Exhibit B**). Mississippi law requires a
    trustee to be a lawfully existing entity capable of performing fiduciary duties at the time
    of execution. See Miss. Code Ann. §§ 89-5-45.

3.  On September 5, 2024, Nationstar Mortgage LLC recorded a Substitution of Trustee
    naming Dean Morris LLC as substitute trustee (see **Exhibit C**).

4.  On July 11, 2025, Plaintiff recorded a Lis Pendens in the Jones County land records as
    Instrument No. 12502002, giving notice of pending chancery litigation concerning the
    subject property (see **Exhibit D**).

5.  On July 16, 2025, a non-judicial foreclosure sale was conducted at the Jones County
    Courthouse in Ellisville, Mississippi, involving Plaintiff's homestead at 436 Old
    Progress Road, Moselle, Mississippi. The auction was conducted by Taurean Ray of
    Sunrise Title Services, LLC. Plaintiff personally attended the sale and made audio and
    video recordings, which will be presented at hearing.

6. No recorded instrument authorized Sunrise Title Services, LLC or Taurean Ray to act as trustee, substitute trustee, or foreclosure agent (see **Exhibit E**).

7. Sunrise Title Services, LLC is not registered with the Mississippi Secretary of State to transact business in Mississippi, in violation of Miss. Code Ann. § 79-4-15.01 (see **Exhibit F**).

8. Neither Taurean Ray nor Sunrise Title Services, LLC holds a valid Mississippi auctioneer license as required under Miss. Code Ann. § 73-4-27 (see **Exhibit G**).

9. At the foreclosure sale, Plaintiff presented Mr. Ray with a trustee packet containing the verified Complaint and recorded Lis Pendens and informed him of the pending chancery litigation. Mr. Ray stated, "They just had me come in and read the paper," and did not identify who "they" were or claim any recorded authority to act as trustee or foreclosure agent nor did he produce or reference any recorded substitution of trustee as required by Miss. Code Ann. § 89-5-45.

10. Plaintiff transcribed the audio recording of the foreclosure sale itself and certified the transcript as accurate (see **Exhibit H**).

11. Plaintiff will offer the full original audio and video recordings at hearing.

12. On July 17, 2025, Nationstar Mortgage LLC and Dean Morris LLC were served with the Verified Complaint and Lis Pendens (see **Exhibit I**).

13. On July 18, 2025, Dean Morris LLC, on behalf of Nationstar Mortgage LLC, sent Plaintiff a Notice to Vacate (see **Exhibit J**).

14. On July 23, 2025, Auctions.com listed Plaintiff's property for sale despite the recorded Lis Pendens (see **Exhibit K**).

15. Plaintiff never received any written notice of default or opportunity to cure as required under Miss. Code Ann. § 89-1-55 (see **Exhibit L**).

16. On July 29, 2025, Plaintiff spoke with Sandra at Sunrise Title Services, LLC, who confirmed that Sunrise had been hired to conduct the foreclosure sale (see **Exhibit M**).

## III. LEGAL DEFECTS VOIDING THE SALE

### A. Foreclosure Conducted Without a Lawfully Appointed Trustee

17. Mississippi Code Annotated § 89-5-45 requires that any substitution of trustee be recorded in the land records before the substitute may exercise trustee powers. Neither Sunrise Title Services, LLC nor Taurean Ray were ever recorded as trustee, substitute trustee, or agent under the subject Deed of Trust. No instrument authorized them to act in any fiduciary capacity on behalf of the lender. A foreclosure sale conducted by an unauthorized party is legally void and conveys no title. See *Deutsche Bank Nat'l Tr. Co. v. Johnson*, 179 So. 3d 1120, 1124 (Miss. Ct. App. 2015).

### B. Unlicensed and Unregistered Foreclosure Conduct

18. Mississippi law strictly prohibits any person or entity from conducting auctions without a valid auctioneer license. Miss. Code Ann. § 73-4-27. Neither Taurean Ray nor Sunrise Title Services, LLC held such a license. Additionally, Sunrise Title Services, LLC is not registered to transact business in Mississippi, in violation of Miss. Code Ann. § 79-4-15.01. These statutory violations void any resulting sale. An entity not registered to do business in the state may not enforce rights or carry out regulated commercial transactions within Mississippi.

### C. Lack of Statutory Foreclosure Notice

19. Miss. Code Ann. § 89-1-55 requires the mortgagee or trustee to give the borrower written notice of default and a minimum 30-day opportunity to cure before proceeding with foreclosure. Plaintiff never received such notice, and no record exists showing that it was issued. The failure to provide statutory notice invalidates the foreclosure sale. See *Thomas v. Countrywide Home Loans, Inc.*, 2010 WL 1328840, at *4 (S.D. Miss. Mar. 29, 2010).

**D. Violation of a Recorded Lis Pendens**

20. On July 11, 2025, Plaintiff recorded a Lis Pendens in accordance with Miss. Code Ann. § 89-1-29, providing notice of pending litigation affecting title to the property. A recorded Lis Pendens freezes any transfer or enforcement action until the litigation is resolved. Despite this statutory freeze, Defendants conducted a foreclosure sale on July 16, 2025 and sent a Notice to Vacate on July 18, 2025. These actions were in clear disregard of the recorded Lis Pendens.

## IV. APPLICABLE STATUTES AND CONSTITUTIONAL PROVISIONS

21. Mississippi Code Annotated § 89-5-45 requires that any substitution of trustee be recorded in the land records before the substitute may exercise foreclosure authority.

22. Mississippi Code Annotated § 89-1-55 mandates that the borrower be given written notice of default and a 30-day opportunity to cure prior to any foreclosure sale.

23. Mississippi Code Annotated § 89-1-29 provides that a recorded lis pendens freezes title and bars foreclosure activity until the chancery action is resolved.

24. Mississippi Code Annotated § 89-7-1 requires a minimum of ten days' written notice prior to eviction following foreclosure.

25. Mississippi Code Annotated § 73-4-27 prohibits any person from conducting an auction in Mississippi without a valid auctioneer license.

26. Mississippi Code Annotated § 79-4-15.01 prohibits unregistered foreign entities from transacting business in Mississippi.

27. Mississippi Code Annotated § 75-17-315 et seq. prohibits false, deceptive, or misleading communications in connection with the collection of a debt.

28. The Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of the Mississippi Constitution prohibit deprivation of property without due process of law.

29. Mississippi chancery courts are empowered to void unlawful foreclosure sales, restore title, preserve possession, and issue equitable and injunctive relief where statutory and constitutional protections have been violated.

## V. MISSISSIPPI RICO ALLEGATIONS

30. Defendants Nationstar Mortgage LLC, Dean Morris LLC, Sunrise Title Services, LLC, and Taurean Ray operated as an enterprise within the meaning of Mississippi Code Annotated § 97-43-3(c), functioning in association to carry out non-judicial foreclosures through a coordinated and unlawful pattern of conduct.

31. In furtherance of this enterprise, Defendants committed multiple predicate acts of racketeering activity as defined under Mississippi Code Annotated § 97-43-5, including:

a. Recording false or unauthorized foreclosure-related documents;

b. Employing unlicensed auctioneers and unregistered entities in violation of Mississippi Code Annotated §§ 73-4-27 and 79-4-15.01;

c. Mailing eviction notices without legal authority and in violation of Mississippi Code Annotated § 89-7-1;

d. Listing the subject property for sale during the pendency of litigation and despite the statutory effect of a recorded lis pendens under Mississippi Code Annotated § 89-1-29.

32. These actions constitute a pattern of racketeering activity under Mississippi Code Annotated § 97-43-5(2) and reflect knowing, willful conduct designed to deprive Plaintiff and other homeowners of property without lawful process.

33. Plaintiff reserves the right to conduct discovery into other non-judicial foreclosure sales by these Defendants to establish a broader pattern of coordinated misconduct.

34. Pursuant to Mississippi Code Annotated § 97-43-9, Plaintiff seeks treble actual damages, punitive damages, costs of court, and permanent injunctive relief.

## VI. RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court:

1. Declare the July 16, 2025 foreclosure sale void ab initio;

2. Set aside and cancel any Trustee's Deed or other instrument arising from that event;

3. Restore title and possession to Plaintiff;

4. Enter an order enforcing the Lis Pendens and prohibiting eviction, collection, or further foreclosure activity during the pendency of this action;

5. Award treble actual damages, punitive damages, and costs of court pursuant to Mississippi Code Annotated § 97-43-9;

6. Refer Sunrise Title Services, LLC and Taurean Ray to the Mississippi Real Estate Commission and Board of Auctioneers for unlicensed foreclosure conduct;

7. Refer Sunrise Title Services, LLC to the Mississippi Secretary of State for transacting business without registration, in violation of Mississippi Code Annotated § 79-4-15.01;

8. Grant such other and further equitable relief as the Court deems just and proper.

Respectfully submitted this the 1ˢᵗ day of *August*, 2025.

*Brian Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
ifixem75@gmail.com

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 0 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                          CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## <u>PLAINTIFF'S EXHIBITS FOR HEARING ON NOTION TO SET ASIDE</u> <u>FORECLOSURE SALE</u>

Exhibit A.    Deed of Trust recorded February 19, 2021, as Instrument No. 12100561.

Exhibit B.    Mississippi Secretary of State record showing Adams & Edens, P.A. merged out of Mississippi in July 2017.

Exhibit C.    Substitution of Trustee recorded September 5, 2024, naming Dean Morris LLC.

Exhibit D.    Lis Pendens recorded July 11, 2025, as Instrument No. 12502002.

Exhibit E.    Jones County land records showing no recorded substitution or delegation to Sunrise Title Services, LLC, or Taurean Ray.

Exhibit F.    Mississippi Secretary of State record showing Sunrise Title Services, LLC is not registered to do business in Mississippi.

Exhibit G.    Mississippi Real Estate Commission and Board of Auctioneers records showing no license for Sunrise Title Services, LLC, or Taurean Ray.

Exhibit H.    Certified transcript of the July 16, 2025, foreclosure sale audio.

Exhibit I.    Proof of service of Verified Complaint and Lis Pendens on Nationstar Mortgage LLC and Dean Morris LLC, dated July 17, 2025.

Exhibit J.    Notice to Vacate sent by Dean Morris LLC on July 18, 2025.

Exhibit K.   Auctions.com foreclosure listing dated July 23, 2025, listing the property despite the recorded Lis Pendens.

Exhibit L.   Affidavit of Plaintiff attesting that no written notice of default or right to cure was received.

Exhibit M.   Affidavit of Plaintiff regarding July 29, 2025, phone call with Sandra at Sunrise Title Services, LLC confirming Sunrise conducted the sale.

**EXHIBIT A**

**Deed of Trust**
Recorded February 19, 2021, as Instrument No. 12100561

CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
I CERTIFY THIS INSTRUMENT FILE/RECORDED
2/19/2021 2:41:30 PM
INST. 12100561 PAGE 1 OF 16
WITNESS MY HAND AND SEAL
BART GAVIN

Prepared By:
JOSEPHINE LOMEDICO
NATIONSTAR MORTGAGE LLC D/B/A MR.
COOPER
4000 HORIZON WAY
IRVING, TX 75063
(972) 894-1310

Return To:
Inspire Closing Services, LLC
420 Rouser Road, Suite 500
Moon Township, PA 15108
(877) 901-1629

MR.

[Space Above This Line For Recording Data]

## DEED OF TRUST

MOONEY
Loan #: 0423549195
PIN: 014 -26-00-013.03
MIN: 100397204235491955
MERS Phone: 1-888-679-6377
Case #: 281-5034735-703

**Grantor(s):** BRIAN E. MOONEY, A SINGLE MAN
Address: 436 OLD PROGRESS RD, MOSELLE, MS 39459
Phone: (601) 310-6078

**Grantee/Beneficiary:** Mortgage Electronic Registration Systems, Inc.
Address: 1901 E VoorHees Street, Suite C, Danville, IL 61834  Phone: 1-888-679-6377

**Lender:** NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER
Address: 8950 CYPRESS WATERS BLVD., DALLAS, TX 75019
Phone: (888) 480-2432

**Trustee:** ADAMS & EDENS, PA
Address: 2001 CREEK COVE, SUITE A, BRANDON, MS 39042
Phone: 601- 824-0675

**Legal Description:** SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
HEREOF AS EXHIBIT "A". P8-16  Commence at the Northwest Corner of the NE1/4
of SE1/4, Section 26 Township 6 North, Range 14 West, First Judicial
DEFINITIONS  District, Jones County, Mississippi.

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 15.

(A) **"Security Instrument"** means this document, which is dated FEBRUARY 12, 2021, together with

FHA Mississippi Deed of Trust - 09/15
19382.14                    Page 1 of 15

0423549195

all Riders to this document.

**(B) "Borrower"** is **BRIAN E. MOONEY, A SINGLE MAN.** Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER.** Lender is a **LIMITED LIABILITY COMPANY** organized and existing under the laws of **DELAWARE.** Lender's address is **8950 CYPRESS WATERS BLVD., DALLAS, TX 75019.**

**(D) "Trustee"** is **ADAMS & EDENS, PA.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **FEBRUARY 12, 2021.** The Note states that Borrower owes Lender **SEVENTY-NINE THOUSAND SIX HUNDRED THIRTY-NINE AND 00/100** Dollars (U.S. $79,639.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MARCH 1, 2036.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

FHA Mississippi Deed of Trust - 09/15
EZ 19382.14           Page 2 of 15

Declaration of 12160561
Page 3 of 16

0423549195

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY OF JONES:**
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
which currently has the address of **436 OLD PROGRESS RD, MOSELLE, MS 39459** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all

**FHA Mississippi Deed of Trust - 09/15**
KBI 19382.14                    Page 3 of 15

0423549195

claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**FHA Mississippi Deed of Trust – 09/15**
EXD  19382.14                          Page 4 of 15

Received 07/22/200561
Page 5 of 16

0423549195

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall

FHA Mississippi Deed of Trust - 09/15
19382.14                          Page 5 of 15

0423549195

notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal

**FHA Mississippi Deed of Trust – 09/15**
€© 19382.14                          Page 6 of 15

0423549195

certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation

FHA Mississippi Deed of Trust - 09/15
EX 19382.14                    Page 7 of 15

0423549195

proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

FHA Mississippi Deed of Trust – 09/15
EXX  19382.14                               Page 8 of 15

0423549195

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be

FHA Mississippi Deed of Trust - 09/15
19382.14                                Page 9 of 15

Page 10 of 16

0423549195

applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

**FHA Mississippi Deed of Trust - 09/15**
EX 19382.14                              Page 10 of 15

0423549195

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property

FHA Mississippi Deed of Trust – 09/15
GDG  19382.14                    Page 11 of 15

0423549195

inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

FHA Mississippi Deed of Trust – 09/15
820    19382.14                                    Page 12 of 15

0423549195

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public

FHA Mississippi Deed of Trust - 09/15
☞ 19382.14                    Page 13 of 15

0423549195

advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in JONES County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

*Brian E Mooney*

- BORROWER - BRIAN E. MOONEY

FHA Mississippi Deed of Trust - 09/15
83  19382.14          Page 14 of 15

0423549195

[Space Below This Line For Acknowledgment]

STATE OF MISSISSIPPI

COUNTY OF JONES

Personally appeared before me, the undersigned authority in and for the said county and state, on this
12 day of February, 2021, within my jurisdiction, the within named
Brian E. Mooney

who acknowledged that he/she/they executed the above and foregoing instrument.

_Lou A Murphy_
Notary Public

My Commission Expires: 07-10-2024

Individual Loan Originator: **LANCE WILLIAMS**, NMLSR ID: **971913**
Loan Originator Organization: **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**, NMLSR ID:
**2119**

FHA Mississippi Deed of Trust - 09/15
ICE 19382.14                    Page 15 of 15

JONES COUNTY, MS,BART GAVIN
I CERTIFY THIS INSTRUMENT WAS FILED ON 2/19/2021 2:41:30 PM AND RECORDED IN GENERAL BOOK:0121 PAGE:561

# Exhibit A

File No.: 774746

The Land referred to herein below is situated in the County of JONES, State of MS, and is described as follows:

Commence at the northeast corner of the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the forty line 1111.29 feet, thence South 135.05 feet to and for the POINT OF BEGINNING: run thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West 152.00 feet to an iron pin; thence North 286.50 feet back to the point of beginning, said parcel comprising 1.0 acre, more or less and being situated in the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County Mississippi.

Being the same property as conveyed from Jerry R. Mooney and wife, Delores Mooney to Brian E. Mooney and wife, Marla E. Mooney as tenancy by the entirety with full right of survivorship as set forth in Deed Book 548 Page 694 dated 02/01/2002, recorded 11/05/2002, JONES County, MISSISSIPPI.

Tax ID: 014 -26-00-013.03

Pg 16

# EXHIBIT B

## Mississippi Secretary of State Record
Showing Adams & Edens, P.A. merged out of Mississippi in July 2017



# Michael Watson
### S E C R E T A R Y   O F   S T A T E

## This is not an official certificate of good standing.

### Name History

| Name | Name Type |
|------|-----------|
| Wilson & Associates, PLLC | Legal |
| WILSON & ASSOCIATES, A PROFESSIONAL ASSOCIATION | Previous Legal |
| WILSON ADAMS & EDENS, A PROFESSIONAL ASSOCIATION | Previous Legal |
| ADAMS & EDENS, A PROFESSIONAL ASSOCIATION | Previous Legal |

### Business Information

| | |
|------|-----------|
| **Business Type:** | Limited Liability Company |
| **Business ID:** | 685574 |
| **Status:** | Merged |
| **Effective Date:** | 01/03/1994 |
| **State of Incorporation:** | Mississippi |
| **Principal Office Address:** | 232 Market Street<br>Flowood,  MS 39232 |

### Registered Agent

**Name**

C T CORPORATION SYSTEM
645 LAKELAND EAST DRIVE, Suite 101
FLOWOOD,  MS 39232

### Officers & Directors

| Name | Title |
|------|-------|
| Jennifer  Wilson-Harvey<br>400 W. Capitol Avenue, Suite 1400<br>Little Rock,  AR 72201 | Manager, President |
| Aaron  Squyres<br>400 W. Capitol Avenue, Suite 1400<br>Little Rock,  AR 72201 | Manager, Secretary |

**F0012**                    **2014164472**



**Fee: $ 50**

**DELBERT HOSEMANN**
*Secretary of State*

Business ID: 685574
Filed: 12/23/2014 04:50 PM
C. Delbert Hosemann, Jr.
Secretary of State

**P.O. BOX 136**
**JACKSON, MS 39205-0136**

**TELEPHONE: (601) 359-1633**

## Articles/Certificate of Amendment

### Business Details

*Business ID:* 685574          *Business Name:* ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

*Future Effective Date:* 12/23/2014

---

### Current Business Name
*Business Name:* ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

### Amended Business Name
*Business Name:* WILSON ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

### Current Principal Office
*Address:*  2101 Courtside Cove
Brandon, MS 39042

### Amended Principal Office
*Address:*  625 Lakeland East Drive, Suite D
Flowood, MS 39232

### Adoption and Approval Voting
The amendment(s) was(were) adopted on 12/23/2014.
- ☐ The Incorporators.
- ☐ The Directors without shareholder action and shareholder action was not required.
- ☑ The shareholders in the manner required by the Mississippi Business Corporation Act and the Articles of Incorporation.

**F0012**                    **2016164331**

**Fee: $ 50**



DELBERT HOSEMANN
*Secretary of State*

Business ID: 685574
Filed: 04/22/2016 08:06 PM
C. Delbert Hosemann, Jr.
Secretary of State

P.O. BOX 136
JACKSON, MS 39205-0136

TELEPHONE: (601) 359-1633

## Articles/Certificate of Amendment

### Business Details

*Business ID:* 685574

*Business Name:* WILSON ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

*Future Effective Date:* 12/23/2014

### Current Business Name

*Business Name:* WILSON ADAMS & EDENS, A PROFESSIONAL ASSOCIATION

### Amended Business Name

*Business Name:* WILSON & ASSOCIATES, A PROFESSIONAL ASSOCIATION

### Adoption and Approval Voting

The amendment(s) was(were) adopted on 02/16/2016.

☐ The Incorporators.

☑ The Directors without shareholder action and shareholder action was not required.

☐ The shareholders in the manner required by the Mississippi Business Corporation Act and the Articles of Incorporation.

### NAICS Code/Nature of Business

541110 - Offices of Lawyers

541110 - Offices of Lawyers

541110 - Offices of Lawyers

### Signature

By entering my name in the space provided, I certify that I am authorized to file this document on behalf of this entity, have examined the document and, to the best of my knowledge and belief, it is true, correct and complete as of this day *04/22/2016*.

*Name:*                         *Address:*

**F0400**

**2017189556**

**Fee: $ 50**



DELBERT HOSEMANN
*Secretary of State*

P.O. BOX 136
JACKSON, MS 39205-0136

Business ID: 685574
Filed: 06/13/2017 03:33 PM
C. Delbert Hosemann, Jr.
Secretary of State

TELEPHONE: (601) 359-1633

## Business Conversion

### Current Business Information

*Business ID:* 685574

*Business Type:* Profit Corporation

*Foreign or Domestic:* Domestic

*Date of Incorporation:* 01/03/1994

*Business Name:* WILSON & ASSOCIATES, A PROFESSIONAL ASSOCIATION

*Business Email:* asquyres@wilson-assoc.com

*State of Incorporation:* MS

### Conversion Information

*New Entity Type:* Limited Liability Company

*Business Email:* asquyres@wilson-assoc.com

*New Business Name:* Wilson & Associates, PLLC

The plan of conversion was approved in accordance with MCA §79-37-101 et seq or the laws of the state of the converting entity.

The following have been attached with this form:

- In lieu of attaching a public organic record of the converted entity, the following information is provided.

*Purpose:* Attorney

### NAICS Code/Nature of Business

541110 - Offices of Lawyers

541110 - Offices of Lawyers

541110 - Offices of Lawyers

### Registered Agent

*Name:*    C T CORPORATION SYSTEM

**F0013**                    **2017226845**



**Fee: $ 50**

**DELBERT HOSEMANN**
*Secretary of State*

Filed: 09/13/2017 04:05 PM
C. Delbert Hosemann, Jr.
Secretary of State

**P.O. BOX 136**
**JACKSON, MS 39205-0136**

**TELEPHONE: (601) 359-1633**

## Articles of Merger

### Merging Business(es)

| Business ID | Name of Entity | Entity Type | State |
|---|---|---|---|
| | Wilson & Associates, PLLC | Limited Liability Company | AR |
| 685574 | Wilson & Associates, PLLC | Limited Liability Company | MS |

### Survivor Details

**Business ID:** (not registered)    **Business Name:** Wilson & Associates, PLLC
**State:** AR                        **Entity Type:** Limited Liability Company
**New Principal Office Address:** 400 W Capitol Ave Suite 1400
Little Rock, AR 72201

A foreign surviving entity choosing not to register with the state of Mississippi may not transact business in Mississippi and agrees that the Mississippi Secretary of State shall be its agent for service of process.

A statement that the plan or merger was approved by shareholders and members or that shareholder/member approval was not required signed by a representative of each company involved in the merger must be attached.

# STATE OF ARKANSAS

## SECRETARY  OF STATE

### Mark Martin
ARKANSAS SECRETARY OF STATE

To All to Whom These Presents Shall Come, Greetings:

I, Mark Martin, Arkansas Secretary of State of Arkansas, do hereby certify that the following and hereto attached instrument of writing is a true and perfect copy of

### Articles of Merger

of

### WILSON & ASSOCIATES, PLLC

with and into

### WILSON & ASSOCIATES, P.L.L.C.

filed in this office September 13, 2017.



**In Testimony Whereof,** I have hereunto set my hand and affixed my official Seal. Done at my office in the City of Little Rock, this 13th day of September, 2017.

*Mark Martin*
_____
Arkansas Secretary of State

 FILED - Arkansas Secretary of State - Mark Martin - Doc#: 9073814001 - Filing#: 100155366 - Filed On: 9/13/2017 - Page(s): 1

### ARTICLES OF MERGER OF
### WILSON & ASSOCIATES, PLLC, A MISSISSIPPI PLLC
### INTO WILSON & ASSOCIATES, PLLC, AN ARKANSAS PLLC

Pursuant to the provisions of the Arkansas Small Business Entity Tax Pass Through Act and the Mississippi Revised Limited Liability Company Act, the undersigned professional limited liability companies adopt the following Articles of Merger for the purpose of merging them into one of such professional limited liability companies:

1. The name and form of each constituent organization and the jurisdiction of its governing statute:
   a. WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company formed under the laws of the State of Arkansas; and
   b. WILSON & ASSOCIATES, PLLC, a Mississippi professional limited liability company formed under the laws of the State of Mississippi.

2. The name and form of the surviving organization and the jurisdiction of its governing statute:
   a. WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company formed under the laws of the State of Arkansas

3. The date the merger is effective under the governing statute of the surviving organization is the latest of September 13, 2017, the date the Articles of Merger are filed with the Arkansas Secretary of State, or the Mississippi Secretary of State.

4. There are no amendments provided for in the plan of merger for the organizational document of the surviving organization.

5. As to each constituent organization that the merger was approved by all of the members and managers thereof, as required by such constituent organization's governing statute.

6. WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company, as the surviving organization has previously appointed an agent for service of process under A.C.A. § 4-20-112 and no further filing of appointment of agent in Arkansas is required.

7. A copy of the Plan of Merger is on file at the principal office of WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company, located at 400 W. Capitol Avenue, Suite 1400, Little Rock, Arkansas 72201, and a copy of the plan of merger will be furnished by the surviving organization on request and without cost to any shareholder, member, partner, or other owner of any constituent organization.

IN WITNESS WHEREOF, each of the undersigned professional limited liability companies has caused these Articles of Merger to be executed in its name by the Manager this 13th day of September, 2017.

WILSON & ASSOCIATES, PLLC, an Arkansas professional limited liability company

By: _____
Its: Managing Member

WILSON & ASSOCIATES, PLLC, a Mississippi professional limited liability company

By: _____
Its: Managing Member

**EXHIBIT C**

**Substitution of Trustee**
Recorded September 5, 2024, naming Dean Morris LLC

CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
I CERTIFY THIS INSTRUMENT FILE/RECORDED
8/5/2024 2:52:42 PM
INST. 12402104 PAGE 1 OF 2
WITNESS MY HAND AND SEAL
CONCETTA BROOKS

| Prepared by: | Return To: |
|---|---|
| Dean Morris, LLC | Dean Morris, LLC |
| 855 S Pear Orchard Rd Ste 404 Bldg 400 | 1820 Avenue of America |
| Ridgeland, MS 39157 | Monroe, Louisiana 71201 |
| Telephone: 318-330-9020 | Telephone: 318-330-9020 |
| Emily Kaye Courtem Bar# 100570 | |

## SUBSTITUTION OF TRUSTEE

Situated in the NE1/4 of SE1/4, Sect. 26, T6N, R14W, 1st JD, Jones Co., MS

STATE OF MISSISSIPPI
COUNTY OF Jones 1st

Grantor:
Nationstar Mortgage LLC
8950 Cypress Waters Blvd
Coppell, TX 75019

Grantee:
Dean Morris, LLC
855 S Pear Orchard Rd Ste 404 Bldg 400
Ridgeland, MS 39157
318-330-9020

WHEREAS, on the 12th day of February, 2021, Brian E. Mooney, a single man executed a Deed of Trust to Adams & Edens, PA, Trustee for the use and benefit of Mortgage Electronic Registration Systems, Inc. as nominee for Nationstar Mortgage LLC d/b/a Mr. Cooper beneficiary, which Deed of Trust is on file and of record in the office of the Chancery Clerk of Jones 1st County, Mississippi, in Deed of Trust Record at Instrument # 12100561; and

The legal description is as follows:

The Land referred to herein below is situated in the County of JONES, State of MS, and is described as follows:

Commence at the northeast corner of the NE1/4 of SE1/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the forty line 1111.29 feet, thence South 135.05 feet to and for the POINT OF BEGINNING: run thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West 152.00 feet to an iron pin; thence North 286.50 feet back to the point of beginning, said parcel comprising 1.0 acre, more or less and being situated in the NE1/4 of SE1/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County Mississippi.

Being the same property as conveyed from Jerry R. Mooney and wife, Delores Mooney to Brian E. Mooney and wife, Maria E. Mooney as tenancy by the entirety with full right of survivorship as set forth in Deed Book 548 Page 694 dated 02/01/2002, recorded 11/05/2002, JONES County, MISSISSIPPI.

WHEREAS, the undersigned is the present holder and beneficiary of the Deed of Trust referenced to above; and

WHEREAS, under the terms of said Deed of Trust, the beneficiary or any assignee is authorized to appoint a Trustee in the place and stead of the original Trustee or any successor Trustee in said Deed of Trust; and

NOW, THEREFORE, the undersigned holder of said Deed of Trust does hereby appoint and substitute Dean Morris, LLC, as Trustee, the said Dean Morris, LLC, to have all rights, powers and privileges granted the Trustee in said Deed of Trust.

F24-0310

-1-

Instrument # 12602104

JONES COUNTY, MS CONFETA BHOOKS
I CERTIFY THIS INSTRUMENT WAS FILED ON 8/5/2024 2:52:42 PM AND RECORDED IN GENERAL BOOK0124 PAGE:2104

Should the undersigned become the last and highest bidder at the foreclosure sale, the Substitute Trustee is hereby authorized to transfer and assign said bid to convey title to said Foreclosed property to whomsoever the undersigned shall authorize. The statement in the Substitute Trustee's Deed that the undersigned has requested the transfer of its bid to Grantee (s) in the Substitute Trustee's Deed shall be binding on the undersigned and conclusive evidence in favor or the assignee or other parties thereby, and that the Substitute Trustee is duly authorized and empowered to execute the same

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officers on this ___31___ day of ____July____, 20__24__

Nationstar Mortgage LLC

By Talya Harris
    Document Execution Associate

STATE OF __TEXAS__
COUNTY OF __DENTON__

PERSONALLY came and appeared before me, the undersigned authority in and for the jurisdiction aforesaid, ____Talya Harris____ known personally to me to be or satisfactorily proved to me to be the Document Execution Associate for the within named Nationstar Mortgage LLC and that (s) he executed and delivered the within and foregoing instrument on the day and year therein mentioned for and on behalf of said company, and as its own act and deed for the purposes therein mentioned, having been first duly authorized so to do

WITNESS my signature and official seal on this, the __31__ day of ____July____, 20__24__

                                        NOTARY PUBLIC

MY COMMISSION EXPIRES: 08-05-2027

FELECEE DAVIS
Notary Public, State of Texas
Comm. Expires 08-05-2027
Notary ID 130321962

F24-0310

# EXHIBIT D

## Lis Pendens
Recorded July 11, 2025, as Instrument No. 12502002

**RECORDING REQUESTED
AND PREPARED BY:**
BRIAN E MOONEY
436 OLD PROGRESS ROAD
MOSELLE, MS 39459
601-310-6078



CHANCERY CLERK JONES COUNTY, MS
1ST DISTRICT-ELLISVILLE
I certify this Instrument file /recorded
07/11/2025    4:06:38 PM
Inst. 12502002 Page 1 of 3
Witness my hand and seal
CONCETTA BROOKS    D.C.

_____
Space Above this Line for Recorder's Use

**AFTER RECORDING RETURN TO:**
BRIAN E MOONEY
436 OLD PROGRESS ROAD
MOSELLE, MS 39459

**REFERENCE INSTRUMENT:**
Deed of Trust recorded on February 19, 2021, as Instrument No. 12100561, Jones County Land
Records

## <u>NOTICE OF LIS PENDENS</u>

This Notice of Lis Pendens is recorded to provide constructive notice of pending litigation filed
in the Chancery Court of Jones County, Mississippi, Civil Action No. 2025- 107 ,
which seeks to cancel void instruments, quiet title, and enjoin foreclosure proceedings affecting
the following property:

436 Old Progress Road, Moselle, Mississippi 39459

Legal Description:
Commence at the northeast corner of the NE 1/4 of SE 1/4, Section 26, Township 6 North,
Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the
forty line 1111.29 feet; thence South 135.05 feet to and for the POINT OF BEGINNING; run
thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West
152.00 feet to an iron pin; thence North 286.50 feet back to the point of beginning, said parcel
comprising 1.0 acre, more or less, and being situated in the NE 1/4 of SE 1/4, Section 26,
Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi.

## IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

### FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                    CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

### NOTICE OF LIS PENDENS

NOTICE IS HEREBY GIVEN that a Verified Complaint has been filed in the above-styled

action in the Chancery Court of Jones County, Mississippi, First Judicial District, Civil Action

No. 2025-107 _____, involving the following real property situated in Jones County,

Mississippi:

### Legal Description

Commence at the northeast corner of the NE 1/4 of SE 1/4, Section 26, Township 6 North,

Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the

forty line 1111.29 feet; thence South 135.05 feet to and for the POINT OF BEGINNING; run

thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West

152.00 feet to an iron pin; thence North 286.50 feet back to the point of beginning, said parcel

comprising 1.0 acre, more or less, and being situated in the NE 1/4 of SE 1/4, Section 26,

Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi.

**Street Address:** 436 Old Progress Road Moselle, Mississippi 39459

Said action seeks to cancel and set aside certain recorded instruments affecting the above-described property, quiet title in favor of Plaintiff, and enjoin foreclosure and debt collection proceedings.

Pursuant to Mississippi law, this Notice of Lis Pendens is filed and recorded to provide constructive notice to all persons or entities claiming an interest in the subject property of the pending litigation, which may affect title to said property.

DATED this __11__ th day of July, 2025.

**Respectfully submitted,**

*Brian Mooney*

Brian E. Mooney
436 Old Progress Road
Moselle, Mississippi 39459
ifixem75@gmail.com
(601) 310-6078
Pro Se Plaintiff

**ACKNOWLEDGMENT**

STATE OF MISSISSIPPI
COUNTY OF JONES

BEFORE ME, the undersigned authority in and for said County and State, personally appeared Brian E. Mooney, who acknowledged that he executed the foregoing Notice of Lis Pendens for the purposes therein expressed.

GIVEN UNDER MY HAND AND OFFICIAL SEAL, this 10th day of July 2025.

GREG DICKERSON, Circuit Clerk
By: hira Cenym , DC
Notary Public Signature
Print Name: GREG DICKERSON, Circuit Clerk
Notary Public, State of Mississippi
My Commission Expires My Commission Expires January 5, 2028

(SEAL)

## EXHIBIT E

**Jones County Land Records**
Showing no recorded substitution or delegation to Sunrise Title Services, LLC, or Taurean Ray

**MARGINAL NOTATION FORM**

| Instrument# | 12102263 | Book | 0725 | Page | 261 |
|---|---|---|---|---|---|

**JONES COUNTY, MS Clerk's Office**
**Honorable CONCETTA BROOKS**

| Instrument Type | Instrument# | Book | Page | Lot/Subdivision | Date | Deputy Clerk |
|---|---|---|---|---|---|---|
| NOTICE | 12401691 | 0124 | 1691 | Sec 26 Twn 8 Rng 14 | 7/11/2024 | Kelly Elizio |
| ASSIGNMENT | 12401943 | 0124 | 1943 | Sec 26 Twn 8 Rng 14 | 7/18/2024 | Kelly Elizio |
| SUB TRUSTEE | 12402104 | 0124 | 2104 | Sec 26 Twn 8 Rng 14 | 8/2/2024 | Kelly Elizio |
| NOTICE | 12402165 | 0124 | 2165 | Sec 26 Twn 8 Rng 14 | 8/13/2024 | Kayleigh Breland |
| TERMINATION | 12403381 | 0124 | 3381 | | 11/27/2024 | Kayleigh Breland |
| RELEASE | 12500475 | 0125 | 475 | Sec 26 Twn 8 Rng 14 | 2/18/2025 | Kayleigh Breland |
| LIS PENDENS NOTICE | 12502802 | 0126 | 2802 | Sec 26 Twn 8 Rng 14 | 7/11/2025 | Austin Rayner |

**EXHIBIT F**

**Mississippi Secretary of State Record**
Showing Sunrise Title Services, LLC is not registered to do business in Mississippi

Business Name   Business ID   Officer Name   Registered Agent

Search Criteria

● **Starting With**   ○ **All Words**   ○ **Any Words**   ○ **Sounds Like**   ○ **Exact Match**

**Business Name:**   SUNRISE TITLE SERVICES, LLC    **Search**

| | |
|---|---|
| Search Type: **Business Name** | Search Sub-Type: **Starting With** |
| Search Date: **07/30/2025 11:44** | Search Thru Date: **07/28/2025** |
| Criteria: **SUNRISE TITLE SERVICES, LLC** | Result(s) Count: **0** |

## Business Name Search Results

| Business Name (#) | Business ID (#) | Type (#) | (#) | Status (#) | (#) | Create Date (#) | (#) |
|---|---|---|---|---|---|---|---|
| 0 | | | | | No Matches Found. | | (#) |



2021 Mississippi Secretary of State. All rights reserved



Employment (https://www.sos.ms.gov/contact-us/employment-opportunities)

Online Services Directory (https://www.sos.ms.gov/online-services-directory)

Fees & Forms Directory (https://www.sos.ms.gov/business-services/fees-forms-directory)

82-County Tour (https://www.sos.ms.gov/82-county-tour)

How Do I...? (https://www.sos.ms.gov/how-do-i)

Links (https://www.sos.ms.gov/links)

**EXHIBIT G**

**Licensure Records**
Mississippi Real Estate Commission and Auctioneer Board show no license for Sunrise Title
Services, LLC, or Taurean Ray

PublicView/PublicCompanySearch.aspx

# Mississippi Auctioneer Commission

**Licensee/ Firm**
**Contact Us**

## Search Firm

| Name | Sunrise Title Services, L | License Type | << Select One >> | File # | |

| State | Mississippi | City | <<Select One >> | County | << Select One >> |

**Search**    **Reset**

**No Data Found**




© Copyright 2025 Mississippi Auctioneer Commission.
Mississippi Department of Information Technology Services. All Rights Reserved.
Mississippi Auctioneer Commission Website Disclaimer
Many documents provided within this website are in Adobe Acrobat PDF format.
http://www.adobe.com/products/acrobat/readstep.html



PublicView/PublicCompanySearch.aspx

# Mississippi Auctioneer Commission

censee/ Firm

t Us

## Search Firm

| | | | |
|---|---|---|---|
| Name | Taurean Ray | License Type << Select One >> | File # |
| State | Mississippi | City << Select One >> | County << Select One >> |

**Search**   **Reset**

No Data Found



© Copyright 2025 Mississippi Auctioneer Commission
Mississippi Department of Information Technology Services. All Rights Reserved.
Mississippi Auctioneer Commission Website Disclaimer
Many documents provided within this website are in Adobe Acrobat PDF format.
http://www.adobe.com/products/acrobat/readstep.html


Get Adobe
Reader



Q Search



# EXHIBIT H

**Certified Transcript**
Transcript of the July 16, 2025, foreclosure sale audio

Foreclosure Sale. 2:00 PM 7-16-2025

Sale conducted by Taurean Ray of Sunrise Titles.

**Brian Mooney:** [00:00:08] You conducting a sale? You conducting a sale?

**Taurean Ray:** [00:00:13] Did I get done with it yet?

**Brian Mooney:** [00:00:14] Are you conducting a sale? For?

**Taurean Ray:** [00:00:18] Yes. Sunrise Titles.

**Brian Mooney:** [00:00:21] Sunrise titles? You mind if I look? No, that's not sunrise title. No, sir.

**Taurean Ray:** [00:00:43] The one I'm working for. Who I'm working for is sunrise title.

**Brian Mooney:** [00:00:46] Okay. I'm providing this packet for the trustees record. This property is subject to ongoing litigation and a recorded Lis Pending. Okay. Please ensure all bidders are made aware. Okay. Can I have your name for my records?

**Taurean Ray:** [00:00:58] Yes, sir. Taurean

**Brian Mooney:** [00:01:06] Last name?

**Taurean Ray:** [00:01:06] Ray.

**Brian Mooney:** [00:01:09] And are you with Dean Morris or are you conducting a sale on their behalf?

**Taurean Ray:** [00:01:13] On their behalf.

**Brian Mooney:** [00:01:15] Their behalf?

**Taurean Ray:** [00:01:15] Yes, sir.

**Brian Mooney:** [00:01:17] And who are you? You said sunshine.

**Taurean Ray:** [00:01:20] Sunrise.

**Brian Mooney:** [00:01:21] Sunrise closing.

**Taurean Ray:** [00:01:24] titles.

**Brian Mooney:** [00:01:28] Sunrise.

**Taurean Ray:** [00:01:28] Title. Yes, sir.

**Brian Mooney:** [00:01:29] All right.

**Taurean Ray:** [00:01:31] All right. Commerce at the north corner of East fourth of southeast four, section 26, Township six North. Range 14, West first Judicial District, Jones County, Mississippi, and runs east west along the 41,111, 8.29 or 29ft six South 135.5ft to two and four point of being run thence east. 152ft, and to iron in the south to 186.5ft. To an iron pin there. Thence west 152ft to an iron pan. The stores 286.50ft back to the point of beginning of said parcel, comprising one acre, more or less in the beginning. Situated in the northeast. Slash fourth of southeast. Fort 26. Township six North. Range 14 West first Judicial District, Jones County, Mississippi, being the same property as conveyed from Jerry or Mooney and wife Dolores Mooney to Brandi Mooney and wife Marla Mooney is Tennessee by the entirety with full right to visit. But it's a very issue, as set forth in the book. 548 page 694 dated two one 2002. Recorded 11 five 2002 Jones County, Mississippi. I will only face such title as Vested in Me as substitute trustee. Witness my signature this 15th day of May, 2025.

**Taurean Ray:** [00:03:40]  I will start the opening bid at. $79,405.40

**Taurean Ray:** [00:03:53]  Do I have any bidders?

**Taurean Ray:** [00:03:57]  No bidders?

**Taurean Ray:** [00:04:00]  Alright, that's the end of it.

**Brian Mooney:** [00:04:00] That's it. Now what?

**Taurean Ray:** [00:04:01] I'll take the paperwork and send it back to them and tell them nobody showed up.

**Brian Mooney:** [00:04:06] They didn't have a bid bond or anything.

**Taurean Ray:** [00:04:08] No, sir. Not that I know of. They just had me come in and read the paper, and if people bid on it, they have told me the stipulation is the bid has to be over a dollar or a dollar over more than the bid. If nobody shows up, I just take the paperwork back and send it back to them and let them know.

**Brian Mooney:** [00:04:25] Okay. Thank you sir.

**Taurean Ray:** [00:04:26] Thank you sir.

**EXHIBIT I**

**Proof of Service**
Service of Verified Complaint and Lis Pendens on Nationstar Mortgage LLC and Dean Morris LLC, dated July 17, 2025

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

JUL 2 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                                        CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.

## SUPPLEMENTAL CERTIFICATE OF SERVICE

I, Brian E. Mooney, hereby certify that I previously served a true and correct copy of the Verified Complaint and Motion for Temporary Restraining Order upon the Defendants by United States Postal Service certified mail, return receipt requested, as set forth in the original Certificate of Service filed on July 14, 2025.

The United States Postal Service has now confirmed delivery of said service, as evidenced by the following:

1. Nationstar Mortgage LLC d/b/a Mr. Cooper
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 42
   Delivered on: July 17, 2025
2. Dean Morris LLP
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 35
   Delivered on: July 17, 2025
3. Mortgage Connect, LP
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7874 28
   Delivered on: July 17, 2025
4. Mortgage Electronic Registration Systems, Inc. (MERS)
   USPS Certified Mail Tracking No.: 9589 0710 5270 2805 7958 36
   Delivered on: July 21, 2025

Copies of the USPS delivery confirmations and/or signed return receipts are attached hereto as Exhibit A.

This the 21st day of July, 2025.

Respectfully submitted,

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
fixem75@gmail.com

**ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...**

# USPS Tracking®

FAQs >

l.

**Tracking Number:**

Remove ✕

## 95890710527028057874422

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:47 pm on July 17, 2025 in MADISON, MS 39110.

---

**Get More Out of USPS Tracking:**

   USPS Tracking Plus®

## Delivered
**Delivered, Front Desk/Reception/Mail Room**

MADISON, MS 39110
July 17, 2025, 12:47 pm

**See All Tracking History**

   What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)

.................................................................

**Text & Email Updates**                                                        ⌄

.................................................................

**USPS Tracking Plus®**                                                         ⌄

.................................................................

**Product Information**                                                         ⌄

.................................................................

**See Less ⌃**

Feedback

Track Another Package

ALERT: SEVERE WEATHER AND FLOODING IN THE SOUTHEAST, VIRGINIA, AND THE NORTHE...

# USPS Tracking®

**FAQs ❯**

$\partial.$

**Tracking Number:**                                                    **Remove ✕**

## 9589071052702805787435

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 10:39 am on July 17, 2025 in RIDGELAND, MS 39157.

_____

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered
**Delivered, Left with Individual**
RIDGELAND, MS 39157
July 17, 2025, 10:39 am

**Arrived at USPS Regional Facility**
JACKSON MS DISTRIBUTION CENTER
July 16, 2025, 9:25 am

**In Transit to Next Facility**
July 15, 2025

**Departed Post Office**
PETAL, MS 39465
July 14, 2025, 4:37 pm

**USPS in possession of item**
PETAL, MS 39465
July 14, 2025, 10:02 am

Feedback

**EXHIBIT J**

**Notice to Vacate**
Sent by Dean Morris LLC on July 18, 2025

Dean Morris - Mississippi Division
DEAN MORRIS
1505 N 19TH ST
Monroe, LA 71201



**USPS CERTIFIED MAIL**

9402 8149 0290 8234 3664 51

Brian E. Mooney
All Other Occupants
436 Old Progress Rd
Moselle, MS 39459-9726

JOHN C. MORRIS, III †*
CANDACE A. COURTEAU †
EMILY K. COURTEAU†*
JASON R. SMITH†*
ASHLEY E. MORRIS†
CANDACE MIERS BOWEN†
ELIZABETH CROWELL PRICE*
KIMBERLY D. MACKEY*
JOHN DANIEL STEPHENS†
KRISTY MASSEY FINLEY†

† Admitted in Louisiana
* Admitted in Mississippi

**DEAN MORRIS, L.L.C.**
ATTORNEYS AT LAW

*LOUISIANA DIVISION*
1505 North 19th Street, Monroe, LA 71201
Phone: 318.388.1440  Facsimile: 318.322.0887

*MISSISSIPPI DIVISION*
1820 Avenue of America, Monroe, LA 71201
855 S. Pear Orchard Rd, Ste 404 Bldg 400,
Ridgeland, MS 39157
Phone: 318.330.9020  Facsimile: 318.340.7600

OF COUNSEL:
GEORGE B. DEAN, JR.†
CODY GIBSON*

July 18, 2025

VIA Certified and US Mail
Brian E. Mooney /
All Other Occupants
436 OLD PROGRESS RD
MOSELLE, MS 39459

Re: 436 OLD PROGRESS RD, MOSELLE, MS 39459

## NOTICE TO VACATE &
## TENANTS RIGHTS UNDER FEDERAL LAW

We represent Nationstar Mortgage LLC who purchased the above referenced property at the Foreclosure Sale, held on the 16th day of July, 2025.

NOTICE IS HEREBY GIVEN that the Federal "Protecting Tenants at Foreclosure Act of 2009" ("PTFA") grants certain rights and protections to any occupant of the Premises who is a "bona fide" tenant, as defined by the PTFA. Nationstar Mortgage LLC is informed and believes that no occupant of the Premises is a "bona fide" tenant as defined by the PTFA. This Notice is given, in part, to provide any occupant the opportunity, prior to the commencement of the eviction action for possession, to provide acceptable evidence to show that the occupant is entitled to the protection of the PTFA.

If you are a servicemember on "active duty" or "active service," or a dependent of such a servicemember on "active duty" or "active service", or who was on active duty or service within the preceding 366 days, you may be entitled to certain legal rights and protections, including protection from eviction, pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes. If you believe that you may be entitled to protection under the SCRA please contact our office upon receipt of this letter.

**TEN (10) DAY NOTICE TO VACATE**

If you are a former owner or a person who is not a "bona fide" tenant under the PTFA, Nationstar Mortgage LLC terminates any and all rights to occupancy and instructs you to vacate the Premises no later than ten (10) days following delivery of this letter.

[THIS IS A TWO PAGE NOTICE]
**ALTERNATIVE NINETY (90) DAY NOTICE**

*In the event any occupant of the Premises is a bona fide tenant as defined by PTFA, this letter is the NINETY (90) DAY Notice to Vacate as required by PTFA.*

Thus, all occupants are required within **ten (10) days** after receipt by you of this Notice EITHER to produce acceptable evidence to this law firm that the occupant is entitled to the protections of the PTFA OR to vacate and surrender possession of the Premises to Nationstar Mortgage LLC or its agent, who can be reached at 888-480-2432 from 9:00 a.m. to 5 p.m. on all business days. If you fail to supply the acceptable evidence or vacate within that time, we will instruct the sheriff to deliver possession of the property to our client by forcibly removing you and your possessions from the property as authorized by Mississippi Code Ann. § 11-25-101 et seq.

THE EVICTION WILL BE FILED WITHIN TEN (10) DAYS OF DELIVERY OF THIS LETTER UNLESS ACCEPTABLE PROOF THAT YOU ARE A BONA FIDE TENANT UNDER THE PTFA IS RECEIVED BY THIS FIRM.

**BONA FIDE TENANT INFORMATION**

IF YOU BELIEVE YOU QUALIFY AS A BONA FIDE TENANT UNDER PTFA, you must provide the following documents:

- A copy of your lease (or if your lease is oral, proof of rent payment)
- A return phone number and the best time to reach you
- The receipt for the last six (6) payments made to the landlord for the residence (or the length of time you have resided in the property, if less than six (6) months)

By mail, fax, or in person to:

Dean Morris, LLC
1820 Avenue of America
Monroe, LA 71201
Fax: 318-340-7600

Sincerely,

Dean Morris, LLC

# EXHIBIT K

**Foreclosure Listing**
Auctions.com listing dated July 23, 2025, despite the recorded Lis Pendens

 Gmail

**Brian Mooney <ifixem75@gmail.com>**

## 1 New Listings in 39459
1 message

**Auctions.com Alerts** <property-alerts@lists.auctions.com>                Wed, Jul 23, 2025 at 6:38 AM
Reply-To: "Auctions.com Alerts" <property-alerts@lists.auctions.com>
To: ifixem75@gmail.com





**$111,211** EMV                    NEW

$1,102/Month Estimated Rental Value

**FORECLOSURE**
Old Progress Rd
Moselle, MS 39459

View Property



Introducing
**FORECLOSURE**
**FUNDING!**
FLIPS +RENTALS

» Get Pre-Approved

CHEAPEST HOMES
in America.
Find a Cheap Home now! ›

Rent to Own Listings
just updated near you.
Click Now to View

# EXHIBIT L

## Affidavit of Plaintiff
Attesting that no written notice of default or right to cure was received

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                    CIVIL ACTION NO. <u>2025-107</u>

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
JOHN DOES 1–10,
Defendants.


## **AFFIDAVIT OF PLAINTIFF REGARDING LACK OF NOTICE**

STATE OF MISSISSIPPI

COUNTY OF JONES

BEFORE ME, the undersigned authority in and for the jurisdiction aforesaid, personally

appeared Brian E. Mooney, who, after being duly sworn, stated as follows:

1. My name is Brian E. Mooney, and I am the Plaintiff in the above-captioned action. I am
   over the age of eighteen (18) and competent to make this affidavit.

2. I am the owner of the homestead property located at 436 Old Progress Road, Moselle,
   Mississippi 39459, which is the subject of this action.

3. I have personal knowledge of the facts stated herein.

4. At no time prior to the July 16, 2025 foreclosure sale did I receive any written notice of
   default or thirty-day right to cure, as required under Mississippi Code Annotated § 89-1-
   55.

5. I have reviewed my mail, email, personal records, and all other possible forms of communication. I never received any written notice—by certified mail, first-class mail, personal service, or otherwise—advising me of default or giving me the opportunity to cure such alleged default.

6. The failure to provide this notice deprived me of a legal opportunity to remedy any default and unlawfully subjected me to a foreclosure process that violated my statutory and constitutional rights.

FURTHER AFFIANT SAYETH NOT.

Brian Mooney

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
ifixem75@gmail.com

SWORN TO AND SUBSCRIBED BEFORE ME, this the 1st day of August 2025.

Notary Public Signature    GREG DICKERSON, Circuit Clerk

Print Name: By: Nita Conlon, DC

Notary Public, State of Mississippi

My Commission Expires:    My Commission Expires January 5, 2028

(SEAL)

**EXHIBIT M**

**Affidavit of Plaintiff**
Regarding July 29, 2025, phone call with Sandra at Sunrise Title Services, LLC confirming
Sunrise conducted the sale

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                            CIVIL ACTION NO. <u>2025-107</u>

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.


## <u>AFFIDAVIT OF BRIAN E. MOONEY REGARDING JULY 29, 2025 PHONE CALL WITH SUNRISE TITLE SERVICES, LLC</u>

STATE OF MISSISSIPPI
COUNTY OF JONES

BEFORE ME, the undersigned authority in and for the jurisdiction aforesaid, personally

appeared Brian E Mooney, who, after being duly sworn, stated as follows:

1.   My name is Brian E. Mooney, and I am the Plaintiff in the above-styled matter. I am over

the age eighteen (18), of sound mind, and fully competent to make this affidavit.

2.   I am the owner and occupant of the homestead property located at 436 Old Progress Road,

Moselle, Mississippi 39459, which is the subject of the foreclosure sale challenged in this

action.

3.   On July 29, 2025, I called the listed phone number for Sunrise Title Services, LLC and

spoke with an individual who identified herself and Sandra.

4.    During our conversation, I asked Sandra whether Sunrise Title Services, LLC was involved in the foreclosure sale of my property that took place on July 16, 2025, at the Jones County Courthouse in Ellisville, Mississippi.

5.    Sandra clearly stated that Sunrise Title Services, LLC had been hired by Dean Morris LLP to conduct the foreclosure sale of my property.

6.    She did not provide any supporting documentation or identify whether Sunrise held any valid auctioneer license or recorded authority to act as trustee or foreclosure agent in Mississippi.

7.    This statement confirms that Sunrise Title Services, LLC actively conducted the foreclosure sale at the request of Dean Morris LLP, despite lacking any recorded substitution, trustee appointment, Mississippi auctioneer license, or business registration in the state.

FURTHER AFFIANT SAYETH NOT.

*Brian Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
ifixem75@gmail.com

SWORN TO AND SUBSCRIBED BEFORE ME, this the __ day of _____, 2025.

Notary Public Signature
Print Name: GREG DICKERSON, Circuit Clerk

Notary Public, State of Mississippi
My Commission Expires: My Commission Expires January 5, 2028
(SEAL)

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 0 1 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                                    CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## CERTIFICATE OF SERVICE

I, Brian E. Mooney, Plaintiff pro se, hereby certify that I have this day served the following documents:

- Amended Verified Complaint
- Exhibits to the Amended Verified Complaint
- Summons directed to Sunrise Title Services, LLC
- Plaintiff's Motion to Set Aside Foreclosure Sale
- Notice of Hearing on Plaintiff's Motion to Set Aside Foreclosure Sale

upon the following party:

Sunrise Title Services, LLC
c/o Thomas Porter Upton, Registered Agent
4720A E Division Street
Mount Juliet, TN 37122

by United States Postal Service, certified mail, return receipt requested, postage prepaid, in accordance with Rule 4(c)(3)(A) of the Mississippi Rules of Civil Procedure.

Plaintiff will file the executed return receipt (green card) and/or USPS tracking confirmation as Proof of Service upon receipt in accordance with Rule 4(f).

This the 1ST day of _August_, 2025.

Respectfully submitted,

_Brian Mooney_

Brian E. Mooney
436 Old Progress Road
Moselle, MS 39459
601-310-6078
ifixem75@gmail.com

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 01 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                         CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiff's Motion to Set Aside Foreclosure Sale and for
Equitable Relief is set for hearing before the Honorable Jerry Sharp, Chancellor of the Jones
County Chancery Court, First Judicial District, on:

Date: August 14, 2025

Time: 9:00 AM

Location:

Jones County Chancery Court – First Judicial District

415 North 5th Avenue

Laurel, Mississippi 39440

All parties are required to appear at that time. Failure to appear may result in the Court granting
the requested relief without further notice.

Respectfully submitted, this the 1ˢᵀ day of _August_____, 2025.

_Brian Mooney_____

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
ifixem75@gmail.com

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                        CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## SUMMONS

TO:
Sunrise Title Services, LLC
c/o Thomas Porter Upton, Registered Agent
4720A E Division St
Mount Juliet, Tennessee 37122

You are hereby summoned to appear and defend against the Complaint filed in this action
within thirty (30) days after the mailing of this Summons and Complaint by the undersigned
Plaintiff. If you fail to do so, judgment by default will be entered against you for the relief
demanded in the Complaint.

ISSUED under my hand and the seal of said Court, this ____ day of ᴴ U G U S T ____, 2025.
*Concetta Brooks, Chancery Clerk*

CLERK OF THE CHANCERY COURT
Jones County Chancery Court – First Judicial District
101 Court Street, Suite B
Ellisville, Mississippi 39437

By: _____
Deputy Clerk (SEAL)

This Summons is issued pursuant to Rule 4 of the Mississippi Rules of Civil Procedure.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                    CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## **PROOF OF SERVICE**

Pursuant to Rule 4(f) of the Mississippi Rules of Civil Procedure, I, Brian E. Mooney, Plaintiff pro se, hereby submit this Proof of Service to confirm that service of process has been completed upon the following party:

Sunrise Title Services, LLC
c/o Thomas Porter Upton, Registered Agent
4720A E Division Street
Mount Juliet, TN 37122

USPS Certified Mail Tracking Number: 7022 2410 0002 9724 7919

Date of Delivery: August 8, 2025

A true and correct copy of the USPS Tracking confirmation showing delivery is attached hereto as Exhibit A.

Respectfully submitted this 11th day of August 2025.

*Brian Mooney*

Brian E. Mooney
436 Old Progress Road
Moselle, MS 39459
601-310-6078
ifixem75@gmail.com

Exhibit A: USPS Tracking Printout showing Tracking No. 7022 2410 0002 9724 7919 delivered on August 8, 2025.

# FILED

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY MISSISSIPPI

# USPS Tracking®

FAQs >

*Exhibit A*

**Tracking Number:**                                                Remove ✕

## 70222410000297247919

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 9:12 am on August 8, 2025 in MOUNT JULIET, TN 37122.

**Get More Out of USPS Tracking:**

  USPS Tracking Plus®

### Delivered
**Delivered, Left with Individual**

MOUNT JULIET, TN 37122
August 8, 2025, 9:12 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ∨ |
|---|---|

| USPS Tracking Plus® | ∨ |
|---|---|

| Product Information | ∨ |
|---|---|

See Less ∧

Track Another Package

Enter tracking or barcode numbers

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 1 2 2025

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

BRIAN E. MOONEY,
Plaintiff,

v.                                                CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## **CERTIFICATE OF SERVICE**

I, Brian E. Mooney, Plaintiff pro se, hereby certify that I have this day served true and correct copies of the following:

- Plaintiff's supplemental authorities and factual update in support of motion to set aside foreclosure sale
- Exhibits to the Plaintiff's supplemental authorities and factual update in support of motion to set aside foreclosure sale

by placing same in the United States Mail, with tracking, postage prepaid, addressed as follows:

Nationstar Mortgage LLC d/b/a Mr. Cooper
Corporation Service Company
Attn: Registered Agent for Nationstar Mortgage LLC
109 Executive Drive, Suite 3
Madison, Mississippi 39110

Dean Morris, LLC
Kimberly D. Putnam
Registered Agent for Dean Morris, LLC
855 S. Pear Orchard Road, Suite 404
Ridgeland, Mississippi 39157

Mortgage Connect, LP
Corporation Service Company

Attn: Registered Agent for Mortgage Connect, LP
109 Executive Drive, Suite 3
Madison, Mississippi 39110

Mortgage Electronic Registration Systems, Inc. (MERS)
Corporation Service Company
Attn: Registered Agent for Mortgage Electronic Registration Systems, Inc.
251 Little Falls Drive
Wilmington, Delaware 19808

Sunrise Title Services, LLC
c/o Thomas Porter Upton, Registered Agent
4720A E Division Street
Mount Juliet, TN 37122

This the 12th day of August, 2025.

Respectfully submitted,

*Brian Mooney*

Brian E. Mooney
436 Old Progress Road
Moselle, MS 39459
ifixem75@gmail.com
(601) 310-6078
Pro Se Plaintiff

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

**FILED**

AUG 1 2 2025

BRIAN E. MOONEY,
Plaintiff,

CONCETTA BROOKS, CHANCERY CLERK
JONES COUNTY, MISSISSIPPI

v.                                      CIVIL ACTION NO. 2025-107

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

## PLAINTIFF'S SUPPLEMENTAL AUTHORITIES AND FACTUAL UPDATE

## IN SUPPORT OF MOTION TO SET ASIDE FORECLOSURE SALE

COMES NOW the Plaintiff, Brian E. Mooney, appearing pro se, and respectfully submits this

Supplemental Authorities and Factual Update in further support of his Motion to Set Aside

Foreclosure Sale, scheduled for hearing on August 14, 2025.

Since filing the original motion, Plaintiff has confirmed additional material facts and located

additional controlling legal authorities which further demonstrate that the July 16, 2025,

foreclosure sale was conducted in violation of multiple Mississippi statutes and the due process

protections of the Fourteenth Amendment to the United States Constitution and Article 3,

Section 14 of the Mississippi Constitution.

Defendants have not produced any admissible evidence that Plaintiff is in default, that they are

the lawful party entitled to enforce the deed of trust, or that the foreclosure was conducted in

compliance with Mississippi law. These violations have caused concrete, personal, and

irreparable injury to Plaintiff by depriving him of his homestead without lawful notice, without

a neutral and authorized decisionmaker, and without compliance with the statutory procedures

that protect property rights.

Plaintiff incorporates herein by reference all Exhibits filed with his Amended Verified

Complaint (**Exhibits 1–24**) and his Motion to Set Aside Foreclosure Sale (**Exhibits A–M**), as

if fully set forth herein.

## I. NEWLY DISCOVERED FACTS SINCE FILING

1. Recording of Trustee's Deed in Violation of Lis Pendens

On August 5, 2025, a Trustee's Deed was recorded in the Jones County (First District) land

records, executed by Dean Morris, LLP, as Substitute Trustee, purporting to transfer Plaintiff's

property to Nationstar Mortgage LLC for $79,405.40 (**Exhibit 1** to this Supplemental).

Plaintiff recorded a Lis Pendens on July 11, 2025 pursuant to Miss. Code Ann. § 11-47-3

(**Exhibit D** to Motion to Set Aside), giving public notice that the property was the subject of

pending litigation. In *Coleman v. Shipp*, 223 So. 2d 911, 912 (Miss. 1969), the Mississippi

Supreme Court held that any purchaser after notice of Lis Pendens takes "at his peril" and

subject to the result of the litigation. Recording the Trustee's Deed while the Lis Pendens was

in effect was an attempt to alter title during the pendency of the court's jurisdiction and is

subject to nullification.

2. False Trustee's Deed and Sham Sale

The Trustee's Deed states that Dean Morris, LLP conducted the foreclosure sale and sold the

property to Nationstar Mortgage LLC for $79,405.40. Plaintiff attended the sale, recorded

audio and video, and has produced a transcript (**Exhibit H** to Motion to Set Aside; **Exhibit 6** to Amended Complaint) showing:

- Dean Morris, LLP was not present.
- The sale was conducted by Taurean Ray of Sunrise Title Services, LLC.
- Neither Sunrise nor Mr. Ray is the appointed trustee or substitute trustee, neither holds a Mississippi auctioneer license as required by § 73-4-15 (see **Exhibits G and F** to Motion to Set Aside; **Exhibits 19, 20, and 21** to Amended Complaint), and neither is authorized under § 89-1-55 to conduct a foreclosure sale.
- No bidders were present, no bid bond or credit bid was announced, and Mr. Ray stated he would "just read the paper" and "send the paperwork back," confirming the outcome was predetermined.
- No Nationstar representative was present.

These facts directly contradict the Trustee's Deed and demonstrate that no lawful foreclosure sale occurred. Under § 89-1-55 and *Deutsche Bank Nat'l Trust Co. v. Johnson*, 271 So. 3d 716, 719 (Miss. Ct. App. 2018), a foreclosure conducted by anyone other than the duly appointed trustee is void ab initio.

3. No Supporting Foreclosure Documentation

The only foreclosure-related document recorded in the land records is the newspaper advertisement (**Exhibit E** to Motion to Set Aside). There is no recorded or produced original promissory note, no recorded Notice of Default, and no proof of the thirty-day cure period required by Miss. Code Ann. § 89-1-55 (see **Exhibit L** to Motion to Set Aside; **Exhibit 23** to

Amended Complaint). The absence of these documents violates both Mississippi law and due process under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

4. Delegation of Nondelegable Trustee Authority

Section 89-1-55 grants the power of sale personally to the trustee or properly recorded substitute trustee. This authority is nondelegable without explicit lawful authorization. In *Johnson*, the court held that a foreclosure sale conducted by someone other than the duly appointed trustee is void from inception. Dean Morris, LLP's delegation to Sunrise Title Services and Taurean Ray, unlicensed and unauthorized under Mississippi law, voids the sale.

5. Dean Morris, LLP Also Unlicensed as Auctioneer

Dean Morris, LLP does not hold a Mississippi auctioneer license and is not exempt under § 73-4-15 because it did not personally conduct the sale. Delegating the sale to unlicensed persons violates §§ 73-4-15, 73-4-27, and 89-1-55 (see **Exhibits 2** to this Supplemental).

6. No Proof of Debt or Right to Enforce

For over eighteen months, Plaintiff has sent written demands, Qualified Written Requests under 12 U.S.C. § 2605(e) (RESPA), and debt validation requests under 15 U.S.C. § 1692g (FDCPA), as set forth in **Exhibits 10, 11, and 12** to the Amended Complaint. Plaintiff also served a formal Notary Presentment upon Defendants, demanding production of the original promissory note, a complete payment history, and a full chain of title.

Defendants failed to respond to the presentment, and Plaintiff holds two sworn Affidavits of Non-Response from a commissioned Mississippi notary (**Exhibit 11** to Amended Complaint) confirming that no responsive documentation was provided. These sworn affidavits are

uncontroverted third-party evidence that Defendants have not proven either the existence of a valid debt or their legal standing to enforce the Deed of Trust.

In Brown v. Federal Home Loan Mortgage Corp., 2016 WL 1169292 (Miss. Ct. App. 2016), the court held that a foreclosing party must prove both the debt and its right to enforce before exercising the power of sale. Defendants' failure to produce such proof, even after formal notarized demand, deprives them of standing, and any foreclosure conducted without such standing is void ab initio.

7. Dean Morris Not a Neutral Trustee

A trustee must act as a neutral fiduciary between borrower and lender. *Wansley v. First Nat. Bank of Vicksburg*, 566 So. 2d 1218, 1224 (Miss. 1990). Dean Morris, LLP acted as foreclosure counsel for Nationstar, referred to Nationstar as "our client," sent debt collection letters on its behalf, and stated in the July 18, 2025, notice to vacate that "we represent Nationstar Mortgage LLC" (**Exhibits 14, 15, 16** to Amended Complaint). This breach of neutrality voids the sale.

## II. SUPPLEMENTAL AUTHORITIES

1. *Nat'l Mortgage Co. v. Williams*, 357 So. 2d 934, 935 (Miss. 1978) – strict compliance with foreclosure statutes is mandatory; noncompliance renders the sale void.

2. *Deutsche Bank Nat'l Trust Co. v. Johnson*, 271 So. 3d 716, 719 (Miss. Ct. App. 2018) – foreclosure sale conducted by anyone other than the duly appointed trustee is void ab initio.

3. Miss. Code Ann. § 89-5-45 – substitution of trustee must be recorded before the substitute may exercise the power of sale.

4. Miss. Code Ann. §§ 73-4-15, 73-4-27 – auctioneers and auction firms must be licensed; trustee exemption applies only if trustee personally conducts the sale.

5. Miss. Code Ann. § 79-4-15.01 – foreign entities must have a certificate of authority before transacting business in Mississippi.

6. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) – due process requires notice reasonably calculated to apprise parties and an opportunity to be heard before deprivation of property.

7. Miss. Code Ann. § 89-1-55 – power of sale belongs only to the named trustee or substitute trustee; it is nondelegable.

8. *Brown v. Federal Home Loan Mortgage Corp.*, 2016 WL 1169292 (Miss. Ct. App. 2016) – foreclosing party must prove debt and right to enforce before foreclosure.

9. *Wansley v. First Nat. Bank of Vicksburg*, 566 So. 2d 1218, 1224 (Miss. 1990) – trustee owes fiduciary duty of neutrality between borrower and lender.

## III. APPLICATION

Mississippi law requires strict compliance in nonjudicial foreclosures. The July 16, 2025, sale failed to comply with:

- § 89-1-55 (nondelegable power of sale; sale conducted by unlicensed, unauthorized parties)
- §§ 73-4-15 and 73-4-27 (unlicensed auctioneer and firm)
- § 79-4-15.01 (unregistered foreign entity conducting sale)
- § 89-5-45 (no recorded substitution for the person who actually cried the sale)
- § 11-47-3 (sale conducted during effect of Lis Pendens)

- § 89-1-55 (no proper Notice of Default or opportunity to cure)

Defendants have produced no admissible proof of Plaintiff's alleged default, no proof they hold the debt, and no proof they complied with statutory prerequisites. Without proof of debt or right to enforce, they lack standing, and the sale is void under *Brown*.

Dean Morris, LLP's dual role as Nationstar's foreclosure counsel and substitute trustee, violates the fiduciary duty of neutrality under *Wansley*. This breach, combined with the sham sale evidence, renders the foreclosure void ab initio.

## IV. CONCLUSION

For the reasons set forth in Plaintiff's original motion and the additional facts and authorities provided herein, the July 16, 2025, foreclosure sale was conducted without lawful authority, in violation of multiple Mississippi statutes, and in direct contravention of due process protections.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Take judicial notice of the supplemental facts and authorities set forth herein;

2. Incorporate **Exhibits 1–24** from the Amended Verified Complaint and **Exhibits A–M** from the Motion to Set Aside Foreclosure Sale;

3. Admit **Exhibit 1 to this Supplemental** (Trustee's Deed recorded August 5, 2025, in Jones County, First District);

4. Admit **Exhibit 2 to this Supplemental** (Mississippi Auctioneer Licensing Board records showing Dean Morris, LLP is not licensed as an auctioneer in Mississippi);

5. Grant Plaintiff's Motion to Set Aside Foreclosure Sale, declare the sale void ab initio, restore title and possession to Plaintiff, and award all other equitable relief deemed just and proper.

Respectfully submitted,

*Brian Mooney*

Brian E. Mooney, Pro Se
436 Old Progress Road
Moselle, MS 39459
(601) 310-6078
ifixem75@gmail.com

EXHIBIT LIST – SUPPLEMENTAL AUTHORITIES AND FACTUAL UPDATE

- Exhibit 1 – Certified copy of Trustee's Deed recorded August 5, 2025, in Jones County (First District) land records.
- Exhibit 2 – Mississippi Auctioneer Licensing Board certification showing Dean Morris, LLP does not hold an auctioneer license in Mississippi.

IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI

FIRST JUDICIAL DISTRICT

BRIAN E. MOONEY,
Plaintiff,

v.                                                    CIVIL ACTION NO. <u>2025-107</u>

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER;
DEAN MORRIS, LLP;
MORTGAGE CONNECT, LP;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS");
SUNRISE TITLE SERVICES, LLC;
JOHN DOES 1–10,
Defendants.

**<u>EXHIBIT LIST FOR PLAINTIFF'S SUPPLEMENTAL AUTHORITIES AND
FACTUAL UPDATE</u>**

EXHIBIT LIST – SUPPLEMENTAL AUTHORITIES AND FACTUAL UPDATE

- Exhibit 1 – Certified copy of Trustee's Deed recorded August 5, 2025, in Jones County (First District) land records.
- Exhibit 2 – Mississippi Auctioneer Licensing Board certification showing Dean Morris, LLP does not hold an auctioneer license in Mississippi.

Exhibit 1 – Certified copy of Trustee's Deed recorded August 5, 2025, in Jones County (First District) land records.

State of Mississippi, County of Jones
First Judicial District
I, Concetta Brooks, Chancery Clerk in and for said County and State,
do hereby certify that the above and foregoing is a true and correct
copy of above instrument as same appears of record on file in the
office of the Chancery Clerk at Laurel, Jones County, Mississippi.
Given under my hand and official seal, this the _____11_____ day of
_____ A.D. 20_25_

CONCETTA BROOKS, Chancery Clerk
Jones County, Mississippi



CHANCERY CLERK Jones County, MS
1ST DISTRICT-ELLISVILLE
CERTIFY THIS INSTRUMENT FILE/RECORDED
8/5/2025 11:47:32 AM
INST. 12502277 PAGE 1 OF 3
WITNESS MY HAND AND SEAL
CONCETTA BROOKS

Prepared by:
Dean Morris, LLC
855 S Pear Orchard Rd Ste 404 Bldg 400
Ridgeland, MS 39157
Telephone: 318-330-9020
Kimberly D. Putnam Bar#102418

Return To:
Dean Morris, LLC
1820 Avenue of America
Monroe, LA, 71201
Telephone: 318-330-9020

**Substitute Trustee's Deed**
**Indexing Instructions**
Situated in the NE1/4 of SE1/4, Sect. 26, T6N, R14W, 1st JD, Jones Co., MS

STATE OF MISSISSIPPI
COUNTY OF JONES 1ST

GRANTOR:
Dean Morris, LLC
855 S Pear Orchard Rd Ste 404 Bldg 400
Ridgeland, MS 39157
318-330-9020

GRANTEE:
Nationstar Mortgage LLC
8950 Cypress Waters Blvd
Coppell, TX 75019
877-343-5602

PROPERTY OWNERS:
Brian E. Mooney
436 OLD PROGRESS RD
MOSELLE, MS 39459

WHEREAS, on the 12th day of February, 2021, Brian E. Mooney, a single man, executed and delivered a certain Deed of Trust unto Adams & Edens, PA, Trustee for Mortgage Electronic Registration Systems, Inc. as nominee for Nationstar Mortgage LLC d/b/a Mr. Cooper, Beneficiary, to secure an indebtedness therein described, which Deed of Trust is recorded in the office of the Chancery Clerk of Jones 1st County, Mississippi in Instrument# 12100561; and

WHEREAS, on the 15th day of July, 2024, Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Nationstar Mortgage LLC d/b/a Mr. Cooper, assigned said Deed of Trust unto Nationstar Mortgage LLC, by instrument recorded in the office of the aforesaid Chancery Clerk in Instrument# 12401943; and

WHEREAS, on the 31st day of July, 2024 the Holder of said Deed of Trust substituted and appointed Dean Morris, LLC as Trustee in said Deed of Trust, by instrument recorded in the office of the aforesaid Chancery Clerk in Instrument# 12402104; and

WHEREAS, default having been made in the payments of the indebtedness secured by the said Deed of Trust, and the holder of said Deed of Trust, having requested the sale for the purpose of paying said indebtedness or as much thereof as said brings; and

WHEREAS, I, Dean Morris, LLC, Substitute Trustee advertised the sale of the following described real property by Substitute Trustee's Notice of Sale, dated 15th day of May 2025 by posting same at the bulletin board at the courthouse entrance in Jones 1st County and by publishing said Notice in The Laurel Leader Call for four (4) consecutive weeks, proof of publication being attached hereto as Exhibit "A" and incorporated herein by reference, which notice stated that the sale would be held on the 16th day of July, 2025, between the legal hours of 11 o'clock a.m. and 4 o'clock p.m., at public outcry, to the highest bidder for cash at the West front door - Jones County Courthouse at Ellisville, Mississippi; and

WHEREAS, I, Dean Morris, LLC, Substitute Trustee, did on the 16th day of July, 2025, within legal hours, offer for sale and did sell, to the highest bidder for cash at the West front door - Jones County Courthouse at Ellisville, Mississippi the following described real property, to-wit:

F24-0310

The Land referred to herein below is situated in the County of JONES, State of MS, and is described as follows:

Commence at the northeast corner of the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the forty line 1111.29 feet, thence South 135.05 feet to and for the POINT OF BEGINNING: run thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West 152.00 feet to an iron pin; thence North 286.50 feet back to the point of beginning, said parcel comprising 1.0 acre, more or less and being situated in the NE/4 of SE/4, Section 26, Township 6 North, Range 14 West, First Judicial District, Jones County Mississippi.

Being the same property as conveyed from Jerry R. Mooney and wife, Delores Mooney to Brian E. Mooney and wife, Marla E. Mooney as tenancy by the entirety with full right of survivorship as set forth in Deed Book 548 Page 694 dated 02/01/2002, recorded 11/05/2002, JONES County, MISSISSIPPI.

WHEREAS, at said sale Nationstar Mortgage LLC was the highest bidder and best bidder, therefore, for the sum of $79,405.40 and the same was then and there struck off to Nationstar Mortgage LLC and it was declared the purchaser thereof; and

WHEREAS, everything necessary to be done to have a good and lawful sale was done in accordance with law and the terms of the Deed of Trust; and

NOW THEREFORE, I, Dean Morris, LLC, Substitute Trustee, for the consideration of $79,405.40 do hereby convey the above-described property to Nationstar Mortgage LLC.

I convey only such title as is vested in me as Substitute Trustee.

WITNESS MY SIGNATURE, this the 28th day of July _____, 2025.

Dean Morris, LLC, Substitute Trustee
Kimberly D. Putnam, Attorney

STATE OF MISSISSIPPI
COUNTY OF COPIAH

PERSONALLY CAME AND APPEARED BEFORE ME, the undersigned authority in and for the aforesaid jurisdiction, on this, the 28th day of July _____, the within named Kimberly D. Putnam, Attorney for Dean Morris, LLC, who acknowledged that (s)he executed the above and foregoing instrument of writing, after first having been duly authorized so to do as Substitute Trustee.

NOTARY

MY COMMISSION EXPIRES

**PROOF OF PUBLICATION**
**THE STATE OF MISSISSIPPI**
**COUNTY OF JONES**
**1st & 2nd Judicial District**

PERSONALLY appeared before me, the undersigned notary public in and for Jones County, Mississippi, the Legal/Classifieds Manager of The Laurel Leader-Call, a Newspaper as defined and prescribed in, Section 13-3-31 of the Mississippi Code 1972, as amended, who, being duly sworn, states that the notice, a true copy of which is hereto attached, appeared in the issues of said newspaper as follows:

On the 18 day of June 2025

On the 25 day of June 2025

On the 2 day of July 2025

On the 9 day of July 2025

_Jalyn Prince_
Affiant

Sworn to and subscribed before me on this day of July A.D., 2025.

_(signature)_
Notary Public

_(Notary Seal: STATE OF MISSISSIPPI — COURTNEY CREEL — NOTARY PUBLIC — Jones County — Commission Expires February 25, 2028 — COMMISSION NUMBER 123701)_

---

SUBSTITUTED TRUSTEES
NOTICE OF SALE

STATE OF MISSISSIPPI
COUNTY OF JONES 1ST

WHEREAS, on the 12th day of February, 2021, Rhian E. Mooney, a single man, executed and delivered a certain Deed of Trust unto Adam & Edens, P.A. Trustee for Mortgage Electronic Registration Systems, Inc. as nominee for Nationstar Mortgage LLC d/b/a Mr. Cooper, Beneficiary, to secure an indebtedness therein described, which Deed of Trust is recorded in the office of the Chancery Clerk of Jones 1st County, Mississippi in Instrument# 1210034; and

WHEREAS, on the 15th day of July, 2024, Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Nationstar Mortgage LLC d/b/a Mr. Cooper, assigned said Deed of Trust unto Nationstar Mortgage LLC, by instrument recorded in the office of the aforesaid Chancery Clerk in Instrument# 1240194; and

WHEREAS, on the 31st day of July, 2024 the Holder of said Deed of Trust substituted and appointed Dean Morris, LLC as Substitute Trustee by instrument recorded in the office of the aforesaid Chancery Clerk in Instrument# 1240210; and

WHEREAS, default having been made in the payments of the indebtedness secured by the said Deed of Trust, and the holder of said Deed of Trust, having requested the undersigned so to do, on the 16th day of July, 2025, I will during the lawful hours of between 11:00 a.m. and 4:00 p.m., at public outcry, offer for sale and will sell, at the West front door - Jones County Courthouse at Ellisville, Mississippi, for cash to the highest bidder, the following described land and property situated in Jones 1st County, Mississippi, to-wit:

The Land referred to herein below is situated in the County of JONES, State of MS, and is described as follows:

Commence at the northeast corner of the NE/4 of SE/4, Section 26, Township 5 North, Range 14 West, First Judicial District, Jones County, Mississippi and run thence West along the forty line 1111.29 feet; thence South 135.05 feet to and for the POINT OF BEGINNING; run thence East 152.00 feet to an iron pin; thence South 286.50 feet to an iron pin; thence West 152.00 feet to an iron pin; thence North 286.50 feet back to the point of beginning, said parcel comprising 1.0 acre, more or less and being situated in the NE/4 of SE/4, Section 26, Township 5 North, Range 14 West, First Judicial District, Jones County, Mississippi.

Being the same property as conveyed from Jerry R. Mooney and wife, Dennis Mooney to Brian R. Mooney and wife, Maris R. Mooney as tenancy by the entirety with full right of survivorship as set forth in Deed Book 548 Page 694 dated 02/01/2002, recorded 11/05/2002, JONES County, MISSISSIPPI.

I will only convey such title as is vested in me as Substitute Trustee.

WITNESS MY SIGNATURE, this 15th day of May 2025.

Dean Morris, LLC
Substitute Trustee
655 S Pear Orchard Rd., Ste. 404, Bldg. 400
Ridgeland, MS 39157
(318) 330-9020

jeh/P24-0510
PUBLISH: 6.18.25 / 6.25.25 / 7.2.25 / 7.9.25

---

JONES COUNTY, MS CONCETTA BROOKS I HEREBY CERTIFY THIS INSTRUMENT WAS FILED 07/29/2025 13:49:42 AM AND RECORDED IN GENERAL BOOK 0125 PAGE 2277

Exhibit 2 – Mississippi Auctioneer Licensing Board certification showing Dean Morris, LLP does not hold an auctioneer license in Mississippi.

